UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

BEASTIE BOYS, A NEW YORK PARTNERSHIP,  :
MICHAEL DIAMOND, ADAM HOROVITZ AND     :        Case No. 12 CV 6065(PAE)
DECHEN YAUCH AS EXECUTOR OF THE ESTATE :
OF ADAM YAUCH, DECEASED, EACH          :
INDIVIDUALLY AND COLLECTIVELY D/B/A    :
BROOKLYN DUST MUSIC,                   :
                                       :
                    Plaintiffs,        :
                                       :
          -against-                    :
                                       :
MONSTER BEVERAGE CORPORATION,          :
MONSTER ENERGY COMPANY,                :
                                       :
                    Defendants.        :
-------------------------------------------------------------------X
MONSTER ENERGY COMPANY,                :
                                       :
                    Third-Party Plaintiff, :
                                       :
          -against-                    :
                                       :
ZACH SCIACCA a/k/a Z-TRIP,             :
                                       :
                    Third-Party Defendant. :
-------------------------------------------------------------------X

**MONSTER ENERGY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO
THIRD PARTY DEFENDANT ZACH SCIACCA'S MOTION FOR SUMMARY
JUDGMENT DISMISSING THE THIRD-PARTY COMPLAINT**

**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, NY 10019
(212) 541-6222

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ *ii*

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

SUMMARY JUDGMENT STANDARD ........................................................................ 7

ARGUMENT ................................................................................................................... 8

    I.  Genuine Issues Of Material Fact Exist Concerning The Existence Of A Contract Between Monster And Sciacca ............................................................................................ 8

        A.  The Oral Agreement And Emails Create A Contract ...................................... 9

        B.  The Contract Was Supported By Consideration And The Essential Terms Of The Contract Are Definite ...................................................................................... 14

    II.  Genuine Issues Of Material Fact Exist Concerning Monster's Fraud Claim ................... 17

CONCLUSION ................................................................................................................ 20

#371366.5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)................................................................7

*Candid Productions, Inc. v. Int'l Skating Union,*
530 F. Supp. 1330 (S.D.N.Y. 1982) ...............................................16

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)................................................................7

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.,*
74 N.Y.2d 475, 548 N.E.2d 203 (N.Y. 1989).................................15, 16

*Consarc v. Marine Midland Bank, N.A.,*
996 F.2d 568 (2d Cir. 1993) ..........................................9, 10, 13, 14

*Dandong v. Pinnacle Performance Ltd.,*
2011 U.S. Dist. LEXIS 126552 (S.D.N.Y. Oct. 31, 2011)........................19

*Deutsche Asset Mgmt. v. Callaghan,*
2004 U.S. Dist. LEXIS 5945 (S.D.N.Y. Apr. 7, 2004) ...........................9

*eAdGear, Inc. v. Liu,*
2012 WL 2367805 (N.D. Cal. June 21, 2012)....................................18

*Herbert Constr. Co. v. Continental Ins. Co.,*
931 F.2d 989 (2d Cir. 1991) .....................................................8

*JP Morgan Chase Bank v. Winnick,*
350 F. Supp. 2d 393 (S.D.N.Y. 2004) ........................................18, 19

*Martin H. Bauman Assoc., Inc. v. H & M Int'l Transport, Inc.,*
171 A.D.2d 479, 567 N.Y.S.2d 404 (1st Dep't 1991).............................9

*Myplaycity, Inc. v. Conduit Ltd.,*
2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012)....................................18

*Power v. Tyco Int'l (US), Inc.,*
2006 U.S. Dist. LEXIS 96188 (S.D.N.Y. May 29, 2006) .....................9, 10, 11, 16

*Roth v. Isomed, Inc.,*
746 F. Supp. 316 (S.D.N.Y. 1990) ..............................................14

#371366.5

*Rule v. Brine, Inc.,*
    85 F.3d 1002 (2d Cir. 1996) ................................................................ 7, 8, 12, 16

*Shann v. Dunk,*
    84 F.3d 73 (2d Cir. 1996) ................................................................ 10, 16

*Wall v. CSX Transp., Inc.,*
    471 F.3d 410 (2d Cir. 2006) ................................................................ 17

*Wisdom Import Sales Co. v. Labatt Brewing Co.,*
    339 F.3d 101 (2d Cir. 2003) ................................................................ 9

## CASES

Fed. R. Civ. P. 56 ................................................................................ 7

#371366.5

Third-Party Plaintiff Monster Energy Company ("Monster") respectfully submits this memorandum of law in opposition to Third Party Defendant Zach Sciacca's ("Sciacca" or "Third-Party Defendant") motion for summary judgment dismissing Monster's Third Party-Complaint, dated October 5, 2012 ("Third-Party Complaint").

## PRELIMINARY STATEMENT

This action arises from the Complaint of Plaintiffs Beastie Boys, Michael Diamond, Adam Horovitz, Dechen Yauch as executor of the estate of Adam Yauch, and Brooklyn Dust Music (collectively, "Plaintiffs" or "Beastie Boys"), filed August 8, 2012, alleging that Monster infringed Plaintiffs' copyrights by including four or five songs[1] on a video Monster made of its snowboarding event called "Ruckus in the Rockies" (the "Video") without permission. However, the circumstances which led to this action began on May 5, 2012 when Monster's employee Nelson Phillips ("Phillips") asked Third-Party Defendant, who was performing at the Ruckus in the Rockies after-party as a disc jockey ("DJ"), whether he had any music that it would be permissible for Monster to use on the soundtrack for the Video. Sciacca responded that Phillips could go onto Sciacca's website which contained an original remix of Beastie Boys' songs (the "Megamix") and take what he wanted. The Megamix was available to download for free. Before posting the Video online, Phillips emailed Sciacca a link to the Video containing excerpts from Sciacca's Megamix and asked him to approve it, which Sciacca did. Only then did Monster place the Video online.

---

[1] In their Complaint, filed August 8, 2012, Plaintiffs alleged that Monster included four of its works on the Video. (Compl. ¶¶ 20, 58.) However, in the Memorandum of Law Plaintiffs submit in Support of the Third-Party Defendant's Motion for Summary Judgment, dated August 1, 2013, Plaintiffs assert for the first time, a year after commencing this action, that the Video allegedly includes a fifth Beastie Boys work. (Pl. Br. at 1, n. 1.) Without waiving any defenses, objections, or admitting the truth of this allegation, it is irrelevant to the present motion whether the Video allegedly contained four or five Beastie Boys' works.

Monster has filed a Third-Party Complaint alleging that Sciacca made an agreement with Monster concerning the use of his Beastie Boys Megamix, which he breached since he did not actually have permission to license it to Monster, and fraud for his representations to Monster that it was permissible for Monster to use the Megamix as the soundtrack to the Video. Although Sciacca maintains that he only granted approval for Monster to use his image in the Video, Phillips and the documentary evidence set forth an alternative version of events that support liability against Sciacca. In addition, there are numerous issues of material fact in dispute. The credibility of witnesses and the weight of the evidence must be determined by the trier of fact, which makes this case inappropriate for resolution on summary judgment.

## STATEMENT OF FACTS

Monster is a publicly-held, maker of energy drinks sold under the "Monster" brand. (Affidavit of Nelson Phillips, dated August 21, 2013, ("Phillips Aff."), ¶ 2.) As part of its efforts to promote the Monster lifestyle and brand, Monster sponsors a number of events showcasing action sports. (Phillips Aff. ¶¶ 3,5.) In Canada, Phillips, the director of marketing for the Canadian business unit of Monster Energy Canada, Ltd., a subsidiary of Monster, is responsible for organizing these events. (Phillips Aff. ¶¶ 1, 4.)

In February 2012, Phillips began preparing for the 2012 Ruckus in the Rockies event (the "Event"), which is a snowboarding competition that was to take place on May 5, 2012 in Lake Louise, Canada. (Phillips Aff. ¶ 6.) Phillips was responsible for selecting musical performers for the Event as well as for the Ruckus in the Rockies after-party (the "After-Party"). (*Id.*) Phillips ultimately booked a number of DJs to perform at the Event and the After-Party, including Sciacca. (Phillips Aff. ¶ 7.)

#371366.5

Third-Party Defendant Sciacca is a DJ, producer, remixer and performer, who performs under the name "Z-Trip." (Affidavit of Zach Sciacca, dated July 25, 2013, ("Sciacca Aff."), ¶ 2.; Deposition Transcript of Zach Sciacca, dated April 2, 2013, attached as Ex. E to the Affidavit of Tanya Pohl, dated, August 22, 2013 ("Pohl Aff."), 12, lines 13-14.) "One of [his] specialties is taking existing recordings and melding them with other recordings and sounds to create a <u>new</u> product that is called a 'remix.'" (Sciacca Aff. ¶ 3 (emphasis added).)  Phillips decided to hire Sciacca to perform at the After-Party and asked Carlos Giusto, an independent promoter and talent manager with the Napoleon Investment Group, to negotiate on behalf of Monster with Sciacca's representatives. (Phillips Aff. ¶ 8.)  The operative contract concerning Monster's engagement of Sciacca, dated February 28, 2012, provides for Sciacca to perform live at the After Party for $15,000 in compensation (the "After-Party Contract").  (Ex. A to Sciacca Aff.)

On May 5, 2012, the Event took place and, as was customary, numerous cameras recorded footage of the snowboarders competing, as well as the awards ceremony. (Phillips Aff. ¶ 9.)  Phillips planned to create a recap video of the Event that would feature highlights of the snowboarders, the awards ceremony, as well as footage of the After-Party. (Phillips Aff. ¶ 11.)

With this in mind, Phillips met with Sciacca in the evening of May 5, 2012 in the green room prior to Sciacca's performance at the After-Party. (Phillips Aff. ¶ 11.)  Phillips told Sciacca that he wanted to create a video of the Event and asked Sciacca if he had any music that Monster could use as a soundtrack to the Video. (*Id.*)  Sciacca responded that Monster could use the Megamix that he had made of several Beastie Boys' songs, which was available for free download on his website. (*Id.*)  On May 7, 2012, during breakfast, Phillips had a subsequent conversation with Sciacca regarding Monster's use of his Megamix on the Video in which he told Sciacca that he would send him the Video after the first edit was complete and that Monster

3

would not publish the Video without Sciacca's approval. (Phillips Aff. ¶ 12.) Subsequent to these conversations, Phillips went to Sciacca's website and listened to Sciacca's Megamix. (Phillips Aff. ¶ 13.)

The Megamix is a 23.5 minute remix containing more than a dozen Beastie Boys' songs, which is an original work created by Sciacca and made with the knowledge and consent of the Beastie Boys. (Sciacca Aff. ¶¶ 11-12.) The Beastie Boys also knew and consented to Sciacca making the Megamix available for free download on his website. (Sciacca Dep. Tr., Ex. E, 50, lines 7-15, 68, lines 12-25). The Beastie Boys' representatives provided Sciacca with the instrumentals for the Beastie Boys' songs embodied in the Megamix. (Sciacca Dep. Tr. Ex. E, 46, lines 12-25, 47, lines 2-3.) The Beastie Boys and Sciacca did not enter into any written agreement concerning Sciacca's creation, use, or rights to the Megamix and neither the Beastie Boys nor Sciacca were compensated in connection with the Megamix. (Sciacca Dep. Tr. Ex. E, 41, lines 15-24, 47, lines 8-24, 53, lines 5-13.) Sciacca released his Megamix on his website http://ztrip.bandcamp.com in April 2011 where it was available for free download by anybody. (Sciacca Aff. ¶¶ 10-11.) Sciacca represented to Phillips that his Megamix was still available for free download on his website in May 2012 and the website did not indicate that there were any restrictions or limitations to non-commercial uses for the download. (Phillips Aff. ¶11; Sciacca Dep. Tr., Ex. E, 50, lines 7-15, 66, lines 10-19, 70, lines 15-25, 71, lines 2-4.)

As a result of Sciacca's representations that Monster could use his Megamix, Phillips directed that songs from the Megamix be used as the soundtrack to the Video. (Phillips Aff. ¶ 14.) Pursuant to his agreement with Sciacca, on May 8, 2012, Phillips emailed Sciacca "Please take a look at the video from this past weekend and let me know if you approve." (Exhibit A to Pohl Aff.; Phillips Aff. ¶ 18.) On May 9, 2012, Sciacca approved the Video by responding

4

"Dope," which is a slang term indicating approval.  (Exhibit A to Pohl Aff.; Phillips Aff. ¶ 19.; Sciacca Dep. Tr., Ex. E, 116, line 25, 117, lines 2-3).)  In his reply email, Sciacca does not indicate that he is only approving Monster's use of his image, or even mention his image, nor does he object to the use of his Megamix on the Video.  (Exhibit A to Pohl Aff.)  Instead, he requested that Monster include a link on its website to the Megamix (the "Link"), with the words "Download the mix for free at http://ztrip.bandcamp.com."  (Exhibit A to Pohl Aff.; Phillips Aff. ¶ 19.)  In exchange for the use of Sciacca's Megamix on the Video, Sciacca received the benefit of this additional promotion, as well as the placement of the Link on Monster's website. (Phillips Aff. ¶ 19; Sciacca Dep. Tr., Ex. E, 69, lines 20-25, 70, lines 1-2 (explaining that Sciacca receives a benefit when more people access his website).)  On May 9, 2012, Monster placed the Video, containing songs from Sciacca's Megamix as its soundtrack, on its YouTube channel. (Phillips Aff. ¶ 20.)  In addition, Phillips emailed Sciacca that the Video had been posted.  (*Id.*) On May 10, 2012, again instead of indicating any objection to the use of his Megamix, Sciacca for a second time, responded: "Dope."  (Exhibit B to Pohl Aff.; Phillips Aff. ¶ 20.)

On June 13, 2012, Monster received a letter from Plaintiffs' attorneys alleging that Monster did not have permission to use Sciacca's Megamix on the Video.  (Phillips Aff. ¶ 21.) Monster immediately removed the Video, which was only viewable online for five weeks. (Phillips Aff. ¶ 22.)  Phillips and others at Monster then re-edited the Video to remove Sciacca's Megamix and/or any reference to Plaintiffs.  (Phillips Aff. ¶ 23.)  Monster used music by the band Swollen Members.  (*Id.*)  Monster would have used music by the Swollen Members, or other artists, as the soundtrack to the Video in the first instance, if Sciacca had not represented that it was permissible for Monster to use his Megamix.  (*Id.*)

5

Notwithstanding Monster's immediate and thorough remedial measures, Plaintiffs have doggedly pursued their claims against Monster.  Accordingly, Monster filed its Third-Party Complaint against Sciacca alleging that Sciacca breached his Agreement with Monster to supply the Megamix for the Video and/or fraudulently misrepresented that he had the right to license his Megamix to Monster. (*See* Exs. E & F to Affidavit of Stewart Levy, dated August 1, 2013 ("Levy Aff.").)  Moreover, Monster asserts that if it is found liable to Plaintiffs for copyright infringement, including with respect to the Link, then Sciacca, who supplied the music, indicated his approval of his Megamix in the Video, and requested that the Link be included on Monster's website, is liable to Monster for any resulting damages. (*See* Ex. F to Levy Aff.)

In support of his motion, Sciacca now contends that during his May 7, 2012 conversation and May 9, 2012 email, he believed he was only approving the use of his image in the Video, rather than the use of his Megamix that was prominently featured in the Video. (Sciacca Aff. ¶¶ 28-29.)  Sciacca does not dispute that he never objected to, or questioned the use of, his Megamix in the Video, as would be reasonable if he had not made an agreement with Monster concerning its use. (Exhibit A to Pohl Aff.)  He also never communicated to Monster that he was only approving the use of his image in the Video. (*See Id.*)  Moreover, on June 5, 2012, Sciacca sent an email to his manager, Lorrie Boula ("Boula"), ██████████████████████████ ████████████████████████████████████████████████████████ ██████████ (Exhibit C to Pohl Aff.) ████████████████████████ ████████████████████████████████████████████████████ ██████████████████ (*Id.* (emphasis added).)  There remains therefore, disputes of material fact as to what Sciacca represented to Phillips, whether a contract was formed between Monster and Sciacca regarding the use of his Megamix, and whether Sciacca approved the use of

6

his Megamix, which require the trier of fact to evaluate the credibility of the witnesses and the documentary evidence. Sciacca's motion for summary judgment must be denied.

## SUMMARY JUDGMENT STANDARD

Summary judgment is only appropriate when, viewed in the light most favorable to the non-moving party, there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The moving party "bears the initial responsibility of . . . identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When there is sufficient evidence for a jury to return a verdict for the party opposing summary judgment, the motion must be denied and the case must proceed to trial. *Anderson,* 477 U.S. at 249. The Court must resolve all ambiguities and draw all permissible factual inferences against the moving party. *Id.* at 255.

The Court's role is not to decide issues of material fact or make credibility determinations, but merely to discern whether any factual issues exist. *Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996) ("Any weighing of the evidence is the prerogative of the finder of fact, not an exercise for the court on summary judgment."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Id.* (citing Fed R. Civ. P. 56(e) 1963 Advisory Committee Note). Because numerous issues of material fact are in dispute and require credibility determinations by the trier of fact, Sciacca's motion for summary judgment should be denied in its entirety.

#371366.5

## ARGUMENT

**I.      Genuine Issues Of Material Fact Exist Concerning The Existence Of A Contract Between Monster And Sciacca**

Summary judgment must be denied, because there is a genuine issue of material fact as to whether the oral conversations and emails between Phillips and Sciacca formed a contract. The resolution of this dispute requires the trier of fact to evaluate the credibility of Phillips and Sciacca, and assess the documentary evidence, which renders the resolution of the breach of contract claim inappropriate for summary judgment. *See Rule*, 85 F.3d at 1011 (holding that credibility assessments and evaluation of conflicting versions of events are to be decided by the trier of fact and reversing award of summary judgment on breach of contract claim).

Sciacca's extensive argument concerning his alleged lack of apparent authority to act on behalf of the Beastie Boys is completely irrelevant to the instant motion that concerns <u>Sciacca's</u> liability. The analysis of agency law and determination of whether an agent had apparent authority based on the actions of the principal relate to liability of the <u>principal</u>—in this case the Beastie Boys—for the actions of the alleged agent. *See, e.g., Herbert Constr. Co. v. Continental Ins. Co.*, 931 F.2d 989, 993 (2d Cir. 1991) (explaining that New York agency law on apparent authority, which analyzes whether the actions of the agent are traceable to the principal, falls in the spectrum between the agent with actual authority to bind the principal and the agent who falsely represented to a third party that he had authority to bind the principal). Agency law and the doctrine of apparent authority certainly do not dictate that the <u>alleged agent</u> cannot be liable for his <u>own</u> conduct in breaching a contract and perpetuating a fraud. Regardless of whether or not Plaintiffs' conduct failed to cloak Sciacca with apparent authority sufficient to support liability against Plaintiffs, Sciacca's argument that he lacked apparent authority is completely

8

irrelevant for purposes of this motion, which relates to the liability of Sciacca (alleged agent or not) for his own conduct.

### A.        The Oral Agreement And Emails Create A Contract

Under New York law, to prevail on a breach of contract claim, a plaintiff must prove (1) the existence of an agreement; (2) the plaintiff's performance of the contract; (3) breach of the contract by the defendant; and (4) damages. *Power v. Tyco Int'l (US), Inc.*, No. 02-Civ.-6444, 2006 U.S. Dist. LEXIS 96188, at *47 (S.D.N.Y. May 29, 2006).  New York law is clear that parties are free to contract orally and oral agreements are enforceable. *Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir. 2003) (stating "oral agreements are binding and enforceable absent a clear expression of the parties' intent to be bound only be a writing"). New York law is also clear that contracts can be created in a series of writings and/or in conjunction with an oral agreement. *Consarc v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir. 1993) (explaining that under New York law, a contract may be formed from more than one writing and relevant writings creating a contract may consist of letters, or unsigned memoranda).

Numerous courts have explained that the determination of whether a contract was formed is a question of fact to be determined by the trier of fact. *See, e.g., Deutsche Asset Mgmt. v. Callaghan*, No. 01-Civ.-4426, 2004 U.S. Dist. LEXIS 5945, at *51 (S.D.N.Y. Apr. 7, 2004) ("The guiding principle behind all of these inquiries into contract formation is that they are for the factfinder. "); *Martin H. Bauman Assoc., Inc. v. H & M Int'l Transport, Inc.*, 171 A.D.2d 479, 483, 567 N.Y.S.2d 404, 408, (1st Dep't 1991) (stating "the issue of whether or not the parties ever came to a meeting of the minds so as to have entered into an enforceable agreement should properly be left to the determination of the trier of the facts").  In evaluating whether an oral

9

contract was formed, the four most common factors evaluated by the trier of fact are: (1) whether there is evidence that the parties expressed an intent to be bound only by a writing; (2) partial performance; (3) agreement on all material terms[2]; and (4) whether this is the type of agreement normally reduced to writing. *Power*, 2006 U.S. Dist. LEXIS 96188 at *48; *see Consarc Corp.*, 996 F.2d at 576 (listing exhaustive list of factors to examine and explaining that the Second Circuit has refined and reduced the analysis to these four factors).

In *Power*, the court, after a bench trial, not on a motion for summary judgment, made a factual finding that Tyco Corporation entered into an oral agreement with its former employee concerning his severance package. 2006 U.S. Dist. LEXIS 96188, at *42-43, 48-49. In reaching this conclusion, the court evaluated the credibility of the witnesses and explained that the resolution of whether the parties formed an oral agreement was essentially a factual question. *Id.* at *44, 48-49. Analyzing the four factors to determine whether an oral agreement existed under the facts of the case, the court held as to the first two that there was no evidence that either party expressed an intent to be bound only by a writing and the plaintiff performed by returning to work at Tyco. *Id.* at *49. As to the third factor, although the parties did not explicitly agree on whether a severance payment would be required in all possible scenarios and certain issues were left open to later agreement or simply ignored, there was an agreement on all material terms of the contract. *Id.* at *52-53. Finally, the court noted that while it is true that employment agreements are usually in writing, New York law only provides that this is a factor to be

---

[2] Although courts will frequently use "material terms" and "essential terms" interchangeably, the recent trend in evaluating the sufficiency of a contract is to determine whether it has all necessary "essential terms." *Shann v. Dunk*, 84 F.3d 73, 78 n. 3 (2d Cir. 1996). Without commenting on whether the terms are interchangeable, the Second Circuit stated that it would use "essential terms." *Id.* "A material term is any term properly bearing upon the subject matter of the contract. Essential terms are those items whose agreement is prerequisite to the formation of a contract." *Id.* (quoting *In re Windsor Plumbing Supply Co.*, 170 Bankr. 503, 523, n. 5 (E.D.N.Y. 1994)).

considered; it does not hold that parties may not enter into oral agreements where such an agreement is ordinarily in writing. *Id.* at *54.

As in *Power*, the question of whether the parties formed a contract in this case "is at bottom a factual one." *Id.* Viewed in the light most favorable to Monster, on May 5, 2012, Phillips asked Sciacca whether there was any music that Monster could use as a soundtrack to a Video of the Ruckus in the Rockies event. (Phillips Aff. ¶ 11.) Sciacca responded in the affirmative and stated that Monster could go to his website and download his Megamix for free. (*Id.*) On May 7, 2012, Phillips told Sciacca that he would send him the Video for his approval before posting it. (Phillips Aff. ¶ 12.) Pursuant to that agreement, on May 8, 2012, Phillips emailed Sciacca a copy of the Video and asked him whether he approved. (Phillips Aff. ¶ 18.) On May 9, 2012, Sciacca replied "Dope," a slang term indicating approval and, in exchange, told Monster to include a link to his website where his Megamix could be downloaded for free. (Phillips Aff. ¶ 19.) Thus by May 9, 2012, when viewed in the light most favorable to Monster, there is sufficient evidence that the parties had formed a contract, which Sciacca breached by approving the use of his Megamix, and which he now claims he did not have the right to do, consisting of the oral agreement reached on May 5, 2012 and May 7, 2012 and supported by the May 9, 2012 email, as to Monster's use of Sciacca's Megamix.

Monster contends that the Agreement between Phillips and Sciacca regarding Monster's use of the Megamix on the Video consisted of the oral conversations on May 5 and May 7, 2012 and the May 9, 2012 email. As such, it is not only an oral agreement. Nevertheless, analyzing the four most commonly evaluated factors leads to the conclusion that an enforceable oral contract was formed. As in *Power*, there is no indication that the parties intended to be bound solely by a writing. Second, Monster performed by using Sciacca's Megamix as the soundtrack.

11

(Phillips Aff. ¶ 20.)  Finally, as in Powers, although this is the type of agreement that would usually be reduced to writing, agreements to use artists' music are not always reduced to writing. In fact, Sciacca's rights to use Plaintiffs' Beastie Boys music in his Megamix was never reduced to writing and neither side received any compensation.  (Deposition Transcript of Lorrie Boula, dated April 4, 2013, attached as Ex. F to Pohl Aff, 46, lines 19-22, 47, lines 22-24; Sciacca Dep. Tr., Ex. E, 59, lines 3-11 (Q: Did that permission from the Beastie Boys to use their songs, was that in writing?  A:  Not that I ever saw.  Q:  Is it your understanding that clearance rights have to be in writing or not?  A:  I think it depends on the circumstances for each case).)  Evidently, the consideration in that instance was mutual promotion and that was considered sufficient to form an agreement.  Sciacca, apparently, was accustomed to licensing music without a formal written agreement.  (Sciacca Dep. Tr., Ex. E, 59, lines 3-11.)  The final factor, agreement on all material terms, is also satisfied, as will be discussed *infra* I. B.

There is, in short, a dispute of material fact as to the existence of a contract, requiring the trier of fact to assess the credibility of the witnesses, as well as the documentary evidence.  *See Rule*, 85 F.3d at 1014 (explaining that where the deposition testimony did not lead to only one permissible inference, "the decisions as to how to weigh the evidence, what testimony to believe, and which of competing inferences to draw are to be made by the jury after trial" and holding that when viewed in the light most favorable to the non-moving party, the jury could permissibly find that the parties agreed that, in exchange for Rule's assignments of patents to Brine, Brine would pay Rule reasonable royalties).  In this case, the trier of fact could reasonably conclude that Monster's version of events, which is supported by documentary evidence, is credible and supports the existence of a contract between the parties.  By contrast, Sciacca claims in his affidavit and deposition that he never even discussed with Phillips the use of the Megamix, yet in

12

an email to Boula ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████ (Exhibit C to Pohl Aff.) ████████████████████████████████

█████████████████████████ (*Id.* (emphasis added).)  Whether Sciacca's claim that the

May 7, 2012 conversation, his email approving the Video and requesting the inclusion of a link

to his Megamix be included on Monster's webpage, and his June 5, 2012 ███████ email to Boula

all related to his mere approval of his image, is an issue of credibility that must be assessed by

the trier of fact.  Given that Sciacca admits to having watched the Video two or three times and

heard his Megamix on it, had Sciacca <u>not</u> provided permission to Monster to use the Megamix, a

reasonable person in Sciacca's position would have been expected to object, or at least question,

the use of his Megamix in the Video.  *See Consarc Corp.*, 996 F.2d at 573 ("The failure of the

writings to contain a disavowal is one of the common law principles courts rely on in deciding

whether several writings together form a contract between the parties.").  Instead, Sciacca,

emailed back "Dope" and asked that Monster include a link to the Megamix on his website from

the Monster Energy website.  Whether Sciacca had a conversation with Phillips in which he gave

Monster permission to use his Megamix, or whether Sciacca was merely referring to the

approval of his image in the video, is an issue of credibility to be determined by the trier of fact.

Sciacca's version of the facts is certainly not the only reasonable interpretation rendering there

no dispute of material fact.

　　　　Furthermore, Sciacca's discussion of an agreement concerning the contract, entered into

on February 28, 2012, relating to his performance at the After-Party is irrelevant.  The After-

Party Contract is completely separate from the agreement Monster Energy contends was formed

between Phillips, as its representative, and Sciacca, between May 5, 2012 and May 9, 2012

13

#371366.5

concerning the use of Sciacca's Megamix on the Video.  The After-Party Contract concerned

Sciacca's live performance at the Ruckus in the Rockies after-party and does not cover—nor

would it be expected to cover—the use of Sciacca's Megamix, which Sciacca claims he did not

even play at the After-Party (Sciacca Aff. ¶ 26), on a recap snowboarding video.  The agreement

between Phillips and Sciacca concerning the use of Sciacca's Megamix is a separate contract,

covering a separate matter and, as outlined below, supported by separate consideration.

> **B.      The Contract Was Supported By Consideration And The Essential Terms Of
> The Contract Are Definite**

As is well known, consideration can consist of an exchange of promises.  *Consarc Corp,*

996 F.2d  at 570 (explaining that "mutual assent between the parties, even though oral or

informal, to exchange acts or promises is sufficient to create a binding contract"); *Roth v.

Isomed, Inc.*, 746 F. Supp. 316, 319 (S.D.N.Y. 1990) ("Consideration, which can take the form

of either promise or performance, can be either a bargained for gain or advantage to the promisee

or a bargained for legal detriment or disadvantage to the promisor.").  Contrary to Sciacca's

contention that terms of compensation for Monster's use of his Megamix are missing (Br. at 13),

this contract was supported by valuable consideration.  In exchange for his permission for

Monster to use his Megamix, Sciacca received the additional exposure of his Megamix in the

Video, which was not only the soundtrack but credited at the end as "courtesy of Z-Trip," and

the inclusion of a link to his website with the Megamix on the Monster webpage.  Moreover,

both Sciacca and his manager Boula admitted that this increase in traffic to Sciacca's website

14

was a "benefit" to Sciacca. [3]  The June 5, 2012 email ███████████████████

████████████████████ also clearly demonstrates that Sciacca considered the additional

exposure of his Megamix—in both the Video and linked from Monster's website—as well as the

inclusion of him in the Video to be valuable consideration in exchange for the use of his

Megamix in the Video.  (*See* Ex. C to Pohl Aff.)

Although there must be a manifestation of mutual assent to essential terms, courts have

never required absolute certainty in the terms because courts want to avoid the extreme result of

canceling an otherwise valid contract.  *Cobble Hill Nursing Home, Inc. v. Henry & Warren*

*Corp.*, 74 N.Y.2d 475, 483, 548 N.E.2d 203, 206 (N.Y. 1989) ("While there must be a

manifestation of mutual assent to essential terms, parties also should be held to their promises

and courts should not be 'pedantic or meticulous' in interpreting contract expressions. Before

rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be

rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear.

The conclusion that a party's promise should be ignored as meaningless 'is at best a last resort.'")

(internal citations omitted).  The determination of whether terms are essential is "necessarily

flexible, varying for example with the subject of the agreement, its complexity, the purpose for

which the contract was made, the circumstances under which it was made, and the relation of the

parties." *Cobble Hill Nursing Home, Inc.*, 74 N.Y.2d at 482-83, 548 N.E.2d at, 206.  The Second

Circuit has also counseled that, under New York law,  the evaluation of whether terms are

essential requires "realistic flexibility" and the court should consider the broad framework of a

---

[3] (Sciacca Dep. Tr., Ex. E, 119, lines 20-23 (Q: Were you happy that they were using a portion of the remix on the soundtrack?  A: Sure, I want people to hear this stuff I've done."); 121, lines 14-17 (Q: When you made the suggestion [about the Link], did you care one way or the other whether they followed your suggestion? A:  I mean, sure I cared."); Boula Dep. Tr., Ex. F, 44, lines 11-13 (Q: Was having the megamix on Z-Trip's website a way of marketing Z-Trip?  A: Yes.").)

#371366.5

contract in determining whether missing terms are actually essential -- that is, necessary to make the agreement legally binding." *Shann*, 84 F.3d at 79.

In this case, the essential terms are definite.  In exchange for promotion on the Video and Monster's placement of a link, to his website containing the Megamix, on its website, Sciacca provided that Monster could use his Megamix for free—hence the price term was definite.  On May 8, 2012, Phillips sent Sciacca a link to the Video containing the four songs Monster had chosen to use in the Video for Sciacca's approval.  (*See* Ex. A to Pohl Aff.)  Sciacca, watched the Video two or three times, approved it, and that rendered the terms related to the particular excerpts of the Megamix definite.  The duration of use contemplated by the parties was continuous and the manner of use was for the Video to be posted on Monster's YouTube channel.  Moreover, aside from certain specific kinds of contracts, such as employment contracts, duration is not necessarily an essential term.  *See Rule*, 85 F.3d at 1013 (explaining that "in the absence of an express term fixing the duration of a contract, the courts may inquire into the intent of the parties and supply the missing term if a duration may be fairly and reasonably fixed by the surrounding circumstances and the parties' intent," including in the case involving allegations of a promise to pay reasonable royalties from patent assignment).

As numerous courts have held, the contract does not have to be definite as to <u>all</u> of its terms—only its essential terms.  *See Power*, 2006 U.S. Dist. LEXIS 96188, at *51-52 (holding that there was agreement on all material terms even though some contingencies of when the plaintiff would receive severance were left to later agreement or simply ignored); *Cobble Hill Nursing Home, Inc.*, 74 N.Y.2d at 483, 548 N.E.2d at, 206.  This was not a mere "agreement to agree."  *Cf. Candid Productions, Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982) (holding that "'a mere agreement to agree' is unenforceable for indefiniteness where

16

material terms are left open for future resolution").  The essential terms of the contract are sufficiently definite to be enforced.

## II.    Genuine Issues Of Material Fact Exist Concerning Monster's Fraud Claim

Under New York law, the elements of fraud are: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-416 (2d Cir. 2006).

When viewed in the light most favorable to the non-moving party, Monster has presented sufficient evidence that Third-Party Defendant made a material false representation.  When asked by Phillips if he had any music that Monster could use as the soundtrack to the Video, Sciacca told Phillips that Monster could use his Megamix, which was available on his website for free, and Sciacca now asserts that he did not have permission to do this.  (Phillips Aff. ¶ 13.)  When Phillips emailed Sciacca a link to the Video asking Sciacca to approve it, Sciacca responded "Dope," which is a slang term indicating approval, which he also claims he did not have permission to do.  (*See* Ex. A to Pohl Aff.)

Sciacca claims that he knew during the relevant time that he did not have permission to license his Megamix because it contains Beastie Boys music. (Sciacca Aff. ¶ 12.)  It can therefore be inferred that his representations to Phillips were made with the intent to defraud Monster into using his Megamix as the soundtrack for the Video.  In addition, Sciacca claimed that if "anybody ever asks me about music to accompany with a video, I usually refer them to music that is either stuff I own or stuff that—well, basically that's it, only stuff I own." (Sciacca Dep. Tr., Ex. E, 113, lines 2-9.)  Sciacca also claimed that "If somebody comes asking for anything that I worked on that I don't own the copyright to, I'm distinctive in telling them that's

17

#371366.5

great, but I don't own the copyright. You would have to get that cleared." (Sciacca Dep. Tr.,

Ex. E, 113, 10-21.) Sciacca claims that Phillips never asked him if there was any music Monster

could use as a soundtrack for the Video while Phillips contends that he did. This is an issue of

credibility to be determined by the trier of fact. Viewed in the light most favorable to Monster,

Phillips asked Sciacca whether he had any music to license and instead of following his usual

practice of referring Phillips to music he owned, or telling Phillips that he did not own the

copyrights to his Megamix, Sciacca did neither, which is indicative of an intent to defraud

Monster.

Finally, in the same May 9, 2012 email, Sciacca requested that Monster place the Link on

its website.[4] (See Ex. A to Pohl Aff.) Should Monster be found liable to Plaintiffs because

Sciacca did not have permission to license his Megamix, or have third-parties link to his website

where his Megamix was available for download, then his representations to Phillips that it was

permissible for Monster to use his Megamix were false and Monster clearly has suffered

damages.

Third-Party Defendant's contentions that Monster's reliance on Sciacca's representations

was not reasonable is an issue of fact that cannot be determined on summary judgment. *See JP*

---

[4]  Plaintiffs' have sued Monster for copyright infringement in connection with the Link. (Compl. ¶¶ 101-108.)
Monster contends that under well-established principles, it cannot be liable for merely linking to infringing content.
*See, e.g., Myplaycity, Inc. v. Conduit Ltd.*, No. 10 Civ. 1615, 2012 WL 1107648, at *12-13 (S.D.N.Y. Mar. 30,
2012) (holding that merely providing a link to a site containing copyrighted material does not constitute direct
infringement); *see also eAdGear, Inc. v. Liu*, No. 11-Civ. 5398, 2012 WL 2367805, at *12 (N.D. Cal. June 21, 2012)
("hyperlinking alone does not constitute copyright infringement, since it does not involve any actual copying").
However, Monster notes the absurdity that if it were found liable to Plaintiffs for linking to Sciacca's website
containing his allegedly infringing Megamix that Sciacca would not also be liable for breach of contract and/or
fraudulent inducement in requesting Monster to put the Link on its website, or be liable to the Plaintiffs for
copyright infringement. Monster also notes that deposition testimony establishes that many other websites have
linked to Sciacca's Megamix, which can only be downloaded or streamed from Sciacca's website.

*Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 413 (S.D.N.Y. 2004) (stating where "the reasonableness of reliance depends upon factual determinations that are not plain from a review of the complaint and its attachments or that remain in dispute after discovery, the fraud claim should not be summarily dismissed on that ground"); *see also Dandong v. Pinnacle Performance Ltd.*, No. 10-Civ.-8086, 2011 U.S. Dist. LEXIS 126552, at *36 (S.D.N.Y. Oct. 31, 2011) (explaining that whether reliance on alleged misrepresentations are reasonable in the context of a particular case is fact specific).   Under New York law, it is necessary to take a contextual view, looking at the parties' sophistications and the information available, to determine whether reliance was reasonable.   *J.P. Morgan Chase Bank*, 350 F. Supp. 2d at 406.   Monster is not in the music business and whether Phillips' and Monster's reliance on Sciacca's representations concerning his own Megamix, which was his original work, available for free on his website with no restrictions, is an issue of fact to be determined by the trier of fact.

#371366.5

## CONCLUSION

For the foregoing reasons, Third-Party Defendant's motion for summary judgment should be denied in its entirety.

Dated: New York, New York
       August 22, 2013

                                  **KANE KESSLER, P.C.**

                                  By: _Tanya Pohl_____
                                     S. Reid Kahn, Esq. (SRK-1458)
                                     Adam M. Cohen, Esq. (AMC-9918)
                                     Dana M. Susman, Esq. (DMS-5436)
                                     Tanya C. Pohl, Esq. (TP-1983)
                                  1350 Avenue of the Americas
                                  New York, NY 10019
                                  (212) 541-6222
                                  (212) 245-3009 (fax)
                                  rkahn@kanekessler.com
                                  acohen@kanekessler.com
                                  dsusman@kanekessler.com
                                  tpohl@kanekessler.com

                                  *Attorneys for Defendants and Third-Party Plaintiff*
                                  *Monster Beverage Corporation, Monster Energy*
                                  *Company*

TO:    Theodore C. Max, Esq.
         Kenneth B. Anderson, Esq.
         Kevin Puvalowski, Esq.
         **SHEPPARD, MULLIN, RICHTER &**
            **HAMPTON, LLP**
         30 Rockefeller Plaza
         New York, NY 10112
         (212)-653-8700
         (212) 653-8701 (fax)
         tmax@sheppardmullin.com
         kanderson@sheppardmullin.com

         *Attorneys for Plaintiffs Beastie Boys, a New York*
         *Partnership, Michael Diamond, Adam Horovitz and*
         *Dechen Yauch as Executor of the Estate of Adam*
         *Yauch, deceased, each individually and collectively*
         *d/b/a Brooklyn Dust Music*

20

Stewart L. Levy, Esq.
**EISENBERG TANCHUM & LEVY**
675 Third Avenue
New York, NY 10017
(212) 599-0777
slevy@etllaw.com
*Attorneys for Third-Party Defendant Zach Sciacca*

21