UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

BEASTIE BOYS, A NEW YORK PARTNERSHIP,      :
MICHAEL DIAMOND, ADAM HOROVITZ AND         :      Case No. 12 CV 6065(PAE)
DECHEN YAUCH AS EXECUTOR OF THE ESTATE     :
OF ADAM YAUCH, DECEASED, EACH              :
INDIVIDUALLY AND COLLECTIVELY D/B/A        :
BROOKLYN DUST MUSIC,                       :
                                           :
                    Plaintiffs,            :
                                           :
        -against-                          :
                                           :
MONSTER BEVERAGE CORPORATION,              :
MONSTER ENERGY COMPANY,                    :
                                           :
                    Defendants.            :

------------------------------------------------------------------X

MONSTER ENERGY COMPANY,                    :
                                           :
                    Third-Party Plaintiff, :
                                           :
        -against-                          :
                                           :
ZACH SCIACCA a/k/a Z-TRIP,                 :
                                           :
                    Third-Party Defendant. :

------------------------------------------------------------------X

## DEFENDANTS' PRE-TRIAL MEMORANDUM OF LAW

# TABLE OF CONTENTS

**SECTION**                                                                         **PAGE NO.**

TABLE OF AUTHORITIES ..................................................................................(i)

PRELIMINARY STATEMENT ........................................................................... 2

STATEMENT OF FACTS .................................................................................... 3

ARGUMENT....................................................................................................... 6

POINT I:   APPLICABLE LAW FOR THE COPYRIGHT CLAIMS .......................... 6

    A.  Plaintiffs' Lack Standing with Respect to Three of the Copyrights at Issue...... 6

    B.  The Assignment Agreement Does Not Expressly Convey the Right to Sue
        for Copyright Infringement ................................................................. 8

    C.  Plaintiffs Do Not Own a 100% Interest in Any of the Sound Recording or
        the Music Composition Copyright At Issue ....................................... 9

POINT II:   COPYRIGHT DAMAGES ...................................................................... 10

    A.  An Award of Actual Damages Must be Based on the Fair Market Value
        of the Use Actually Made by the Alleged Infringer ......................... 10

    B.  If the Statutory Damages Are Awarded, They Should be Minimal ................ 13

        1.   Monster's Alleged Infringement Was Not Willful.............................. 13

        2.   Plaintiffs Would Only Be Entitled to Single Award of Statutory
            Damages Per Song............................................................................ 15

    C.  If Damages Are Awarded to Plaintiffs, The Court Should Exercise Its
        Discretion and Decline to Award Attorneys' Fees.......................... 16

POINT III:   THE LANHAM ACT CLAIM IS IMPROPER........................................ 18

    A.  Plaintiffs Lack Sufficient Evidence to Support Their Lanham Act Claim....... 18

    B.  Nominative Fair Use................................................................................. 21

    C.  Recovery Under Both The Copyright Act and the Lanham Act
        Would Constitute Unfair Double Recovery ...................................... 22

CONCLUSION ..................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABKCO Music, Inc. v. Harrisongs Music, Ltd,*
  944 F.2d 971 (2d Cir. 1991) ...................................................................................9

*Allen v. National Video, Inc.,*
  610 F. Supp. 612 (S.D.N.Y. 1985) ........................................................................18

*Andreas v. Volkswagen of Am., Inc.,*
  172 F. Supp. 2d 1168 (N.D. Iowa 2001) ...............................................................11

*ASA Music Prods. v. Thomsun Elecs.,*
  49 U.S.P.Q.2d 1545 (S.D.N.Y. 1998) ...................................................................15

*Baker v. Urban Outfitters, Inc.,*
  254 F. Supp. 2d 346 (S.D.N.Y. 2003) ...................................................................11

*Barrera v. Brooklyn Music Ltd.,* 346 F. Supp. 2d 400, 409-10 (S.D.N.Y 2004) .........................11

*Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.,*
  2006 U.S. Dist. LEXIS 53879 (D. Neb. Jan. 26, 2006 ).....................................6, 7

*Boz Scaggs Music v. KND Corp.,*
  491 F. Supp. 908 (D. Conn. 1980).........................................................................14

*Bryant v. Media Right Prods.,*
  603 F.3d 135 (2d Cir. 2010) ...........................................................................passim

*Bryant v. Media Right Productions, Inc.,*
  2009 WL 1059777 (S.D.N.Y. Apr. 15, 2009) ..........................................13, 14, 17

*Chambers v. Time Warner LLC,*
  282 F.3d 147 (2d Cir. 2002) .................................................................................21

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
  982 F.2d 693 (2d Cir. 1992) .................................................................................23

*Consumers Union of United States, Inc. v. General Signal Corp.,*
  724 F.2d 1044 (2d Cir. 1983) ...............................................................................18

*Country Road Music, Inc. v. MP3.com, Inc.,*
  279 F. Supp. 2d 325 (S.D.N.Y. 2003) .............................................................11, 13

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,*
   604 F.2d 200 (2d Cir. 1979) ................................................................................19

*Delacroix v. Lublin Graphics, Inc.,*
   993 F. Supp. 74 (D. Conn. 1997).........................................................................7

*Edward B. Marks Music Corp. v. Jerry Vogel Music Co.,*
   140 F.2d 268 (2nd Cir. 1944) .............................................................................9

*Entral Group Int'l, LLC v. YHLC Vision Corp.,*
   2007 U.S. Dist. LEXIS 90684 (E.D.N.Y. Dec. 7, 2007)................................16, 17

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) ............................................................................................6

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994) ..........................................................................................16

*Ghirmay v. Tsegia*
   2010 WL 148276 (E.D. La. Jan. 11, 2010) ........................................................12

*Hickson Corp. v. Northern Crossarm Co.,*
   357 F.3d 1256 (11th Cir. 2004) .........................................................................20

*Intimo , Inc. v. Briefly Stated, Inc.,*
   948 F. Supp. 315 (S.D.N.Y. 1996) ......................................................................8

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
   01-CV-750 (WDW), slip op. (E.D.N.Y. Jan. 24, 2003).......................................23

*James Burroughs Ltd. v. Sign of the Beefeater, Inc.,*
   540 F.2d 266 (7th Cir. 1976) .............................................................................19

*L.A. Printex Indus., Inc. v. Pretty Girl of Cal., Inc.,*
   2013 U.S. App. LEXIS 23712 (2d Cir. Nov. 26, 2013) .......................................16

*Lanard Toys, Ltd. v. Novelty, Inc.,*
   511 F. Supp. 2d 1020 (C.D. Cal. 2007) ...............................................................9

*Lingo Corp. v. Topix, Inc.,*
   2003 U.S. Dist. LEXIS 1437 (S.D.N.Y. Jan. 31, 2003) ........................................8

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ............................................................................................6

*Manno v. Tenn. Prod. Ctr. , Inc.,*
   2009 U.S. Dist. LEXIS 60994 (S.D.N.Y. 2009).....................................................9

ii

*Microsoft Corp. v. Computer Care Ctr., Inc.,*
2008 U.S. Dist. LEXIS 112080 (E.D.N.Y. Apr. 8, 2008) ...................................................22

*Nat'l Football League v. Primetime 24 Joint Venture,*
131 F. Supp. 2d 458 (S.D.N.Y. 2001) ...............................................................................15

*New Kids On The Block v. News America Publishing, Inc.,*
971 F.2d 302 (9th Cir. 1992) ......................................................................................21, 22

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
269 F.3d 114 (2d Cir. 2001) ...............................................................................................19

*On Davis v. Gap, Inc.,*
246 F.3d 152 (2d Cir. 2001) ...............................................................................10, 12, 13

*Oracle USA, Inc. v. SAP AG,*
WL 3862074 (N.D. Cal. Sept. 1, 2011) ...............................................................10, 11, 12

*Pelton v. Rexall Sundown, Inc.,*
2001 U.S. Dist. LEXIS 3825 (S.D.N.Y. Apr. 2, 2001) ......................................................19

*Silvers v. Sony Pictures Entm't, Inc.,*
402 F.3d 881 (9th Cir. 2005) ................................................................................................6

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,*
118 F.3d 955 (2d Cir. 1997) ...............................................................................................23

*Storball v. Twentieth Century Fox Film Corp.,*
1995 U.S. App. LEXIS 14896 (9th Cir. Cal. June 15, 1995) ..............................................18

*The Robert Stigwood Group Ltd. v. O'Reilly,*
530 F.2d 1096 (2d Cir. 1976) .........................................................................................15, 16

*Yurman Studio, Inc. v. Castaneda,*
591 F. Supp. 2d 471 (S.D.N.Y. 2008) ................................................................................19

## STATUTES

17 U.S.C. § 505 ......................................................................................................................16

17 U.S.C. § 410(c)-(d) .............................................................................................................6

17 U.S.C. § 411(a) ...................................................................................................................6

17 U.S.C. § 501(b) ...................................................................................................................7

17 U.S.C. § 504(a) .................................................................................................................10

17 U.S.C. § 504 (b) ...................................................................................................... 2, 10

17 U.S.C. § 504(c) .......................................................................................... 2, 10, 13, 15

15 U.S.C. § 1125 ................................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(h) ........................................................................................................... 7

*Nimmer on Copyright* 12.02[C] at 12-66.25-12-66.26 (2012) ........................................... 8

## PRELIMINARY STATEMENT

This is essentially an action brought by plaintiffs the Beastie Boys, Michael Diamond, Adam Horovitz, Dechen Yauch, as executor for the estate of Adam Yauch, and Brooklyn Dust Music (collectively, "Plaintiffs") for copyright infringement arising from defendants Monster Energy Company and Monster Beverage Corporation (collectively, "Monster" or "Defendants") alleged use of excerpts from four songs by the Beastie Boys (collectively with plaintiffs Michael Diamond, Adam Horovitz, Dechen Yauch as executor of the estate of Adam Yauch, and Brooklyn Dust Music, "Plaintiffs") on a recap video of a snowboarding event. At trial, the only issues to be decided regarding Plaintiffs' copyright claims are whether Plaintiffs actually had an ownership interest in every sound recording and musical composition for which they assert a claim of copyright infringement at the time they filed this action on August 8, 2012 and, should Plaintiffs establish liability, the amount of damages they would be entitled to under the Copyright Act, 15 U.S.C. § 504.

Under § 504 (b), Plaintiffs may pursue a theory of actual damages based on the fair market value of a license fee assuming a willing buyer and a willing seller. Under well-settled Second Circuit precedent, the calculation of the fair market value must take into account the use actually made by Monster, which consisted of using excerpts from the four songs in a recap Video that was only available on Monster's YouTube channel for five weeks and was viewed by fewer than 14,000 people.

Alternatively, under § 504(c), if Plaintiffs elect statutory damages, they are only entitled to an award based on the number of songs (4) infringed—not the number of copyrights allegedly infringed (8). Should Plaintiffs decided to pursue heightened damages, they will have the burden of proving by a preponderance of the evidence that Monster acted willfully. As described below,

2

given that Monster believed that it had permission to use the remix containing the excerpts of the four songs on the recap video and immediately removed the video upon receiving notice from Plaintiffs, Plaintiffs will be unable to demonstrate that Monster acted willfully. Accordingly, this Court should also exercise its discretion and decline to award Plaintiffs' attorneys' fees.

Furthermore, as described more fully below, based on an approximately one second mention of the "Beastie Boys" in the credits of the recap video and a factually correct statement of where a licensed remix of Beastie Boys' songs could be found, Plaintiffs purport to assert a Lanham Act claim against Monster. Plaintiffs' Lanham Act claim should be dismissed at trial because it is duplicative of its copyright claims, Plaintiffs have absolutely no evidence of actual or likely confusion, Defendants' reference to the Beastie Boys in the video constitutes a nominal fair use, and Plaintiffs cannot prove any damages based on this claim.

## STATEMENT OF FACTS

Monster is a publicly-held company that manufactures and sells energy drinks under the "Monster" brand (Dkt. 41 at ¶ 2). To promote the Monster brand, Monster sponsors a number of action sporting events (Dkt. 41 at ¶¶ 3, 5). In Canada, Nelson Phillips ("Phillips"), Monster's Director of Marketing for its Canadian business unit, is responsible for organizing such events (Dkt. 41 at ¶¶ 1, 4). Beginning in February 2012, Phillips began organizing an annual snowboarding event in Lake Louise, Canada called "Ruckus in the Rockies," which took place on May 5, 2012 (the "Event") (Dkt. 41 at ¶ 6). In addition to his other responsibilities, Phillips also booked the DJs for the Event and for the Event's after-party (the "After-Party"), including Zach Sciacca ("Sciacca") a professional DJ who performs under the name Z-Trip (Dkt. 36-1 at ¶ 2). Phillips also intended to have a recap video of the Event and the After-Party, which would

3

feature highlights of the snowboarders and the awards ceremony at the Event, as well as the DJs' performances at the After Party (the "Video") (Dkt. 41 at ¶ 8).

During the After Party on May 5, 2012, Phillips met with Sciacca, informed him that he wanted to create a recap video of the Event and asked him if he had any music that he could use as a soundtrack to the Video (Dkt. 41 at ¶ 11).  Z-Trip responded that Monster could use a "megamix" that he had made of several Beastie Boys' songs, which was available for free to download from his website (the "Megamix") (Dkt. 41 at ¶ 11).  One of Sciacca's signature abilities is to take existing recordings and combine them with other recordings and sounds to create a new product—a remix (Dkt. ¶ 36-1 at ¶ 3).  Sciacca's Megamix is a 23.5 minute remix containing approximately twenty Beastie Boys' songs and is an original work created by Sciacca, made with the Beastie Boys' knowledge and consent (Dkt. 36-1 at ¶¶ 11-12).  During a subsequent conversation on May 7, 2012 about Monster's use of the Megamix on the Video, Phillips told Sciacca that he would send him the Video after the first edit was complete and that Monster would not publish the Video without Sciacca's approval (Dkt. 41 at ¶ 12).

Believing that Sciacca had provided him with the necessary permission to use his Megamix as a soundtrack for the Video, Phillips directed that excerpts from the Megamix be used as a soundtrack for the Video (Dkt. 41 at ¶ 14).  The Video contains excerpts from four Beastie Boys songs, "Sabotage" (13 seconds), "Looking Down the Barrel of a Gun" (51 seconds), "Make Some Noise" (86 seconds), and " So What'cha Want" (53 seconds) (Dkt. 41 at ¶ 11).[1]  Believing that Monster was required to give credit to Sciacca for use of his Megamix on the soundtrack for the Video, Phillips directed that the words "All access Beastie Boys Mix

---

[1] In their Memorandum of Law in Support of Third Party Defendant Zach Sciacca's Motion for Summary Judgment, Plaintiffs assert for the first time in a footnote, a year after they filed their Amended Complaint, that the Video allegedly contained a fifth Beastie Boys' song, "Pass the Mic."  *See* Dkt. 39 at p. 1, n.1.  This song is not at issue in this litigation.

courtesy of Z-trip Download the link for free at ztrip.bandcamp.com" be included in the credits for the Video, which flashed for approximately one second at the end of the four minute Video. When the Video was complete on May 8, 2012, Phillips emailed Sciacca asking him to review the Video and let him know if he approved it (Dkt. 41 at 18).  On May 9, 2012, Phillips believed that Sciacca approved the use of his Megamix in the Video by responding "Dope," which is a slang term indicating approval (Dkt. 41 at ¶ 19).  In addition, Sciacca asked that Monster include a link on its website to the Megamix with the words "Download the mix for free at http://ztrip.bandcamp.com (Dkt. 41 at ¶ 19).

Based on the foregoing, on May 9, 2012, Monster placed the Video on its YouTube channel (Dkt. 41 at ¶ 21).  During trial, Phillips and LeRoy Nichols, Monster's Interactive Marketing Director, are expected to testify that although third parties may have provided a link to the Video, it was only available for viewing on Monster's YouTube channel and it was viewed fewer than 14,000 times.  On June 13, 2012, Monster received a letter from Plaintiffs' counsel alleging that Monster did not have permission to use Sciacca's Megamix on the Video (Dkt. 41 at ¶ 21).  Thereupon, Monster immediately removed the Video from its YoutTube channel and acted in good faith to contact third-parties to ask them to remove any links or mention of the Video (Dkt. 41 at ¶ 22).  As a result, the Video was available on the Internet for a mere five weeks.  Subsequently, Phillips directed that the Video be re-edited to eliminate Sciacca's Megamix and any reference to Plaintiffs, and music by a different band was replaced as the soundtrack (Dkt. ¶ 23).

Despite Monster's good faith efforts to remove the Video and cooperate immediately upon learning of Plaintiffs' claims of infringement, on August 8, 2012, Plaintiff filed this action alleging that they are the co-owners of the eight sound recording and music composition

copyrights for the four songs at issue in the litigation and that Sciacca did not have permission to license his Megamix for use as a soundtrack to the Video. In addition, Plaintiffs also assert a claim under the Lanham Act, 15 U.S.C. § 1125, based on Monster's factual statement, which appeared for approximately one second at the end of the four minute Video, that the "[a]ll access Beastie Boys' Mix" was courtesy of Sciacca and could be downloaded from Sciacca's website.[2] Although Plaintiffs allege that these references somehow constituted a trademark use and a false endorsement, Plaintiffs have presented absolutely no evidence to support this claim and Defendants expect that it will be dismissed at trial.

## ARGUMENT

### I.    APPLICABLE LAW FOR THE COPYRIGHT CLAIMS

To establish a claim for copyright infringement, a plaintiff bears the burden of proving both (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

### A.    Plaintiffs' Lack Standing With Respect to Three of the Copyrights at Issue

A party invoking federal jurisdiction must show that it has met the requirements of both standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). Possession of a valid copyright registration is a jurisdictional prerequisite to an infringement action. *See* 17 U.S.C. §§ 410(c)-(d), 411(a). If a claimant does not own a copyright, the claimant does not have standing to sue for infringement of the exclusive rights belonging to the owner. *Silvers v. Sony Pictures Entm't, Inc.,* 402 F.3d 881, 889 (9th Cir. 2005) ("only the owner of an exclusive right under the copyright is entitled to sue for infringement"). "The existence of federal jurisdiction ordinarily depends on the facts as they exist <u>when the complaint is filed</u>." *Benchmark Homes, Inc. v.*

---

[22] Although there has been testimony, including extensive testimony by Plaintiffs' expert Lisa Thomas, as to the inclusion of "RIP MCA" at the end of the Video, Plaintiffs do not have a registered trademark in "MCA."

*Legacy Home Builders, L.L.C.*, 2006 U.S. Dist. LEXIS 53879, at *17 (D. Neb. Jan. 26, 2006 )
(emphasis added, quoting *Lujan,* 504 U.S. at 569, n.4).  If the Plaintiffs lack standing at the
beginning of the lawsuit, the Plaintiffs cannot rightfully invoke the jurisdiction of this court. *See*
*Delacroix v. Lublin Graphics, Inc.,* 993 F. Supp. 74, 83 (D. Conn. 1997)." Moreover, as a
jurisdictional issue, standing can be raised at any time during the litigation.  *Benchmark Homes,*
*Inc. supra,* 2006 U.S. Dist. LEXIS 53879, at *6 (internal citation omitted); Fed. R. Civ. P. 12(h)
(3*)*.

In *Benchmark*, the plaintiff commenced the action alleging infringement of certain
copyrights to architectural plans. *Benchmark Homes, Inc.* 2006 LEXIS 53879, at 1.  However, a
third-party entity retained all of the copyright rights in the architectural plans at issue at the time
this cause of action was filed (merely assigning Benchmark the right to sue). *Id.* at 9. Since the
Plaintiff did not own any substantive rights in the copyright that would allow it to file a
copyright infringement claim under § 501(b), it lacked standing when the action was filed, and
therefore lacked jurisdiction to sue. *Id.* at 11, 15. This defect could not be cured by an
amendment to the assignment given the lack of jurisdiction. *Id.* at 17.

Similar to the Plaintiff in Benchmark, Plaintiffs in this action lack the standing to bring a
copyright infringement action for three (3) out of the four (4) sound recording copyrights at issue
in this litigation, namely: (1) "SR0000197458" (the sound recording for  the performance "So
Whatcha Want"), (2) "SR0000213461 (the sound recording for  the performance "Sabotage"),
and (3) "SR0000154345" (the sound recording for  the performance "Looking Down the Barrel
of a Gun").[3]  Specifically, Plaintiffs did not own the copyrights at the time this lawsuit was filed.

---

[3] As discussed, *supra* note 1, Plaintiffs alleged a year after filing their Complaint that a fifth Beastie Boys' song,
"Pass the Mic" was allegedly included in the Video.  Although the allegations related to this song cannot be

The assignment which granted Plaintiffs interest in these copyrights was executed and effective on September 1, 2012, nearly one month _after_ the Plaintiffs filed this action.  At all times prior to the execution of the assignment, the copyrights at issue were owned exclusively by Capital Records, who is not a named party to the action, despite Monsters' identifying Capitol Records as an indispensable party.

Consequently, Plaintiffs did not have the requisite standing when the action was filed and this Court lacks subject matter jurisdiction with respect to these three copyrights.  As a result, the three sound recording copyrights identified herein should be eliminated from consideration at trial, including in any calculation of damages.

### B.    The Assignment Agreement Does Not Expressly Convey the Right to Sue for Copyright Infringement

Plaintiffs also lack standing to sue with respect to the three sound recording copyrights because the assignment agreement from Capitol Records to Plaintiffs, dated nearly a month after this lawsuit was filed, does not expressly convey the right to sue for past infringements. Although a copyright owner may convey his interest in prosecuting accrued causes of action for infringement, "[t]he general rule is that for infringements that occur prior to the assignment, it is the assignor and not the assignee who has standing to sue for that infringement." _Lingo Corp. v. Topix, Inc._, 2003 U.S. Dist. LEXIS 1437, at *8 (S.D.N.Y. Jan. 31, 2003).  "An assignment may confer the right to a claim for prior infringement, but only if that right is explicitly transferred." _Intimo , Inc. v. Briefly Stated, Inc._, 948 F. Supp. 315, 317 (S.D.N.Y. 1996) (emphasis added). "[A] grant of copyright—even if it purports to convey 'all right, title and interest'—is 'generally construed not to assign existing causes of action.'" _Nimmer on Copyright_ 12.02[C] at 12-66.25-

---

considered in this action, even if it were,  Plaintiffs would also lack standing with respect to the sound recording copyright for "Pass the Mic" because they did not own the copyright at the time the lawsuit was filed.

12-66.26 (2012) (emphasis added); *see ABKCO Music, Inc. v. Harrisongs Music, Ltd*, 944 F.2d 971, 980 (2d Cir. 1991) (accrued causes of action must be included expressly in the assignment); *Lanard Toys, Ltd. v. Novelty, Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007) (quoting *Nimmer* and holding that assignment at issue purporting to convey "all right, title and interest" did not expressly convey the right to sue for existing claims of infringement).  The assignment agreement states only that it conveys "the entire right, title, and interest," which is insufficient to convey the right to sue for existing causes of action.  Consequently, the assignment does not expressly transfer the right to sue for accrued causes of action, and Plaintiffs do not have standing with respect to these copyrights to bring suit.

### C.   Plaintiffs Do Not Own A 100% Interest in Any of the Sound Recording Or the Music Composition Copyrights At Issue

Even assuming the assignment is valid, Plaintiffs' ownership interest in both the music composition and sound recording rights for all four songs at issue is limited to fifty percent (50%).  Neither the co-owner of the music composition rights nor the co-owner of the sound recording rights is a party to this litigation.  As such, in the event that Defendant is found liable for infringement in this suit, Plaintiff cannot recover all of the damages.  Plaintiff, as a mere co-owner, must be limited in its recovery to its proper share.  *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268 (2nd Cir. 1944) ("The judgment must be modified to provide that the recovery shall be confined to the plaintiff's own part; that is to say, to its own actual damages, to its proper share of any statutory damages, and to its proper share of the profits.").  As the owner of 50% of the interest in the rights at issue here, Plaintiff's proper share of any damage award must be limited to fifty percent (50%).  *See Manno v. Tenn. Prod. Ctr.*,

9

*Inc.*, 2009 U.S. Dist. LEXIS 60994 (S.D.N.Y. 2009) (finding that where plaintiff is owner of one-half interest, its proper share of statutory damages is 50%).

## II.    COPYRIGHT DAMAGES

Under the Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by [§ 504(b)]; or (2) statutory damages, as provided by subsection [§ 504(c)]." 17 U.S.C. § 504(a).  In appropriate circumstances, actual damages may be taken to be a reasonable license fee, that is, the fair market value of a license authorizing the defendant's use of the copyrighted work. *See On Davis v. Gap, Inc.,* 246 F.3d 152, 164-168 (2d Cir. 2001). This measure of damages contemplates "a negotiation between a willing buyer and a willing seller." *Id.* at 172.  Alternatively, Plaintiffs may elect statutory damages.

### A.    An Award of Actual Damages Must Be Based on the Fair Market Value of the Use Actually Made by the Alleged Infringer

In the event, Plaintiffs pursue a theory of actual damages based on the fair market value of a license fee for the four songs allegedly used in the Video, the Second Circuit has held that a court can award damages to plaintiffs consisting of the lost license fee as long as the fee is not based on "undue speculation*.* " *On Davis*, 246 F.3d at 166 (emphasis added).

> [A]warding the copyright owner the lost license fee [under § 504(b)] can risk abuse.  Once the defendant has infringed, the owner may claim unreasonable amounts as the license fee. . .. The law therefore exacts that the amount of damages may not be based on 'undue speculation.' *(internal citation omitted).*

"[The] question is not what the owner would have charged, but rather what is the fair market value." *Id.* at 166, n. 5.  Likewise, it is completely irrelevant whether Plaintiffs would actually have authorized the license to Monster under the facts of this case. *See Oracle USA,*

*Inc. v. SAP AG*, C 07-1658 PJH, 2011 WL 3862074 (N.D. Cal. Sept. 1, 2011) (rejecting defendant's argument that because software developers were direct competitors they would never have entered into a license agreement and, thus, according to the defendant, a hypothetical license fee could not be used as a basis for awarding damages); *Andreas v. Volkswagen of Am., Inc.,* 172 F. Supp. 2d 1168, 1171 (N.D. Iowa 2001) (awarding actual damages based on fair market value of hypothetical license fee, even though plaintiff testified that he had never licensed his work for commercial profit because he was "philosophically opposed" to it).

As indicated, to determine Plaintiffs' actual damages, the Court must consider the fair market value of a hypothetical license between Plaintiffs and Monster for the alleged use of the four songs in the Video, which was only viewable on Monster's YouTube channel for five weeks and was viewed by less than 14,000 people.  In determining the amount of the hypothetical license fee to which plaintiffs would be entitled, courts consider objective evidence, such as, licenses previously negotiated for comparable use of the infringed work, and benchmark licenses for comparable uses of comparable works. *See Baker v. Urban Outfitters, Inc.,* 254 F. Supp. 2d 346, 359 (S.D.N.Y. 2003); *Oracle USA, Inc. v. SAP AG,* C 07-1658 PJH, 2011 WL 3862074 *7 (N.D. Cal. Sept. 1, 2011).  However, to be considered "reliable", any use of benchmark license comparisons must be similar to the use of the infringed work in, *inter-alia,* "terms of use," "exclusivity," "breadth of the license," and "nature of the business."  *Country Road Music, Inc. v. MP3.com, Inc.,* 279 F. Supp. 2d 325, 331 (S.D.N.Y. 2003) (rejecting expert testimony for calculating actual damages based on a benchmark license for a use different from that made by the infringer).

Furthermore, "the calculation of a reasonable license fee may be based on such factors as, the type of use, size of use, and circulation." *Barrera v. Brooklyn Music Ltd.*, 346 F. Supp. 2d

11

400, 409-10 (S.D.N.Y 2004) (in calculating the hypothetical license of Defendant's use of Plaintiff's photograph on its CD cover, the court considered the type of media, the size of the image of the photograph in relation to the other materials, the geographic scope of the market, and whether the use of the photograph contains a "credit line" identifying the author of the photograph); *see also, Ghirmay v. Tsegia*, CIVA 07-1826, 2010 WL 148276, at *1 (E.D. La. Jan. 11, 2010) (the court determined that Defendant's use of five songs a total of ten times throughout its limited-release motion picture was not comparable to Plaintiff's past licensing to I-Max theatres, which would naturally command a higher fee than limited release DVD and as a result awarded the Plaintiff $1,500 per song instead of the $3,000 Plaintiff sought).

Importantly, the damage award for the lost license fee should be based on the use actually made by the alleged infringer rather than the highest use that the Plaintiff is capable of receiving for the works. By way of example, the Second Circuit has noted:

> Thus, assuming the defendant made infringing use of a Mickey Mouse image for a single performance of a school play before schoolchildren, teachers and parents with tickets at $3, the fair market value would not be the same as the fee customarily charged by the owner to license the use of this image in a commercial production.

*On Davis*, 246 F.3d at 166 n. 5; *Oracle USA, Inc.*, 2011 WL 3862074, at *8 ("The amount of the hypothetical license must be based on the actual use the defendant made of the work, not simply the highest use for which the plaintiff might license.").

Any calculation of the Beastie Boys' lost license fee must be based on the use actually made by Monster, which was allegedly for the use of four songs in a promotional Video that was only available on Monster' You Tube channel for five weeks and received less than 14,000 views total. As more fully set out in Defendants' *Daubert* motion, the damages calculated by Plaintiffs' expert Lisa Thomas does not adequately take into account the use <u>actually made</u> by

Monster of Plaintiffs songs and hence does not comply with Second Circuit precedent. *On Davis*, 246 F.3d at 166 n. 5.  Moreover, license fees that Plaintiffs allegedly received for uses which are not comparable to that made by Monster, such as license fees for movie trailers, are improper benchmark license fees and should not be considered in determining the value of Plaintiffs' lost license fee for the use allegedly made by Monster. *Id.*; *Country Road Music, Inc.*, 279 F. Supp. 2d at 331.

**B.      If Statutory Damages Are Awarded, They Should Be Minimal**

As an alternative to actual damages, Plaintiffs may elect to pursue statutory damages under 17 U.S.C. § 504(c) at any time before final judgment is rendered.  The range of statutory damages mandated by 17 U.S.C. § 504(c)(1) for non-willful infringement is between $750 to $30,000 per infringed work.[4]  Courts in the Second Circuit have held that the alleged infringer's state of mind is a "key" factor in determining the appropriate statutory damage award. *See Bryant v. Media Right Productions, Inc.*, No. 07 Civ. 3050, 2009 WL 1059777, at *8 (S.D.N.Y. Apr. 15, 2009), *aff'd* 603 F.3d 135 (2d Cir. 2010).[5]  Consequently, Monster's state of mind is the most important factor to assess statutory damages.

**1.      Monster's Alleged Infringement Was Not Willful**

If Plaintiffs elect statutory damages, they have the burden of proof to establish heightened damages, which they will not be able to do because Monster's alleged infringement of Plaintiffs' works was not willful.  17 U.S.C. § 504(c)(2).  "A copyright holder seeking to prove that a

---

[4]  Section 504(c)(2) allows the court to further reduce statutory damages for an innocent infringement from $750 to $200 per work infringed.

[5]  The factors considered by courts in the Second Circuit are: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties. *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010)

copier's infringement was willful must show that the infringer had knowledge that its conduct represented infringement or recklessly disregarded the possibility." *Bryant*, 603 F.3d at 143 (internal quotations and alterations omitted). Plaintiffs will be unable to demonstrate this.

First, Plaintiffs have not contested that Sciacca was authorized to play Beastie Boys' music at the Event. Even if this turned out to be legally insufficient, at the time, Monster had a good faith basis to believe that Sciacca's authorization to play his Megamix, which contained Plaintiffs' works, extended to approving the use of his Megamix as the soundtrack for the Video of the Event. In the Opinion and Order granting Sciacca's Motion for Summary Judgment, this Court specifically stated that Sciacca's interactions with Phillips may be relevant to the issue of willfulness (Dk. 51, at p. 23 n.10). As described above, on May 5, 2012, Phillips asked Sciacca if he had any music that Monster could use as a soundtrack to the Video and Sciacca responded that Monster could use the Megamix, which was available for free download on his website (Dkt. 41 at ¶ 11). On May 7, 2012, in a subsequent conversation with Sciacca, Phillips told him that he would send him the Video for his approval (Dkt. 41 at ¶ 12). On May 8, 2012, Phillips emailed Sciacca a link to the Video and asked him to approve," to which Sciacca responded "Dope" and requested that Monster include a link on its website to the Megamix (Dkt. 41 at ¶¶ 18-19). Only then on May 9, 2012 did Monster place the Video on its YouTube channel. Monster maintains that these interactions demonstrate that it relied on Sciacca's representations in good faith and the evidence does not support a finding of willfulness.

Because Plaintiffs will be unable to prove that Monster acted willfully, they will not be entitled to enhanced damages and any award of statutory damages should be based on the lower end of the range. *See e.g. Bryant*, 2009 WL 1059777, at *8 (awarding $1,000 per work infringed for a total statutory damages award of $2,000 where conduct was not willful); *Boz Scaggs Music*

*v. KND Corp.*, 491 F. Supp. 908, 915 (D. Conn. 1980) (awarding statutory damages of $1,000 per infringement even though defendants had previously been sued for copyright infringement and were "fully aware" of the need to obtain permission from the copyright owner); *see also Nat'l Football League v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 479 (S.D.N.Y. 2001) (awarding statutory damages of $2,500 per instance of non-willful infringement).

### 2. Plaintiffs Would Only Be Entitled to a Single Award of Statutory Damages Per Song

Although Plaintiffs allege that Monster infringed both the sound recording and the music composition copyrights for each of the four songs in the Video, for a potential eight statutory damage awards, the copyright statute is clear that damages are to be awarded based on each <u>work</u> infringed. *See* 17 U.S.C. §504(c); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 140-141 (2d Cir. 2010) (holding that infringement of an album results in only one statutory damage award because "[t]he fact that each song may have received a separate copyright is irrelevant").[6] Where the same plaintiff owns both the musical composition copyright and the sound recording copyright, awarding damages on a per work—or per song—basis is appropriate. *See The Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096, 1103-04 (2d Cir. 1976) (refusing to award statutory damages for each overlapping copyright of the libretto, score, and dramatic continuity because realistically only one work was infringed); *ASA Music Prods. v. Thomsun Elecs.*, 49 U.S.P.Q.2d 1545, 1552 (S.D.N.Y. 1998) (permitting only one award of statutory damages for three overlapping copyrights because the "song, arrangement, and performance together

---

[6] Even if Plaintiffs' song "Pass the Mic," was included on the Video, as Plaintiffs' alleged for the first time a year after they filed their Complaint, and included in this lawsuit, it is irrelevant for statutory damages, which are assessed on a per work basis. "Pass the Mic" is included on Plaintiffs' album <u>Check Your Head</u>, which is the same album that includes "So What'Cha Want?" one of the songs that is at issue in this action. Under Second Circuit precedent, because the two songs, even if they have separate copyrights, are on the same album, they are part of the same <u>work</u>. *Bryant*, 603 F.3d at 140-141. Consequently, even if this song were included, Plaintiffs would still only be entitled to a statutory damage award for four (4) works.

comprise a work that is conceptually indivisible"). In this case, the copyrights covering the musical composition and sound recording of each song are overlapping and only four works were allegedly infringed. *See The Robert Stigwood Group Ltd.*, 530 F.2d at 1104. Plaintiffs, therefore, should only be allowed to recover at most, four awards of statutory damages—one award per song allegedly infringed on the Video.

### C.     If Damages Are Awarded to Plaintiffs, the Court Should Exercise Its Discretion and Decline to Award Attorneys' Fees

Under 17 U.S.C. § 505, the Court has the discretion to award "a reasonable attorney's fee to the prevailing party as part of the costs." "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994). When exercising this discretion, the Court "may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable and (4) compensation and deterrence." *Bryant*, 603 F.3d at 144 (internal citation omitted); *accord L.A. Printex Indus., Inc. v. Pretty Girl of Cal., Inc.*, 2013 U.S. App. LEXIS 23712, at *2 (2d Cir. Nov. 26, 2013) (affirming district court's decision not to award attorneys' fees and holding that the judgment rendered by the jury in favor of the plaintiff "amply serves the compensation and deterrence goals of the Copyright Goal").

The Second Circuit has instructed courts to give "substantial weight" to the third factor "whether the claims or defenses were objectively unreasonable." *L.A. Printex Indus., Inc.*, 2013 U.S. App. LEXIS 23712, at *2 (citing *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001); *see generally, Entral Group Int'l, LLC v. YHLC Vision Corp.*, 2007 U.S. Dist. LEXIS 90684, at *10 (E.D.N.Y. Dec. 7, 2007) (declining to award attorney's fees or costs

where defendant's infringement "was not malicious" and defendant acted in good faith to "negotiate" in the face of a plaintiff's "unreasonably high" demands).

In *Bryant*, the Second Circuit affirmed the Southern District of New York's decision not to award attorneys' fees where it found that two of the defendants' conduct was "not willful" and one defendant's conduct was "innocent." In arriving at this decision, the court reasoned that defendants prevailed on several important issues at trial and were reasonable in trying to resolve the case before trial. 603 F.3d at 144. In particular, the Second Circuit noted that the defendants had made a $3,000 offer of judgment, which defendant rejected in favor of continuing to demand over $1 million in damages, even though the evidence established that the defendants had received less than $600 in revenue from the infringing sales. *Id.*

Here, defendants asserted non-frivolous, objectively reasonable defenses in a manner consistent with good faith litigation. As set forth herein and in Defendants' *Daubert* motion filed concurrently hereto, Defendants expect to prevail on a number of important issues at trial. As demonstrated by Plaintiffs experts' untenable damage determination of $2.25 million and unsound calculation, Plaintiffs have persisted in demanding a damage amount that is unsupported by Second Circuit precedent and the fair market value of the reasonable license fee for the use actually made by Monster. *See* 603 F.3d at 144; *Entral Group Int'l, LLC*, 2007 U.S. Dist. LEXIS 90684, at * 9-10 (deciding not to award attorneys' fees, in part, because plaintiffs' demand for the license fee was unreasonably high). Finally, Monster's non-willful conduct in using the four songs in the Video, its immediate good-faith efforts to remove the Video as soon as it received Plaintiffs' cease and desist letter, and its use of a non-infringing alternative soundtrack for the Video all weigh against awarding attorneys' fees to Plaintiff. *See Entral Group Int'l, LLC*, 2007 U.S. Dist. LEXIS 90684, at * 9-10 (attorneys' fees not warranted where

17

defendant's conduct was not willful, he negotiated in good faith with plaintiff to obtain a license after receiving plaintiff's cease and desist letter and sought non-infringing alternatives).

### III.   THE LANHAM ACT CLAIM IS IMPROPER

#### A.   Plaintiffs Lack Sufficient Evidence to Support Their Lanham Act Claim

In a blatant attempt to recover double damages (addressed in Section III (b) below), Plaintiffs have attempted to shoehorn their copyright law claims into a Lanham Act claim by asserting that Defendants' Video operated as an "Implied Endorsement." However, Plaintiffs have failed to put forth sufficient evidence in support of this spurious "implied endorsement" claim and it therefore cannot succeed.

Specifically, Plaintiffs cannot establish that Defendants' singular reference to the location of the third party website containing the "Beastie Boys Megamix" at the end of its four- minute Video, confused consumers into believing that Plaintiffs endorsed or produced Monster energy products.

Consumer confusion in false endorsement cases involves two separate and distinct elements: 1) identity and 2) endorsement/ sponsorship. *Storball v. Twentieth Century Fox Film Corp.*, 1995 U.S. App. LEXIS 14896, 2 (9th Cir. Cal. June 15, 1995). The first is whether consumers are *likely to be confused* as to the *identity* of the purported endorser. *Id.*, *citing, Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 204-05 (2d Cir. 1979); *Allen v. National Video, Inc.,* 610 F. Supp. 612, 626-27 (S.D.N.Y. 1985). Secondly, is whether the distinctive feature identifying the plaintiff creates confusion over whether the plaintiff endorsed or sponsored the product. *Id. citing International Order of Job's Daughters v. Lindeburg & Co.,* 633 F.2d 912, 919-20 (9th Cir. 1980); *Consumers Union of United States, Inc.*

*v. General Signal Corp.,* 724 F.2d 1044, 1052 (2d Cir. 1983); *Dallas Cowboys Cheerleaders,* 604 F.2d at 205; *see also*, *Pelton v. Rexall Sundown, Inc.*, 2001 U.S. Dist. LEXIS 3825, 8-9 (S.D.N.Y. Apr. 2, 2001) (the court confirmed the district court's finding that Babe Ruth's heirs could not establish confusion as to source or sponsorship of a baseball calendar featuring Babe Ruth on the cover along with the Defendant's mark).

Plaintiffs bear the burden of proving a likelihood of confusion exists, and the following eight factors have been considered by this Court[7]: (1) the strength of plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the proximity of the products; (4) the likelihood that plaintiff will "bridge the gap;" (5) actual confusion between products; (6) defendant's good or bad faith in adopting the. mark; (7) the quality of defendant's product; and (8) the sophistication of the buyers. *Yurman Studio, Inc. v. Castaneda,* 591 F. Supp. 2d 471, 487 (S.D.N.Y. 2008) (citing) *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir. 1961). "To support a finding of infringement, there must be a probability of confusion, not a mere possibility." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 121 (2d Cir. 2001).

We address the most relevant factors to the inquiry herein: the first factor, the strength of plaintiff's mark, concerns the extent to which plaintiff has developed a favorable association for his mark in the public's mind. *See James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976). Beyond the testimony of Plaintiffs'' Expert Witness, Lisa Thomas, who is the subject of a *Daubert* Motion, nothing has been produced by way of evidence that would tend to establish the "strength" of the trademark at issue.[8]

---

[7] Not all of these factors are relevant to the implied endorsement analysis.

[8] The use of "RIP MCA" in the Video is completely irrelevant because Plaintiffs do not have a registered trademark in "MCA."

In terms of the second factor and third factors, the similarity of the "marks" and "products," Defendants assert that the reference to Sciacca's "Beastie Boys" Megamix incorporates the trademark, however, as addressed below in the "nominative fair use" section, the reference was being used not to describe the defendant's own product (energy drinks), but to describe the location where the music mix of songs by Sciacca, incorporating Plaintiffs' product (music) could be located.  Plaintiffs have put forth no evidence (*e.g.* survey evidence) that there is any competition between the parties' respective goods and services, or that any confusion as to the source of the Video was likely (*i.e.* consumer survey evidence), which would also fall under the fourth factor analysis.

Actual confusion among the relevant consuming public is measured under the fifth factor, and plaintiff has put forth zero evidence of any instances of actual confusion as to whether Plaintiffs endorsed or were affiliated with the Video.

The sixth factor is the good or bad faith of defendant.  Plaintiffs have not put forth any evidence that would tend to establish that defendant acted intentionally to fool people into thinking that plaintiff endorsed the Video.  In fact, to the contrary, Defendants have put forth evidence that Sciacca, the owner of the Megamix, requested that the Defendants place the link to his Megamix, which contained the name of the Plaintiffs' brand, on the Video, and Defendants had a good faith basis for believing that their agreement with Sciacca to use his Megamix required them to do so (Dkt. 41 at ¶ 19).

Finally, it should be noted that consumer survey research is often considered "key" evidence in related "deception" cases, and should have been commissioned by Plaintiffs in this action. *Hickson Corp. v. Northern Crossarm Co.,* 357 F.3d 1256, 1261 (11th Cir. 2004) (consumer survey evidence considered key in determining consumer deception in the context of

similar Lanham Act claim for false advertising).  However, as noted above, Plaintiffs have not

provided evidence by way of a consumer survey, evidence of actual confusion or reliable expert

witness testimony, which could possibly prove a likelihood of confusion among consumers as to

any misunderstanding or "implied endorsement" by Plaintiff of the Video at issue.

     A review of all these factors leads to the inescapable conclusion that Plaintiffs cannot

establish that the fleeting and descriptive use of Plaintiffs' band name at the end of the Video

creates a likelihood of consumer confusion over alleged Plaintiffs' endorsement or involvement.

### B.    Nominative Fair Use

     Any alleged "use" by Defendants of Plaintiffs' trademark constitutes a nominative fair

use because the only "use" was specifically for identification purposes. A defendant has made a

nominative fair use of a plaintiff's trademark if: (1) the product or service in question is one not

readily identifiable without use of the trademark; (2) only so much of the mark is used as is

reasonably necessary to identify the product or service; and (3) the user does nothing that

would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark

holder." *New Kids On The Block v. News America Publishing, Inc.,* 971 F.2d 302, 308 (9th Cir. 1992);

*see also Chambers v. Time Warner LLC,* 282 F.3d 147, 156 (2d Cir. 2002) (adopting the Ninth

Circuit's nominative fair use test).

     Here, the Defendants' limited use its reference to the "Beastie Boys" in the Video was in

the context of the identification of a the third party website location where the music mix could

be found, specifically it stated: "All access Beastie Boys Mix courtesy of Z-trip Download the

link for free at ztrip.bandcamp.com."  This information was flashed for approximately one

second at the very end of the Video (specifically at minute 3:50 of the 4:00 minutes).  Thus, this

information was not being used to describe or reference the defendant's own product, but used to

refer to the location of the music mix, and the descriptive quality of that mix, which contained Beastie Boys' songs. This scenario is analogous to the newspapers in *New Kids*, where Defendants are selling a product (energy drinks) which is far different from the product that Plaintiffs are selling (music), and the products could not be confused.

In analyzing the *New Kids* factors above, because 1) the Plaintiff's music could not be referenced without using its name; and 2) the Video used the "Beastie Boys" name only to the extent necessary to identify the nature of the link and refer to the Plaintiff, was used only once at the tail end of the Video, and nothing implied sponsorship or endorsement by the Plaintiff (e.g., no images of the band members, no use of the Plaintiff's logos or fonts), Defendants are entitled to the nominative fair use defense. Thus, in applying the 'nominative fair use' factors in the case at bar, as a matter of law, this Court must conclude that Defendants have made a nominative fair use of those trademarks.

### C.   Recovery under Both the Copyright Act and the Lanham Act Would Constitute Unfair Double Recovery

As noted above, because the Plaintiffs' copyright infringement damages are based on the same incident as the claim for Lanham Act damages, an award under both the Lanham Act and the Copyright Act would constitute an "impermissible double recovery." *See Microsoft Corp. v. Computer Care Ctr.*, Inc., 2008 U.S. Dist. LEXIS 112080, 22-26 (E.D.N.Y. Apr. 8, 2008) (Plaintiff was not permitted a "dual recovery" of damages under both the Copyright and Lanham Acts for the same injury, e.g. harm caused by defendant's unauthorized copying of the Plaintiff's software).

As the Second Circuit has repeatedly warned, "[a] plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery." *Microsoft*

*Corp. v. Computer Care Ctr., Inc.*, 2008 U.S. Dist. LEXIS 112080, 22-26 (E.D.N.Y. Apr. 8, 2008) (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1997); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are co-extensive."); *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 969-70 (2d Cir. 1997) (computer software creator was not entitled to additional damages for trade secret misappropriation where district court found that such damages were co-extensive with those awarded for copyright infringement); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 01-CV-750 (WDW), slip op. at 35 (E.D.N.Y. Jan. 24, 2003), *aff'd in part, vacated in part on other grounds*, 413 F.3d 257 (2d Cir. 2005) (The court concluded that, although the alleged infringers "may have committed 'two wrongs,' under the separate statutory schemes governing trademark and copyright, those wrongs here produced one harm -- Microsoft's economic loss.").

As a result, at the conclusion of the trial, Plaintiffs' Lanham Act claim should be dismissed in its entirety.

## CONCLUSION

The Court's consideration of the foregoing is appreciated.

Dated: New York, New York
February 14, 2014

                **KANE KESSLER, P.C.**

                By: _____
                    S. Reid Kahn, Esq. (SRK-1458)
                    Dana M. Susman, Esq. (DMS-5436)
                    Tanya C. Pohl, Esq. (TP-1983)
                1350 Avenue of the Americas
                New York, NY 10019
                (212) 541-6222
                (212) 245-3009 (fax)
                rkahn@kanekessler.com
                acohen@kanekessler.com
                dsusman@kanekessler.com
                tpohl@kanekessler.com

                *Attorneys for Defendants*
                *Monster Beverage Corporation, Monster Energy*
                *Company*

TO:    Kevin Puvalowski, Esq.
        Kenneth B. Anderson, Esq.
        Theodore C. Max, Esq.
        **SHEPPARD, MULLIN, RICHTER &**
          **HAMPTON, LLP**
        30 Rockefeller Plaza
        New York, NY 10112
        (212)-653-8700
        (212) 653-8701 (fax)
        tmax@sheppardmullin.com
        kanderson@sheppardmullin.com

        *Attorneys for Plaintiffs Beastie Boys, a New York*
        *Partnership, Michael Diamond, Adam Horovitz and*
        *Dechen Yauch as Executor of the Estate of Adam*
        *Yauch, deceased, each individually and collectively*
        *d/b/a Brooklyn Dust Music*