```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                               :
BEASTIE BOYS, A NEW YORK                                       :
PARTNERSHIP, MICHAEL DIAMOND,                                  :
ADAM HOROVITZ AND DECHEN YAUCH                                 :    12 Civ. 6065 (PAE)
AS EXECUTOR OF THE ESTATE OF ADAM                              :
YAUCH, DECEASED, EACH                                          :
INDIVIDUALLY AND COLLECTIVELY                                  :
D/B/A/ BROOKLYN DUST MUSIC,                                    :
                                                               :
                        Plaintiffs,                            :
           -v-                                                 :
                                                               :
MONSTER ENERGY CORPORATION,                                    :
                                                               :
                        Defendant.                             :
                                                               :
---------------------------------------------------------------X
```

## PLAINTIFFS' RESPONSE TO
## DEFENDANT'S PRE-TRIAL MEMORANDUM OF LAW

SHEPPARD MULLIN RICHTER
   & HAMPTON LLP
30 Rockefeller Plaza
New York, New York  10112
(212) 653–8700
*Counsel for Plaintiffs*

Plaintiffs Beastie Boys, a New York Partnership (the "Beastie Boys Partnership"), and Michael Diamond, Adam Horovitz and Dechen Yauch as Executor of the estate of Adam Yauch, deceased, d/b/a Brooklyn Dust Music ("Brooklyn Dust") (collectively, "Plaintiffs"), by their attorneys, Sheppard Mullin Richter & Hampton LLP, respectfully submit this opposition to the legal arguments made in the Pre-Trial Memorandum of Law filed by Monster Beverage Corporation and Monster Energy Company (collectively, "Monster").

## PRELIMINARY STATEMENT

Rather than providing the Court with a pretrial memorandum that provides information and analysis of the claims to be addressed at the upcoming trial, Monster instead submitted a pretrial memorandum that in seeks to attack Plaintiffs' standing, dismiss or limit certain of Plaintiffs' claims, and otherwise suggests that Monster is entitled to relief that it chose not to seek either in a motion to dismiss or a motion for summary judgment. Accordingly, nearly all of Monster's pretrial memorandum should be rejected as procedurally improper and collateral to the issues remaining to be tried. The scant portions of Monster's pretrial memorandum that are not collateral to the upcoming trial misstate the law or misstate pertinent facts.

In addition to being procedurally improper, Monster's arguments regarding Plaintiffs' standing: (1) ignore the fact that Plaintiffs are, at the very least, beneficial owners of the copyrights at issue; (2) fail to address the fact that the assignment (which Monster, for the first time since it was produced at the outset of this litigation, now claims is invalid) has an effective date of December 2, 1999; and (3) misstate the law regarding Plaintiffs' ability to recover the full amount of damages owed by Monster for its infringement of Plaintiffs' copyrights. Monsters' arguments regarding actual damages seeks to improperly constrain the evidence Plaintiffs' may present on the value of a hypothetical license between Plaintiffs and Monster. Similarly,

Monsters' argument regarding statutory damages fails to address the facts and circumstances surrounding Monster's unauthorized use of Plaintiffs' copyrights that tend to suggest that Monster had knowledge that its conduct represented infringement or recklessly disregarded that possibility. Finally, not only does Monster completely misconstrue Plaintiffs' claim under the Lanham Act – which is a claim for false endorsement and unfair competition pursuant to 15 U.S.C. § 1125 and not trademark infringement – Monster also misstates the law with respect to that claim.

## COUNTERSTATEMENT OF FACTS

Plaintiffs presume that the Court is familiar with the facts of this case in light of the Court's involvement with the discovery and pretrial proceedings in this action and its November 4, 2013, Opinion and Order granting third-party defendant Zach Siacca's motion for summary judgment (*see* Dkt. No. 51). Below is a brief recitation of the facts that led to Plaintiffs to commence this action and the claims that remain to be tired for the Court's convenience.

On August 8, 2012, Plaintiffs commenced this action alleging eleven claims for relief against defendant Monster based upon, among other things, Monster's unauthorized use of Plaintiffs' copyrighted musical compositions and sound recordings. Specifically, at some time on or about May 6, 2012, without Plaintiffs' consent, Monster synchronized and recorded certain musical compositions and sound recordings of Beastie Boys songs (the "Beastie Boys Musical Compositions and Sound Recordings") together with audiovisual recordings and other visual materials featuring Monster products, branding and trademarks, to create a more than four-minute advertising and promotional video for Monster's skiing and snowboarding event at Lake Louise Ski Resort, in Canada, called "Ruckus in the Rockies 2012" (the "Video Advertisement"). The soundtrack of the Video Advertisement features the Beastie Boys Musical

Compositions and Sound Recordings. Beginning on or about May 9, 2012, Monster featured the Video Advertisement on its website, www.monsterenergy.com, and in various Monster social media websites such as Facebook and Twitter.

Plaintiffs maintain nine claims against Defendant that remain to be tried (eleven should the Court grant Plaintiffs' currently pending motion to amend (*see* Dkt. Nos. 72-74). Eight (ten) of those claims are for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*, based upon Defendant's unauthorized reproduction of, preparation of a derivative work based upon, distribution to the public of, and performance of the Beastie Boys Musical Compositions and Sound Recordings in the Video Advertisement. Plaintiffs' ninth (eleventh) claim is a claim for false endorsement and unfair competition pursuant to 15 U.S.C. § 1125(a)(1) of the Landham Act.

## I. PLAINTIFFS' HAVE STANDING TO BRING THEIR COPYRIGHT CLAIMS

By its pretrial memorandum of law, Monster improperly attempts to raise issues of standing that should have been raised either as part of a motion to dismiss or a motion for summary judgment. In any event, Monster's arguments are not supported by the law or the facts and should be rejected

### A. The Beastie Boys Partnership's Rights in the Beastie Boys Sound Recording Copyrights Were Assigned to Plaintiffs' as of December 2, 1999

"When a written contract provides that it shall be effective 'as of' an earlier date, it generally is retroactive to the earlier date." *Viacom Int'l Inc. v. Tandem Prods. Inc.*, 368 F. Supp. 1264 (S.D.N.Y. 1974); *see also U.S. Bank, N.A. v. Squadron VCD, LLC*, 2011 WL 4582484, at *5 (S.D.N.Y. Oct. 3, 2011) ("it is fundamental that where parties to an agreement expressly provide that a written contract be entered into 'as of' an earlier date then that on which it was

executed, the agreement is effective retroactively 'as of' the earlier date") (quotation and citation omitted).

Monster attempts to argue in its pretrial memorandum that Plaintiffs' lack standing with respect to claims regarding three of the Beastie Boys Sound Recordings for the performance of "So What'Cha Want," "Sabotage," and "Looking Down the Barrel of a Gun." While those copyrights were initially registered by Capitol Records, in accordance with a December 2, 1999, Recording Agreement between the Beastie Boys Partnership and Capitol Records, Capitol was required to assign to the Beastie Boys Partnership a 50% undivided interest in several copyrights, including those three sound recording copyrights at issue. Capitol Records did so by a September 1, 2012, Copyright Assignment that was registered with the United States Copyright Office on or about November 15, 2012 (the "Copyright Assignment"). The effective date of the Copyright Assignment is December 2, 1999. Thus, in light of the effect date of the Copyright Assignment, the Beastie Boys Partnership owned a 50% undivided interest in all of the Beastie Boys Sound Recordings as of December 2, 1999—well over a decade before this action was commenced. The only case cited by Monster for this proposition, *Benchmark Homes, Inc. v. Legacy Home Builders, L.L.C.*, 2006 U.S. Dist. LEXIS 53879 (S.D.N.Y. Jan. 26, 2006), is not applicable here, as the court there was not confronted with an assignment with an effective date that preceded the litigation at issue.

Furthermore, even if the Court determines that the Beastie Boys Partnership's rights in the Beastie Boys Sound Recording copyrights were not assigned as of December 2, 1999, Plaintiffs would be entitled to amend the Copyright Assignment in advance of trial. *See Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317-19 (S.D.N.Y. 1996) (allowing plaintiff to amend assignment of copyrights to clarify that it was intended to convey accrued causes of

action). While Plaintiff does not believe it is necessary to amend the Copyright Assignment for the reasons stated above, if the Court decides otherwise, Plaintiffs would obtain an amended Copyright Assignment that explicitly conveys the right to prosecute the claims with respect to the Beastie Boys Musical Composition copyrights that accrued before the Copyright Assignment was signed. Accordingly, Monster's claim that Plaintiff does not have standing is to prosecute claims with respect to those Beastie Boys Sound Recordings is unfounded.[1]

### B. At the Very Least, Plaintiffs are Entitled to Prosecute this Infringement Action as Beneficial Owners of the Copyrights at Issue

Even assuming Monster is correct, and the Copyright Assignment was not effective until September 1, 2012 and Plaintiffs fail to remedy that purported defect in advance of trial, Plaintiffs may still recover damages as a beneficial owner. "The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). Under the Copyright Act, a beneficial owner includes "for example, an author who had parted with legal title to the copyright in exchange of percentage royalties based on sales or license fees." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159) (quotation marks omitted); *see also Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69 (S.D.N.Y. 1982) (finding that artist who transferred legal titled to copyrights at issue in exchange for a percentage of royalties based upon sales or license fees was proper plaintiff in copyright action).

---

[1] Similarly, Monster's argument that the Assignment Agreement is ineffective as to those Beastie Boys Sound Recordings because it does not expressly convey the right to sue on accrued causes of action must also fail. All claims in this action accrued well after the December 2, 1999 effective date of the Copyright Assignment and were thus properly conveyed.

As discussed above, Monster's argument that the Copyright Assignment does not effectively confer standing to Plaintiffs with respect to three of the Beastie Boys Sound Recording copyrights at issue fails to address the effective date of the Assignment and is contrary to the law. However, even if Monster's argument is credited, which it should not be, Plaintiffs are, at the very least, beneficial owners of the three sound recording copyrights at issue. By the 1999 Recording Agreement, Plaintiffs' parted with legal title to those sound recording copyrights (and other valuable intellectual property) in exchange for a percentage of royalties and other payments based upon the sales or license fees generated by those copyrights. Under these circumstances, Plaintiffs are certainly entitled to maintain their action against Monster for infringement of those three sound recording copyrights.

C. **Plaintiffs 50% Undivided Interest in the Beastie Boys Musical Compositions and Sound Recordings Only Goes to Plaintiffs' Recovery and Does Not Constrain Plaintiffs from Collecting Upon the Judgment and Accounting to their Co-Owners**

Defendants argument regarding the amount Plaintiffs are entitled to recover in light of their 50% undivided interest in the Beastie Boys Musical Compositions and Sound Recordings is premature. Irrespective of any adjustments that need to be made to the final judgment in this action, the question that the jury is being asked to determine is what the damage to the copyrights are. In any event, the jury will be asked render its award as to the full amount of damages caused by Monster's infringement. As set forth in the cases cited by Monster, *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268 (2d Cir. 1944), and *Manno v. Tenn. Prod. Ctr.*, 2009 U.S. Dist. LEXIS 60994 (S.D.N.Y. Sept. 2009), the joint ownership of a copyright may only reduce Plaintiffs' recovery—not the amount that the jury may be award.

## II. MONSTER'S CHARACTERIZATION OF THE DAMAGES PLAINTIFFS' ARE ENTITLED TO IS SELF-SERVING, PREMATURE AND CONTRARY TO THE EVIDENCE AND THE LAW

In its discussion of copyright damages, Monster primarily seeks to argue facts that will be decided by the jury in this action. Accordingly, Plaintiffs do not provide a detailed response to Monster's decidedly factual argument and instead briefly respond to the pertinent legal issues below.

### A. Plaintiffs Will Present Evidence to the Jury to Show What a Willing Buyer and a Willing Seller Would Pay to License the Beastie Boys Musical Composition and Sound Recording Copyrights

As is set forth more fully in Plaintiffs' opposition to Monster's motion to preclude plaintiffs from introducing the expert testimony of Lisa Thomas, Plaintiffs plan to present evidence from Ms. Thomas which outlines the factors she considered and testified about at her deposition. Ms. Thomas testified in no uncertain terms that, in connection with determining Plaintiffs' actual damages, she was focused upon the "willing seller, willing buyer" methodology to determine "the reasonable value of a license" which she concludes is interchangeable with "fair market value." Ms. Thomas testified at length and explained how she applied the various factors in this case to render her opinion upon the appropriate synchronization and implied endorsement fees. Simply put, there can be no question that Ms. Thomas employed a proper methodology and that this methodology was clearly stated in her report and in her testimony.[2] Accordingly, Plaintiffs indent to present such evidence to assist the jury in determining Plaintiffs' actual damages.

---

[2] In his Expert Witness Report dated August 13, 2013, Monster's expert Jon Albert-Levy ("Albert") employs a similar, albeit more simplistic methodology for assessing "the fair market value for the usage of the songs at issue in this case." (Albert Report, at 3).

### B. Plaintiffs Will Present Evidence to the Jury to Show that Monster's Infringement was Willful

Monster correctly states in its pretrial memorandum that in order for it to be liable for copyright infringement, Plaintiffs only need to "prove ownership of a valid copyright and copying of constituent elements of the work that are original." *Twin Peaks Prods., Inc. v. Publn'ns Int'l, Ltd.*, 966 F.2d 1366, 1372 (2d Cir. 1993). Upon a finding that Monster is liable for copyright infringement, at any time "before final judgment is rendered," Plaintiffs may elect to be awarded statutory damages in lieu of their actual damages and Monster's profits. 17 U.S.C. § 504. In calculating statutory damages, where Plaintiffs sustain "the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" with respect to each work infringed. 17 U.S.C. § 504(c)(2).

In considering willfulness, the "standard is simply whether the defendant had knowledge that its conduct represented infringement or perhaps recklessly disregarded that possibility." *Twin Peaks*, 996 F.2d at 1382. Courts will allow a plaintiff to prove the necessary knowledge or reckless disregard necessary for a willfulness finding through circumstantial evidence such as the infringer's continued infringement after receiving notice of infringement, internal communications suggesting awareness of the infringement, and failure to investigate claims of infringement. *See, e.g., Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir. 2001) (finding evidence of knowledge of plaintiff's copyrights and infringer's failure to investigate potential intellectual property violations supported finding of willfulness); *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288-89 (2d Cir. 1999) (continued use of infringing materials after notice supported finding of willfulness); *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., Inc.*,

807 F.2d 1110, 1115 (internal memoranda reflecting clear understanding of rights and infringer's experience with intellectual property supported finding of willfulness); *Peer Int'l Corp. v. Luna Records, Inc.* 887 F. Supp. 560 (S.D.N.Y. 1995) (finding that continued infringement after notice demonstrated "if not actual knowledge, reckless disregard for plaintiffs' copyrights").

At trial, Plaintiffs will present evidence to the jury that will show Defendants' infringement of the Beastie Boys Musical Composition and Sound Recording copyrights to be willful. This includes Monster's awareness of licensing and copyright issues, their lack of a formal policy to avoid copyright infringement before Monster's infringement of the Beastie Boys Musical Compositions and Sound Recordings in the Video Advertisement, and Monster's infringement despite internal memoranda reflecting Monster's clear understanding of copyrights. Furthermore, Monster's attempt to argue that it reasonably believed its employee Nelson Phillips obtained a license to use the Beastie Boys Musical Compositions and Sound Recordings in the Video Advertisement from former third-party defendant Zach Siacca is not credible. As this Court observed in its Opinion and Order granting Mr. Siacca's motion for summary judgment, Monster's reliance of Phillips to protect its interest in these matters was perforce unreasonable." (*See* Dkt. No. 51 at 23.)

### C. The Beastie Boys Partnership and Brooklyn Dust are Each Entitled to an Award of Statutory Damages for Infringement of Their Respective Sound Recording and Musical Composition Copyrights

Monster's claim that Plaintiffs may not recover statutory damages for Monster's infringement of both the Beastie Boys Sound Recordings, which are owned and controlled by the Beastie Boys Partnership, and the Beastie Boys Musical Compositions, which are owned and controlled by Brooklyn Dust, is incorrect. Where, as here, "the plaintiffs owning the copyrights on the musical compositions are separate from the plaintiffs owning the copyrights on the sound

recordings, each may recover statutory damages[.]" *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp.2d 546 (S.D.N.Y. 2001).

The legal authority cited by Monster does not demand a contrary result. In *Bryant v. Media Right Prods., Inc.*, the Second Circuit was asked to consider whether a plaintiff could recover statutory damages for defendants' infringement of multiple songs despite the fact that the song recording of those songs was registered as a single album. 603 F.3d 135, 140 (2d Cir. 2010).[3] The *Bryant* Court did not address the question at issue here—whether Plaintiffs may separately recover statutory damages for Monster's infringement of both the musical compositions and sound recordings at issue.

Unlike in *Teevee Toons*, the courts in *The Robert Stigwood Group Ltd. v. O'Reilly*, 530 F.2d 1096 (2d Cir. 1976), and *ASA Music Prods. v. Thomsun Elcs.*, 49 U.S.P.Q.2d 1545, each addressed instances where separate copyrights in the same works were held by the same entities. Under those circumstances, the court would only allow for one award of statutory damages for each work that was infringed, rather than each copyright. However, the Second Circuit in *The Robert Stigwood Group*, found that the copyright holder could recover damages for infringement of multiple copyrights embodied in the rock opera "Jesus Christ Superstar" where the multiple copyrights covered separate works within the same musical production. 530 F.2d at 1105. There,

---

[3] Monster's attempt to use *Bryant* to argue that Plaintiffs may not recover statutory damages for Monster's use of the song "Pas the Mic" in the Video Advertisement regardless of whether the Court grants Plaintiffs' motion to amend the complaint [Dkt. # 72] – because the sound recordings of "Pass the Mic" and "So What'Cha Want" were registered collectively as part of the album *Check Your Head* – ignores the fact that the musical compositions for both "Pass the Mic" and "So What'Cha Want" were registered individually. Accordingly, Brooklyn Dust should be entitled to recover statutory damages at trial for Monster's infringement of each of the four musical compositions (five if the Court grants the Plaintiffs' motion to amend) and the Beastie Boys Partnership should be entitled to recover statutory damages at trial for Monster's infringement of each of the four sound recordings.

the Second Circuit awarded statutory damages for infringement of the musical composition of the entire rock opera (which was registered as three separate copyrights that the court determined to be the same work), while also making three separate additional statutory awards for infringement of the musical compositions for three songs contained in the rock opera. *Id.* at 1103-05.

Accordingly, as the Beastie Boys Musical Compositions and Sound Recordings are each held by Brooklyn Dust and the Beastie Boys Partnership respectively, the jury should consider whether Plaintiffs may recover statutory damages for Monster's infringement of both all of the copyrights at issue.[4]

### D. Plaintiffs Should be Awarded their Attorneys' Fees in this Action

Under 17 U.S.C. § 505, the Court is granted discretion to award reasonable attorney's fees and costs. The objective reasonableness of the prevailing party's claims is a significant factor in the court's equitable analysis that should be given substantial weight. *Crown Awards, Inc. v. Disc. Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008). As discussed above and as the evidence will show, the positions Monster's position thought this action have been extremely unreasonable. Should Plaintiffs obtain a judgment in their favor, Plaintiffs should be awarded their attorney's fees.

In addition to Monster's incredible argument that it somehow obtained a license to use the Beastie Boys Musical Compositions and Sound Recordings in the Video Advertisement from former third-party defendant Zach Siacca (an argument that required significant discovery and

---

[4] While such a finding does "not preclude defendant from attempting to prove at trial that the plaintiffs are so closely affiliated as to be consider one company for statutory purposes[,]" the burden of proof belongs to Monster and this issue should be considered by the jury at trial. *Teevee Toons*, 134 F. Supp.2d at 548, n. 1.

substantial brief with respect to Mr. Siacca's summary judgment motion), Monster's litigation conduct has substantially increased the costs of this action. By way of example only: after requesting that the parties attend a mediation in California, Monster appeared with a party representative who did not have actual authority to negotiate; Monster refused to agree to allow Plaintiffs to amend the complaint to assert claims with respect to a fifth Beastie Boys Musical Composition and Sound Recording that no party reasonably disputes is embodied in the Video Advertisement; and objected to Plaintiffs' standing to bring claims with respect to three Beastie Boys Sound Recordings on grounds that, as discussed above, are baseless. For these, and a multitude of other reasons that Plaintiffs will put before the court in the event the jury finds in Plaintiffs favor, an award of Plaintiffs attorney's fees is reasonable and appropriate.

### III. PLAINTIFFS' LANHAM ACT CLAIM PROPERLY SEEKS DAMAGES ARISING FROM DEFENDANTS' USE OF THE BEASTIE BOYS MARKS TO SUGGEST A FALSE ENDORSEMENT OR ASSOCIATION WITH DEFENDANTS

Defendants arguments regarding Plaintiffs' Lanham Act unfair competition claim asserting false endorsement confuses the facts and misstates the law. There is no merit in Defendants' arguments set forward in Defendants' Pre-Trial Memorandum of Law, and Defendants' Proposed Jury Instructions, apparently relying upon these arguments, are likewise faulty and properly objected to by Plaintiffs.

#### A. Plaintiffs Will Prevail on Their False Endorsement Claim

Plaintiffs' unfair competition claim arises from Defendants' use of the name and trademark BEASTIE BOYS, as well as the names, identity and persona of the individual Beastie Boys members, including Yauch, who was known under the stage name "MCA" (collectively, the "Beastie Boys Marks") in connection with Defendant's products, promotional events, marketing and/or advertising. Defendants incorrectly posit that Plaintiffs, to prevail on their

-13-

false endorsement claim, must prove that Defendants' use of the Beastie Boys Marks actually confused consumers into believing that Plaintiffs endorsed or produced Monster energy products.[5]

The Lanham Act does not require evidence of actual confusion as a prerequisite to recovery. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 2d 217, 247 (S.D.N.Y. 2004)(citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) ("it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.") The single case from the Ninth Circuit relied upon by Defendants, *Storball v. Twentieth Century Fox Film Corp.*, 1995 U.S. App. LEXIS 14896 (9th Cir. 1995), is unremarkable on this point. In *Storball*, unlike here, the party asserting the false endorsement claim incorrectly asserted that there is an evidentiary presumption of confusion in cases where there is actual use of their song. The court correctly concluded that the plaintiff needed to show likely consumer confusion, and granted summary judgment because plaintiff "introduced no evidence on this material." *Id*. at *3.

These facts are readily distinguished from Plaintiffs' false endorsement claim. Plaintiffs at trial will introduce evidence on the level of recognition the Beastie Boys Marks have among purchasers of Defendants' products; the similarity between the Beastie Boys Marks and the designations used by Defendants; any actual confusion regarding endorsement of the Defendants; the Defendants' intention in using the Beastie Boys Marks; the lack of quality of

---

[5] Defendants incorrectly claim that it made only a "singular reference to the location of a third party website containing the 'Beastie Boys Megamix' at the end of the [Video]." Plaintiffs will quickly prove this to be false. The evidence here will establish that Defendants made widespread
(footnote continued)

-14-

Defendants' products; and the lack of sophistication of purchasers of Defendants' products. The balancing of these factors will result in the jury finding a likelihood of confusion here. *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 2013 WL 822173 (S.D.N.Y. March 6, 2013). While actual confusion is a consideration, there is no requirement for Plaintiffs to prove that Defendants' customers were actually deceived or that there was an actual diversion of business. *Geisel v. Poynter Products, Inc.*, 283 F. Supp. 261 (S.D.N.Y. 1968).

### B. "Nominative Fair Use"

The use of the Beastie Boys Marks is not a "nominative fair use." A defendant may lawfully use a plaintiff's trademark only where (1) doing so is necessary to describe the plaintiff's product and (2) does not imply a false affiliation or endorsement by the plaintiff of the defendant. *See* e.g. *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103, (2d Cir. 2010). Defendants are using the Beastie Boys Marks to describe the *Defendants'* product, the promotional video. There is no application of the "nominative fair use" defense to the facts of this case. This defense "applies only where, unlike here, the defendant used the plaintiff's mark to describe the plaintiff's product." *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 310 (n.14) (S.D.N.Y. 2010), *vacated on other grounds*, 568 F.3d 390 (2d Cir. 2009), *citing* 2 J.T. McCarthy, *Trademarks and Unfair Competition* § 11:45 (2009) (defining "nominative fair use" as "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services"). Defendants' are using use of the Beastie Boys Marks is to describe *Defendants'* promotional video

---

use of the Beastie Boys Marks in connection with their own websites, their YouTube channel, their Facebook pages, press releases, and other marketing materials.

Indeed, even if a "fair use" (as opposed to "nominative fair use") defense were considered here, Defendants use of the Beastie Boys Marks does not qualify for the defense. In order to determine whether use qualifies as "fair" under 15 U.S.C. § 1115(b)(4), courts assess whether the term is used (1) descriptively, (2) other than as a mark, and (3) in good faith. *Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.*, 2013 WL 822173 (S.D.N.Y. March 6, 2013). Amongsts other considerations (including their lack of good faith), Defendants clearly used the Beastie Boys Marks "as a symbol to attract public attention," which is considered use as a mark. *Safeway Stores, Inc. v. Safeway Props., Inc.*, 307 F.2d 495, 499 (2d Cir. 1962). As such, Defendants cannot maintain any "fair use" defense.

### C. Award to Plaintiffs Under the Lanham Act Will Not Be a Double Recovery

Finally, Defendants argue that Plaintiffs are attempting to "shoehorn their copyright claims into the Lanham Act." This could not be further from the truth. Plaintiffs' Lanham Act claim is entirely distinct and stands alone from their copyright infringement claims. The Lanham Act unfair competition claim arises from Defendant's use of the Beastie Boys Marks in connection with the promotion of the Video on Defendants' websites, video channels, social media pages, press releases, and other marketing materials. Plaintiffs' copyright infringement claims are directed to entirely different claims: Defendants' infringement of Plaintiffs' copyrights in both (a) the musical compositions; and (b) the sound recordings for each of the following five pieces of music created by Plaintiffs: (i) "So Whatcha Want," (ii) "Sabotage," (iii) "Looking Down the Barrel of a Gun," (iv) "Make Some Noise," and (v) "Pass the Mic."

The case cited by Defendants, *Microsoft Corporation v. Computer Care Center, Inc.*, 2008 U.S. Dist. LEXIS 112080 (E.D.N.Y. April 8, 2008) is entirely unremarkable. There, unlike here, the plaintiff was "seeking to recover two separate awards of statutory damages for the same

injury – i.e.. harm caused by defendants' unauthorized copying of the same software." *Id.*, at *23.  There is no such attempt to collect two separate awards for the same injury here.

## CONCLUSION

Plaintiffs respectfully request that the Court consider the foregoing arguments in connection with the trial proceedings in this matter.

Dated: New York, New York
February 19, 2014

> Respectfully submitted,
>
> SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
>
>
> By:      /s/ Kevin R. Puvalowski
> Kevin R. Puvalowski, Esq. (KP-0091)
> Paul W. Garrity, Esq. (PG-3492)
> Kenneth B. Anderson, Esq. (KA-9923)
> Thomas M. Monahan, Esq. (TM-1984)
>
> 30 Rockefeller Plaza
> New York, New York 10112
> Tel:    (212) 653-8700
> Fax:    (212) 653-8701
>
> *Attorneys for Plaintiffs*