UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :
BEASTIE BOYS, et al.,                           :
                                                 :                12 Civ. 6065 (PAE)
                                    Plaintiffs,           :
                                                 :                OPINION & ORDER
                    -v-                                  :
                                                 :
MONSTER ENERGY COMPANY,      :
                                                 :
                                    Defendant.          :
                                                 :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Trial in the above-captioned case is scheduled for April 21, 2014. Plaintiffs ("Beastie Boys") intend to offer expert testimony from Lisa Thomas concerning the fair market value of (1) a license to use the musical composition and sound recordings included in the allegedly infringing video at issue in this case (the "Video") and (2) the implied endorsement allegedly created by defendant's use of plaintiffs' names and trademarks in the Video. Monster Energy Company ("Monster") moves to preclude Thomas's testimony from trial. Dkt. 63. The Court has carefully considered the parties' arguments, Dkt. 65 ("Monster Br."), Dkt. 84 ("Beastie Br."), Thomas's Expert Report, Dkt. 64 Ex. B ("Thomas Rep."), and Thomas's deposition testimony, Dkt. 64 Ex. C. ("Dep."). For the reasons that follow, Monster's motion to preclude Thomas is denied, except to the limited extent specified in Section II.B, *infra*.[1]

---

[1] Because of the time-sensitive nature of the remedy ordered herein, the Court issues this Opinion before ruling on the remaining motions *in limine* and the Beastie Boys' motion to preclude Monster's expert witness, Erich Joachimsthaler. Dkts. 66, 72, 76. The Court will rule on those motions in a separate order or orders.

I.      **Applicable Legal Standards**

"Federal Rule of Evidence 702 grants an expert witness testimonial latitude unavailable to other witnesses, provided that (1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'" *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, No. 11 Civ. 6188 (DLC), 2012 WL 6000885, at *6 (S.D.N.Y. Dec. 3, 2012) (quoting Fed. R. Evid. 702).

"The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007).  The Court's task "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1991).  "A trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 213–14 (2d Cir. 2009).  Additionally, "an expert opinion requires some explanation as to how the expert came to his conclusion and what methodologies or evidence substantiate that conclusion." *Riegel v. Medtronic, Inc.,* 451 F.3d 104, 127 (2d Cir. 2006), *aff'd on other grounds,* 552 U.S. 312 (2008).  Pursuant to Rule 403, the Court may also exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Important here, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.* (citations omitted). "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.*

## II. Discussion

Thomas is an expert in licensing music. In her 25-year career, she has represented music icons ranging from members of the Eagles to Janet Jackson. Thomas Rep. 1. Monster does not dispute her expertise. Monster also does not take issue with the five factors that Thomas states, in her experience, usually affect the negotiated value of a music license. *Id.* at 7–13. Instead, Monster disputes her application of those factors to the facts at hand. Monster Br. 9–18.

### A. Monster's Unavailing Objections

In the main, the Court finds that Monster's objections are without merit, or go to the credibility of Thomas's testimony, which is to be tested not by preclusion but by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," which "are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Monster objects, for example, that Thomas "failed to connect artistic stature," one of her five factors, "to any particular monetary amount." Monster Br. 14. Similarly, Monster objects that Thomas did not indicate how the generally valuable nature of internet rights "translates into

a particular dollar figure." *Id.* at 16.  But there is no reason why the practical realities of music licensing require such a mechanistic approach.  Monster does not seriously contest that the Beastie Boys are an artistic group of substantial stature, that internet rights are valuable, or that these facts are relevant to an analysis of the fair market value of a license to use the Beastie Boys' music.  If Monster believes that Thomas has not persuasively shown precisely how the Beastie Boys' stature or the valuable nature of internet rights affects the value of such a license, it is at liberty to cross-examine her on that subject.

Monster also argues that Thomas misapplied another factor, "the contextual aspect of production and level of quality." *Id.* at 15–16.  There may be tension between Thomas's original description of production quality and context as threshold issues that artists use to decide whether to license their music, and her later claim that production quality and context are relevant to the value of that license.  Thomas Rep. 9, 15–16.  Or perhaps these considerations are relevant to multiple factors.  This lack of clarity may bespeak inartful drafting, it does not evidence flawed—let alone methodologically unreliable—reasoning.  Indeed, the claim that a video's context and quality may affect the appropriate license fee appears entirely reasonable.  Here too, if Monster disagrees with that proposition, or with Thomas's application of it, Monster is at liberty to cross-examine her about it at trial.

As to the implied endorsement claim, Monster asserts that Thomas treats this subject in a single paragraph, without any methodology or detailed discussion.  Monster Br. 18–19.  But as the Beastie Boys note, Beastie Br. 10, Thomas's valuation of the implied endorsement plainly draws upon the methodology that she earlier used to value the copyright claims.  Indeed, Monster elsewhere tacitly acknowledges this when it asserts that Thomas's use of certain factors in valuing both types of claims constitutes "double dipping."  Monster Br. 22–23.  This "double

4

dipping" critique also fails on its own terms, because there is no reason why facts such as the Beastie Boys' stature cannot be relevant to the damages inquiries for both the copyright and Lanham Act claims.

Similarly unavailing is Monster's argument that Thomas is not qualified to give expert testimony on whether an association between the Beastie Boys and Monster products was in fact made in the minds of consumers and that, in the absence of any evidence of consumer confusion, Thomas should not be allowed to testify regarding the damages arising from such confusion. *Id.* at 23–25. The Beastie Boys have never offered expert testimony from Thomas as to an actual association or confusion in the minds of consumers. *See* Thomas Rep. 1, 4; Beastie Br. 14. Instead, the Beastie Boys have offered Thomas as an expert on damages. The Beastie Boys are free to establish liability by other means. And the Beastie Boys do not need to show actual confusion to prevail on their Lanham Act claim. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) ("Of course, it is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source.").

**B.    The Term of Use**

Monster does, however, have one trenchant objection to Thomas's report and testimony. Monster Br. 9–14. Thomas estimates the fair market value of an appropriate license based on a *perpetual* term of use. Thomas Rep. 16. But the measure of damages must be based on "the use the infringer made," *Davis v. The Gap, Inc.*, 246 F.3d 152, 166 n.5 (2d Cir. 2001), not unrealized risks created by the infringer's use. In this case, damages stemming from the Video must be based on its actual period of availability on YouTube, which the parties have stated is approximately five weeks. It is not an indefinite period of time. Thomas's generalization that

content once placed online cannot be controlled may well be true in other contexts, but it is at odds with the facts here; the offending video was taken down from YouTube after some five weeks, and, apparently, no other copy has subsequently been posted on YouTube or elsewhere, by Monster or anyone else, perhaps because no one was able to download or otherwise preserve the Video from YouTube.  Thomas's assertion that a willing buyer and a willing seller would not enter into a contract for a five week term of use, Dep. 189–95, is immaterial—her task, as a damages expert, is to give reasoned testimony as to the fair market value of a licensing agreement whose terms reflect the actual use made by Monster in this case.  *Davis*, 246 F.3d at 166 n.5.

Thomas's decision to value the license and implied endorsement based on a perpetual term of use, when the law requires her to use a five-week term of use, is not a "minor flaw." *Amorgiano*, 303 F.3d at 267.  Rather, "the flaw is large enough" that, while it remains a basis for her report, the report "lacks good grounds for [its] conclusions."  *Id.*  (citations omitted).

This flaw, however, is eminently correctable.  Thomas should be able to render a prompt, revised opinion, that values the license based on a factually defensible assumption as to the term of use.  The Court therefore holds that Thomas may offer expert testimony at trial if, by March 17, 2014, she submits a report which revises her estimate of the fair market value of the license and implied endorsement by assuming a five-week term of use instead of a perpetual term of use. *Cf. Amorgianos v. Nat'l R.R. Passenger Corp.*, 137 F. Supp. 2d 147, 191 (E.D.N.Y. 2001) *aff'd*, 303 F.3d 256 (2d Cir. 2002) ("[B]ecause the deficiencies in [the] expert opinion as to the concentration of xylene appear to be ones that could potentially be remedied, plaintiffs are given leave to supplement [the] expert report with respect to concentration.")  To be clear: Thomas's revised estimate of fair market value shall not factor in the risk, which a party might reasonably

consider before making a contract but which did not come to pass here, that the Video might be disseminated beyond its original posting on YouTube. Nor shall her revised report take into account the asserted wariness of musicians to license music for only five weeks. Instead, Thomas's report shall be consistent with the actual period of use of the Video: a posting of approximately five weeks on YouTube. Thomas's revised report is not to make other changes beyond those needed to ensure conformity with the Court's direction as to this point.

If Monster wishes to re-depose Thomas in light of her revised report, the Beastie Boys shall arrange for such a deposition, presumably by video as with her original deposition, at their cost, and limited to the revisions in Thomas's report, by March 27, 2014.

## CONCLUSION

Monster's motion to preclude Lisa Thomas is denied, except as specified in Section II.B, *supra*. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 63.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: March 6, 2014
       New York, New York