UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                   :

BEASTIE BOYS, et al.,                       :

                              Plaintiffs,    :        12 Civ. 6065 (PAE)

                                       :

                        -v-               :        OPINION & ORDER

                                       :

MONSTER ENERGY COMPANY,            :

                                       :

                              Defendant.    :

                                       :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Trial in this case is scheduled to begin April 21, 2014.  This decision resolves outstanding

motions: (1) a motion *in limine* by defendant Monster Energy Company ("Monster") to preclude

plaintiffs (the "Beastie Boys") from offering evidence of two sets of violations by Monster or

athletes affiliated with Monster of the Beastie Boys' copyright interests, which violations lie

outside the scope of the allegations in this case, Dkt. 66; (2) a motion by the Beastie Boys for

leave to file an Amended Complaint, Dkt. 72; and (3) a motion *in limine* by the Beastie Boys to

preclude the expert testimony of Erich Joachimsthaler, whom Monster proposes to call, Dkt. 76.

It also addresses certain other legal issues relevant to trial.

       By way of background, the Beastie Boys here bring claims of copyright infringement and

of violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*  These claims arise out of Monster's

allegedly unauthorized publication and dissemination, to promote the Monster brand, of a video

promoting a Monster-sponsored snowboarding competition, the "Ruckus in the Rockies," that

used as its soundtrack a remix including four songs originally composed and recorded by the

Beastie Boys (the "Video" or the "Ruckus in the Rockies Video").   The Court has issued two

prior opinions in this matter.  The first granted summary judgment to a third-party, disk jockey

Zach Sciacca, or "Z-Trip," against whom Monster had filed a third-party complaint, *see* Dkt. 51;
the second resolved Monster's motion *in limine* to preclude expert testimony of a witness whom
the Beastie Boys proposed to call, *see* Dkt. 89.  This decision assumes familiarity with the
factual background and claims and defenses in this case, as well as those prior opinions.

## I.      Monster's Motion *in Limine* to Preclude Certain Videos

The Beastie Boys propose to offer at trial evidence of two videos or sets of videos—
apart from the Ruckus in the Rockies Video—that they claim infringed on their copyrights.  The
Beastie Boys claim that Monster is responsible for both sets of videos.  On February 13, 2014,
Monster filed a motion *in limine*, Dkt. 66, and an accompanying memorandum of law, Dkt. 68
("Monster Limine Br."), to preclude receipt of those videos at trial.  On February 19, 2014, the
Beastie Boys filed a memorandum of law in opposition.  Dkt. 83 ("Beastie Limine Br.").

The first category of videos (the "Monster Army Videos") were posted by athletes whom
Monster has sponsored to a website, www.monsterarmy.com, that Monster created for the
purposes of promoting these athletes and Monster itself.  Beastie Limine Br. 3.  Monster requires
these sponsored athletes to maintain a profile on www.monsterarmy.com and encourages them to
post videos; however, Monster itself does not create nor edit those videos.  *Id.*; Monster Limine
Br. 3.  The Beastie Boys argue that six videos posted by such athletes synchronized the Beastie
Boys' music with footage of the athletes engaged in their respective sports, and that these videos
did so without the required authorization from the Beastie Boys.  Beastie Limine Br. 3–4.

The other video at issue was created in connection with a sporting event in Switzerland
called "Wheels Fest," which Monster sponsored and promoted.  *Id.* at 4.  This video allegedly
used a Beastie Boys song, "Sabotage," as its soundtrack, without authorization.  *Id.*  The Beastie
Boys do not allege that Monster created this video.  They allege instead that Monster "was aware

of the Wheels Fest Video while it was being produced" and "participated in the production of the Wheels Fest Video." *Id.* at 4–5.

The Beastie Boys seek to offer the Monster Army Video and the Wheels Fest Video to help establish that Monster's alleged infringement in relation to the Ruckus in the Rockies Video was willful, as opposed to being a product of negligence or of a good-faith but mistaken belief, based on communications between Monster employee Nelson Phillips and disk jockey Z-Trip, that it had a valid license to make such use of the Beastie Boys' music. *Id.* at 5; *see generally* Dkt. 51 (granting summary judgment to Z-Trip against Monster's Third-Party Complaint). The issue presented by Monster's motion to preclude this evidence is whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion, or delay. *See* Fed. R. Evid. 403.

The probative value of these other videos is, at best, very limited. The Beastie Boys do not explain convincingly why either of these other incidents sheds light on Monster's state of mind in connection with the incident at issue here, in which it used Z-Trip's Megamix (containing portions of five Beastie Boys' songs) in the Ruckus in the Rockies Video and then disseminated that video without the Beastie Boys' permission. Unlike the Ruckus in the Rockies Video, these other videos were not created by Monster. And there is no allegation that any Monster personnel implicated in this case played any role in these other incidents; that the unauthorized inclusion of Beastie Boys music in these other videos arose from similar control deficiencies within Monster; that Monster had a demonstrated policy or practice to use Beastie Boys (or other groups') music to promote its products without regard to legality; or that Monster had a policy or practice of recklessly using others' musical work to promote its products and then seeking to pawn off responsibility for any copyright violations on hapless others. On the facts

proffered to the Court, the episode involving the Ruckus in the Rockies appears to be an idiosyncratic, singular event, as do, for that matter, the episodes leading to the creation and posting of the other two videos or sets of videos.

Even if there were some faint probative value in this case to the fact of other violations of Beastie Boys' copyrights by Monster-affiliated persons or entities, the probative value of any such hypothetical violations would be dwarfed by the risk of unfair prejudice, confusion, and delay. There has been no prior adjudication of illegal conduct in connection with the other videos. To establish infringement in connection with those other episodes, let alone facts that might somehow tie Monster to them so as to support a claim of willfulness with regard to the Ruckus in the Rockies video, would therefore require the paradigmatic "trial within a trial" that Rule 403 disfavors. *See, e.g.*, *United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (upholding exclusion of testimony to avoid "trial within a trial"); *United States v. Al Kassar*, 582 F. Supp. 2d 498, 500 (S.D.N.Y. 2008), *aff'd*, 660 F.3d 108, 123–124 (2d Cir. 2011) ("[T]he situations are not, on their face, analogous, and it would require a trial within a trial before the jury could determine whether there was any meaningful analogy at all."); *ESPN, Inc. v. Office of Comm'r of Baseball*, 76 F. Supp. 2d 383, 407 (S.D.N.Y. 1999) ("The probative value of such an exercise is vastly outweighed by the confusion and delay that would inevitably result from conducting a trial within a trial."). The Beastie Boys and Monster would presumably litigate how the inclusion of Beastie Boys' music in these other videos came about; whether this inclusion was unlawful or authorized; if unlawful, whether, under the facts and circumstances, Monster bore responsibility for the violation of the Beastie Boys' rights; and if so, whether Monster's conduct was willful. This exercise would unavoidably take up significant time: Presentation of the proof as to the other two episodes at trial could easily take much more time

than the proof as to the Ruckus in the Rockies Video, particularly insofar as the Monster Army
Videos were made by six separate athletes.  Under these circumstances, admission of evidence of
these other videos would present a substantial risk of trial delay and confusion, and the jury
could well lose focus on the distinct episode at issue in this case.

Revealingly, it appears that the Beastie Boys have not contemplated the implications of
their bid to offer such videos.  The Joint Pretrial Order does not reflect any intention by the
Beastie Boys to thoughtfully litigate the facts and context of these other videos.  It does not
identify as proposed witnesses any of the athletes who created the Monster Army videos, nor
anyone who plans to offer testimony as to the Wheels Fest Video.  Indeed, the Beastie Boys do
not appear to contemplate offering any percipient fact witnesses to establish the circumstances
under which those videos came into being.  It appears instead that the Beastie Boys have
contemplated simply offering the bare fact of these other ostensibly infringing videos, and from
this fact arguing to the jury that these videos were infringing and that the fact of them reveals
that Monster's conduct in this separate case was therefore more likely willful.  Although such a
clipped presentation (assuming no rebuttal evidence by Monster) would presumably limit the
trial delay occasioned by admission of proof of these extrinsic episodes, it would do so at grave
risk to the truthseeking process.  The jury, told only of the fact of these other alleged violations
of the Beastie Boys' rights, would be given no reliable means whatsoever to assess whether these
other episodes actually shed any light on whether Monster acted willfully in connection with the
Ruckus in the Rockies Video.

Under these circumstances, the outcome under Rule 403 is easily reached.  Introduction
of these other incidents would create a risk of unfair prejudice, confusion, and delay that would
decisively outweigh any slight probative value.  Accordingly, Monster's motion *in limine* to

5

preclude the Beastie Boys from presenting evidence of these other alleging infringing videos at trial is granted.  If the Beastie Boys wish to attempt to establish willfulness, such a showing must be made solely on the basis of evidence relating to the Ruckus in the Rockies Video, not on the basis of extrinsic evidence of these other videos.

## II.      The Beastie Boys' Motion for Leave to File an Amended Complaint

On February 14, 2014, the Beastie Boys moved for leave to amend the Complaint, Dkt. 72, and filed a declaration, Dkt. 73 ("Puvalowski Decl.") and memorandum of law in support, Dkt. 74 ("Beastie Amendment Br.").  On February 19, 2014, Monster filed an opposition, Dkt. 81 ("Monster Amendment Br.") and an associated declaration, Dkt. 82 ("Pohl Decl.").

The Beastie Boys request leave to amend the Complaint in three ways, the first two of which are uncontroversial.  First, they seek to correct the caption so as to name Monster Energy Company as the defendant.  That request is unnecessary, as the Court issued an order to that very effect on November 4, 2013.  *See* Dkt. 52.  Second, they seek to withdraw the ninth and eleventh claims.  Monster does not object to this application, *see* Monster Amendment Br. 16, and the Court therefore grants it.

The Beastie Boys' third request is to add copyright claims based on Monster's allegedly unauthorized use of a fifth Beastie Boys song, "Pass the Mic."  Monster strenuously objects to this motion.  It notes, *inter alia*, that the Civil Case Management Plan and Scheduling Order, so-ordered by the Court on November 16, 2012, stated that "[a]mended pleadings may not be filed and additional parties may not be joined except with leave of the Court.  Any motion to amend or to join additional parties shall be filed within thirty (30) days from the date of this Order."  Dkt. 15.

Under Federal Rule of Civil Procedure 15(a)(2), "[a] court should freely give leave [to amend] when justice so requires."  However, "[w]here, as here, a scheduling order governs amendments to the complaint . . . the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009) (citation omitted).  Rule 16(b) "provides the district courts discretion to ensure that limits on time to amend pleadings do not result in prejudice or hardship to either side."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243–44 (2d Cir. 2007).  The Second Circuit instructs that, in determining good cause, a district court's "primary consideration is whether the moving party can demonstrate diligence.  It is not, however, the only consideration.  The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  *Id.* at 244.  A district court's decision to grant or deny leave to amend is "an exercise of its broad discretion concerning the pleadings."  *Id.* at 245.

The Court concludes that good cause exists for amending the Complaint to include the Beastie Boys' copyright claims pertaining to "Pass the Mic."

As to diligence, the Beastie Boys apparently discovered the alleged infringement of "Pass the Mic" in late July 2013, *see* Beastie Amendment Br. 3.  This discovery came after the close of fact discovery, *see* Dkt. 25, and during expert discovery, *see* Dkt. 35.  On August 1, 2013, the Beastie Boys, with some promptness, noted the alleged infringement of "Pass the Mic" in their memorandum of law in support of Z-Trip's motion for summary judgment.  *See* Dkt. 40 at 1 n.1.  Five days later, on August 6, 2013, the Beastie Boys provided Monster with the expert report of their musicologist, which stated that "Pass the Mic," in addition to the four songs listed in the

Complaint, can be heard on the Video. *See* Beastie Amendment Br. 3. The Beastie Boys appear then to have waited until the end of summary judgment on the third-party complaint, which concluded on November 4, 2013, Dkt. 51, and then again during the pendency of settlement talks, *see* Dkts. 53, 59, before stating, at the court conference held on January 13, 2014, that they intended to move to amend the Complaint to raise claims as to that song.

Although the Beastie Boys' delay in formally moving to amend is regrettable, the Beastie Boys do appear to have promptly informed Monster and the Court of their discovery of the fifth song. And, with fact discovery already complete at the time the fifth song was discovered, with the Court's decision as to summary judgment on Monster's third-party claims pending, with the Court's having encouraged the parties to discuss settlement during this period, and with the fifth song appearing not to raise any factual or legal issues not already raised by the four songs that all along had been part of this case, the Beastie Boys may not have perceived urgency in acting to formally add such claims. Although the issue is a close one, the Court concludes that the Beastie Boys acted with sufficient diligence in notifying Monster and the Court of the existence of potential claims based on Monster's inclusion of "Pass the Mic" in the Ruckus in the Rockies Video which it posted.

This modicum of diligence suffices here to justify the late addition of these claims, because Monster has completely failed to show prejudice from the timing of this amendment. Monster states that the addition of claims based on "Pass the Mic" would occasion the need for additional discovery, but Monster fails to specify any particular such discovery. Monster's silence on this point speaks loudly. It reveals that Monster has not been able to identify any concrete discovery that the "Pass the Mic" claims would necessitate. Nor can the Court fathom any concrete need for additional discovery. Monster does not appear to dispute that the Video

includes "Pass the Mic," or to claim that the number of Beastie Boys songs used in the Video

bears materially on liability or willfulness.  As to damages, the damages experts on both sides

have already incorporated the alleged use of "Pass the Mic" in their reports, because the song

was identified during expert discovery.  *See* Beastie Amendment Br. 3–4.  Indeed, tellingly, none

of the voluminous pre-trial materials have identified legal or factual issues specific to any

particular one of the five Beastie Boys songs that appear on the video.

 "Having determined that Plaintiffs have shown good cause for their proposed amendment

under Rule 16(b), the Court next must address the factors set forth in Rule 15(a)."  *Estate of

Ratcliffe v. Pradera Realty Co.*, No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at \*4 (S.D.N.Y.

Oct. 19, 2007).  Rule 15(a) provides that "a party may amend the party's pleading only by leave

of court . . . and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  "A

Court should deny a motion to amend only for good reasons, such as 'undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of amendment.'"  *Estate of Ratcliffe*, 2007 WL 3084977, at \*4

(quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

 As to this standard, Monster argues that it would be futile to allow the Beastie Boys to

plead infringement of the two "Pass the Mic" sound recording copyrights because the Beastie

Boys did not own that copyright at the time the lawsuit was filed.  Monster Amendment Br. 13–

15.  Instead, Monster argues, the Beastie Boys acquired an interest in the sound recording for

"Pass the Mic" only after they filed the Complaint, as a result of an assignment agreement, Pohl

Decl. Ex. A (the "Assignment Agreement"), meaning the Beastie Boys did not have standing to

bring this claim as of the date the Complaint was filed.  Monster Assignment Br. 14.  Monster

9

also argues that the Assignment Agreement did not convey to the Beastie Boys the right to sue for earlier infringements, because it lacked any clear language to that effect. *Id.* Monster, in fact, has made a similar argument with respect to three of the four songs included in the original Complaint: "So Whatcha Want," "Looking Down the Barrel of a Gun," and "Sabotage." *See* Dkt. 70 ("Monster Pretrial Br.") at 6–9.

The Court is unpersuaded. Page 1 of the Assignment Agreement expressly states that it is effective as of December 2, 1999. Contract law gives effect to such retroactive arrangements. *See, e.g.*, *U.S. Bank, N.A. v. Squadron VCD, LLC*, No. 10 Civ. 5484 (VB), 2011 WL 4582484, at *5 (S.D.N.Y. Oct. 3, 2011) *aff'd*, 504 F. App'x 30 (2d Cir. 2012). Accordingly, the Beastie Boys had an ownership interest in the sound recordings as of December 2, 1999, well before they filed the Complaint. The ability to sue for copyright infringement can be retroactively acquired. *See Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 317 (S.D.N.Y. 1996) (Cote, J.) ("[A] party can cure a standing defect with a second assignment which explicitly transfers causes of action for infringements prior to the initial assignment."). The Court is also unmoved by Monster's observation that an assignment of an accrued cause of action must be explicit, because the back-dated Assignment Agreement explicitly transfers all claims that accrued after the Effective Date. The cases Monster cites are inapposite because they do not address agreements which provide for effective dates that precede the date of the filing of the action. The Beastie Boys assuredly have the right to sue for the Video's alleged infringement. Allowing them to add the "Pass the Mic" sound recording claim would not, therefore, be futile. The Court therefore grants the Beastie Boys leave to file the Proposed Amended Complaint included as Exhibit A to the Declaration of Kevin R. Puvalowski. Dkt. 73.

Finally, as to additional discovery:  If Monster can now identify concrete discovery relating to the "Pass the Mic" claims that it believes it must take, Monster's counsel should notify the Beastie Boys as to this discovery by Friday, March 21, 2014, and the parties should meet and confer to arrange for this discovery to proceed expeditiously.  The Court expects the Beastie Boys to be fully cooperative with any reasonable discovery requests, and if there is disagreement among the parties, to promptly bring any such dispute to the Court.  The Court does not anticipate any need to change the trial date.

## III.   The Beastie Boys' Motion to Exclude the Testimony of Erich Joachimsthaler

Monster intends to offer expert testimony from Erich Joachimsthaler concerning (1) "the likelihood of a consumer association between the Monster brand and the Beastie Boys as a result of watching" the Video; and (2) the impact on, and the value of the Video to, the Monster brand. *See* Dkt. 78 Ex. A ("Joachimsthaler Rep.") ¶ 7.  Much as Monster moved to preclude the Beastie Boys' expert, the Beastie Boys move to preclude Joachimsthaler's testimony from trial.  Dkt. 76. For the reasons that follow, the Beastie Boys' motion to preclude this testimony is denied, except to the limited extent specified below.

### A.   Applicable Legal Standards

"The proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."  *United States v. Williams,* 506 F.3d 151, 160 (2d Cir. 2007).  The district court must ensure "'that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Id.* (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)).  The Court's task "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1991).  Pursuant to Rule 403, the Court may also exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Important here, "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion per se inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  "The judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.*  (citations omitted).  "This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.*

### B.      Discussion

Joachimsthaler is an expert in branding.  He has published two books and numerous articles on marketing and branding, held faculty positions at prominent universities, and been a professional in the branding and marketing field for more than 20 years.  Joachimsthaler Rep. ¶¶ 1–4.  The Beastie Boys do not dispute his expertise.  Instead, they question his methodology and the relevance and potential prejudice of his testimony under Federal Rules of Evidence 401 and 403.

### 1.      Likelihood of Consumer Association

Joachimsthaler's Report opines that the Video did not transfer any association between the Beastie Boys and Monster into consumers' long-term memory, because the Video was not

itself memorable, nor part of a sustained advertising campaign that would tend to associate the Beastie Boys with Monster.  Joachimsthaler Rep. ¶¶ 48–69.  This testimony rests on a reliable foundation: academic research concerning the circumstances under which consumers remember advertisements.  *Id.* ¶¶ 50–54.  The Beastie Boys assert that this research is too general to shed much light on this particular Video, and that Joachimsthaler failed to consider certain relevant facts, *see* Beastie Joachimsthaler Br. 6–9, 11–12, but these concerns go to the persuasiveness and credibility of Joachimsthaler's testimony.  Such concerns are best tested by "[v]igorous cross-examination [and] presentation of contrary evidence," not by its wholesale preclusion.  *Daubert*, 509 U.S. at 596.

This testimony is relevant to various aspects of damages.  First, it is potentially relevant to the Beastie Boys' actual damages—damages to the Beastie Boys would arguably be little, if any, if viewers would neither remember the Video nor retain from it an association between the Beastie Boys and Monster.  Second, it is relevant to any damages claim that may be made based on Monster's profits, although it is unclear whether the Beastie Boys are seeking such profits.  *Compare* Dkt. 1 (the Complaint) ¶ 81 (seeking treble damages of Monster's profits) *with* Dkt. 79 (Beastie Boys' Proposed Jury Instructions) at 37–39 (not requesting damages instruction based on Monster's profits).  Finally, the testimony is potentially relevant to statutory damages on the copyright claims, which are measured in part based on the profit earned because of the infringing work.  *See Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010).

Joachimsthaler's "likelihood of association" testimony is subject to one legitimate pretrial challenge, in that, as formulated in his report, it might confuse or mislead the jury as to the standard for liability under the Lanham Act, which is "likelihood of confusion."  *See* 15 U.S.C. § 1125 ("Any person who, on or in connection with any goods or services . . . uses in commerce

any word . . . which . . . is *likely to cause confusion*, . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.") (emphasis added); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986) (liability under the Lanham Act "requires only a likelihood of confusion as to source"). Monster appears to conflate Joachimsthaler's concept of "likelihood of association" with the Lanham Act liability standard of "likelihood of confusion," and depending on the manner of its presentation at trial, the Court has some concern that Joachimsthaler's testimony could be mistakenly understood as reformulating the liability standard.  *See* Monster Joachimsthaler Br. 11–12; Dkt. 65 ("Monster Thomas Br.") at 23–24.  In fact, the two concepts are logically distinct.  "Confusion" refers to a viewer's reaction upon seeing an advertisement, while "association" relates to the durability of that reaction.  An advertisement can be confusing without being memorable; a defendant does not escape liability under the Lanham Act merely because his advertisement is not memorable.

Joachimsthaler's testimony is relevant and admissible as to damages, and the Court will allow him to testify as to damages.  It will not, however, allow Joachimsthaler to testify as to the "likelihood of confusion," because his report contains nothing relevant to the Lanham Act liability standard, and does not purport to address that issue.  The Court will instruct the jury that Joachimsthaler's testimony is relevant solely to damages, and expects counsel for Monster to present its examination of him at trial so as to not give rise to confusion as to the purpose for which it is being received.

14

## 2.      Impact of and Value of the Video to the Monster Brand

Joachimsthaler also proposes to testify to the Video's impact on and value to the Monster brand.  This is plainly relevant to Monster's profits, which in turn may be relevant to statutory damages on the Beastie Boys' copyright claims and to damages under the Lanham Act if the Beastie Boys seek such damages keyed to Monster's profits.

The Beastie Boys object to this testimony on the grounds that the expert's methodology is "nonrandom" and "unscientific."  For the most part, the Court is unpersuaded.  Joachimsthaler's analysis of Monster's marketing efforts, and his reasoning as to why the Video added little to those efforts, is based principally upon his experience and research in the world of marketing, which qualify him to opine on such matters.  Contrary to the Beastie Boys' objections, it is not necessary that Joachimsthaler construct a formal model to offer expert testimony on these points.  "Technical . . . or other specialized knowledge," *see* Fed. R. Evid. 702, may be relevant and reliable, and therefore admissible under *Daubert*, even if the field of knowledge, be it marketing or plumbing, does not readily lend itself to a formal or quantitative methodology.

However, one basis for Joachimsthaler's testimony is plainly unreliable.  Joachimsthaler states that he obtained expertise about consumer perceptions of Monster's brand by "ask[ing] people in my office . . . [who] have an age range from 18 to 55 . . . to help me understand the Monster Energy brand."  Dep. 57.  This basis for an expert opinion is unreliable and blatantly non-rigorous.  In non-legal terms, Joachimsthaler's attempt to cite his co-workers' perceptions of a client product as a basis for his expert opinion does not pass the laugh test.  *See Lucky Brand Dungarees, Inc. v. Ally Apparel Resources LLC*, No. 05 Civ. 6757 (LTS), 2009 WL 969930 (April 6, 2009) (barring testimony proffered by Joachimsthaler on similar grounds).

Accordingly, Joachimsthaler is precluded from offering any expert testimony that recites or relies, at all, upon his conversations with co-workers.

## IV.   Monetary Relief under the Lanham Act

Although not briefed by the parties, the Court notes that there is a disagreement within this Circuit concerning the burden of proof for obtaining monetary relief under the Lanham Act, 15 U.S.C. § 1125(a).  Because this issue bears on the burden of proof at trial and the instructions the Court will give the jury, the Court hereby informs the parties of its views as to this issue.

In the Second Circuit, until 1999, the longstanding common law rule prevailed: to prove liability and obtain injunctive relief under the Lanham Act, a plaintiff need only show a likelihood of confusion, but to obtain monetary relief he or she was required to show either (1) actual confusion; or (2) bad faith, meaning intentional deception or willfulness.  *See GMA Accessories, Inc. v. BOP, LLC*, 765 F. Supp. 2d 457, 469 (S.D.N.Y. 2011) ("Prior to the 1999 Amendment, the law of this Circuit was well settled, that '[i]n order to recover an accounting of an infringer's profits, a plaintiff must prove that the infringer acted in bad faith.'  *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749 (2d Cir. 1996) (emphasis added).  Also, '[t]o receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive.'  *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 493 (2d Cir. 1998) (emphasis added).").  This was also the "dominant view" among other courts.  *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174 (3rd Cir. 2005).

In 1999, however, Congress amended 15 U.S.C. § 1117, the provision of the Lanham Act which provides for damages, to state that damages may be obtained for willful violations of § 1125(c), a provision not at issue here which concerns the dilution of famous marks, for which

damages had not previously been available.  The opening sentence of § 1117 now reads as follows, with the new clause in italics:

> When a violation of any right . . . under section 1125(a) or (d) of this title, *or a willful violation under section 1125(c) of this title*, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

Judges in this district have reached different conclusions over whether "the addition of a remedy for 'a willful violation' of section 1125(c) altered the common-law rule in this circuit that a monetary remedy for violation of section 1125(a) is only available if there was actual confusion or willful deception (bad faith)."  *GMA Accessories*, 765 F. Supp. 2d. at 469.  Judges Marrero and Wood have held, on a plain language reading, that the 1999 Amendments abrogated this Circuit's prior rule regarding damages for violations of § 1125(a).  *See Cartier v. Aaron Faber Inc.*, 512 F. Supp. 2d 165 (S.D.N.Y. 2007) (Marrero, J.); *Nike, Inc. v. Top Brand Co. Ltd.*, No. 00 Civ. 8179 (KMW), 2005 WL 1654859 (S.D.N.Y. July 13, 2005) (Wood, J.).  Judge Wood also cited the principle that "'where Congress includes particular language in one section of a statute'"—here, the term willful—"'but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Nike*, 2005 WL 1654859, at *10 (quoting *Duncan v. Walker*, 533 U.S. 167, 173 (2001)).  The Third Circuit has similarly held that the 1999 Amendment abrogated its analogous common-law rule regarding § 1125(a).  *Banjo Buddies*, 399 F.3d at 171, 174.  And the Fifth Circuit has relied in part on the 1999 Amendment in declining to adopt a bright-line willfulness rule regarding § 1125(a).  *Quick Techs v. Sagr Group Plc*, 313 F.3d 338 (5th Cir. 2002).

On the other hand, Judges Forrest, Castel, Pauley, Stein, Scheindlin, and Cote have held that, because Congress is assumed to have been aware of existing law when it passes or amends

legislation, and because it did not expressly change the requirements for damages under § 1125(a), this Circuit's rule survived intact. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, No. 12 Civ. 7992 (KBF), 2014 WL 185222 (S.D.N.Y. Jan. 16, 2014) (Forrest, J.); *GMA Accessories*, 765 F. Supp. 2d at 470 (Castel, J.); *Mr. Water Heater Enterprises, Inc. v. 1–800–Hot Water Heater, LLC*, 648 F. Supp. 2d 576 (S.D.N.Y. 2009) (Pauley, J.); *Life Services Supplements, Inc. v. Natural Organics, Inc.*, No. 03 Civ. 6030 (SHS), 2007 WL 4437168 (S.D.N.Y. Dec. 17, 2007) (Stein, J.); *Malletier v. Dooney & Bourke, Inc.*, 500 F. Supp. 2d 276 (S.D.N.Y. 2007) (Scheindlin, J.); *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 Civ. 3691 (DLC), 2004 WL 326708 (S.D.N.Y. Feb. 23, 2004) (Cote, J.).  Important here, Judges Castel and Stein have also concluded that the legislative history and headings of the 1999 Amendment indicate that "Congress intended only to clarify the standard of recovery for a dilution claim (under 1125(c)), and was not considering claims under 1125(a)."  *GMA Accessories*, 765 F. Supp. 2d at 470; *see also Life Services Supplements*, 2007 WL 4437168, at *6.  Judge Stein has further urged that, absent a clear abrogation, district courts continue to follow the Circuit's long-standing precedent.

Although the Second Circuit has not directly addressed this issue, *see Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013) (declining to decide whether the 1999 Amendment changed the common law rule), unpublished summary orders continue to apply the common law rule.  *See GMA Accessories*, 765 F. Supp. 2d at 470 (citing cases).

The Court holds, for the reasons cited above, that this Circuit's rule has survived the 1999 Amendment.  The Court is persuaded by its sister courts' analysis that "Congress intended only to clarify the standard of recovery for a dilution claim (under 1125(c)), and was not considering

claims under 1125(a)." *GMA Accessories*, 765 F. Supp. 2d at 470; *see also Life Services Supplements*, 2007 WL 4437168, at *6.

Accordingly, for the Beastie Boys to receive an award of damages under the Lanham Act, they "'must prove either actual consumer confusion or deception resulting from the violation, or that [Monster's] actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion.'"[1] *Champagne v. Diblasi*, 36 F. App'x 15, 17 (2d Cir. 2002) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992)) (other citations omitted).  To receive an award of Monster's profits under the Lanham Act, the Beastie Boys must prove that the infringement was willful. *Fendi*, 507 F. App'x at 30–31.  "To prove willfulness, a plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard or willful blindness." *Id.* at 31 (applying the test for willfulness under the Copyright Act to a claim under the Lanham Act).

## V.   Issues Raised in Monster's Pretrial Memorandum of Law

The Court takes this occasion to address two issues that Monster raised in its pretrial memorandum.  The other issues raised there were either resolved elsewhere in this decision or in the Court's earlier decision concerning the Beastie Boys' expert, Lisa Thomas, Dkt. 89, or are appropriately reserved for trial.

First, Monster argues that the Beastie Boys own only a 50% interest in each copyright at issue, such that their recovery must be limited to 50%.  Monster Pretrial Br. 9–10.  The Beastie Boys do not appear to dispute this fact.  *See* Dkt. 86 ("Beastie Pretrial Br.") at 7.  Instead, they

---

[1] The Court is aware that a sentence in its recent opinion concerning the Beastie Boys' expert, Lisa Thomas, might have left a contrary impression. *See* Dkt. 89 at 5 ("And the Beastie Boys do not need to show actual confusion to prevail on their Lanham Act claim.").  That sentence however, pertained to liability under the Lanham Act, not the availability of monetary relief.

argue, their 50% interest is not relevant to the jury's tabulation of damages; rather, any such award of damages, if not already reflecting the 50% discount, must be discounted to reflect the Beastie Boys' interest in calculating the final judgment. *Id.* The Court agrees with this approach. *See Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 268, 270 (2d Cir. 1944) ("The judgment must be modified to provide that the recovery shall be confined to the plaintiff's own part.") (Hand, J.).

Second, Monster argues that the Beastie Boys are entitled to a single award of statutory damages per each song. Monster Pretrial Br. 15–16. Monster argues that the Copyright Act, 17 U.S.C. § 504(c), allows for recovery for each "work" infringed, and that "[w]here the same plaintiff owns both the musical composition copyright and the sound recording copyright, awarding damages on a per work—or per song—basis is appropriate." Monster Pretrial Br. 15. But Monster's factual predicate appears to be wrong: The Beastie Boys assert, and Monster has as of yet not disputed, that (1) the sound recording copyrights are owned by the Beastie Boys Partnership, but (2) the musical composition copyrights are owned by Brooklyn Dust Music, a separate entity. Beastie Pretrial Br. 10. Monster, however, is at liberty to "attempt[ ] to prove at trial that [the Beastie Boys Partnership and Brooklyn Dust] are so closely affiliated as to be considered one company for statutory damages purposes." *Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 n.1 (S.D.N.Y. 2001).

## CONCLUSION

For the foregoing reasons, the Court (1) grants Monster's motion *in limine* to preclude from evidence the Monster Army and Wheels Fest videos; (2) grants the Beastie Boys' motion for leave to file its proposed Amended Complaint; (3) denies the Beastie Boys' motion to preclude the testimony of Erich Joachimsthaler, except to the limited extent specified in Section

III, *supra*; (4) holds that, in order for the Beastie Boys to receive an award of damages under the Lanham Act, they "must prove either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion," *Champagne*, 36 F. App'x at 17 (citations omitted), and that in order for the Beastie Boys to receive an award of Monster's profits under the Lanham Act, the Beastie Boys must prove that the infringement was willful, *see Fendi*, 507 F. App'x at 30–31; (5) holds that the Beastie Boys' 50% interest in the copyrights at issue does not limit the damage award to be determined by the jury, but instead will be relevant to adjustments to the final judgment; and (6) holds that the Beastie Boys Partnership and Brooklyn Dust Music are entitled to separate awards for their separate copyrights, unless Monster shows at trial that they should be considered one entity for the purpose of determining statutory damages.

The Court also reminds the parties that, in advance of the pretrial conference scheduled for April 14, 2014, at 9:30 a.m., each party should deliver to the Court two binders containing courtesy copies of the proposed exhibits. The parties should expect that conference to last much if not all of the morning, as the Court intends to inquire in detail as to the evidence to be offered at trial. The Court also reminds the parties that, before trial, each party should deliver to the Court two binders containing any portions of depositions that it may use at trial.

The parties have requested that certain documents, filed in connection with the parties' pretrial motions, be filed under seal. However, for the most part, the parties have not specified what about the information contained in those documents is genuinely confidential, apart from the parties' designation of those documents as such. Without a convincing explanation addressed to the level of the particular document, the Court is disinclined to allow the documents to be filed under seal. To the extent a party believes that a part of a particular submission is

properly filed under seal, it must, within one week of this opinion, submit a letter to the Court that concisely and concretely explains, for each document that it proposes to redact or withhold altogether from public filing, why such treatment is proper.   The Court will not accept conclusory claims of the need for confidentiality or sustain a proposed redaction solely on the grounds that, in discovery, the document was designated as confidential.

The Clerk of Court is respectfully directed to terminate the motions pending at docket numbers 66, 72, and 76.

SO ORDERED.

_Paul A. Engelmayer_

Paul A. Engelmayer
United States District Judge

Dated: March 18, 2014
        New York, New York

22