UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BEASTIE BOYS, A NEW YORK PARTNERSHIP, :
MICHAEL DIAMOND, ADAM HOROVITZ AND : Case No. 12 CV 6065(PAE)
DECHEN YAUCH AS EXECUTOR OF THE ESTATE :
OF ADAM YAUCH, DECEASED, EACH :
INDIVIDUALLY AND COLLECTIVELY D/B/A :
BROOKLYN DUST MUSIC, :
 :
               Plaintiffs, :
 :
   -against- :
 :
MONSTER BEVERAGE COMPANY, :
 :
              Defendant. :
------------------------------------------------------------------------X
PAUL A. ENGELMAYER, U.S.D.J.:

# DEFENDANT'S SUPPLEMENTAL PROPOSED JURY INSTRUCTIONS

Whether Plaintiffs Beastie Boys Partnership and Brooklyn Dust Music Partnership May Be Considered One Entity For Statutory Damages

      Plaintiffs have alleged that the Beastie Boys Partnership and the Brooklyn Dust Music Partnership are separate entities and are, therefore, entitled to two (2) awards of statutory damages for each song infringed. However, if you conclude that the Beastie Boys Partnership and the Brooklyn Dust Music Partnership are so closely affiliated as to be considered one company, you should award a single award of statutory damages per song infringed.[1]

      Factors you may consider in determining whether the Beastie Boys Partnership and Brooklyn Dust Music Partnership are so closely affiliated as to be considered one company are:

---

[1] *Teevee Toons, Inc. v. MP3.com, Inc.,* 134 F. Supp. 2d 546, n. 1 (S.D.N.Y. 2001); *King Records, Inc. v. Bennett*, 438 F Supp 2d 812, 864 (M.D. Tenn 2006).
#383005.1

1. Ownership by the same individuals, both presently or throughout the lifetime of the partnerships.

2. The existence of overlapping members between the partnerships, both presently or throughout the lifetime of the partnerships;

3. Overlapping identity of interests and incentives between the two partnerships;[2]

4. Whether the two partnerships operate out of the same place of business, or share offices;

5. Whether the two partnerships share employees, agents, managers, or other representatives;

6. Whether the two partnerships have overlapping contracts or agreements;

7. Whether the businesses of the two partnerships are related; and

8. Whether there is an identity of interest.

9. Whether the two partnerships were injured in the same way by the same alleged unlawful acts.[3]

10. Whether the asset(s) owned by each partnership relate to the same underlying music.

---

[2] *Melwani v. Jain*, 02-civ-1224, 2004 U.S. Dist. LEXIS 16867, at * 9, (S.D.N.Y. Aug. 23, 2004).

[3] *Kitchen Connection, Inc. v. Pampered Chef, Ltd.*, No. 08-cv-4321, 1999 U.S. Dist. LEXIS 18669, at *25 (N.D. Ill. Nov. 30, 1999).

Discretion to Discount Statutory Damages to Avoid Double Compensation

As I have mentioned, you have broad discretion in awarding statutory damages within the ranges prescribed.[4]  If you believe that awarding Plaintiffs two awards of statutory damages for each song infringed would be cumulative or unwarranted in the circumstances presented, you may exercise your discretion to discount the award.  For example, you may determine that under the facts of this case, awarding two separate awards for each song would constitute double compensation to Plaintiffs for the same injury and a sufficient deterrent effect can be accomplished under a single award of statutory damages per song.[5]  Likewise, you may also consider whether Plaintiffs' musical compositions had any independent economic value to Defendant, or whether it was simply incorporated into the value of the sound recordings in the Video.[6]

---

[4]  *Nat'l Football League v. Primetime 24 Joint Venture*, 131 F. Supp. 2d 458, 473 (S.D.N.Y. 1991).

[5]  *See Tu v. Tad Sys. Tech.*, No. 2009 U.S. Dist. LEXIS 82410, at *12-13 (E.D.N.Y. Sept. 9, 2009); *Sparaco v. Lawler, Matusky, Skelly Engrs., LLP*, 313 F Supp 2d 247, 255 (S.D.N.Y. 2004).

[6]  *Spooner v. EEN, Inc.*,No. 08-cv-262,  2010 U.S. Dist. LEXIS 46332, 16, Copy. L. Rep. (CCH) P29,941, (D. Me. May 11, 2010)

**Section 43(a) of Lanham Act - Infringement Elements and Burden of Proof**

On the plaintiffs' claim for False Designation of Origin under Section 43(a) of Lanham Act, the plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1.  Plaintiffs' mark is a valid, protectable trademark

    a.  "MCA" is not a registered trademark. Unregistered trademarks must be proved to be valid by the plaintiff. A valid trademark is a word, symbol, or device that is either:

    i.  inherently distinctive; or

    ii. descriptive, but has acquired a secondary meaning.

    b.  Only a valid trademark can be infringed. Only if you determine plaintiffs proved by a preponderance of the evidence that the MCA mark is a valid trademark, and has been used by plaintiffs as a trademark, should you consider whether defendant's actions infringed it.[7]

2.  plaintiffs use the term as a trademark; and

3.  the defendant used plaintiffs' mark without the consent of the plaintiffs in a manner that is likely to cause confusion, or to cause mistake or deception, among ordinary and reasonable consumers as to the source, sponsorship, affiliation, or approval of the goods, services or in connection with the defendant's activities.

<u>Likelihood of Confusion Factors</u>

In evaluating whether or not there is a likelihood of confusion, you are to consider various factors, including those that I will discuss momentarily. These factors are simply a guide

---

[7] See, *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,* 835 F.2d 990, 992-993, 5 U.S.P.Q.2d 1262 (2d Cir. 1987) (the "two-step test" for protection of unregistered marks under 43(a) is: validity and infringement).

to help you determine whether confusion is likely to result from use of the Plaintiffs' marks. No single factor or consideration is dispositive, and Plaintiffs need not prove that all, or even most, of the factors listed below are present in any particular case to be successful. Nor are you limited to consideration of only these factors. You must consider and weigh all of the relevant evidence in determining whether there is a likelihood of confusion. Factors you may consider include:

1. *Strength or weakness of Plaintiffs' mark.* Strong marks receive a broad level of protection under the trademark laws; weak marks receive a narrower range of protection. In evaluating the strength of Plaintiffs' mark, you should not rely solely on the fact that Plaintiffs have a registered trademark as an indicator of strength. A mark's strength is measured by both its inherent strength (how distinctive it is) and by its acquired strength (the degree of consumer recognition it has obtained in the marketplace). The more that purchasers or users associate Plaintiffs' trademark uniquely with a single source of a product or service, then the stronger Plaintiffs' mark is and the more likely it is that purchasers or users would be confused about the source of the products or services if Defendants use a similar mark.

2. *Degree of similarity or dissimilarity between the marks of Plaintiffs and Defendants.* In evaluating the similarity or dissimilarity of the marks of Plaintiffs and Defendants, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things

that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.

3. *Competitive proximity or similarity of the parties' products or services.* If both parties use their marks to market the same, related, or complementary types of products or services, then the likelihood of confusion increases. If the parties' respective goods or services are unrelated, then the likelihood of confusion decreases.

4. *Likelihood that Plaintiffs will "bridge the gap" between their products or services and Defendants'*. If the two parties are marketing different products, the probability that Plaintiffs will begin selling the same, related, or complementary products to Defendants' must also be considered. If that probability is high, then the likelihood of confusion increases; conversely, if that probability is low, the likelihood of confusion decreases.

5. *Actual confusion.* Actual confusion is not required for you to find a likelihood of confusion. However, if Defendants' use of Plaintiffs' mark has led to instances of actual confusion among relevant consumers, this may be a strong indication that confusion is likely. Even if there are instances of actual confusion, you may conclude that there is no likelihood of confusion if, for example, the instances of actual conclusion were rare and infrequent.

6. *Marketing and advertising channels used.* If the parties' respective products or services are likely to be sold in the same or similar channels of trade, or to the same or similar classes of customers, or advertised in similar media, this may increase the likelihood of confusion. Conversely, if the parties' respective products or services are likely to be sold in different outlets, or to different classes of customers, or advertised in different media, this may reduce any likelihood of confusion.

#383005.1