# SheppardMullin

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
212.653.8701 main fax
www.sheppardmullin.com

212.634.3033 direct
kpuvalowski@sheppardmullin.com

May 30, 2014

Via ECF

Honorable Paul A. Engelmayer
United States District Judge
United States District Court for the Southern
   District of New York
40 Foley Square — Room 2201
New York, New York 10007

Re:   Beastie Boys, et al. v. Monster Energy Company
      12 Civ. 6065 (PAE)

Dear Judge Engelmayer:

As the Court is aware, this firm represents Plaintiffs in the above-referenced matter, and I write with respect to an issue that was raised in the robing room during trial on Thursday, May 29, 2014. Specifically, I write concerning Defendant's suggestion, raised for the very first time in that colloquy, that the number of Facebook notifications transmitted by Monster in this case was just a fraction of Monster's 16 million Facebook followers at the time of the release of the Ruckus in the Rockies Video. For the following reasons, Plaintiffs respectfully move to limit the cross-examination of Plaintiffs' expert, Lisa Thomas and to preclude affirmative testimony on this point, as result of Defendant's disclosure failures on this issue both during discovery and in the Joint Pretrial Order.

As Mr. Kahn described to the Court, at the time Ms. Thomas wrote her initial report, she was operating under an assumption that the Ruckus in the Rockies Video was promoted, among other ways, by Monster's Facebook posting, which she thought was sent to Monster's approximately 23 million Facebook fans. As Defendant has indicated, that initial factual assumption was inaccurate, and the record shows that the number of Facebook fans at the time of the Video's posting was approximately 16 million. The record indicates, for example, that Nelson Phillips told Zach Sciacca with respect to the Ruckus in the Rockies Video: "once you approve we'll post on youtube and notify our 16M fans on fb." (Plaintiffs' Exhibit 134.)[1]

---

[1] Obviously, Mr. Kahn is entitled to cross-examine Ms. Thomas as to her incorrect assumption on the 22 million versus 16 million, an assumption that was cleared up by the time of her second deposition.

# SheppardMullin

Honorable Paul A. Engelmayer
May 30, 2014
Page 2

In the robing room conference on Thursday, Ms. Susman made a factual proffer that, as the Court is aware, led to an extensive colloquy. In that proffer, Ms. Susman stated:

> [T]he testimony is going to be at the time that this post went out, Monster had approximately 16 million fans on Facebook. At that time, Facebook's algorithm, if you will, only permitted for every post a maximum of ten percent of your fans to receive any post unless you paid for it which we did not. . . . This is going to be our proffer presuming if she's going to be allowed -- depending on -- if I may, your Honor, so the maximum number of people is very limited. *We keep track of our Facebook analytics in the regular course of our business* and the administrator of our Facebook page is going to offer evidence that of that ten percent, the maximum number of people that could have received it is in the neighborhood of [six hundred] thousand and of those people, there was some 1200 that actually clicked on the post and of those people, there was a smaller subset that actually clicked on the link.

(May 29, 2014, Rough Trial Transcript at p. 68) (emphasis added).

None of the exhibits marked for use in this trial support Defendant's proffer that the Facebook news feed posting was sent to only a fraction of Monster's Facebook followers. To the contrary, as noted above, the contemporaneous record evidence certainly suggests otherwise. More fundamentally, it does not appear that there was any discovery provided on this issue, either in documentary form or during depositions, even though such information was plainly sought. As to documents, for example, in response to Plaintiffs' First Requests for Production of Documents, Monster agreed to produce, among other things, all relevant non privileged documents "relating to Social Media which have featured any promotions, marketing or advertising relating to any Uses" of Plaintiffs' copyrights or trademarks. After Defendant failed to produce documents in response to this request, counsel for Plaintiffs followed up with a letter dated April 5, 2013, and this request was part of Plaintiffs' application to compel filed in July 2013. (*See* Dkt. 30 at ¶ 5 and Ex. B.)

As to deposition testimony, the person to whom we believe Monster is referring in their proffer is LeRoy Nichols, the Director of Interactive Marketing at Monster. Mr. Nichols was designated as Monster's witness pursuant to Federal Rule of Civil Procedure 30(b)(6) to testify on, among other topics, "Any and all use by Monster of any form of electronic communication to promote, market and advertise Monster, Monster products and Monster events, including but not limited through social networking and microblogging websites, including but not limited to, Facebook, MySpace, Twitter, YouTube, Vimeo and Pinterest ("Social Media"), where any Uses [of Plaintiffs' copyrights and trademarks], including but not limed to the Video . . ., have appeared." Mr. Nichols in his deposition, however, testified that:

> Q. And with regards to the use of social media by Monster, do you keep track of any records with regards to how many whether likes in the case of Facebook, or

# SheppardMullin

Honorable Paul A. Engelmayer
May 30, 2014
Page 3

> how many users with regards to other aspects of social media? Do you keep track of that?
> A. We don't track it, but it's referenceable in general. If you want to know how many Facebook fans you have, you just look at our Facebook page. It says we have 23,000 [sic] fans.
> Q. Do you -- has Monster kept track of that over time?
> A. Monster does not keep track of it; Facebook keeps track of it.
> Q. Okay. So if -- if I were to say, you know, how many Facebook -- Facebook users did Monster have in 2010, you wouldn't be able to tell me that?
> A. No.
>
> \*\*\*
>
> Q. Well, in terms of people who participate with regards to Monster's Facebook account, you don't keep any
> 28:10 records with regards to that?
> A. No.
> Q. Has there been any record of that kept over -- over time --
> A. No.
> Q. -- by Monster, that you're aware of?
> A. No.

(May 31, 2013, 30(b)(6) Deposition of LeRoy Nichols at 27:13-28:16.) We submit that Mr. Nichol's deposition testimony is directly contrary to Defendant's proffer that "we keep track of our Facebook analytics in the regular course of our business. . . ." (*See* May 29, 2014, Rough Trial Transcript.)

Moreover, this issue is in no way fairly called out in the summary of Mr. Nichols' testimony in Defendant's portion of the Joint Pretrial Order, which indicated that Mr. Nichols would testify regarding:

- the scope of his duties and responsibilities
- the role of social media, events and promotional videos, such as the Video in Monster Energy's marketing
- the placement of the Video on YouTube
- the amount of time that the Video could be seen
- the number of views the Video received on the Internet

(May 15, 2014, Proposed Joint Pretrial Order at 8.) None of these topics relate to how many of Monster's Facebook followers would receive a Facebook news feed, and no other witness listed on Monster's witness list covers this issue either.

# SheppardMullin

Honorable Paul A. Engelmayer
May 30, 2014
Page 4

      In sum, Defendants thirteenth hour proffer concerning a supposed limitation of how many of Monster's Facebook followers received the posting in this case is (a) inconsistent with the contemporaneous record evidence, (b) was not disclosed in discovery, (c) is directly inconsistent with the deposition testimony of Monster's own Fed. R. Civ. P. 30(b)(6) witness, and (d) was not made part of the subjects of testimony by Defendant's witnesses in the Joint Pretrial Order.  Given these circumstances, surprising Ms. Thomas with this line of cross-examination is fundamentally unfair to Ms. Thomas and unduly prejudicial to Plaintiffs.  As a result, we respectfully move that such cross-examination be prohibited.  For the same reasons, we move to preclude submission of any evidence on this topic on Defendant's own case.

      Respectfully submitted,

      /s/ Kevin R. Puvalowski

      Kevin R. Puvalowski

      for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:    S. Reid Kahn, Esq.
        Dana Sussman, Esq.