E651bea1

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   BEASTIE BOYS, A NEW YORK
    PARTNERSHIP, MICHAEL DIAMOND,
4   ADAM HOROVITZ AND DECHEN YAUCH
    AS EXECUTOR OF THE ESTATE OF
5   ADAM YAUCH, DECEASED, EACH
    INDIVIDUALLY AND COLLECTIVELY
6   D/B/A BROOKLYN DUST MUSIC,

7                Plaintiffs,

8        v.                              12-CV-6065 (PAE)

9   MONSTER ENERGY COMPANY,

10               Defendant.              Jury Trial

11  ------------------------------x
                                         New York, N.Y.
12                                       June 5, 2014
                                         9:46 a.m.
13
    Before:
14
                    HON. PAUL A. ENGELMAYER,
15
                                         District Judge
16
                        APPEARANCES
17
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
18       Attorneys for Plaintiffs
    BY:  KEVIN R. PUVALOWSKI, ESQ.
19       PAUL W. GARRITY, ESQ.
         KENNETH B. ANDERSON, ESQ.
20       THOMAS M. MONAHAN, ESQ.
         STEPHANIE L. LIMBAUGH, Trial Support Specialist
21
    KANE KESSLER, P.C.
22       Attorneys for Defendant
    BY:  S. REID KAHN, ESQ.
23       DANA M. SUSMAN, ESQ.
         TANYA C. POHL, ESQ.
24
    ALSO PRESENT:  SCOTT WATSON, Trial Support
25
```

E651bea1

```
 1              (Trial resumed)

 2              (In open court; jury not present)

 3              THE COURT:  Okay.  Good morning, counsel.

 4              ALL COUNSEL:  Good morning.

 5              THE COURT:  I hope everyone had a good restful

 6    evening.

 7              I'm going to bring the jury out just for a couple of

 8    housekeeping reasons, to clarify the lunch schedule,

 9    specifically, tell them that Ms. Hummel will be putting in

10    their lunch orders at 11, with the food to arrive at 12:30,

11    just so they have some sense of what the schedule is.  And I'm

12    also going to tell them that of course they should take all the

13    time they need to deliberate, that for their planning purposes,

14    in the event they are still deliberating at the end of the day

15    today, they would be resuming their work on Monday, not

16    tomorrow, because I will be out of state tomorrow, and I just

17    want them to have a heads up now as to that fact.  Any reason I

18    shouldn't do that?

19              MR. PUVALOWSKI:  No, your Honor.

20              MR. KAHN:  No.

21              THE COURT:  Anyone have anything else you want me to

22    advise the jury of or anything else you want to take up?

23              MR. PUVALOWSKI:  Not from plaintiffs, your Honor.

24              MR. KAHN:  No, your Honor.

25              THE COURT:  The other thing is, during the course of
```

E651bea1

1  the day today I have a handful of conferences, a guilty plea, a

2  series of oral arguments, so with regrets, I'll need to be

3  moving you in and out of your stations here.  It may be that to

4  the extent, for example, you have exhibits that you need to

5  pull from in the event that we have a note or something like

6  that, figure out some way that you can have them accessible to

7  you other than at the table in the event that you need to be

8  working on that.

9            Okay.  Very good.  Ms. Hummel, let's bring in the

10  jury.

11            THE DEPUTY CLERK:  Yes, your Honor.

12            (Jury present)

13            THE COURT:  All right.  Good morning, ladies and

14  gentlemen.  I hope you had a nice evening.  I have just a

15  couple of housekeeping things.  One is just to let you know the

16  lunch schedule for today because we're on a different rhythm

17  now with your deliberating and with your work not being in open

18  court.  Ms. Hummel has taken your menus.  At 11:00 she'll put

19  in your orders to the cafeteria.  If all goes according to

20  usual form, your lunches should arrive at 12:30.  By all means

21  eat together in the jury room and use your time productively,

22  if you'd like to deliberate through lunch.  You're also at

23  liberty, at your choice, to take a break and just chat about

24  other things.  I don't control that.  The important thing is

25  that your deliberations must occur only as a group of eight and

E651bea1

1    in the jury room, not as a subset.

2            The other thing is just a planning note.  You should

3    take all the time you need to deliberate and reach a verdict in

4    this case.  In the event that deliberations go on and have not

5    concluded as of the end of the day today, I have an out-of-town

6    commitment tomorrow.  Therefore, if deliberations needed to

7    continue after today, they would be resuming on Monday.  I just

8    wanted to make sure, for your planning purposes, you are

9    mindful of that as you went about your business today.

10           That's all I've got for you.  With that, by all means

11   go back and deliberate, and I look forward to hearing from you.

12           THE DEPUTY CLERK:  All rise.

13           (Jury excused; deliberations resumed; time noted: 9:47

14   a.m.)

15           THE COURT:  Great.  Counsel, I think the next thing I

16   have on my calendar is a guilty plea proceeding at 10:00, so

17   I'll need to use the tables for that.  See you soon.

18           THE DEPUTY CLERK:  All rise.

19           (Recess pending verdict)

20           (In open court; jury not present; 10:50 a.m.)

21           THE COURT:  All right.  Good morning, counsel.  We

22   have received a note which we have marked as Jury Note No. 3.

23   It has been shown to counsel.  For the record, I'm going to

24   read it aloud.

25           "Please provide testimony from N. Phillips, including

E651bea1

1    related evidence re approval of video that he requested from

2    Z-Trip.  We recall Nelson Phillips describing video as a 'web

3    ad.'  Please provide court testimony or deposition from

4    Phillips saying this.  Thank you."

5         It's signed by what appears to be the foreperson and

6    then says:

7         "Also, please provide Exhibits 219, 220."

8         Let's start at the back end of that.  Exhibits 219 and

9    220 are the easy part.  Mr. Garrity, I see you holding them up,

10   correct?

11        MR. GARRITY:  I do.

12        THE COURT:  Do you both agree on what 219 and 220 are?

13        MR. KAHN:  Yes.

14        THE COURT:  Okay.  Then I'll ask you to give it to

15   Ms. Hummel and in a moment, once we're done with this colloquy,

16   she'll give it to the jury.

17        All right.  We now have the issue with respect to the

18   testimony.  Let me hear from counsel.  What I'm hopeful that we

19   can do is that you will agree in short order what is responsive

20   to each of these requests and then we can turn to the

21   mechanical issue of how most efficiently to deliver it to the

22   jury.

23        Have counsel had a chance to reflect, in the brief

24   period of time available, on what is responsive?

25        MR. PUVALOWSKI:  We've begun searching for that

E651bea1

1    testimony, Judge.

2            THE COURT:  Okay.  Mr. Kahn, same answer?

3            MR. KAHN:  Yes.

4            THE COURT:  All right.  Let me just talk through this

5    and maybe just help give some guidance or help.

6            The first request, which is testimony from N.

7    Phillips, including related evidence re approval of video that

8    he requests from Z-Trip, I think I interpret that as a request

9    for Phillips' testimony, and then when they say related

10   evidence, I think they're referring to exhibits as opposed to

11   somebody else's testimony.  Agree?

12           MR. PUVALOWSKI:  Agreed.

13           MR. KAHN:  Yes.

14           THE COURT:  This means scanning Phillips' testimony to

15   find what you believe is responsive to that, both direct and

16   cross, and then any exhibits.

17           The second issue involves the "web ad," and there I

18   think that's a rather discrete unit of testimony.  Where the

19   jury says, "Please provide court testimony or deposition from

20   Phillips," obviously, as we all understand, the deposition

21   testimony can only be that which was, in effect, incorporated

22   here in front of the jury.

23           MR. KAHN:  Your Honor, did it say web edit, E-D-I-T?

24           THE COURT:  I read it as web, new word ad, A-D, like

25   short for advertisement.

E651bea1

1          MR. KAHN:  Oh, I didn't read it that way.  Can I take

2    a look?

3          THE COURT:  Well, I look at it as A-D and then period,

4    close quotes.  You're welcome to look at the hieroglyphics

5    yourself, but I think, given that there's an open quote, once

6    you get rid of the close quote, I think the marks pretty

7    clearly indicate A-D.  I can ask them if there's ambiguity.

8    This is a little bit like the Woody Allen movie "Take the Money

9    And Run."  "I have a gub."

10          (Pause)

11          THE COURT:  All right.  Mr. Kahn?

12          MR. KAHN:  I just would like to clarify it is A-D.

13    Can we clarify?  Because I guess my recollection is, I don't

14    remember any reference to web ad, A-D.  There's a web edit

15    reference, and that's why, in my mind, I looked at it that way.

16          THE COURT:  Understood.  Do counsel recall anything

17    about web ad?

18          MR. PUVALOWSKI:  Frankly, Judge, I don't know what he

19    said.  I heard web ad.  I know Mr. Kahn's position is that it

20    was web edit, 'cause he's said web edit a million times

21    throughout this case, but I heard web ad, but that's what I

22    heard.

23          THE COURT:  All right.  Why don't we do this.  Why

24    don't you look through the testimony, figure out what's

25    responsive.  If you have a disagreement about what would be

E651bea1

1    picked up by "edit" as opposed to "ad," I'm happy to referee

2    that, and if anything turns up, we'll ask the jury what they

3    meant.  It may be in fact after you look at the testimony,

4    you're actually in agreement as to in fact what is responsive

5    here.

6            As to the mechanics, this is probably an easy one

7    because, with any luck, neither of these requests calls upon a

8    large chunk of testimony and therefore, if we identify it, it

9    can probably be read back in short order by the court reporter.

10   That said, if it calls upon a longer unit, it's easier to

11   simply send it back physically.  What would be the mechanical

12   means of accomplishing that?

13           Supposing that you've identified a subset of the

14   testimony that is responsive to this request, which will

15   require redacting portions of pages and whatnot.  What's the

16   most efficient way to physically create it so that it can be

17   sent in to the jury room?  Can you, for example, e-mail to my

18   chambers redacted pages and then I'll have my law clerk make

19   printouts?

20           MR. GARRITY:  The answer is yes for plaintiffs.  We

21   can.

22           THE COURT:  Okay.  Then why don't we do this.  Let me

23   ask you posthaste to work together to come up with agreed, if

24   you possibly can, portions of the testimony that respond to the

25   two requests for testimony.  You also need to identify what you

E651bea1

1    agree are the related evidence as to the approval of the video.

2    I mean related exhibits.  As soon as you have reached agreement

3    or a standstill, let Ms. Hummel know and I will be right down,

4    okay?  Thank you, counsel.

5            ALL COUNSEL:  Thank you.

6            (Recess)

7            (In open court; jury not present; 11:32 a.m.)

8            THE COURT:  All right.  We have another note, which

9    I'm going to read into the record.  I'll mark it as Juror Note

10   No. 4.  This is seeking an audacious amount of material.

11           "Please provide full testimony from Lisa Thomas, Jon

12   Albert, and Nelson Phillips."  And then there's a period and

13   then it says "- Chart placed on jurors' screen showing Jon

14   Albert's calculation of value as 93,750 to 125,000 + union

15   scale."

16           The last part of it is clearly seeking a discernible

17   exhibit.  The other three parts really seem to require the

18   entirety of the testimony, and the challenge there is just

19   getting rid of sidebars, objections, and the like.  But I think

20   it tasks all of you with a pretty substantial production

21   obligation.

22           So let me give you the note so you can look at it, but

23   I'll ask you to get to work.

24           MR. KAHN:  Your Honor, does that eliminate the

25   necessity to respond to the first note?

E651bea1

```
 1              THE COURT:  I don't think it does.  I think we just
 2    need to respond to their notes in the order in which they've
 3    come.  Since they've asked for a targeted piece of material in
 4    Note No. 3, rather than our just treating it as sufficient to
 5    give them the dump truck of the whole testimony, I'd rather
 6    give them that targeted material.  In the meantime, you'll be
 7    working to meet the request of No. 4.  I just think it's more
 8    user friendly to them.
 9              So here's Note No. 4.
10              May I ask you how we're coming on the testimonial part
11    of Note No. 3?
12              MR. KAHN:  I'm still reviewing the transcripts.
13              THE COURT:  Okay.  I know you're working hard.
14              Okay.  Thank you.  Here's Note No. 4.  I'll be
15    immediately reachable upstairs if we get another note or if you
16    need my intervention on anything, okay?  Thank you.
17              THE DEPUTY CLERK:  All rise.
18              (Recess)
19              (In open court; jury not present; 12:05 p.m.)
20              THE COURT:  Hi, counsel.  I've come out just because I
21    really want to be able to respond, anyway, to Note No. 3 to the
22    jury.  Where are we on the portions of it other than the part
23    that asks for Exhibits 219 and 220?
24              MR. PUVALOWSKI:  Your Honor, defense has just been
25    prepared to discuss it.  We're about halfway through the
```

E651bea1

1    selections.

2              THE COURT:  Okay.  You're still --

3              MR. PUVALOWSKI:  With us.  In terms of discussing with

4    us, they weren't ready until a few moments ago to discuss it

5    with us.  We've now started that process.  If you give us five

6    minutes.

7              THE COURT:  I don't want to get in the way of it, but

8    let's try to take care of it soon.  I'm mindful of their time.

9              Okay.  Thank you.

10             THE DEPUTY CLERK:  All rise.

11             (Recess)

12             (In open court; jury not present; 12:21 p.m.)

13             THE COURT:  With respect to Jury Note No. 3, have

14   counsel reached agreement on the responsive materials?

15             MR. PUVALOWSKI:  Substantially, your Honor.

16             THE COURT:  Okay.  Tell me what the disagreement is.

17             MR. KAHN:  1110/13 through 1112/17.

18             THE COURT:  1110, line 13, through 1112, line 17.

19   Okay.  One moment.

20             And without commentary, is this relating to the first

21   question about the approval or the second question about web

22   ad?

23             MR. KAHN:  No, the question on the web ad, there's

24   nothing in the transcript about web A-D.

25             THE COURT:  Okay.  Very good.  So this is relating to

E651bea1

 1    the approval.  One moment.

 2            So 1110, line -- give me that again?

 3            MR. KAHN:  I'm sorry.  Line 13 to 1112, line 17.

 4            THE COURT:  I don't know which side is taking which

 5    position, but this is clearly responsive to the request, so I

 6    don't know which side is taking which position, but it

 7    certainly ought to be included.

 8            MR. KAHN:  Okay.  Thank you.

 9            THE COURT:  All right.

10            MS. SUSMAN:  The next one, your Honor, is 1115,

11    line 13 --

12            THE COURT:  Right.

13            MS. SUSMAN:  -- to 1115, line 23.

14            THE COURT:  1115, line 13, through 11 -- give me that

15    again.

16            MS. SUSMAN:  Yes.  1115, line 13, through 1115,

17    line 23.

18            THE COURT:  Yes.  That is responsive as well.

19            MS. SUSMAN:  The next one is 1124, line 11 --

20            THE COURT:  Right.

21            MS. SUSMAN:  -- through 1126, line 9.

22            THE COURT:  Okay.  One moment.

23            Are the e-mails that are being discussed in this

24    excerpt among those that you have agreed go to the jury?

25            MR. KAHN:  Yes.

E651bea1

1          THE COURT:  All right.  Then I think it's fair game to

2     include those as well.

3          I would note that although there is brief colloquy

4     here between the court and counsel, in each case, as to some of

5     these, it's in the nature of an overruled objection.  Under the

6     circumstances, in the interest of speed, I take it nobody is

7     asking that that be redacted?  It's not a sustained objection.

8          MR. PUVALOWSKI:  We're not.

9          MR. KAHN:  No.

10          THE COURT:  Okay.  Does that resolve all objections?

11          MS. SUSMAN:  There's one more, your Honor.

12          THE COURT:  Yes.

13          MS. SUSMAN:  And it's 1155, lines 3 through 7.

14          THE COURT:  Yes, that's clearly responsive as well.

15          Okay.  So with that, I take it you have consented --

16          MS. SUSMAN:  Sorry.  There's one more.  Sorry.

17          THE COURT:  Okay.  Go ahead.

18          MS. SUSMAN:  1170/14 --

19          THE COURT:  Right.

20          MS. SUSMAN:  -- to 1170/24.

21          THE COURT:  1170/14 to 24.

22          Yes, I mean, that is responsive as well.  Some of this

23     is repetitive, but it is responsive.  So I'll include it as

24     well.

25          Again, counsel, this is not about the receipt of

E651bea1

1    evidence, for better or worse, this is evidence in the case,

2    and I think it's by far the stronger construction of the jury's

3    note or rather by far the better reading is that this is within

4    the ambit of what the jury was seeking.

5            So with that, who is it that is going to be sending to

6    my chambers the pages that contain the excerpts that are either

7    agreed upon or which I've ruled may be received?

8            MR. PUVALOWSKI:  We can do that, your Honor.

9            THE COURT:  Okay.  Would you very soon get it to my

10   chambers and then my law clerk will print out multiple copies

11   and bring it to the jury.

12           Have you also identified which exhibits are going to

13   the jury?

14           MR. KAHN:  Yes.

15           MR. PUVALOWSKI:  There are only two, your Honor.  134

16   and 149.

17           THE COURT:  All right.  Very good.  Well, we will send

18   this all in as a package.

19           Let me just mention one thing.  In the criminal

20   context, there is some caselaw from the Second Circuit that

21   says that when I am sending in excerpts of testimony, the best

22   course is to advise the jury not to unduly focus on the

23   material that is being sent in, because obviously there's some

24   risk, when you physically present the document to a juror, that

25   they focus more on that than the broader context, but to remind

E651bea1

them, as to the excerpts that they're physically receiving, to

view it in the context of all testimony.  I'm happy to give

them that instruction.  Do counsel want me to bring them in now

for that purpose or wait till later?

MR. PUVALOWSKI:  Your Honor, from the plaintiffs'

perspective, particularly in light of the fact that they've now

asked for all of Phillips --

THE COURT:  Right.

MR. PUVALOWSKI:  -- we would not object if that

instruction is not even given, frankly.  Certainly don't bring

the jury in just for that purpose.

THE COURT:  Okay.  How about you, Mr. Kahn?

MR. KAHN:  There's one additional document which we

didn't discuss.  Should we discuss it and then --

THE COURT:  Just tell me now, Mr. Kahn.

MR. KAHN:  This is Plaintiff's Exhibit 135.

THE COURT:  What is it?

MR. KAHN:  May I hand it up?

THE COURT:  Show it to Mr. Puvalowski, see if he

agrees.

MR. PUVALOWSKI:  We do not agree.  Z-Trip's not on

this e-mail.

THE COURT:  Let me take a look at it.

(Pause)

THE COURT:  No, this is outside of the scope of the

E651bea1

1    issue of Mr. Phillips' approval of the video, so I won't send

2    that in.  They know how to ask for it.  It's on the list of

3    exhibits.

4         All right.  So plaintiffs' table is sending to my

5    chambers now these agreed excerpts.

6         Now to ride you a little bit, who is taking ownership

7    of the process with respect to Note No. 4, of getting the

8    transcripts prepared, redacting out colloquy, sustained

9    objections, and the like?

10        MR. PUVALOWSKI:  Your Honor, what the parties agreed

11   the process is, is an attorney from both sides is sitting with

12   Ms. Limbaugh and doing it in realtime so everyone's agreeing in

13   realtime as the document is created.

14        THE COURT:  Wonderful.  Here's my thought.  Let's do

15   this one by one.  In other words, we'll go in the order that

16   you're done, but as soon as you're done with one of these

17   witnesses, get it to my chambers.  I can quickly look through

18   it to make sure there isn't some problem.  I'm sure you will

19   have done it perfectly and there won't be, but that way, at

20   least the production process of printing this out can get

21   going.  Don't hold it till the last one.

22        MR. PUVALOWSKI:  Thomas is complete, your Honor, so --

23   oh, it's not?  I apologize.

24        MR. MONAHAN:  Just the first day.

25        THE COURT:  In any event, let's move posthaste.  Thank

E651bea1

1    you.  As soon as we've received these excerpts upstairs -- have

2    you e-mailed them to us?

3              MS. LIMBAUGH:  Yes.

4              THE COURT:  Great.  We'll go upstairs and print them

5    out.

6              Thank you, counsel.

7              (Recess)

8              (In open court; jury not present; 1:05 p.m.)

9              THE COURT:  Counsel, the jury just asked the CSO, the

10   security officer, "Where are our transcripts?"  I don't have a

11   good answer for them because this is astonishing to me in my

12   experience that it would take three hours to get responses to a

13   single question to them.  I'm going to bring the jury out.  I

14   need to say something to them.  What should I say?

15             MR. PUVALOWSKI:  Your Honor, we are literally working

16   through the last bit of it, and for what it's worth, until your

17   Honor ruled and left the bench, it was impossible for us to

18   start cutting and pasting into a document.  We've been working

19   as fast as we can since then.

20             THE COURT:  Okay.  How long till you send the e-mail?

21   When I last left the bench, I thought it was being sent to me.

22   That was quite some time ago.

23             MR. PUVALOWSKI:  Your Honor, when you left the bench,

24   that's when the document was starting to be created.  I don't

25   understand that understanding.  But if you give -- and both

E651bea1

1    parties are working as fast as we can, and frankly, I think

2    we're now getting to the point where it's being inefficient

3    to -- we're trying to do this as fast as we possibly, humanly

4    can.

5            THE COURT:  Please e-mail it to my chambers in the

6    next five minutes.  We'll print it out and bring in the jury so

7    I can explain what has happened so they don't think we've been

8    inattentive.

9            MR. PUVALOWSKI:  Understood.

10           (Recess)

11           (In open court; jury not present: 1:35 p.m.)

12           THE COURT:  Okay.  Welcome back, counsel.  I want to

13   make sure that as to Note No. 3, we now have all the material.

14   I've printed out eight copies of the transcript excerpts that

15   counsel have agreed upon.  I've reviewed them and they are

16   fine.  Shortly we will mark an extra copy of this as a court

17   exhibit.

18           In addition, as I understood it, there are two

19   exhibits that counsel have agreed properly go with Nelson

20   Phillips, correct?

21           MR. PUVALOWSKI:  That's correct, your Honor.

22           THE COURT:  Sorry.  Where's the rest of the defense?

23           MS. POHL:  That's correct.

24           THE COURT:  Okay.  Very good.  And here is what I am

25   proposing to read to the jury.  I'm going to bring them in in a

E651bea1

1    moment.

2              "Ladies and gentlemen, the court has received your two

3    notes from this morning asking for various portions of trial

4    testimony.  We've marked them as Jury Notes 3 and 4.  The

5    testimony responsive to the first of those two notes, Note

6    No. 3, is ready for you.

7              "I want to explain why it took the time it did.  When

8    we receive a note seeking excerpts of testimony, and exhibits,

9    counsel need to review the trial transcript.  They need to

10   identify parts of the transcript that they believe are

11   responsive to your request.  That takes time.  Then, to the

12   extent that counsel do not agree, I need to resolve the

13   disputes they have, portion by portion.  Once the responsive

14   material is agreed on, counsel then need to physically prepare

15   the excerpts to go to you, which means redacting or removing

16   extraneous material, including sidebars or nonresponsive

17   material.  Counsel and I then need to do a final review of the

18   material and print it out for you.

19             "As to your Note No. 3, we have the Nelson Phillips

20   excerpts for you, plus a couple of exhibits that the parties

21   agree are responsive.

22             "I want to advise you that to the extent that the note

23   also sought material relating to 'web ads,' the parties could

24   not find any trial testimony using those words.  It may be that

25   the words you had in mind were 'web edits.'  If that is what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E651bea1

you're seeking and you still seek it, upon a written request

from you, counsel would review the transcript for materials

responsive to such a request.

        "As to your Note No. 4, which requested the entirety

of the testimony of Mr. Phillips, Ms. Thomas, and Mr. Albert,

the parties are reviewing that testimony now and redacting

items like sidebars and the like.  I hope we will have it for

you soon.

        "You also requested Mr. Albert's chart and we will

give that to you now, with the materials responsive to Note

No. 3.

        "I need to advise you of one final thing.  I'm sending

in to you the excerpts you've requested.  Please bear in mind

you should consider all the evidence without unduly emphasizing

any one portion of it."

        That's responsive to Second Circuit caselaw.

        MS. SUSMAN:  Judge, I'm not sure Mr. Albert's chart is

in evidence.

        MR. PUVALOWSKI:  Oh, that's actually a good point.  It

was marked as a demonstrative and in fact, if you recall, your

Honor, I raised the fact that it was a demonstrative and you

said yes, that's correct.

        THE COURT:  Ah, quite right.  Okay.  Very good.

Right.  I guess I should simply say, "However, it is not in

evidence.  It was simply offered as a demonstrative aid to you

E651bea1

1    during his testimony."

2              MR. PUVALOWSKI:  That's fine, your Honor.

3              THE COURT:  One moment.

4              (Pause)

5              MR. PUVALOWSKI:  Just a clarification.  Do I take it

6    from your Honor's suggested language that that will not be sent

7    back to them?

8              THE COURT:  What?

9              MR. PUVALOWSKI:  That it will not be sent back to

10   them?

11             THE COURT:  Well, is Mr. Albert's chart in evidence?

12             MR. PUVALOWSKI:  It's a demonstrative only, your

13   Honor.  That's my understanding.

14             THE COURT:  Okay.  I mean, it was used during his

15   testimony simply to help them understand his testimony.

16   Therefore, inasmuch as it wasn't received, and you both agree

17   it wasn't received, I don't think I should be sending it in.

18             MR. PUVALOWSKI:  That's perfect, your Honor.

19             THE COURT:  It's not in evidence.

20             MR. PUVALOWSKI:  That's my understanding.

21             THE COURT:  Very good.  So just to be clear, I've now

22   got the transcripts.  Do we have the two exhibits that are

23   responsive?

24             MR. PUVALOWSKI:  Your Honor, we handed them up before.

25             THE COURT:  They're over there.  Okay.  Very good.

E651bea1

1    Why don't you hand me those.  And I think that's all we've got

2    for now.  Okay.

3              MR. PUVALOWSKI:  Your Honor, just an update on the

4    other three.  We've agreed on all the excerpts.  We're

5    processing them --

6              THE COURT:  Terrific.

7              MR. PUVALOWSKI:  -- as fast as we can.

8              THE COURT:  Okay.  Very good.  Ms. Hummel, let's get

9    the jury.

10             For future reference, look, I understand this is not a

11   task that any of us are called upon to do often.  When you

12   already agree on excerpts, start getting going on creating the

13   process, and then if I'm making rulings on additional material,

14   it can be added or subtracted, as the case may be, but for

15   heaven's sake, the production process ought to have been under

16   way before I ruled on the final bits of it.  That seemed to add

17   needless time.  Just a thought.

18             MS. POHL:  Excuse me, your Honor.  When we were going

19   through the transcript, we noticed there was a mistake there

20   that Defendant's Exhibit 16 was received in evidence.  I

21   believe that it was supposed to be 116, 116 in evidence.

22             THE COURT:  Is that part of this portion that is going

23   to the jury now?

24             MS. POHL:  No, it's not.

25             THE COURT:  We'll take it up later.

E651bea1

1            (Jury present)

2            THE COURT:  All right.  Welcome back, ladies and

3    gentlemen.  The court has received your two notes from this

4    morning, asking for various portions of trial testimony.  We've

5    marked them as Jury Notes 3 and 4.  The testimony responsive to

6    the first of those two notes, Note No. 3, is now ready for you.

7            I want to take a moment and explain to you why it took

8    the time it did.  When we receive a note seeking excerpts of

9    testimony and exhibits, counsel first need to review the trial

10   transcript, which is reasonably long.  They need to identify

11   parts of the transcript that they believe are responsive to

12   your request.  That takes time.  Then, to the extent counsel

13   don't agree, I need to resolve the disputes they have, portion

14   by portion, as to what excerpts are or are not responsive to

15   the jury's request.  Once the responsive material is agreed

16   upon, counsel then need to physically prepare the excerpts to

17   go to you, in effect by computer, and that means redacting or

18   removing extraneous material, including sidebars, including,

19   you know, parts of the testimony that are outside of what

20   you've requested.  Counsel and I then need to do a final review

21   and proofread of the material to make sure that only the right

22   stuff is going to you and then print it out.  It takes time,

23   and I wanted you to understand that's what's happening.  It's

24   not that people weren't working.  It's that there's a process.

25           As to your Note No. 3, I have the Nelson Phillips

E651bea1

1    exerts for you and I've got a copy for each of you.

2            In addition, we have two exhibits, Plaintiff's

3    Exhibits 134 and Plaintiff's Exhibit 149, which the parties

4    agree are responsive to your request.

5            I want to advise you that to the extent that your note

6    also sought material relating to "web ads," the parties could

7    not find any trial testimony using those words.  It may be that

8    the words you had in mind were web edits.  If that is what

9    you're seeking and you still seek it, upon a written request

10   from you, counsel would then review the transcript for

11   materials responsive to such request or, for that matter, to

12   any other future request that you make.

13           As to your Note No. 4, which requested the entirety of

14   the testimony of Mr. Phillips, Ms. Thomas, and Mr. Albert, the

15   parties are reviewing that testimony now and redacting things

16   like sidebars.  I hope we'll have it for you soon.

17           You also requested Mr. Albert's chart.  That chart is

18   actually not in evidence.  It was used solely as a

19   demonstrative aid to explain his testimony, but it itself is

20   not evidence and therefore I don't have the physical document

21   to give you there.  However, you have sought and received

22   Mr. Albert's testimony, and it is my recollection that the

23   content of his testimony will pick up that which is in the

24   chart.

25           Okay?  So with that, Ms. Hummel will give you eight

E651bea1

1    copies of the Nelson Phillips excerpts and the two exhibits

2    that I referenced.  I think the other material responsive to

3    your Note No. 3 has already been sent to you.  Okay?

4              Great.  With that, you should return to the jury room

5    and resume deliberations.

6              THE DEPUTY CLERK:  All rise.

7              (Jury excused; deliberations resumed; timed noted:

8    1:42 p.m.)

9              THE COURT:  I neglected to read my final paragraph

10   about their considering all the evidence without unduly

11   focusing on one portion.  I got detained by the Albert note.

12   What I'll do is, when all the full transcripts of the other

13   three are ready, I'll bring them out and give that instruction.

14             All right.  Do counsel have an estimate as to when

15   you'll be able to e-mail to me the cleansed portions of those

16   three witnesses' testimony?

17             MR. PUVALOWSKI:  30 minutes.

18             THE COURT:  Okay.  All right.  If you are able to get

19   it to me serially, that will save time, just because it will

20   allow us to get going on the production process.

21             Do counsel believe I ought to be giving eight copies

22   of those witnesses' testimony, which will be more voluminous,

23   or do you think a subset like four is sufficient?

24             MR. PUVALOWSKI:  A subset is sufficient, your Honor.

25             MS. SUSMAN:  Yes, your Honor.

E651bea1

1        THE COURT:  Okay.  Very good.  We'll aim for something

2   like four.  All right.  Thank you.

3        (Recess)

4        (In open court; jury not present; 2:58 p.m.)

5        THE COURT:  Counsel, you may be seated.

6        My law clerk and I are just reviewing what you propose

7   to send to the jury, just to give it a last look to make sure

8   that it's in good order.  It certainly looks to be.

9        All right.  Good.  Counsel have given my chambers

10  redacted copies of the Thomas, Phillips, and Albert testimony.

11  My law clerk and I have reviewed them to make sure that nothing

12  extraneous such as conversation at a sidebar slipped through

13  the net, and it hasn't.  I thank counsel for their hard work.

14       We have marked earlier the Phillips excerpts as Court

15  Exhibit 9.  Those were the ones already given to the jury.  I

16  will mark the Phillips entire transcript as Court Exhibit 10,

17  the Albert entire transcript as Court Exhibit 11, and the

18  Thomas entire transcript as Court Exhibit 12, and we'll send

19  these in to the jury.  I'm going to bring the jury in, though,

20  for the purpose of my giving this to them, if only to enable me

21  to finish the instruction that I errantly failed to complete

22  when we brought them in earlier.

23       Do counsel have anything to raise with me at this

24  point?

25       MR. PUVALOWSKI:  No, your Honor.

E651bea1

1           MR. KAHN:  No, your Honor.

2           THE COURT:  Okay.  Ms. Hummel, let's get the jury.

3           THE DEPUTY CLERK:  Yes, your Honor.

4           (Jury present)

5           THE COURT:  Welcome back, ladies and gentlemen.

6       I finally have for you the formidable care package of

7   prior transcripts you have requested.  Specifically, I have

8   here for you the entirety of the testimony of Mr. Phillips,

9   Ms. Thomas, and Mr. Albert.  You'll notice reflected in various

10  ways redactions, some by blank rectangles, some by black lines.

11  Again, all of those are intended to accomplish the purpose

12  necessary of my eliminating material that I either struck from

13  your consideration or sidebars with the lawyers or whatnot.  It

14  was a substantial enough production process that my judgment

15  was, in the interest of time, it made more sense to give you

16  four copies of each.  With any luck, that will be sufficient to

17  your needs.  If for some reason you need yet more copies of

18  each of these, by all means ask.  In any event, I'm giving

19  these to Ms. Hummel and I'll send you back to the jury room.

20      I have just one other related instruction.  I've now

21  given you a portion of the testimony you saw in this trial,

22  either through the prior goody bag or this.  I'm sending in

23  this material for you because you've requested it.  I want you

24  to bear in mind, though, that you should of course consider all

25  the evidence in the case without unduly emphasizing any one

E651bea1

1    portion of it.  In other words, the mere fact that something's

2    physically before you doesn't give it any greater or lesser

3    significance in the case.  It's for you to consider the

4    entirety of the evidence that you saw and heard in this trial.

5    Okay?

6              With that, you should resume deliberations.

7              THE DEPUTY CLERK:  All rise.

8              (Jury excused; deliberations resumed; time noted:

9    2:02 p.m.)

10             THE COURT:  All right.  Counsel, be seated.

11             Does anyone have anything to raise at this point?

12             MR. PUVALOWSKI:  No, your Honor.

13             MR. KAHN:  No.

14             THE COURT:  All right.  I think we're all caught up

15   now with the jury's requests.  I'm going to be hearing argument

16   now in another matter.  I just need to make sure that there is

17   somebody here from each team who can respond quickly in the

18   event we get another jury note.

19             Okay.  Thank you.

20             (Recess pending verdict)

21             (In open court; jury not present; 4:23 p.m.)

22             THE COURT:  All right.  Be seated.

23             All right.  Counsel, we have received another note,

24   which we're going to mark as Jury Note No. 5.  And it simply

25   reads, "We have reached a verdict," and it appears to be signed

 1    by the foreman of the jury, Mr. Pinto.

 2              I'm going to bring in the jury in a moment, but let me

 3    begin by asking counsel if there's anything either side has to

 4    raise at this point.

 5              MR. PUVALOWSKI:  No, your Honor.

 6              MR. KAHN:  No.

 7              THE COURT:  Okay.  Just so you know, my practice is,

 8    after receiving a verdict, to thank the jury briefly in open

 9    court but then to go meet with them and thank them personally

10    in the jury room and also receive feedback about their

11    experience as jurors in the district.  So what I will do then

12    is to do that, and I'll ask you to remain in the courtroom so

13    that, again, not knowing which way this comes out, there will

14    no doubt be some next steps in the case, and so I'll ask you to

15    wait here and then I'll meet with you after I meet with the

16    jury to get your input as to next steps in the case.  Okay?

17              Very good.  Ms. Hummel, would you mark this as Note

18    No. 5, and would you please get the jury.

19              THE DEPUTY CLERK:  Yes, your Honor.

20              (Jury present)

21              THE COURT:  All right.  Welcome back, ladies and

22    gentlemen.

23              I want to note for the record that all jurors are

24    present.

25              We have received a fifth note from the jury, which we

E651bea1

1    have marked as Jury Note No. 5, and it reads:  "We have reached

2    a verdict."  And I understand that it's signed by you,

3    Mr. Pinto.  Is that correct?

4              THE FOREPERSON:  Correct.

5              THE COURT:  Very good.  Mr. Pinto, is it correct that

6    the jury has reached a verdict?

7              THE FOREPERSON:  Yes, your Honor.

8              THE COURT:  And have you completed the jury form

9    consistent with the verdict?

10              THE FOREPERSON:  Yes, we have.

11              THE COURT:  Would you kindly hand the jury form to

12    Ms. Hummel.

13              All right.  I'm going to read the verdict aloud, and

14    then Mr. Pinto, I'm going to ask you whether what I've read

15    aloud is in fact the jury's verdict.  Okay?

16              After that, ladies and gentlemen, you should all pay

17    attention because after that it may be that we poll you, we ask

18    you each individually whether the verdict that I have read

19    aloud is your verdict, okay?

20              As to the first issue presented, actual damages, the

21    form reads:  "For each of the following copyrights, state the

22    amount of actual damages that you award the Beastie Boys as a

23    result of Monster's infringement."  There are then ten works

24    set out and then a separate column for actual damages.  The

25    jury has written, for each of the ten songs, actual damages in

E651bea1

1    the amount of $100,000, for a total of $1 million.

2           The second issue is state of mind, and the question

3    is:  "Do you find that Monster's copyright infringement was

4    innocent, willful, or regular?"  And the jury has checked the

5    box willful.

6           The third question involves statutory damages.  The

7    form reads:  "For each of the following copyrights, state the

8    amount of statutory damages that you award the Beastie Boys as

9    a result of Monster's infringement."  And the jury again has

10   been given all the same ten works and a separate line for

11   statutory damages in each.  In each it is filled out the same

12   number, which is $120,000, for a total of $1.2 million in

13   statutory damages.

14          Turning to the false endorsement claim, what I've read

15   before relates to copyright.  Question 4 involves liability,

16   and it reads:  "Do you find that the Beastie Boys have shown,

17   by a preponderance of the evidence, that Monster used the

18   Beastie Boys' personae without permission, thereby suggesting a

19   false endorsement of Monster's products?"  And the jury has

20   checked the box yes.

21          Question 5.  Eligibility for damages.  Question (a)

22   reads:  "Do you find that the Beastie Boys have shown, by a

23   preponderance of the evidence, that Monster intended to deceive

24   consumers concerning the Beastie Boys' endorsement of its

25   products?"  And the jury has checked the box yes.

E651bea1

1          Question 5(b) then reads:  "Do you find that Monster

2    has shown, by a preponderance of the evidence, that consumers

3    were not in fact confused or deceived as to whether the Beastie

4    Boys endorsed Monster's products?"  The jury has checked the

5    box no.

6          As to damages, question 6, under False Endorsement,

7    the question reads:  "What amount of damages do you award the

8    Beastie Boys as a result of Monster's false endorsement?"  And

9    the jury has written in $500,000.

10          Finally, on question 7, entitled Separate Finding as

11    to Bad Faith, the question is written:  "Do you find that the

12    Beastie Boys have shown, by a preponderance of the evidence,

13    that Monster acted in bad faith in causing the false

14    endorsement?"  And the jury has checked the box yes.

15          The final page of the verdict form lists each of the

16    jurors' names, followed by a signature.  Let me ask you,

17    Mr. Pinto, I've just read aloud what I understand to be, from

18    the verdict form, the jury's verdict.  Is that the jury's

19    verdict?

20               THE FOREPERSON:  Yes, your Honor, it is.

21               THE COURT:  Thank you, Mr. Pinto.

22               Counsel, do you wish the jury to be polled?

23               MR. KAHN:  Yes, your Honor.

24               THE COURT:  Ms. Hummel, would you kindly poll the

25    jury.

1         THE DEPUTY CLERK:  Members of the jury, you have heard

2    your verdict as it stands recorded by the court.  Juror No. 1,

3    is that your verdict?

4         JUROR NO. 1:  Yes, it is.

5         THE DEPUTY CLERK:  Juror No. 2, is that your verdict?

6         JUROR NO. 2:  Yes, it is.

7         THE DEPUTY CLERK:  Juror No. 3, is that your verdict?

8         JUROR NO. 3:  Yes, it is.

9         THE DEPUTY CLERK:  Juror No. 4, is that your verdict?

10        JUROR NO. 4:  Yes, it is.

11        THE DEPUTY CLERK:  Juror No. 5, is that your verdict?

12        JUROR NO. 5:  Yes.

13        THE DEPUTY CLERK:  Juror No. 6, is that your verdict?

14        JUROR NO. 6:  Yes.

15        THE DEPUTY CLERK:  Juror No. 7, is that your verdict?

16        JUROR NO. 7:  Yes.

17        THE DEPUTY CLERK:  Juror No. 8, is that your verdict?

18        JUROR NO. 8:  Yes.

19        THE DEPUTY CLERK:  And so say you all.  The jurors

20   have been polled.

21        THE COURT:  Thank you, Ms. Hummel.

22        Ladies and gentlemen, this concludes your jury

23   service.  In a moment I'm going to excuse you to go into the

24   jury room.  I'm going to ask you to wait there for a moment so

25   that I can come in and thank you in person and in a little more

E651bea1

1    detail.  And I'll have some final instructions for you there.

2    But in the view of the whole room, I wanted to take a moment

3    and thank you really for several things.  Most of all, for your

4    attentiveness.  It's been obvious to me watching you -- and

5    that's part of my job -- just how attentive and focused you've

6    been during the eight days we've been together.  It's also been

7    apparent in the time you took, both late yesterday and then all

8    day today, reflecting on your verdict, so thank you very much

9    for that.  And I also appreciate your good cheer.  We wound up

10   being here longer than I had forecast for you when we started

11   trial, and I appreciated your good cheer in being here and

12   serving longer than expected.

13          You're now, of course, excused from jury duty.  You

14   don't need to come back tomorrow.  We'll be sending each of you

15   a letter that reflects that your jury duty service is complete.

16   But in any event, I really want to thank you for your service.

17          With that, please go back to the jury room.  I'll be

18   in there in a moment to say thank you in person.

19          (Jury discharged)

20          THE COURT:  Okay.  Be seated, counsel.

21          I'm going to mark the jury's verdict form as Jury Note

22   No. 6.

23          I will now be in with the jurors for a few minutes.

24   May I ask you each just to reflect on next steps and a next

25   schedule in the case.  Okay?  Thank you.

E651bea1

1           THE DEPUTY CLERK:  All rise.

2           (Recess)

3           (In open court)

4           THE COURT:  Okay.  Be seated.

5           Let me just say, for what it's worth, that the jurors

6   conveyed to me that they thought it was a very well-tried case

7   and they enjoyed the experience very much but clearly

8   appreciate just the quality of the advocacy.  So I've said that

9   several times and I'll say it again that the quality of the

10  advocacy was terrific, and although it's my job to be hard on

11  you guys about stuff like schedule and whatnot, on the merits

12  you were all great, and the jury really felt that they got, you

13  know, a sort of highly oxygenated content, so well done.

14          All right.  Tell me what the next steps are that

15  counsel perceive in the case and whether counsel have a view as

16  to the schedule.

17          MR. KAHN:  Your Honor, defendant will make motions.  I

18  don't know if you want us to make motions now, but I'd like to

19  reserve our right to make whatever motions we are legally

20  entitled to make and do it in writing.

21          THE COURT:  I agree with that.  That makes good sense.

22  How much time do you need, Mr. Kahn?

23          MR. KAHN:  Your Honor, can we have 30 days?

24          THE COURT:  Yes, you may.  So why don't we say four

25  weeks from tomorrow, Mr. Kahn?  That's 29 days.

E651bea1

1          MR. KAHN:  My counsel asked me if we could have 45

2     days.

3          THE COURT:  I assume there's a good reason for that.

4     You may.  Yes.

5          MR. KAHN:  Thank you.

6          THE COURT:  All right.  One moment.  I think Monday,

7     July 20th, does that work?

8          MR. KAHN:  Yes, your Honor.

9          THE COURT:  Mr. Kahn, without holding you to it but

10    just so I can see what's coming down the pike, big picture, do

11    you have a sense at this early stage what the nature of the

12    motions would be?

13         MR. KAHN:  To renew our motion for directed verdict --

14         THE COURT:  Okay.

15         MR. KAHN:  -- a motion that the verdict is against the

16    weight of the evidence, judgment, maybe, notwithstanding the

17    verdict, same thing, and I'm not sure right now --

18         THE COURT:  Fair enough.  It's all very new.

19         MR. KAHN:  And your Honor, to the extent that the

20    statute which Mr. Puvalowski and I just discussed before

21    indicates that it's necessary to make a motion for judgment

22    notwithstanding the verdict within 28 days, I ask that it be

23    deemed made now and then --

24         THE COURT:  Yes, you've made your motion now, and I'm

25    going to give you 45 days for your opening brief.  Absolutely

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

E651bea1

1 right.

2                   MR. KAHN:  Thank you.

3                   THE COURT:  All right.  Mr. Puvalowski, from your

4 perspective, what do you have to bring to bear?

5                   MR. PUVALOWSKI:  Your Honor, there will be an

6 attorney's fees application with respect to both sets of

7 claims.

8                   THE COURT:  Right.

9                   MR. PUVALOWSKI:  Yes, two separate applications, one

10 for each -- one for copyright, one for Lanham Act.  We believe

11 that that needs to be done after Mr. Kahn's motion practice.

12                   THE COURT:  Right.  Okay.

13                   MR. PUVALOWSKI:  So I'm not terribly sure about the

14 scheduling.  Maybe we could do this.  Do you anticipate, your

15 Honor --

16                   THE COURT:  Well, I just want to make sure I've got a

17 full universe of what else is before me.  I take it there is

18 also an application for injunctive relief or not?

19                   MR. PUVALOWSKI:  There will be an application as well.

20 In terms of what the language would be, etc. --

21                   THE COURT:  In the sequence as between the defense's

22 challenges to the verdict and then the attorney's fees

23 application, do you have a view as to when that should occur?

24 It sounds to me it probably is coincident with the attorney's

25 fees litigation.  You tell me.

E651bea1

1          MR. PUVALOWSKI:  Actually, I think for sequencing, I

2     would actually suggest that perhaps we put in proposed language

3     of the injunction relatively shortly, in the next week or so,

4     so that if Mr. Kahn has issues with the injunctive relief

5     issues, he can incorporate that into his paperwork that he's

6     filing.

7          THE COURT:  All right.  So, look, if his application

8     isn't due for 45 days, there's absolutely no reason for you to

9     submit yours in a week.  I'm deeming your application to be

10    made now, and it's just a matter of setting a briefing

11    schedule.  I imagine you may want to relax, so you don't need

12    to do it in the next week.  When, realistically, do you want to

13    submit it?

14          MR. PUVALOWSKI:  How about two weeks from tomorrow,

15    your Honor.

16          THE COURT:  So, Ms. Hummel?

17          THE DEPUTY CLERK:  That would be the 20th of June.

18          THE COURT:  So June 20th, your application for

19    injunctive relief is due.  And Mr. Kahn, I'll ask you, on

20    July 20th, when you submit your affirmative motions, also to

21    submit a response to Mr. Puvalowski's submission.

22          MR. KAHN:  Okay.  Thank you.

23          THE COURT:  Does that work?

24          MR. KAHN:  Yes.

25          THE COURT:  All right.  Mr. Puvalowski, anything

E651bea1

1      further?

2              MR. PUVALOWSKI:  Your Honor, I'm not sure kind of --

3      frankly, I'm not sure kind of what the right sequence of this

4      is, but the other issue would be the apportionment of the

5      copyright in light of the beneficial ownership interest.

6              THE COURT:  Oh, interesting.  Right.

7              MR. PUVALOWSKI:  This may be Mr. Kahn's issue, but in

8      terms of who goes first, I'm not terribly sure --

9              THE COURT:  Well, is there any reason why you can't

10     submit an application on that point about the same time as you

11     do your application for the injunction?

12             MR. PUVALOWSKI:  If we're going to combine those, your

13     Honor, I'd ask for perhaps an extra week or so.

14             THE COURT:  Sure.  That's fine.  Why don't we do this.

15     Your application for the injunction, June 27th then, and your

16     application with regard to the apportionment of a copyright on

17     June 27th as well.  I mean, that gives you, Mr. Kahn, plenty

18     of time to respond.

19             MR. KAHN:  Okay.

20             THE COURT:  Okay.  Very good.  It seems to me that on

21     that point in particular there's much value to the parties

22     meeting and conferring.  I don't know what the facts are that

23     bear on apportionment, but it may be that with some degree of

24     open disclosure, the parties may be able to come to some degree

25     of agreement as to in fact what the apportionment is.  As I

E651bea1

1    understand it, one of the issues here is what the share is that

2    the Beastie Boys or Brooklyn Dust, as the case may be, as

3    opposed to third parties, own of the various copyrights, and I

4    understand that at some point it was a 50 percent interest but

5    that there was some contractual provision that provided for

6    what amounts to an upward adjustment, which in turn may be

7    measured by some other numeric triggers.  That's more or less

8    what I took away from you, Mr. Puvalowski.  Given that, you,

9    more than the defense, know the facts on which that might be

10   based.  Might I suggest that in pretty short order you sit down

11   with defense counsel and give a show-and-tell as to what the

12   evidence you have there is?  It may be that there really isn't

13   much in dispute and you can moot the issue, and if you're

14   having productive discussions along those lines and you need to

15   adjourn a little bit your apportionment submission, I certainly

16   indulge that in the interests of letting you work this out

17   among yourselves.

18             MR. PUVALOWSKI:  Understood, your Honor.

19             THE COURT:  Okay.  Anything further from the

20   plaintiff?

21             MR. PUVALOWSKI:  No, your Honor.

22             THE COURT:  Anything from the defense?

23             MR. KAHN:  No, your Honor.

24             THE COURT:  Okay.  I wish you all well.

25                          o0o