**SheppardMullin**

Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
New York, NY 10112-0015
212.653.8700 main
212.653.8701 main fax
www.sheppardmullin.com

212.634.3033 direct
kpuvalowski@sheppardmullin.com

June 27, 2014

<u>Via ECF and Federal Express</u>

Honorable Paul A. Engelmayer
United States District Judge
United States District Court for the Southern
    District of New York
40 Foley Square — Room 2201
New York, New York 10007

    Re:    <u>Beastie Boys, et al. v. Monster Energy Company</u>
            12 Civ. 6065 (PAE)

Dear Judge Engelmayer:

      As the Court is aware, this firm represents Plaintiffs in the above-referenced matter, and I write pursuant to Your Honor's June 9, 2014, Order that Plaintiffs submit a letter concerning the apportionment of copyright damages.

      As set forth in the December 2, 1999, Agreement between Capitol Records and the Beastie Boys Partnership (the "Beastie Boys"), which was marked in evidence as Plaintiffs' Exhibit 110, and the September 1, 2012, Copyright Assignment, which was marked in evidence as Plaintiffs' Exhibit 202, the Beastie Boys own a 50% undivided legal interest in the sound recording copyrights at issue in this case. As to those sound recording copyrights, the beneficial ownership of the copyrights matches the legal ownership, that is, the Beastie Boys' contractual revenue share for the sound recording copyrights is indeed 50%, the same as the legal interest in the copyrights.

      The same, however, cannot be said with respect to the musical compositions. Legal ownership of the musical composition copyrights for the works entitled "Make Some Noise," "Pass the Mic," "Sabotage," and "So What'Cha Want," is held equally (*i.e.,* 50% each) by Universal – Polygram International Publishing, Inc. d/b/a Universal Music Publishing Group ("UMPG"), on the one hand, and Michael Diamond, Adam Horovitz, and Dechen Yauch, as Executor of the estate of Adam Yauch, deceased, collectively d/b/a Brooklyn Dust Music (collectively, "Brooklyn Dust"), on the other hand. As is demonstrated by the copyright registrations for each of these works, which were marked in evidence at trial as Plaintiffs' Exhibits 104, 105, 107, and 126, the registrants of the copyrights were UMPG (or one of its predecessor companies) and Brooklyn Dust.

      The beneficial ownership of revenues from these musical compositions, however, varies from the legal ownership percentages pursuant to various songwriter and co-publishing

# SheppardMullin

Honorable Paul A. Engelmayer
June 27, 2014
Page 2

agreements between UMPG (or its predecessors) and Brooklyn Dust. In total, under the Publishing Agreements, Brooklyn Dust is entitled to a 90% share of the recovery in this lawsuit for these four musical compositions.

That percentage is derived as follows. Under the relevant agreements, revenues from the musical composition copyrights are split between the "writer's share" and the "publisher's share." Traditionally, revenues derived from musical compositions are split evenly between the writer's share and publisher's share; in other words the writer (or writers) of a composition would receive 50% of the net revenues and the publishing company would receive the other 50%. Pursuant to a July 1, 2000, agreement (the "2000 Agreement") between Brooklyn Dust Music and UMPG, however, Brooklyn Dust became entitled to a portion of the publisher's share.[1] In addition to the 50% writer's share due to Brooklyn Dust, Brooklyn Dust is also entitled to receive 80% of the publisher's share as well. Specifically, under Section 2(b)(iii) of the 2000 Agreement, once certain recoupment thresholds are met (essentially designed to reimburse UMPG for advances paid at the time of an album release), Brooklyn Dust is entitled to receive 80% of the publisher's share on top of its own writer's share. For the Court's reference, attached as Exhibit 3 is a true and accurate copy of the 2000 Agreement (the 2000 Agreement was also marked at trial as Exhibit 261.) As is confirmed in the Declaration of David Kokakis from UMPG, which is attached as Exhibit 4, UMPG has been in such a "fully recouped position" since the accounting period which commenced January 1, 2012, and remains so through today. (Exhibit 4 at ¶ 5.)[2]

---

[1] The May 22, 1992, Co-Publishing Agreement (the "Co-Publishing Agreement") between Brooklyn Dust Music and UMPG, and the May 22, 1992, Exclusive Songwriter's Agreement (the "Songwriter's Agreement") reflected the split between a writer's share and a publisher's share. Pursuant to the Co-Publishing Agreement, however, Brooklyn dust was entitled to receive at least 50% of the publisher's share in addition to the writer's share (for a total of at least 75% of the revenue derived from the exploitation of the musical composition copyrights). For the Court's reference, attached as Exhibit 1 is a true and accurate copy of the Co-Publishing Agreement and attached as Exhibit 2 is a true and accurate copy of the Songwriter's Agreement (the Co-Publishing Agreement and Songwriter's Agreement were also marked at trial as Exhibits 256 and 257, respectively). As noted in the text, Brooklyn Dust's percentage was increased to 90% pursuant to the 2000 Agreement.

[2] Mr. Kokakis's Declaration also attaches printouts from UMPG's copyright and royalty system for the each musical composition copyright at issue here. (Exhibit 4 at Exhibit A.) The category "Composers" reflects the percentage of the writer's share that each of the songwriters are entitled to. The category "Original Publishers" reflects the legal copyright ownership. The category "Administrators" reflects the percentage of revenue generated by the copyrights that are administered by UMPG (and other entities).

# SheppardMullin

Honorable Paul A. Engelmayer
June 27, 2014
Page 3

As a result, Brooklyn Dust has a combined 90% beneficial ownership interest in the musical composition copyrights for "Make Some Noise," "Pass the Mic,"[3] "Sabotage," and "So What'Cha Want" — *i.e.,* 50% as a result of its own writer's share and an additional 40% reflecting its additional beneficial ownership share (*i.e.*, 80% of the publisher's 50% share). (Exhibit 4 at ¶ 4.)

Legal ownership of the musical composition copyright for the work entitled "Looking Down the Barrel of a Gun" is held by different parties in addition to UMPG and Brooklyn Dust with UMPG and Brooklyn Dust each maintaining a 27.5% legal ownership share. In this case, the copyright registration, which was marked in evidence as Plaintiffs' Exhibit 103, lists UMPG, Brooklyn Dust and "Dust Brothers Music" ("Dust Brothers") as the registrants. Dust Brothers was the company through which the co-authors Matt Dike, John Robert King and Michael Simpson did business at the time of the registration, and today they each (through their music publishing companies) hold a 15% legal ownership of the musical composition.

Brooklyn Dust has a combined 49.5% beneficial ownership interest in the musical composition copyright for "Looking Down the Barrel of a Gun": 27.5% as a result of its own writer's share and an additional 22% reflecting its additional beneficial ownership share (*i.e.*, 80% of the Publisher's 27.5% share). (*See* Exhibit 4 at ¶ 6.)

Accordingly, Brooklyn Dust is entitled to a judgment for 90% of the jury's award with respect to the musical composition copyrights for "Make Some Noise," "Pass the Mic," "Sabotage," and "So What'Cha Want," as well as a judgment for 49.5% of the jury's award with respect to the musical composition copyright for "Looking Down the Barrel of a Gun."[4]

---

[3] Adam Horovitz, Michael Diamond and Adam Yauch (*i.e,*, the three partners of Brooklyn Dust at the time of the relevant agreements) are the sole writers of "Make Some Noise," "Sabotage," and "So What'Cha Want." As to "Pass the Mic," Mario Caldato, Jr., has a writing credit in addition to Messrs. Horovitz, Diamond and Yauch, and as such is entitled to a 12.5% share of the writer's share only. Pursuant to a July 1991, Songwriters Agreement, however, Mr. Caldato assigned to Brooklyn Dust his rights as a work for hire, and all of Mr. Caldato's writer's share passes through Brooklyn Dust. Attached as Exhibit 5 is a true and accurate copy of the July 1991, Songwriters Agreement between Mr. Caldato and Brooklyn Dust.

[4] The law is well settled that a beneficial owner of a copyright is not limited to its legal ownership percentage; indeed, the Copyright Act itself is explicit that a beneficial owner with no legal interest can sue and recover for infringement: "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). For this purpose, a beneficial owner includes "for example, an author who had parted with legal title to the copyright in exchange of percentage royalties based on sales or license fees." *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159)
    (*footnote continued*)

# SheppardMullin

Honorable Paul A. Engelmayer
June 27, 2014
Page 4

Additionally, Beastie Boys is entitled to a judgment for 50% of the jury's award with respect to all of the sound recording copyrights. Plaintiffs are happy to provide additional details if the Court believes that they would be necessary or helpful in determining the final judgment amount in this action.

Respectfully submitted,

Kevin R. Puvalowski

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

cc:  S. Reid Kahn, Esq. (*via ECF only*)
     Dana Sussman, Esq. (*via ECF only*)

---

(quotation marks omitted); *see also Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69 (S.D.N.Y. 1982) (finding that an artist who transferred legal title to the copyrights at issue in exchange for a percentage of royalties based upon sales or license fees was a proper plaintiff in a copyright action).