UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                         :

BEASTIE BOYS, A NEW YORK PARTNERSHIP,    :
MICHAEL DIAMOND, ADAM HOROVITZ AND     :      Case No. 12 CV 6065(PAE)
DECHEN YAUCH AS EXECUTOR OF THE ESTATE  :
OF ADAM YAUCH, DECEASED, EACH              :
INDIVIDUALLY AND COLLECTIVELY D/B/A       :
BROOKLYN DUST MUSIC,                       :

                  Plaintiffs,           :
                                         :

        -against-                :
                                         :

MONSTER ENERGY COMPANY,            :

                                         :

                  Defendants.       :
                                         :
------------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR JUDGMENT AS A MATTER OF LAW
## PURSUANT TO RULE 50(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE
## OR, IN THE ALTERNATIVE, FOR A NEW TRIAL PURSUANT TO FRCP 59

**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, NY 10019
(212) 541-6222
*Attorneys for Defendants and*
*Third-Party Plaintiff Monster Beverage*
*Corporation, Monster Energy Company*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ *ii*

PRELIMINARY STATEMENT ......................................................... 1

ARGUMENT ................................................................................... 2

I.   Judgment Dismissing These Claims As A Matter Of Law Is Warranted
Under FRCP 50(b) .................................................................... 2

     A.   There Was Insufficient Evidence That Monster's
Conduct Was Willful Under The Copyright Act ...................... 2

     B.   There was Insufficient Evidence that Monster Is Liable
For a False Endorsement Claim Under The Lanham Act ......................................... 6

          1.   The Use Of The Five Songs Cannot Be Considered
To Support Plaintiffs' False Endorsement Claim ....................... 7

          2.   Monster's Use of The Title Of Sciacca's Megamix And of "RIP
MCA" Were Not False Or Misleading Representations Of Fact............. 10

          3.   Plaintiffs Did Not Prove Likelihood Of Confusion ................... 12

     C.   Plaintiffs Are Not Entitled To Monetary Damages On Their Lanham Act
Claim Because There Was No Evidence Of Intentional Deception .................... 16

II.   Alternatively, A New Trial Is Warranted Under FRCP 59............................... 19

     A.   The Jury's Verdict Was Overwhelmingly Against
The Weight Of The Evidence And Seriously Erroneous....................... 20

     B.   A New Trial Is Warranted Because Monster's Use Of The Five Songs Was
An Improper Consideration For The False Endorsement Claim ..................... 22

     C.   The Jury's Verdict Is Excessive............................................. 23

CONCLUSION.................................................................................. 26

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Agence Fr. Presse v. Morel,
  934 F. Supp. 2d 547 (S.D.N.Y. 2013)...................................................... 3

Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n.,
  981 F. Supp. 2d 153 (E.D.N.Y. 2013) .................................................. 24

Brady v. Wal-Mart Stores, Inc.,
  455 F. Supp. 2d 157 (E.D.N.Y. 2006) .................................................. 20

Brown v. Twentieth Century Fox Film Corp.,
  799 F. Supp. 166 (D.D.C. 1992).......................................................... 13

Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.
  2013 U.S. Dist. LEXIS 31155 (S.D.N.Y. Mar. 6, 2013) ...................... 12

Bryant v. Media Right Prods.,
  603 F.3d 135 (2d Cir. 2010)................................................................ 3

Burke v. Mars, Inc.,
  571 F. Supp. 2d 446 (S.D.N.Y. 2008) (Chin, J.)................................... 7

Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.,
  650 F. Supp. 2d 314 (S.D.N.Y. 2009)................................................. 25

Dastar Corp. v. Twentieth Century Fox Film Corp.,
  539 U.S. 23 (2003).............................................................................. 8

DLC Mgmt. Corp. v. Town of Hyde Park,
  163 F.3d 124 (2d Cir. 1998)............................................................... 20

EMI Catalogue P'ship v. Hill, Holiday, Conors, Cosmopulos, Inc.,
  228 F. 3d 56, 2000 U.S. App. LEXIS 30761 (2d Cir. 2000) ........... 7, 8, 9

Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp.,
  136 F.3d 276 (2d Cir. 1998)............................................................ 2, 16

Henley v. Devore,
  2010 U.S. Dist. LEXIS 67987 (C.D. Cal. June 10, 2010) .................... 10

ii

Home Box Off. v. Champs, Inc.,
    837 F. Supp. 480 (D. Conn. 1993) .................................................................... 24

Microsoft Corp. v. Computer Care Ctr., Inc.,
    2008 U.S. Dist. LEXIS 112080 (E.D.N.Y. Apr. 8, 2008) ................................ 23

Naked Cowboy v. CBS,
    844 F. Supp. 2d 510 (S.D.N.Y. 2012).......................................................... passim

New Kids on the Block v. News America Pub., Inc.,
    971 F. 2d 302 (9th Cir. 1992) .......................................................................... 11

Oliveira v. Frito-Lay, Inc.,
    251 F. 3d 56 (2d Cir. 2001).......................................................................... passim

Pirone v. MacMillan,Inc.,
    894 F. 2d 579 (2d Cir. 1990)...................................................................... 12, 13

Playtex Prods. v́. Georgia-Pacific Corp.,
    390 F. 3d 158 (2d Cir 2004)............................................................................ 12

Polaroid Corp. v. Polarad Electronics Corp.,
    287 F. 2d 492 (2d Cir. 1961)...................................................................... 12, 14

Resource Developers, Inc. v. Statue of Liberty – Ellis Island Found., Inc.,
    926 F. 2d 134 (2d Cir. 1991)...................................................................... 16, 17

Seale v. Gramercy Pictures,
    964 F. Supp. 918 (E.D.Pa. 1997) .................................................................... 13

Song v. Ives Labor, Inc.
    957 F. 2d 1041 (2d Cir. 1992).......................................................................... 20

Sony Corp. of Am. v. Universal City Studios, Inc.,
    464 U.S. 417 (1984) ......................................................................................... 9

Zervitz v. Hollywood Pictures,
    995 F. Supp. 596 (D. Md 1996) ...................................................................... 25

**STATUTES**

Copyright Act, 17 U.S.C. § 504(c)(2)............................................................... 1, 2

Lanham Act, 15 U.S.C. § 1125(a)(1)................................................................. 1, 7

#384810.10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 8

Fed. R. Civ. P. 50 .............................................................................................. 1, 2, 17, 20

Fed. R. Civ. P. 59 .............................................................................................. 1, 2, 19, 20

#384810.10

## PRELIMINARY STATEMENT

Defendant Monster Energy Company ("Monster") submits this memorandum of law in support of its motion for judgment as a matter of law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure ("FRCP"), or in the alternative, for a new trial pursuant to FRCP 59.  Monster submits that there was insufficient evidence on which a reasonable jury could have based a verdict finding: willfulness under the Copyright Act, 17 U.S.C. § 504(c)(2), liability for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and awarding monetary relief under the Lanham Act, and that such verdict was against the weight of the evidence, excessive, seriously erroneous and a miscarriage of justice.

The trial in this matter commenced on May 27, 2014.  At the close of the case in chief of plaintiffs Beastie Boys, Michael Diamond, Adam Horovitz, Dechen Yauch, as executor for the estate of Adam Yauch, and Brooklyn Dust Music (collectively, "Plaintiffs"), Monster moved, pursuant to Rule 50(a), for judgment as a matter of law, arguing that Plaintiffs failed to prove: (a) that Monster acted willfully for purposes of awarding enhanced statutory damages under the Copyright Act; (b) the elements necessary to establish liability under the Lanham Act, including the elements of false or misleading representation of fact and likelihood of confusion; and (c) actual confusion or intentional deception necessary to obtain monetary relief under the Lanham Act.  The Court denied the motion without prejudice.  On June 5, 2014, following seven days of trial, the jury returned a verdict for Plaintiffs in the amount of $1.7 million, which included a finding of willfulness under the Copyright Act and awarding statutory damages of $120,000 for each of the 10 copyrights at issue for a total award of $1.2 million for the copyright infringement, finding liability under the Lanham Act, and finding that Monster intended to deceive consumers concerning the Plaintiffs' endorsement of its products under the Lanham Act, and awarding $500,000 in actual

damages under the Lanham Act.   Monster hereby renews its motion pursuant to Rule 50(b) and, alternatively, moves for a new trial pursuant to Rule 59, with respect to the finding of willfulness and the award of enhanced statutory damages under the Copyright Act, the finding of liability under the Lanham Act, and the finding of intentional deception warranting monetary relief under the Lanham Act.

## ARGUMENT

**I.      Judgment Dismissing These Claims As A Matter Of Law Is Warranted Under FRCP 50(b)**

Rule 50 provides that a court may grant judgment as a matter of law if, "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient basis to find for the party on that issue."   The Court should grant judgment as a matter of law where, viewed in the light most favorable to the opposing party and without weighing the credibility of witnesses: (a) "there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture;" or (b) "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it." Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998).   Simply put, a Rule 50(b) motion should be granted where there is insufficient evidence for a reasonable jury to have found for the opposing party on those particular issues. Id.

**A.      There Was Insufficient Evidence That Monster's Conduct Was Willful Under The Copyright Act**

In order to justify an award of enhanced statutory damages under section 504(c)(2) of the Copyright Act, Plaintiffs had the burden of proving, by a preponderance of the evidence, that

2

Monster's conduct was willful. To establish willfulness, the copyright holder is required to prove that "the infringer had knowledge that its conduct represented infringement or recklessly disregarded the possibility." Bryant v. Media Right Prods., 603 F.3d 135, 143 (2d Cir. 2010). Factors that may be considered in determining willfulness include "whether the infringer was on notice that the copyrighted work was protected," "whether the infringer had received warnings of the infringements" and "whether the infringer had experience with previous copyright ownership, prior lawsuits regarding similar practices, or worked in an industry where copyright is prevalent." Agence Fr. Presse v. Morel, 934 F. Supp. 2d 547, 570 (S.D.N.Y. 2013). By contrast, infringement is not willful "if a party reasonably and in good faith believes that its conduct is innocent, despite warnings to the contrary." Id. At the close of Plaintiffs' case in chief, there was insufficient evidence for the jury to have found that Monster acted willfully by including excerpts from five of the Plaintiffs' songs on a recap video of its Ruckus in the Rockies event (the "Video," Pl. Ex. 211).[1]

There was no evidence presented on Plaintiffs' case in chief proving that prior to receiving notification from Plaintiffs in June 2012, Monster knew that the Video infringed upon Plaintiffs' copyrights, and there was insufficient evidence that Monster recklessly disregarded that possibility. To the contrary, the evidence clearly established that Monster's marketing director for Canada, Nelson Phillips ("Phillips"), reasonably and in good faith believed that Monster had permission to use excerpts from the "all access Beastie Boys mix" (the "Megamix") from the creator of the Megamix, Zach Sciacca, also-known-as Z-Trip ("Sciacca").

Specifically, the evidence established that Plaintiffs authorized Sciacca to create the

---

[1] All exhibits referenced herein were admitted into evidence during trial and are abbreviated as either "Pl. Ex." or "Def. Ex." along with the same number used during trial and are attached to the accompanying Declaration of S. Reid Kahn, dated July 22, 2014 (the "Kahn Declaration").

3

Megamix, which contained excerpts from many of their songs, including the five songs at issue in this case. (Tr. 356:20-358; 1).[2]   The evidence further established that Sciacca was authorized to promote the Megamix by putting it on his website, where it could be downloaded for free (Tr. 451:4-15; 971:17-972:9; 973:11-12).  As Sciacca testified:

> Q.   Okay. And did you make your megamix available on your
>       website to be enjoyed by visitors to the website?
> A.   Yeah, that was -- the plan was to -- to make it and give it to the Beasties and let them
>       do what they want with it because it was clearly a promotional item for their album,
>       and one of the things was -- we were allowed to do is put it on my website
>       and have people download it.

(Tr. 359:10-16).

The evidence also established that in the green room at the after-party for the Ruckus in the Rockies event and subsequently during breakfast, Phillips and Sciacca discussed the creation of the Video, including music for its soundtrack (Phillips Dep. Tr. 177:1-16).[3]  Phillips asked Sciacca if he had any music that Monster could use as a soundtrack for the Video, and Sciacca told Phillips that his Beastie Boys' Megamix was available for free on his website (Phillips Dep. Tr. 177:1-12; Def. Ex. 7).[4]  Accordingly, Phillips believed that he had permission from Sciacca to use the Megamix,

---

[2]    The Plaintiffs' songs on the Video are "Pass the Mic," "So Whatcha Want," "Sabotage," "Looking Down the Barrel of a Gun" and "Make Some Noise" (Tr. 331:24-333:7).
       References preceded by "Tr." denote the trial transcript, relevant pages of which are attached to the Kahn Declaration.
[3]    For purposes of considering Monster's motion for judgment as a matter of law, the Court asked Plaintiffs to submit excerpts from the depositions of some of Monster's witnesses, who ultimately testified live and consequently, Monster has cited to relevant deposition testimony for this purpose.  Such citations are preceded by "Dep. Tr."
[4]    Phillips testified at his deposition that he selected the Megamix, which included Beastie Boys' music, because of a conversation he had with Sciacca in which he asked Sciacca "if he had any music that week [sic] use for a web edit" and Sciacca told him to go to his website, "there's a free download" (Phillips Dep. Tr. 177:1-12).   Asked during his deposition whether Phillips "thought that was permission to use it for the video and promote Monster products," Phillips answered, "I did, yes" (Phillips Dep. Tr. 177: 13-16).  Plaintiffs, relying on out-of-context deposition excerpts, will no doubt argue that Phillips' testimony on this point was contradictory because he stated that he was emailing Sciacca to approve the use of his image in the Video, which was required by Sciacca's contract (Phillips Dep. Tr. 126:19-127:12). However, at the same deposition, Phillips clarified that he was not emailing Sciacca simply to receive approval for the

4

and used the excerpts from the Megamix as the Video's soundtrack, including the five songs at issue (Phillips Dep. Tr. 106:13-107:13; 167:1-8; 177:1-16).  On May 8, 2012, Phillips sent Sciacca an email with a link to a draft of the Video asking Sciacca to "have a look at the video from this past weekend and let me know if you approve" (Pl. Ex. 134).  On May 9, 2014, Sciacca responded "Dope," which he testified was a slang term meaning "great" (Id.; Tr. 466:19-25).  In addition, Sciacca requested that Philips "put up the info about my Beasties mix [and] post below it 'Download the mix for free at http://ztrip.bandcamp.com'" (Pl. Ex. 134) (emphasis added).  As demonstrated by this email, even Sciacca referred to the Megamix as his "Beasties" mix (Id.).  Thereafter, Monster posted the Video on its YouTube channel (Pl. Ex. 142) and informed Sciacca of its posting, to which Sciacca again responded "Dope" (Pl. Ex. 149).

Plaintiffs failed to present any evidence that Monster continued to use Plaintiffs' music after receiving notification on June 13, 2012 that the Video allegedly infringed Plaintiffs' copyrights.  Plaintiffs likewise failed to present any evidence that Monster previously had been sued for copyright infringement.   Instead, Plaintiffs relied on after-the-fact emails sent by Monster employees with no knowledge of the relevant events, who were merely gossiping and speculating about this lawsuit after it was filed, to claim that Monster acted willfully. (Pl. Ex. 189; Pl. Ex. 195).  However, during his deposition, Monster's director of music marketing, Brent Hamilton, explained that he did not warn Phillips or "Canada" about their copyright policies (Hamilton Dep. Tr. 97:8-14).  Rather, he had discussed music clearance concerns related to user-generated content in the

---

use of his image in connection with Sciacca's contract, which Phillips had never seen prior to his deposition, but was emailing Sciacca to approve the use of Sciacca's image and the entire actual content of the Video, including the use of Sciacca's Megamix (Phillips Dep Tr. 127:10-22).  Sciacca's testimony is not to the contrary, as he merely testified that he could not remember these conversations (Tr. 455:15-457:3; 461:14-17).  Moreover, in a nearly contemporaneous email to his manager Lorrie Boula, Sciacca admitted that he had a conversation with Phillips about the Video and Monster's use of the Megamix in it (Def. Ex. 7).

sports marketing department in Corona, California, which had nothing to do with the Video (Hamilton Dep. Tr. 94:23-95:9; 97:8-14).   More importantly, because Hamilton testified that the Video had nothing to do with his department, he explained that he had no personal knowledge concerning the creation of the Video, or for that matter, Monster's policies in Canada (Hamilton Dep. Tr. 98:15-22; 122:23-123:5).   There was no reason for Hamilton or anybody else in the United States to have been involved in approving the Video, or the music in the Video; Monster's policy at the time of the relevant events was for the marketing director in charge of the particular geographic area—in this case Phillips—to ensure that necessary copyright approvals were received (Pontrelli Dep. Tr. 25:6-10; L. Nichols. Dep. Tr. May 31, 2013, 17:20-18:5; 18:18-19:15).   After-the-fact emails by employees lacking personal knowledge and commenting on a lawsuit do not provide a sufficient evidentiary basis for a reasonable jury to conclude that <u>at the time</u> the Video was created, Phillips, who was responsible for ensuring that videos from Canada had the necessary copyright approvals, acted willfully.  To the contrary, the evidence demonstrated that Philips attempted to get authorization by asking and receiving the permission of the creator of the Megamix to use it.  This is not the typical copyright infringement case where a party simply uses music with no extenuating circumstances.   Although Sciacca's permission may not have been legally sufficient to protect Monster from liability for copyright infringement, Phillip's reasonable and good faith belief that he had sought and obtained permission negates any finding of willfulness.[5]

**B.      There was Insufficient Evidence that Monster Is Liable**
        <u>**For a False Endorsement Claim Under The Lanham Act**</u>

---

[5]     In the event the Court finds that Plaintiffs failed to prove willfulness, the statutory damages must be reduced to an amount within the range of $750 - $30,000 for "regular" infringement.

6

Plaintiffs also brought a false endorsement claim under the Lanham Act, 15 U.S.C. § 1125(a)(1), based on: (a) Monster's same use of the five songs in the Video; (b) Monster's inclusion of the title of Sciacca's Megamix ("Music All-Access Beastie Boys Mega Mix Courtesy of Z-Trip Download the Link for free at Ztrip.Bandcamp.com)" at the end of the Video and on the Monster Facebook site; and (c) Monster's inclusion of "RIP MCA," also at the end of the Video.  In order to establish a false endorsement claim under the Lanham Act, Plaintiffs had the burden of proving that the name, symbol and/or device used identified the source of any products or services *and* that the defendant "(1) in commerce, (2) made a false or misleading representation of fact, (3) in connection with goods or services, (4) that is likely to cause consumer confusion as to the origin, sponsorship, or approval of the goods or services." Burke v. Mars, Inc., 571 F. Supp. 2d 446, 454-455 (S.D.N.Y. 2008) (Chin, J.).  As discussed below, Plaintiffs failed to establish sufficient evidence of the elements of its false endorsement claims and, therefore, there was no basis for the jury to find that Monster was liable under the Lanham Act.

### 1. The Use Of The Five Songs Cannot Be Considered To Support Plaintiffs' False Endorsement Claim

Monster's inclusion of excerpts from five songs does not—and cannot—be used as a basis to support Plaintiffs' false endorsement claim as a matter of law, and any consideration by the jury of Monster's use of Plaintiffs' songs in this regard cannot stand.  As indicated, Plaintiffs must first prove that the word, term, name, symbol or device used functions as a trademark capable of protection under the Lanham Act - *i.e.*- that it identifies the source of the products or goods. EMI Catalogue P'ship v. Hill, Holiday, Conors, Cosmopulos, Inc., 228 F. 3d 56, 2000 U.S. App. LEXIS 30761, at *11 (2d Cir. 2000).  However, clear Second Circuit precedent holds that that an artistic work itself cannot form the basis of a false endorsement claim.  Oliveira v. Frito-Lay, Inc., 251 F.

7

3d 56, 62 (2d Cir. 2001) (holding that artist could not sustain a claim for implied endorsement arising from the use of her signature song in a commercial). Accord, EMI Catalogue P'ship, 2000 U.S. App. LEXIS 30761, at *14-15. Indeed, a claim based on use of the work is within the exclusive province of copyright law, not trademark law. Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 34 (2003). The Supreme Court in Dastar held that, "in construing the Lanham Act, we have been careful to caution against the misuse or over-extension of trademark and related protections into areas traditionally occupied by patent or copyright" and cautioned that allowing parties to enforce rights in works of expression using trademark law would create a perpetual copyright protection, which the Constitution forbids. Id. Yet Plaintiffs' expert, Lisa Thomas, testified that she determined the "reasonable endorsement fee for the use of the association of the Beastie Boys' name, their brand, and the five -- and the association created by the five songs in connection with that video" (Tr. 526:6-10) (emphasis added).[6] However, the use of the five songs in the video should not have been considered as creating liability or determining the amount of damages under the Lanham Act as a matter of law.

In Oliveira, plaintiff singer who recorded the song "The Girl from Ipanema," sued Frito-Lay in connection with Frito-Lay's use of that song in one of its commercials. 251 F. 3d at 57-58. The plaintiff claimed that "The Girl from Ipanema" was her signature song and that Frito-Lay's commercial was an implied false endorsement. Id. at 62. The Second Circuit affirmed the lower court's dismissal under FRCP 12(b)(6) because there is not a "single precedent throughout the

---

[6]     On cross examination, Thomas likewise testified that the use of the five songs in the Video was one of the factors she considered in concluding that there was an implied endorsement (Tr. 705:15-706:1) and that the Plaintiffs would be entitled to an additional implied endorsement fee for the use of the five songs in the Video--even though she testified that they should already receive $1 million in copyright damages for that use (Tr. 798:4-10).

#384810.10

history of trademark supporting the notion that a performing artist acquires a trademark or service mark signifying herself in a recording of her own famous performance." Id.  Although noting that "there are instances in which courts have protected the 'persona' of an artist against false implication of endorsement generally resulting from the use of look-alike or sound-alikes," these cases were inapplicable because the Frito-Lay commercial used the plaintiff's actual recorded song. Id.  As a result, the singer could "sustain no claim of implied endorsement." Id.  Thus, in this Circuit, a song (or songs) cannot form the basis for a false endorsement claim, because a song cannot be protected as its own trademark under the Lanham Act.  See also, EMI Catalogue Partnership, 2000 U.S. App. LEXIS 30761, at *14-15 (holding that a musical composition cannot serve as a trademark for itself).

Courts in this Circuit and elsewhere have reached this result based on the fundamental principle that the product itself—in this case the song—cannot serve as a trademark for itself. EMI Catalogue Partnership, 2000 U.S. App. LEXIS 30761, at *14-15.  As the Supreme Court has held, there is a fundamental difference between copyright law and trademark law. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 439 n. 19 (1984).  Trademark law is concerned with symbols, elements, or devices used to identify, and prevent confusion as to, the product's source. EMI Catalogue Partnership, 2000 U.S. App. LEXIS 30761, at *15.  Copyright law, by contrast, protects the artist's right in the creative work. Id.  In the case of songs, the Second Circuit has explained that the title of the song may fulfill the "source-or-product-identifying function of a mark," but the musical composition (and/or sound recording) itself is the product. Id. Consequently, copyright law, not trademark law, is the "primary vehicle" for protecting the rights of the artist in the song. Id.

9

Here, Monster's use of the five songs cannot constitute a basis for, and should not have been considered as evidence of, Plaintiffs' false endorsement claim.   The applicability of the Second Circuit precedent does not change because Monster used five Beastie Boys songs in the Video.   It does not matter how many songs a defendant uses because "the use of a performance does not violate any trademark right of the performer."   Henley v. Devore, No. 09-cv-481, 2010 U.S. Dist. LEXIS 67987, at *61-62 (C.D. Cal. June 10, 2010) (analyzing and following Oliveira and holding that defendant's use of multiple songs did not change the result).   Here, directly contrary to controlling Second Circuit precedent, Plaintiffs relied on the songs to support its Lanham Act claim, and the jury awarded damages for use of those songs under both the Copyright Act and the Lanham Act.   Monster's use of the five songs in the Video should not have been considered by the jury as evidence of Plaintiffs' false endorsement claim, or as a factor in calculating any damages and, therefore, their verdict should be disregarded.

### 2. Monster's Use of The Title Of Sciacca's Megamix And of "RIP MCA" Were Not False Or Misleading Representations Of Fact

Because Monster's use of Plaintiffs' songs does not constitute evidence of Plaintiffs' false endorsement claim, the only items properly considered by the jury to support Plaintiffs' claim is Monster's use of the title of Sciacca's Megamix, which included the words "Beastie Boys," and its use of the term "RIP MCA" at the end of the Video.   However, "not every unauthorized use of a protected mark is actionable."   Naked Cowboy v. CBS, 844 F. Supp. 2d 510, 515 (S.D.N.Y. 2012).

In Naked Cowboy, plaintiff sued CBS for trademark infringement based on CBS's use of the term "Naked Cowboy" in the title of a YouTube video clip.   Id. at 514-515.   Holding that use of the phrase "Naked Cowboy" in the title could not sustain a claim, the court dismissed the case.   Id. at 515-516.

10

#384810.10

Here, the only use Monster made of "Beastie Boys" was to accurately communicate the title of Sciacca's Megamix: "All-Access Beastie Boys Megamix."  In the Video, Monster also indicated that the Megamix was "courtesy of Z-Trip" and could be downloaded from Sciacca's website.  As in Naked Cowboy, this use is "otherwise than as a mark" and is therefore not a false or misleading representation of fact.  Id. at 515.  Such use constitutes nominative fair use, because there was no other way for Monster to refer to Sciacca's Megamix than by its proper title.  See, e.g., New Kids on the Block v. News America Pub., Inc., 971 F. 2d 302, 308 (9th Cir. 1992) (holding that newspaper's use of the plaintiffs' trademark "New Kids on the Block" in an unauthorized poll on favorite band members constituted nominative fair use because there was no other way to refer to the plaintiff than by its proper name).

"All-Access Beastie Boys Mega Mix" was the actual title of the Megamix, which Sciacca chose with Plaintiffs' authorization and/or approval (Tr. 429:12-430:10).  Accordingly, Monster's use of the "Beastie Boys" trademark was merely referring to Sciacca's work by its proper title, and at Sciacca's request.  The statement that the Megamix could be downloaded for free from Sciacca's website was likewise a true statement of fact (Tr. 359:10-16; 446:3-22; 451:4-15; 971:17-20).  Moreover, Plaintiffs wanted people to go to Sciacca's website to listen to and download the Megamix to promote the Plaintiffs' upcoming album (Tr. 446:23-447:15), and other websites linked to the Megamix on Sciacca's website as well (Tr. 974:10-21).

For similar reasons, the use of "RIP MCA" at the end of the Video to pay homage to Adam Yauch is not the kind of unauthorized use actionable under the Lanham Act and the Lanham Act is not a strict liability statute.  Many other companies and people, including Sciacca, expressed similar sentiments after Yauch's death (Tr. 459:17-460:9).  There was nothing about Monster's expression

11

that Yauch should "rest in peace" that stated or implied that Yauch or the Plaintiffs actually sponsored or endorsed Monster or its products.  "RIP MCA" is simply not a false or misleading representation of fact.

### 3.    Plaintiffs Did Not Prove Likelihood Of Confusion

Plaintiffs failed to prove likelihood of confusion, a required element of a false endorsement claim.  In order to establish likelihood of confusion, Plaintiffs were required to prove that "an appreciable number of ordinarily prudent purchasers" were likely to be misled or confused as to the origin, sponsorship or approval of Monster's products and/or the Monster brand.   Pirone v. MacMillan, Inc., 894 F. 2d 579, 584 (2d Cir. 1990).[7]

In evaluating likelihood of confusion, the context of the use is paramount and not every unauthorized use leads to likelihood of confusion under the Lanham Act.  For example, in Pirone, the Second Circuit affirmed summary judgment, because no reasonable jury could find that a publisher's use of three photographs of Babe Ruth throughout a baseball-themed calendar, including on its cover, created a likelihood of confusion that the baseball player Babe Ruth sponsored or

---

[7]    The factors to consider in evaluating likelihood of confusion (the Polaroid factors) are:  "(1) the strength of plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) actual consumer confusion between the two marks; (6) the defendant's intent in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the relevant consumer group."  Playtex Prods. v. Georgia-Pacific Corp., 390 F. 3d 158, 162 (2d Cir 2004) (citing Polaroid Corp. v. Polarad Electronics Corp., 287 F. 2d 492 (2d Cir. 1961).  "In balancing these factors, district courts should not treat any single factor as dispositive; nor should a court treat the inquiry as a mechanical process by which the party with the greatest number of factors wins."  Id. at 162.
    In Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., this Court explained that the Second Circuit has not specifically extended the Polaroid factors to the false endorsement context, but agreed with the Ninth Circuit's approach of applying some of the factors.  No. 10-cv-2333, 2013 U.S. Dist. LEXIS 31155, at *62-64 (S.D.N.Y. Mar. 6, 2013) (citing Downing v. Abercrombie & Fitch, 265 F. 3d 994, 1007-1008 (9th Cir 2001)).  Although many of the Polaroid factors are inapplicable in endorsement cases, the Court found the relevant factors to include the level of recognition that the celebrity has among purchasers of the defendant's products; the similarity between the celebrity's likeness and the likeness used by the defendant; the level of actual consumer confusion regarding who endorsed the defendant's products; the defendant's intention in selecting the celebrity's image; the quality of defendant's products; and the sophistication of purchasers of the defendant's products.  Id.

#384810.10

endorsed the calendar. Id. at 585. Similarly, in Brown v. Twentieth Century Fox Film Corp., 799 F. Supp. 166, 168, 173 (D.D.C. 1992), the singer James Brown sued the distributers of a film that contained clips of Brown's performance on a television show, claiming that the use of the clips created a false impression that he authorized or approved of the film. The court granted summary judgment dismissing Brown's false endorsement claim because "there is no evidence whatsoever that any viewers of [the film] believed that plaintiff had endorsed the film or personally approved the use of the clip, nor could any reasonable jury reach that conclusion from watching the film." Id. at 173. See also, Seale v. Gramercy Pictures, 964 F. Supp. 918, 931 (E.D.Pa. 1997) (holding that defendant's use of plaintiff Bobby Seale's likeness on the inside of a CD insert brochure that contained no written message that Seale endorsed or approved of the CD did not falsely indicate to the consuming public that Seale endorsed the CD).

Here, Plaintiffs offered no evidence whatsoever that an appreciable number of ordinarily prudent consumers were likely to believe that Monster's use of Plaintiffs' trademarks indicated that Plaintiffs sponsored or endorsed Monster or its products. By stating that the "music was courtesy of Z-Trip," Monster made clear that Z-Trip supplied the music, not the Beastie Boys and, thus, there could be no confusion as to the source or sponsorship. See, Naked Cowboy, 844 F. Supp. 2d at 515-516 (holding that the defendant's inclusion of its own trademark prevented confusion as to whether the plaintiff was sponsoring it). This is not a case where Monster stated that the music was courtesy of the Beastie Boys; rather, Monster made it clear that the music was supplied by Sciacca. As such, Monster's use of the trademark "Beastie Boys" as a reference to the title of the Megamix was not likely to cause confusion.

With regard to "RIP MCA," given the prevalence with which the term "R.I.P." is used in

#384810.10

society by third parties not associated with the deceased person, it is not credible that a reasonable consumer would consider "RIP MCA" to be an endorsement by Adam Yauch, or his estate, of Monster.   To the contrary, when a celebrity dies, it is common for various people, and even corporations, to express remorse at that person's passing.   Sciacca testified:

> Q.   And during the course of the after-party when you spoke to the crowd, you said "Rest in peace, MCA," is that correct?
> A.   Yes, yes.
> Q.   And when you used the term MCA, you were referring to Adam Yauch, correct?
> A.   Yes.
> Q.   And when you said "Rest in peace, MCA" you were making a tribute to Adam Yauch, weren't you?
> …
> A tribute? It was more of just me giving my condolences and sort of collectively putting out there what I think we were all feeling.
> Q.   You were trying to do something nice, weren't you?
> A.   Yeah, I mean, it was a positive gesture, yes; it's a nice gesture if that's what you're implying.

(Tr. 459:17-460:9).   "RIP MCA" in the Video merely echoed Sciacca's statement during the after-party.   Viewing Monster's use of "RIP MCA" in context, there was no legally sufficient basis for the jury to conclude that an "appreciable number of ordinarily prudent purchasers" were likely to be confused as to Plaintiffs' sponsorship or endorsement of Monster.

In addition, Plaintiffs did not conduct any consumer surveys showing likelihood of confusion, and Plaintiffs admittedly were not able to demonstrate any actual consumer confusion as to whether the Beastie Boys endorsed Monster or its products (see, Tr. 1207:7-1208:1).   There was no evidence as to the quality of Monster's products or the quality of the Video, let alone anything to contradict that Monster's products and the Video are both of a high quality, which weighs against liability.   See, Naked Cowboy v. CBS, 844 F. Supp. 2d 510, 517 (S.D.N.Y. 2012) (finding no likelihood of confusion where Plaintiffs failed to allege, among other Polaroid factors, actual

14

#384810.10

consumer confusion or that the defendant's product was of a low quality).

The paltry evidence Plaintiffs did submit regarding likelihood of confusion improperly rested on the testimony of their damages expert, Lisa Thomas, who is not an expert in marketing or consumer behavior. Although Thomas speculated (under the guise of providing expert testimony) that the use of "Monster green" in the statement "RIP MCA" suggested an "intimacy" that was "very suggestive of a tie-in" (Tr. 831:7-15), even Thomas admitted that she was not qualified to make this assertion: "Remember, I'm not certified to talk about association" (Tr. 813:25-814:1; 551:15-552:17). Her testimony must be completely disregarded on this account. Thomas also concluded, based on her "independent research," that the fan bases for Plaintiffs and Beastie Boys overlap. This conclusion must be disregarded because, though Thomas may assume for purposes of calculating damages, that there was an overlap, she is not qualified to offer her opinion that there was such an overlap as a matter of fact (Tr. 726:6-727:12). Plaintiffs' only evidence on this point consisted of Hamilton's testimony that the demographics between Plaintiffs and Defendant overlap (Hamilton Dep. Tr. 85:25-86:11). Even if Hamilton's testimony alone were sufficient to establish that that the fan bases overlap, this is only one of the factors to be considered in determining likelihood of confusion.

Furthermore, Plaintiffs, who are musicians, and Monster, which is a company that sells energy drinks, "occupy distinct merchandizing markets" and there is no similarity between the products or services provided by each. This weighs heavily against a finding of consumer confusion. See, Naked Cowboy, 844 F. Supp. 2d at 517 (finding that the parties' distinct merchandizing markets weighed against likelihood of confusion).

Under the foregoing circumstances, there was no legally sufficient basis to support the jury's

15

finding of liability under the Lanham Act.

**C.**   **Plaintiffs Are Not Entitled To Monetary Damages On Their Lanham Act Claim Because There Was No Evidence Of Intentional Deception**

Even assuming Plaintiff proved liability under the Lanham Act by a preponderance of the evidence, for Plaintiffs to receive an award of damages under the Lanham Act, "they must prove either actual consumer confusion or deception resulting from the violation or that Monster's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." (Opinion & Order, Mar. 18, 2014, Dkt. 90, at *19, quoting Champagne v. Diblasi, 36 F. App'x 15, 17 (2d Cir. 2002). In order to obtain monetary damages on their false endorsement claim, Plaintiffs had to prove the additional elements of either actual consumer confusion or intentional deception. Plaintiffs admitted that they did not prove actual confusion (Tr. 1207:7-1208:1), and there was a complete absence of evidence showing that Monster's actions were intended to deceive. Consequently, the jury's award of $500,000 on the Lanham Act claim "could only have been the result of sheer surmise and conjecture," Galdieri-Ambrosini v. Nat'l. Realty & Dev. Corp., 136 F. 3d 276, 289 (2d Cir. 1998), and Monster is entitled to judgment dismissing the award as a matter of law.

In order to establish intentional deception, Plaintiffs must have presented evidence that Monster "deliberately engaged" in deceptive commercial conduct that was of an "egregious" nature, and it is not sufficient to merely present circumstantial evidence of bad motive resting on "speculation and conjecture." See, Resource Developers, Inc. v. Statue of Liberty – Ellis Island

#384810.10

Found., Inc., 926 F. 2d 134, 140, 141 (2d Cir. 1991).[8]

For purposes of consideration on a FRCP 50 motion, Plaintiffs submitted the deposition testimony of Nelson Phillips, who oversaw the production of the Video, including the selection of the five Beastie Boys songs used in the Video, and the inclusion of the link to Sciacca's Megamix and "RIP MCA" at the end of the Video.  As discussed above, Monster's use of the five songs does not constitute evidence in connection with the false endorsement claim.   Nevertheless, even if considered, there is no evidence to support a conclusion that Phillips' acted either willfully under the Copyright Act, or intentionally deceitful or in an "egregious nature" required for monetary relief under the Lanham Act. Phillips testified:

> Q. Why did you pick the Beastie Boys' music?
> A. Came down to a conversation between Z-Trip and I.  I asked him if he had any music that week [sic] use for a web edit.
> Q. And what did he say?
> A. Go to my website, there's a free download.
> Q. And you thought that was permission to use it for the video and promote Monster products?
> A. I did, yes.

(Phillips. Dep. Tr. 177: 5-16).  Any other alleged theories as to Monster's intent in selecting the music that Plaintiffs attempted to present at trial were merely the kind of improper "speculation and conjecture" that the Second Circuit has held do not support a finding of intentional deception.  See Resource Developers, Inc., 926 F. 2d at 141.

With regard to Monster's alleged use of the "Beastie Boys" name, Plaintiffs presented no evidence that this was done to intentionally deceive anyone.   Unrefuted documentary and

---

[8]   In Resource Developers, Inc., the Second Circuit affirmed summary judgment dismissing plaintiff's Lanham Act claim, holding that, despite plaintiff's argument that deliberate deception could be inferred from circumstantial evidence related to an alleged long pattern of conduct, plaintiff failed to establish that the defendant set out to intentionally deceive consumers by representing that it was affiliated with the plaintiff.

#384810.10

testimonial evidence clearly established that Monster only included the title to Sciacca's Megamix, and a link to it on Sciacca's website, because Sciacca requested it.  Sciacca testified that the initial version of the Video that Phillips emailed him on May 8, 2012 did not contain either the name of the Megamix (which includes the words "Beastie Boys") or the link to the Megamix on his website. It was only after Sciacca reviewed the Video and asked that the name of the Megamix and a link to it be included that Monster added those items.  As Sciacca testified:

> Q.  The draft video, or the video that was sent to you for your review, did it already have  an indication or a link that it was—that you could go get Beastie Boys music?
> A.  No.

(Tr. 497:9-12).  Upon viewing the Video, Sciacca responded to Phillips on May 9, 2012 asking that "[m]aybe at the end when you put up the info about my Beasties mix, you could post below it "Download the mix for free at http://ztrip.bandcamp.com'" (Pl. Ex. 134) (emphasis added).  It was only in response to Sciacca's request that Phillips thereafter included the name of Sciacca's Megamix, which was actually called, with Plaintiffs authorization, "All-Access Beastie Boys Megamix."  Similarly, after identifying the name of Sciacca's Megamix, Monster indicated on the Video that the music was "courtesy of Z-Trip."  As noted earlier, this conveys an intention to identify Z-Trip as the source who provided the songs, not the Beastie Boys, and negates any possible inference that Monster was attempting to deceive consumers into believing that the Beastie Boys endorsed or sponsored Monster.

Finally, the inclusion of "RIP MCA" in the Video also does not support a finding of intentional deception.  The uncontroverted testimony submitted on the Plaintiffs' case in chief was that Monster included this brief statement as a tribute to Yauch in light of his recent passing (Phillips Dep. Tr. 184:17-20).  Phillips testified as to his reasons for including "RIP MCA" in the

18

Video and there was absolutely no evidence to contradict his statements.

> Q. Did you ask for anything to be added to the video with reference to the death of
> Adam Yauch?
> A. Oh, I did, yes.
> Q. What was that?
> A. I asked him to put RIP MCA in the end.
> Q. **Why did you do that?**
> A. **It was a general theme of the weekend for a lot of us that had heavy influence in
> our lives from Beastie Boys music.  It was an underlying conversation the whole
> weekend.**
> Q. When you say "underlying conversation," can you explain to me what you mean?
> A. Yes.  Between – by and between people that were fans and hoes—or sorry, fans of the
> Beastie Boys and they were our heroes and their music was very influential to a lot of
> us.  **And we were I won't say as far as upset but it definitely affected all of us.**

(Phillips Dep. Tr. 111:7-112:2) (emphasis added).  In fact, Sciacca even testified that during the

Ruckus in the Rockies after-party, he shouted "rest in peace MCA" to the crowd in memory of

Yauch.  Asked why, Sciacca testified that he was giving "condolences and sort of collectively

putting out there what [he] thought [they] were all feeling" (Tr. 459:17-460:9).  Plaintiffs failed to

present any evidence contradicting Phillips' assertions that "RIP MCA" was included in the Video

merely to pay homage to Yauch in light of his recent passing.  Certainly, they failed to present any

evidence—let alone a preponderance of evidence—that Monster's actions of including "RIP MCA"

in the Video were intentionally deceptive.

Absent evidence of intent to deceive, and indeed in light of evidence presented in Plaintiffs'

case in chief which negates any such intention, the jury's award of $500,000 does not rest on a

legally sufficient basis and Monster is entitled to judgment as a matter of law.

## II.    <u>Alternatively, A New Trial Is Warranted Under FRCP 59</u>

Alternatively, Monster moves for a new trial under Rule 59, which allows a court to grant a

new trial when, "in the opinion of the district court, the jury has reached a seriously erroneous

#384810.10

result...or the verdict is a miscarriage of justice." <u>Song v. Ives Labor, Inc.</u> 957 F. 2d 1041, 1047 (2d Cir. 1992). The Court may grant a new trial when it concludes that the jury's verdict is against the weight of the evidence. <u>DLC Mgmt. Corp. v. Town of Hyde Park</u>, 163 F. 3d 124, 133 (2d Cir. 1998). Unlike a motion for judgment as a matter of law pursuant to Rule 50(b), under Rule 59, the Court is free to weigh the evidence itself and does not need to view it in the light most favorable to the verdict winner. <u>Id.</u> at 134. In addition, the Court may grant a new trial even if there is substantial evidence supporting the jury's verdict. The standard under Rule 59 is "less stringent" than the standard under Rule 50. <u>Brady v. Wal-Mart Stores, Inc.</u>, 455 F. Supp. 2d 157, 179 (E.D.N.Y. 2006).

### A. The Jury's Verdict Was Overwhelmingly Against The Weight Of The Evidence And Seriously Erroneous

The Court should exercise its discretion to order a new trial under the less stringent standard of Rule 59. In considering Monster's motion under Rule 59, the Court may consider all the evidence presented, not merely the evidence presented during the Plaintiffs' case in chief, to determine whether the jury's verdict was against the weight of the evidence. Consequently, if the Court determines that judgment as a matter of law for Monster is not warranted, the totality of the evidence presented at trial overwhelmingly weighed in favor of Monster on the issues of willfulness under the Copyright Act and on the issues of liability and monetary relief under the Lanham Act, and the Court should grant a new trial on these claims.

First, the undisputed evidence showed that Monster removed the Video on the same day that it received notification from Plaintiffs of the alleged infringement and even contacted third parties to ask them to remove any references to Plaintiffs (Def. Ex. 10; Tr. 1129:11-1130:19). Second, testimony from Monster's witness, LeRoy Nichols, established the uncontroverted fact that Monster

20

had never been sued for copyright infringement before (Tr. 1319:14-20). Third, Monster presented evidence that it had policies in place to ensure that the content in its videos had the appropriate licenses. LeRoy Nichols testified that Monster's policy was for third-party producers, who created the majority of the videos, to secure any necessary intellectual property rights for the content of the videos and had agreements in place requiring this (Tr. 1188:11-1189:3). Monster also had a policy of using a third-party clearinghouse called Audiosocket for music used in its videos (Tr. 1189:4-14). Finally, there was no evidence presented by either side that Monster had ever engaged in copyright infringement previously. This evidence overwhelmingly established that Monster's conduct was neither willful under the Copyright Act, nor intentionally deceptive under the Lanham Act.

With respect to the amount of damages awarded for the false endorsement claim, the only probative evidence on the value of the alleged endorsement came from Monster's expert witness, Erich Joachimsthaler, who testified that because no association could have been formed in the minds of consumers, there was no value to any alleged endorsement (Tr. 813:25-814:1). By contrast, Plaintiffs' expert, Lisa Thomas testified that the value she attributed to the endorsement ($1 million) was derived solely from the association that she assumed was created between the Beastie Boys and Monster. However, Thomas admitted that she was not qualified to testify as to associations and her testimony in this regard was stricken from the record (Tr. 551:15-552:17; 813:25-814:1). Joachimsthaler, a marketing and branding expert, who was qualified to testify and opine concerning associations, testified that the Video, as well as the use of "Beastie Boys" in the title of the Megamix and "RIP MCA," did not create an association between the Plaintiffs and Monster under the circumstances presented and thus, there was no value to any purported endorsement (Tr. 1422:1-7). As this Court held, the lack of an association is relevant to actual

#384810.10

damages because "damages to the Beastie Boys would arguably be little if any, if viewers would neither remember the Video nor retain from it an association between the Beastie Boys and Monster."[9]  Opinion & Order, March 18, 2014, Dkt. 90.  Joachimsthaler's testimony was the only competent testimony in this regard and it was therefore overwhelmingly against the weight of the evidence for the jury to have awarded actual damages.

### B.   A New Trial Is Warranted Because Monster's Use Of The Five Songs Was An Improper Consideration For The False Endorsement Claim

Moreover, a new trial is warranted on the Lanham Act claim because the jury improperly considered Monster's use of the five songs as a consideration in finding liability and awarding damages.  As described above, because Second Circuit precedent clearly establishes that the use of the songs themselves cannot form the basis of a Lanham Act claim, the jury should not have considered Monster's use of the five songs in determining liability under the trademark claim. Oliveira v. Frito-Lay, Inc., 251 F. 3d 56, 62 (2d Cir. 2001).  Plaintiffs' expert, however, told the jury to do precisely that.  Thomas testified that the use of the five songs in the Video was one of the factors that created the endorsement (Tr. 705:15-706:1).  Likewise, Thomas also testified that the use of "Beastie Boys" in the link, which as described above is not an actionable use under the Lanham Act, was a factor in creating the endorsement (Tr. 795:20-796:20).

Even if Plaintiffs had been able to establish liability under the Lanham Act and also prove that Monster's actions were intentionally deceptive, the jury should not have awarded damages based on the five songs because those damages were addressed in the copyright claim and Plaintiffs

---

[9]  Although Monster is mindful of this Court's ruling that Joachimsthaler was to testify as a damage expert, Monster submits that his testimony also further negated likelihood of confusion because no association was formed between Plaintiffs and Monster in the minds of consumers, which indicates they were unlikely to be confused as to the Plaintiffs' sponsorship of the Video or Monster.

should not receive double recovery for the same wrong.  <u>See</u> <u>Microsoft Corp. v. Computer Care</u> <u>Ctr., Inc.</u>, No. 06-cv-1429, 2008 U.S. Dist. LEXIS 112080, at *22 (E.D.N.Y. Apr. 8, 2008) (refusing to award damages under both the Copyright Act and the Lanham Act because to do so would constitute impermissible double recovery); J. McCarthy, <u>Trademarks & Unfair Competition</u> §6:16, at 6-44 (2014) (stating that recovery of damages under both false designation and copyright theories would constitute double recovery).  Moreover, it is impossible to determine how much of the jury's $500,000 award of actual damages to Plaintiffs was attributable to Monster's use of the five songs and/or the inclusion of "Beastie Boys" in the link to the Megamix.  It is axiomatic that if Monster's use of the five songs cannot support liability under the Lanham Act, it should not have been a basis for awarding damages under the Lanham Act.  Yet, Thomas testified that the use of the five songs was the second most important factor in valuing the implied endorsement (Tr. 799:24-800:1).  Thomas further testified that she "combined" the use of "RIP MCA" with the use of "Beastie Boys" in determining the "value" of the implied endorsement (Tr. 796:21-24).  In fact, Thomas testified that she did not value "RIP MCA" separately at all (Tr. 799:7-15).  Because there is no way to determine whether the jury likewise "combined" the value attributable to the use of "RIP MCA" with Monster's use of the songs or "Beastie Boys" in the link to the Megamix, a new trial is warranted for that reason alone.

**C.**     **<u>The Jury's Verdict Is Excessive</u>**

Alternatively, Monster requests that the Court exercise its discretion to remit the jury's award of damages under the Lanham Act and Copyright Act.

The jury's award of $500,000 on Plaintiffs' false endorsement claim was excessive because there was no competent testimony to support it.   Thomas' testimony was confusing, and

contradictory, and she failed to consider the duration of the alleged implied endorsement.  Thomas failed to consider that the "Beastie Boys filed a lawsuit and very publicly repudiated the endorsement here" (Tr. 565:6-7).  But her premise that the alleged implied endorsement was a "perpetual gift that keeps on giving Monster seems quite inconsistent with the fact that Monster is not gaining any benefit at this point to the Beastie Boys association" (Tr. 566:2-5).  Thomas testified that Plaintiffs' express repudiation of Monster had no effect on the value of the alleged endorsement (Tr. 558:3-12.), although she acknowledged that after learning of this lawsuit, people were unlikely to believe that Plaintiffs endorsed Monster or its products (Tr. 815:2-8).  Instead, she persisted in valuing the alleged endorsement as though it continues through this day and through perpetuity (Tr. 737:19-741:1).  This was in direct contrast to the endorsements she claimed to rely upon and to her testimony that the value of one of those deals, the Glenn Frey deal, would have increased significantly with a greater duration (Tr. 785:2-787:9).  In short, Thomas' testimony is contradictory, incomprehensible and inherently unreliable.  With no evidentiary support, the jury's award of $500,000 is clearly punitive in nature and punitive damages are prohibited by the Lanham Act.  Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n., 981 F. Supp. 2d 153, 165 (E.D.N.Y. 2013)

The jury's verdict of $120,000 per copyright for a total of $1.2 million under the Copyright Act is excessive and should be remitted to the lowest amount of statutory damages permitted.  Courts have held that high statutory damages are inappropriate, even when willfulness is found, where there is no evidence of past infringements and the defendants did not receive significant benefit from the infringement.  See, Home Box Off. v. Champs, Inc., 837 F. Supp. 480, 484 (D. Conn. 1993) (no maximum statutory damages where there were "no allegations of repeated

24

violations over an extended period of time [or] of substantial unlawful monetary gains by the defendants"). Here, there was no evidence that Monster had been sued for copyright infringement previously (Tr. 1319:14-20), nor evidence that Monster received any benefit from the Video because fewer than 14,000 people viewed it and, even among those people, no association was formed between Plaintiffs and Monster (Tr. 1422:1-7). Moreover, because the Court held that the Beastie Boys and Brooklyn Dust Music were separate legal entities, Plaintiffs effectively received double recovery—10 awards of statutory damages instead of five for each of the songs infringed. For these reasons, the Court should exercise its discretion and remit the statutory damages under the Copyright Act.

Regarding actual damages, the jury's verdict awarding $1 million for Monster's use of five songs for five weeks in a YouTube Video that was seen by fewer than 14,000 people is excessive (Pl. Ex. 200). See, Zervitz v. Hollywood Pictures, 995 F. Supp. 596, 600 (D. Md 1996) (remitting actual damages in copyright infringement case from $ 222,000 to $75,000 because it was in excess of what plaintiff could have expected to receive for his work). Moreover, Thomas' testimony was so riddled with contradictions as to be unhelpful to the jury. Namely, Thomas testified that the difference between a use in perpetuity and for five weeks was 20% (Tr. 532:6-533:10). See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co., 650 F. Supp. 2d 314, 318-19 (S.D.N.Y. 2009) (excluding expert who made assumptions that had "no basis in fact or reality"). Accordingly, the Court should exercise its discretion and reduce the verdict to a number within the range proffered by Monster's expert ($75,000-$125,000).

#384810.10

## CONCLUSION

For all of the foregoing reasons and principles of law, Monster's motion pursuant to FRCP 50(b) for judgment as a matter of law with respect to willfulness under the Copyright Act and liability and monetary relief under the Lanham Act should be granted, or in the alternative, Monster should be granted a new trial and/or remittitur of damages pursuant to FRCP 59, together with such other, further and different relief as to this Court seems just and proper.

Dated: New York, New York  
      July 22, 2014

**KANE KESSLER, P.C.**

By: _____

    S. Reid Kahn, Esq.  
    Dana M. Susman, Esq.  
    Tanya C. Pohl, Esq.  
1350 Avenue of the Americas  
New York, NY 10019  
(212) 541-6222  
(212) 245-3009 (fax)  
*rkahn@kanekessler.com*  
*dsusman@kanekessler.com*  
*tpohl@kanekessler.com*  
*Attorneys for Defendants Monster Energy Company*

TO:    Kevin Puvalowski, Esq.  
        Paul W. Garrity, Esq.  
        Thomas Monahan, Esq.  
        **SHEPPARD, MULLIN, RICHTER &**  
        **HAMPTON, LLP**  
        30 Rockefeller Plaza  
        New York, NY 10112  
        (212)-653-8700  
        (212) 653-8701 (fax)  
        *kPuvalowski@sheppardmullin.com*  
        *kanderson@sheppardmullin.com*  
        *Attorneys for Plaintiffs Beastie Boys, a New York Partnership, Michael Diamond, Adam Horovitz and Dechen Yauch as Executor of the Estate of Adam Yauch, deceased, each individually and collectively d/b/a Brooklyn Dust Music*

26

#384810.10