UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                       :

BEASTIE BOYS, A NEW YORK PARTNERSHIP,  :
MICHAEL DIAMOND, ADAM HOROVITZ AND  :
DECHEN YAUCH AS EXECUTOR OF THE    :     12 Civ. 6065 (PAE)
ESTATE OF ADAM YAUCH, DECEASED, EACH :
INDIVIDUALLY AND COLLECTIVELY D/B/A/  :  **DECLARATION OF KENNETH**
BROOKLYN DUST MUSIC,                :  **B. ANDERSON IN SUPPORT OF**
                                 :  **PLAINTIFFS' MOTION FOR**
                                 :  **ATTORNEY'S FEES AND**
            Plaintiffs,            :  **COSTS**
       -v-                     :

MONSTER ENERGY COMPANY,         :

           Defendant.          :

-------------------------------------------------------------------X

      I, KENNETH B. ANDERSON, declare as follows:

      1.     I am Special Counsel at the law firm of Sheppard Mullin Richter & Hampton LLP

("Sheppard Mullin"), the attorneys representing Plaintiffs Beastie Boys, a New York Partnership,

Michael Diamond, Adam Horovitz, and Dechen Yauch, as Executor of the estate of Adam

Yauch, deceased, each individually and collectively d/b/a Brooklyn Dust Music (collectively, the

"Plaintiffs") in this matter.  I submit this declaration in in support of Plaintiffs' motion for an

award of attorney's fees and costs pursuant to Rule 54 of the Federal Rules of Civil

Procedure, Section 505 of the Copyright Act, Section 1117 of the Lanham Act, and any

other applicable statutes and rules (the "Motion").

## A.    DOCUMENTS IN SUPPORT OF THE MOTION

      2.     Attached as Exhibit A is a true and accurate copy of the transcript of the

proceedings before this Court on January 13, 2014.

3.     Attached as Exhibit B are true and accurate copies of the relevant pages from the transcript of the trial in this action relied upon by Plaintiffs in this Motion.

4.     Attached as Exhibit C are true and accurate copies of the following exhibits which were received in evidence at trial in this action and are relied upon by Plaintiffs in this Motion:

| Exh. No. | Exhibit Description |
|---|---|
| 130 | Z-Trip Agreement for Ruckus in the Rockies 2012 Show |
| 211 | Ruckus in the Rockies 2012 Video |
| 219 | Chart of License Fees |
| 220 | Chart of License Fees |
| 238 | Screen shot from http://www.monsterenergy.com/us/ #!/pages%3Aabout |

5.     Attached hereto as Exhibit D is a true and accurate copy of a June 13, 2012, letter from me to Monster.

6.     Attached hereto as Exhibit E is a true and accurate copy of a June 19, 2012, letter from counsel for Monster to me.

7.     Attached hereto as Exhibit F is a true and accurate copy of a June 20, 2012, letter from me to counsel for Monster.

8.     Attached hereto as Exhibit G is a true and accurate copy of a June 27, 2012, letter from counsel for Monster to me.

9.     Attached hereto as Exhibit H is a true and accurate copy of a May 29, 2014, press release issued by Monster regarding the trial in this action.

10.     Attached hereto as Exhibit I is a true and accurate copy of Plaintiffs' January 25, 2013, mediation statement to Judge Henry Pitman.

11.     Attached hereto as Exhibit J is a true and accurate copy of a May 22, 2013, Offer of Judgment issued by Monster.

12.     Attached hereto as Exhibit K is a true and accurate copy of a July 30, 2013, Offer of Judgment issued by Monster.

13.     Attached hereto as Exhibit L is a true and accurate copy of a November 8, 2013, letter from me to S. Reid Kahn.

14.     Attached hereto as Exhibit M is a true and accurate copy of a November 8, 2013, email from Mr. Kahn to me and other attorneys involved in this action.

15.     Attached hereto as Exhibit N is a true and accurate copy of a November 12, 2013, email from Mr. Kahn to me and other attorneys involved in this action.

16.     Attached hereto as Exhibit O is a true and accurate copy of the transcript of the proceedings before this Court on November 25, 2013.

17.     Attached hereto as Exhibit P is a true and accurate copy of an email chain between me and Reid Kahn exchanged on December 17, 2013.

18.     Attached hereto as Exhibit Q is a true and accurate copy of an email chain between Mr. Kahn and Judge Pittman's Courtroom Deputy exchanged between  November 6, 2013 and November 15, 2013.

19.     Attached hereto as Exhibit R is a true and accurate copy of an email chain between Kevin R. Puvalowski and Richard Possel exchanged on January 2, 2014.

20.     Attached hereto as Exhibit S is a true and accurate copy of a June 5, 2014 article from the online version of *Rolling Stone* magazine.

21.     Attached hereto as Exhibit T is a true and accurate copy of the June 5, 2014, Verdict Form in this action.

22.     Attached hereto as Exhibit Z is a true and accurate copy of the transcript of the proceedings before this Court on May 22, 2014.

## B.    THE PARTIES' SETTLEMENT POSITIONS IN THIS ACTION

23.     Throughout this action, Monster refused to engage in settlement discussions in good faith.  After Plaintiffs commenced this action the parties were referred to Magistrate Judge Pitman for mediation.  The parties initial mediation session took place on January 30, 2013.

24.     At that mediation, Plaintiffs made an initial demand of $3,200,000 based upon a benchmark in their licensing history where Plaintiffs had been paid $800,000 for use of a single musical composition copyright and a single sound recording copyright in connection with a trailer for the movie *Hancock*, and Plaintiffs' then understanding that Defendants had used eight Copyrights in connection with the Video Advertisement.  In connection with this settlement offer, and all subsequent offers made by Plaintiffs, a resolution would include a release of any claims maintained by Universal-Polygram International Publishing, Inc. and Capitol Records, LLC, the co-owners of the Copyrights.

25.     Monster failed to appear at the mediation with a party representative and initially declined to make a settlement offer, however, after caucusing with Judge Pitman, Monster made a settlement offer of $25,000.  The mediation was then adjourned by Judge Pitman.

26.     On May 22, 2013, Monster made an offer of judgment for $100,001 plus reasonable attorney's fees and costs.  Monster made a subsequent offer of judgment on July 30, 2013, for $200,001 plus reasonable attorney's fees and costs.

27.     Shortly thereafter, when the parties were subsequently ordered to conduct an hour long settlement meeting, which took place on August 25, 2013, Plaintiffs reduced their demand to $1,650,000.  In response, Monster indicated that it would not negotiate its position if Plaintiffs' proposed settlement amount was not less than $1 million, and that settlement meeting ended at that impasse.  After Judge Pitman scheduled an additional settlement conference for November 18, 2013, which Plaintiffs were willing to participate in, Monster requested that the conference be canceled because it believed that the conference would not be useful.

28.     At a pretrial conference before this Court on November 25, 2013, the parties were ordered to participate in a mediation in California.  In advance of and upon commencement of the mediation, Monster represented that its party representative, a Vice President from Monster's general counsel's office named Terry Hughes, had full settlement authority.  However, during the mediation, it became clear that Mr. Hughes did not have any authority to increase Monster's settlement offer above the $200,000 it had previously offered.  While Monster ultimately improved their offer to $250,000, after Mr. Hughes conferred via telephone with someone who purportedly had settlement authority at Monster's home office, the mediation ended unsuccessfully when Monster made clear that the only person with authority to increase its settlement offer further was Monster's CEO.

29.     Despite the unsuccessful mediation, the mediator, Richard Posell, indicated he would be willing to meet Monster's CEO in an effort to reach a settlement. Monster declined Mr. Posell's request for a meeting.

30.     Ultimately, Monster's intransience has not been tempered even by the verdict. Following the Court's ruling on the post-trial motions, Plaintiffs expressly invited a conversation to explore settlement. Plaintiffs in December 2014 volunteered to Monster's counsel that they remained interested in settlement – obviating the need for this motion and the appeal Monster has said will follow. Monster did not respond to this overture.

## C.     MONSTER'S UNREASONABLE CONDUCT IN THIS ACTION

31.     From the outset of the litigation, Monster disputed the most basic elements of Plaintiffs' claims as to which there could be no reasonable dispute. Monster disputed Plaintiffs' ownership of the Copyrights, which required Plaintiffs to conduct a detailed legal analysis of the recording and publishing agreements at issue for presentation to the jury at trial.

32.     Monster also challenged infringement throughout the litigation, which required Plaintiffs to prepare their affirmative case to prove ownership of the Copyrights and the substantial similarity of those copyrighted works and musical compositions and sound recordings which are heard in the Video Advertisement. Accordingly, Plaintiffs retained a musicology expert, obtained certified copyright records, prepared witnesses, and assembled other documents all to prove the obvious—that Plaintiffs own the Copyrights and that those Copyrights were used in the Video Advertisement. Monster

ultimately conceded the issue of infringement for the first time at the final pre-trial conference just days before the trial began.

33.     Monster also attempted to claim that Plaintiffs were not entitled to a jury trial, despite the fact that the parties had agreed to a jury trial in their jointly submitted Civil Case Management Plan and Scheduling Order.  (Dkt. No. 58.)  Additionally, Monster made four unsuccessful applications to the Court seeking to preclude Lisa Thomas, Plaintiffs' damages expert, from testifying at trial. (Dkt. Nos. 63, 92, 101, 109.) Monster also prolonged the trial with its unduly lengthy examinations of Plaintiff's witnesses, which substantially exceeded the estimates it had provided in advance of trial. (*See, e.g.,* Tr. 788-89.)  As a result of Monster's conduct, Plaintiffs' costs in prosecuting their claims increased substantially.

## D.     PLAINTIFFS' BASIS FOR THE FEES AND COSTS IN THIS ACTION

34.     Having prevailed at trial, Plaintiffs now seek to recover $2,484,437.38 in attorney's fees and costs.  This amount consists of $2,385,175.50 in fees for 4,227.3 hours of work performed by Sheppard Mullin attorneys and litigation support staff, and $99,261.88 in costs incurred by Sheppard Mullin and Plaintiffs.

35.     Below, I briefly summarize the necessary and reasonable services rendered by myself and Sheppard Mullin in connection with this action, for which Plaintiffs are seeking an award of attorney's fees and costs, as well as the qualifications of the attorneys and litigation support staff that performed the services described below.

36.     The work described herein is set forth in detail in Sheppard Mullin's contemporaneous monthly time records, which describe the necessary work  performed by Sheppard Mullin attorneys in connection with this action and are attached hereto as Exhibit U.

Those time records are summarized in the billing summary attached hereto as Exhibit V.  The time records are also summarized in a timeline attached hereto as Exhibit W.  The timeline reflects the work performed each month broken down by each phase of this action.  Plaintiffs incurred $895,926.00 during the pleading and discovery phase of this action (June 2012 through December 2013), $1,288,811.5 during the trial phase of this action (January through June 2014), and $200,438 during the post-trial phase of this action (July through December 2014).  The necessary costs described herein are set forth in detail in Sheppard Mullin's contemporaneous monthly time records (Exhibit U), and an invoice for deposition costs that Plaintiffs paid directly.  That invoice and corresponding payment is attached hereto as Exhibit X. All of the costs that Plaintiffs are seeking to recover are set forth in the costs summary attached hereto as Exhibit Y.

37.    I have over 25 years of experience in counseling clients in connection with pre-litigation and litigation disputes regarding music copyright infringement claims and related matters, many of which are high-profile and landmark cases in which I supervised and actively participated in.

38.    I am also a highly-rated expert practitioner in transaction matters, including recording and publishing agreements, licensing, and name and likeness uses, necessary to the prosecution of this case.

39.    I have represented Plaintiffs since 1985.  When Plaintiffs discovered the Video Advertisement, they immediately contacted me and I issued the initial cease and desist and demand letters to Monster.  When Monster refused to account for its infringement and false endorsement, Theodore C. Max was assigned to oversee and conduct discovery in the litigation.

-8-

40.    Mr. Max has over thirty years of experience as an attorney, with a practice primarily focusing on counseling clients on and litigating cases regarding intellectual property issues.  Together with Mr. Max, our work included, but was not limited to: extensive legal research; drafting Plaintiffs' complaint, initial disclosures, discovery requests and responses, and Plaintiffs' submissions in support of Third Party Defendant Zach Sciaca's summary judgment motion; preparing for and deposing eight fact witnesses; defending the depositions of four fact witnesses; overseeing the review and production of Plaintiffs' document productions; and overseeing the review of Monster's document productions.

41.    Over the course of this litigation, Sheppard Mullin attorneys were primarily assisted in our work by associates Valentina Shenderovich and Kathryn J. Hines, as well as paralegals and other litigation support staff, including:  Lisa S. Rodriguez, a Paralegal; Brian Simpson, the Managing Clerk of the Firm's New York office; Giles Mitchell, a Litigation Support Specialist who assisted with electronic discovery in this action; and Stephanie Limbaugh, a Senior Trial Support Specialist who assisted with preparing for trial and prepared and presented exhibits and demonstratives to the courtroom and jury during the trial.

42.    In July 2013, with the prospect of a trial in this matter on the horizon, Kevin R. Puvalowski was assigned to assist with completing expert discovery and assume the role of lead trial counsel.  Mr. Puvalowski has twenty years of experience as an attorney, and has extensive trial experience both as a litigator in private practice and as an Assistant United States Attorney in the Southern District of New York.

43.    Additionally, in the summer and fall of 2013, Mses. Shenderovich and Hines left Sheppard Mullin, and Thomas M. Monahan became the primary associate assigned to the case.  Mr. Monahan graduated from Brooklyn Law School with *magna cum laude* honors in 2010 and has been working as a litigation associate in New York City since that time.

44.    After the December 2013, mediation failed to result in a settlement, Paul W. Garrity was assigned to assist Mr. Puvalowski in connection with the imminent trial. Mr. Garrity also has twenty years of experience as an attorney, focusing primarily on intellectual property litigation, including trademark, copyright and false advertising.

45.    In advance of trial, the work performed by Messrs. Puvalowski, Garrity, and Monahan and myself included, but was not limited to:  interviewing and selecting expert witnesses for use at trial; preparing for and conducting the depositions of Monster's two expert witnesses; defending the depositions of Lisa Thomas; conducting extensive legal research; reviewing depositions and document productions; drafting pre-trial submissions, including the parties' Joint Pretrial Order and motions *in limine*; interviewing and meeting with witnesses in advance of trial; preparing for and participating in the eight day jury trial before this court; and opposing Monster's post-trial motions to overturn the jury's verdict.

46.    Sheppard Mullin's contemporaneous monthly time records, describe the work performed on this matter by Sheppard Mullin attorneys, legal assistants and staff. These records identify the hourly fees accrued in connection with this litigation and, for each entry, specify the date, the hours expended, and the nature of the work done.  In

those records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered.

47.     Plaintiffs seek to recover fees and costs from Monster for 4,227.3 hours of work by Sheppard Mullin attorneys and litigation support staff, as set forth in the billing summary.  The hours accrued were both necessary and reasonable in order to fully litigate Plaintiffs' claims in this action.  The hours worked produced a significant victory for Plaintiffs, who prevailed at trial and again when this Court sustained that verdict with its December Order denying Monster's post-trial motions.

48.     The billing rates for Sheppard Mullin attorneys and litigation support staff who worked on this matter are set forth in the billing summary.  Based on my 25 years of experience in this field and market, these rates are reasonable, as they are equivalent or comparable to the prevailing rates charged by similarly experienced attorneys at other law firms practicing in the Southern District of New York.

49.     Sheppard Mullin also billed Plaintiffs at a reduced rate to offset the significant financial burden of pursuing their claims against Monster.  Plaintiffs were charged an hourly rate of $675 for Messrs. Puvalowski, Garrity, and my time.  During the time we billed to this case, Mr. Puvalowski's scheduled hourly rate was between $680 and $765, Mr. Garrity's scheduled hourly rate was between $695 and $765, and my scheduled hourly rate was between $695 and $840.

50.     The overall fees billed to Plaintiffs have also been reduced here.  Although all Sheppard Mullin attorneys who billed to this matter are listed in the firm's contemporaneous time records, Plaintiffs are not seeking to recover all of the fees and

costs incurred in this action.  Plaintiffs are not seeking to recover from Monster for work performed by attorneys and staff that devoted less than 10 hours of work to this matter. Similarly, Plaintiffs are not seeking to recover for the work performed by Mr. Max after July 2013, when Mr. Puvalowski became lead counsel on the case.  In total, Plaintiffs are not seeking reimbursement for 189.7 hours of work performed by Sheppard Mullin attorneys and staff, representing $101,504.50 in attorneys' fees.  Those hours and fees are reflected in the billing summary as time that Plaintiffs are not seeking to recover.

51.     Similarly, during the course of issuing bills to Plaintiffs in this action, counsel inadvertently billed 8.1 hours of time that was attributable to matters that Sheppard Mullin is engaged in on behalf of Plaintiffs other than this action.  Plaintiffs are not seeking to recover for this time.  The time entries were made on November 28, 2012, January 14, 2014, March 6, 2014 and June 6, 2014.  That time has been marked on the bills with an "X, and the deduction of those amounts are reflected in the billing summary.

52.     Plaintiffs are also seeking to recover $99,261.88 in costs incurred by Sheppard Mullin and Plaintiffs as set forth in the costs summary.  The costs and expenses include fees for court reporters, copies of deposition and trial transcripts, postage, messenger and overnight delivery services, duplicating and reproduction, supplies, and electronic research costs.

53.     These costs are reasonable because they are not associated with routine office overhead, but rather are identifiable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.  Moreover, these are all costs that Sheppard Mullin routinely charges to its clients and for which Plaintiffs agreed to pay for.  In fact, many of

these expenses were incurred in connection with preparing for and prosecuting the trial in this action.

54.     These costs include costs associated with legal research by attorneys on Westlaw, Lexis and PACER.  These charges should be reimbursed by Monster, because Sheppard Mullin passes these expenses on to clients as separately chargeable disbursements.

55.    For the foregoing reasons, I respectfully request that the Court grant Plaintiff's motion for attorney's fees and costs in its entirety, together with such other and further relief as the Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  January 16, 2015

_____
Kenneth B. Anderson