```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
BEASTIE BOYS, et al.,                                       :
                                                            :      12 Civ. 6065 (PAE)
                              Plaintiffs,                   :
                                                            :      OPINION & ORDER
              v.                                            :
                                                            :
MONSTER ENERGY COMPANY,                                     :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Between May 27 and June 5, 2014, the Court presided over a jury trial in which the hip-hop group the Beastie Boys and affiliated plaintiffs[1] (collectively, the "Beastie Boys") pursued claims against Monster Energy Company ("Monster"), the beverage company. The jury found in the Beastie Boys' favor on their claims for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and false endorsement in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* These claims arose out of Monster's creation and dissemination of a promotional video that, without the Beastie Boys' knowledge or permission, used portions of five songs composed and recorded by the Beastie Boys as its soundtrack and included textual references to the Beastie Boys and one of its members.

      Now pending before the Court is the Beastie Boys' motion for a permanent injunction. The Beastie Boys seek to broadly enjoin Monster from using their music, voices, names, and trademarks in any advertisement or other trade-related content. Monster argues that the Beastie

---

[1] The Beastie Boys are a New York partnership. The other plaintiffs are Michael Diamond, a Beastie Boys member; Adam Horovitz, a Beastie Boys member; Dechen Yauch, executrix of the Estate of Adam Yauch, a late Beastie Boys member; and Brooklyn Dust Music, a distinct entity through which the Beastie Boys did business.

Boys are not entitled to injunctive relief and, in the alternative, that an injunction should be limited to the infringing video at issue in this litigation. For the following reasons, the Court grants the Beastie Boys' motion for a permanent injunction, but agrees with Monster that such an injunction must be tightly limited to cover only the infringing video.

## I.     Background

The Court assumes familiarity with the facts and procedural history of this case, which were detailed in the Court's December 4, 2014 Opinion resolving Monster's post-trial motions. *See* Dkt. 182, *reported at Beastie Boys v. Monster Energy Co.*, No. 12 Civ. 6065 (PAE), 2014 WL 6845860 (S.D.N.Y. Dec. 4, 2014). The background most relevant to the instant motion is summarized below.

### A.     Factual Background[2]

As part of its marketing efforts, Monster organizes and sponsors an annual event called the "Ruckus in the Rockies," which consists of a snowboarding competition and an after-party. Tr. 1092–93. Soon after the 2012 Ruckus, Monster employees created a recap video with highlights from the event. Tr. 1114–16. For the video's soundtrack, Monster used excerpts of five Beastie Boys songs. Tr. 1114–15. The video is just over four minutes long, and Beastie Boys' music fills all but 32 seconds of it. *See* PX 211 ("video"). The video also contains text that refers to the Beastie Boys and to one of the group's members. *Id.* at 3:51–3:58.

Monster never obtained, or attempted to obtain, permission from the Beastie Boys or their management to use the Beastie Boys' music and names in the video. *See* Tr. 121–22, 256, 875–76, 1115–16, 1173, 1316–17. Rather, the Monster employee who produced the video

---

[2] The Court's account of the facts of this case is drawn from the transcript of testimony given at trial, Dkt. 149–63 ("Tr."), and the exhibits admitted into evidence.

2

testified that he believed that a third party—a disc jockey who had performed at the 2012 Ruckus and had created a "Megamix" of Beastie Boys music—had the authority, and had in fact authorized Monster, to use that Megamix, including the underlying Beastie Boys' songs, in the video. Tr. 1115–16.

On May 9, 2012, Monster posted the video on its website, YouTube channel, and Facebook page. *See* Tr. 307, 531, 1119–21, 1124–26, 1266; PX 135, PX 142, PX 150, PX 200, PX 270. The description of the video that Monster posted online, and the press releases that Monster and its agents sent to snowboarding magazines and websites, contained additional references to the Beastie Boys. *See* Tr. 708, 835, 1126–29. "Dozens" of websites posted Monster's press release verbatim, including the reference to the Beastie Boys. *See* PX 165; *see also, e.g.*, PX 164, PX 276.

A few weeks later, Monster received a letter from counsel for the Beastie Boys, which stated that Monster did not have permission to use the Beastie Boys' music in the video. Tr. 1129, 1269. Monster immediately removed the video from its YouTube channel. Tr. 1130. Monster employees later edited the video—replacing the music and removing the references to the Beastie Boys—and then reposted it. Tr. 1130–31, 1277.

### B. Procedural History

On August 8, 2012, the Beastie Boys filed suit against Monster. Dkt. 1 ("Compl."). The Complaint alleged that Monster, without the Beastie Boys' consent, had used the Beastie Boys' songs and names in the video, that Monster had thereby sought to associate its products with the Beastie Boys and to convey the group's endorsement of Monster, and that Monster had posted links to the video on various websites to advertise and promote Monster's products, events, and corporate goodwill. Compl. ¶¶ 58–68. Based on these allegations, the Beastie Boys brought

claims of copyright infringement in violation of the Copyright Act, and false endorsement in violation of the Lanham Act. *Id.* ¶¶ 70–100, 109–17. On October 4, 2012, Monster filed an Answer. Dkt. 5 ("Answer"). The parties later filed an Amended Complaint and an Amended Answer. Dkt. 91, 98.

Very shortly before trial, Monster conceded liability on the copyright infringement claims. *See* Dkt. 141, at 48; Tr. 91–92. Trial therefore focused on whether the Copyright Act violations had been willful; whether Monster was liable for false endorsement under the Lanham Act and, if so, whether Monster's conduct had been intentionally deceptive; and the appropriate damages for each claim. Trial began May 27, 2014, and testimony concluded June 4, 2014.

On June 5, 2014, the jury returned its verdict. *See* Dkt. 147 ("Verdict Form"). On the Copyright Act claims, the jury found that each of Monster's 10 acts of infringement was willful, *id.* at 2, which increased the range of available statutory damages, *see* 17 U.S.C. §§ 504(c)(1)–(2). On the Lanham Act claim, the jury found that Monster had "used the Beastie Boys' persona without permission, thereby suggesting a false endorsement of Monster's products." Verdict Form at 4. On that claim, the jury also found that Monster had "intended to deceive consumers concerning the Beastie Boys' endorsement of its products," and that Monster had not proven "that consumers were not, in fact, confused or deceived as to whether the Beastie Boys endorsed Monster's products." *Id.* The jury awarded a total of $1.7 million in damages. *Id.* at 2–4.

On July 22, 2014, Monster moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rule 59 or for a reduction of the jury's damages awards. Dkt. 168–70.

On December 4, 2014, after briefing and argument, the Court denied Monster's motion, finding that the evidence presented at trial was sufficient to support the jury's verdict. Dkt. 182

4

("December 4, 2014 Opinion"). The Court held, in relevant part, that there was evidence on which a reasonable jury could find that Monster had falsely implied that the Beastie Boys had endorsed Monster and its products—in particular, by using the Beastie Boys' music prominently throughout the video and by using the Beastie Boys' names both in the video and in materials promoting the video. *Id.* at 40–42. The Court also held that the jury's finding that Monster had intended to deceive customers to believe the Beastie Boys had endorsed the company had a sufficient basis in the trial evidence and reasonable inferences therefrom. *Id.* at 55–60. Applying the eight-factor balancing test set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961), the Court also held that the evidence supported the verdict that the video was likely to cause consumer confusion, in part because the Beastie Boys are popular among Monster's target demographic, and because energy drinks are typically purchased on impulse rather than after careful consideration. Dkt. 182, at 52–55.

On June 27, 2014, shortly after trial concluded, the Beastie Boys moved for a permanent injunction, based on the liability findings on the Copyright Act and Lanham Act claims. Dkt. 165. Specifically, the Beastie Boys sought to permanently enjoin Monster: "(a) from using, distributing, or promoting" the Ruckus video; "(b) from using, distributing, or promoting any advertising which includes or uses, without plaintiffs' consent, any copyrighted musical work or sound recording owned or controlled in whole or part by Beastie Boys or Brooklyn Dust Music; (c) from using the names, voices, and trademarks of Plaintiffs for the purposes of advertising and trade purposes, in any manner; and (d) from suggesting a false endorsement of Monster's products by the Beastie Boys." *Id.* Ex. A.

The Court postponed further briefing on that motion pending resolution of Monster's post-trial motions. Dkt. 167. On January 16, 2015, Monster filed its opposition to the Beastie

Boys' motion. Dkt. 188. There, Monster argued that the Beastie Boys have not satisfied the elements required to obtain a permanent injunction or, in the alternative, that the scope of the injunction should be limited to the infringing Ruckus video. *See id.* On January 30, 2015, the Beastie Boys submitted their reply. Dkt. 197.

## II. Applicable Legal Standards

The Copyright Act provides that courts "may" grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The Lanham Act similarly provides that courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a). An injunction, however, is not mandatory and does not automatically follow a determination that a copyright or trademark has been infringed. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006) ("[T]his Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."); *see also Salinger v. Colting*, 607 F.3d 68, 78 n.7 (2d Cir. 2010) ("[A]lthough today we are not called upon to extend *eBay* beyond the context of copyright cases, we see no reason that *eBay* would not apply with equal force to an injunction in any type of case.").

A plaintiff "seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief." *Warner Bros. Entm't Inc. v. RDR Books*, 575 F. Supp. 2d 513, 551 (S.D.N.Y. 2008). Specifically, a plaintiff must demonstrate:

> (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 551–52 (citing, *inter alia*, *eBay*, 547 U.S. at 391).

### III. Discussion

As noted, the Beastie Boys seek to broadly enjoin Monster from using the Beastie Boys' music, voices, names, and trademarks for any advertising or trade-related purpose, whereas Monster argues that, if the Court decides to issue a permanent injunction at all, that relief should be limited to the Ruckus video. The Court first considers the merits of the narrower injunction, then addresses the more expansive injunction sought by the Beastie Boys.

As to the Ruckus video—which Monster concedes infringed the Beastie Boys' copyrights, and the jury found infringed their trademarks—the Beastie Boys satisfy the four-factor test.

Starting with the first factor, "[h]arm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer." *Salinger*, 607 F.3d at 81. In copyright and trademark cases, courts have repeatedly held that "proof of a likelihood of confusion . . . create[s] a presumption of irreparable harm" because lost sales or diminished reputation are difficult if not impossible to measure. *Guthrie Healthcare Sys. v. Context Media, Inc.*, 28 F. Supp. 3d 193, 215 (S.D.N.Y. 2014) (quoting *Fed. Express Corp. v. Fed. Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir. 2000)) (omission and alteration in original); *see also, e.g., Salinger*, 607 F.3d at 81; *Coach, Inc. v. Zhen Zhen Weng*, No. 13 Civ. 445 (RWS), 2014 WL 2604032, at *21 (S.D.N.Y. June 9, 2014); *Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc.*, No. 13 Civ. 2548 (KMW) (JLC), 2014 WL 1303434, at *6 (S.D.N.Y. Apr. 1, 2014). Here, because the jury found that the Beastie Boys had proven a likelihood of consumer confusion as to the group's endorsement of

7

Monster's products, Verdict Form at 4, and because the evidence supported that finding, *see* December 4, 2014 Opinion at 52–55, the Court may presume irreparable harm.

Significantly, the two surviving members of the Beastie Boys testified, emphatically, that, "since the beginning," they have refused to license their music for product advertisements because they view such licenses as "a form of selling out." Tr. 118–19 (Horovitz); *see also* Tr. 865 (Diamond). The evidence at trial corroborated that claim. The Beastie Boys' manager testified that, with one arguable exception,[3] the Beastie Boys had never authorized use of their music or names in connection with a product. Tr. 275 (Silva). The Beastie Boys' extensive licensing history, which was received into evidence at trial, similarly demonstrated that, although the Beastie Boys have licensed their music for use in television programs, motion pictures, movie trailers, and video games, they have never done so for product commercials. *See* PX 219, PX 220. Beyond the group's general policy against licensing their music for product advertisements, the surviving band members testified, credibly, that, had they been asked, they would not have granted permission for Monster to use their music in the Ruckus video because they did not want to associate with Monster's products and disliked the portrayal of women in Monster's video. Tr. 122 (Horovitz), 876 (Diamond).

Under these circumstances, Monster's exploitation of the Beastie Boys' works and persona for its own benefit inflicted an intangible, yet very real, injury on plaintiffs. Against their will, the Beastie Boys were forced to associate publicly with, and advance the cause of, a

---

[3] At trial, Monster elicited evidence that in 2011, the Beastie Boys had licensed four songs for use in snowboarding videos produced by Nixon, a watch company. Tr. 137–38, 873–74, 886–88. The group also authorized Nixon to create a watch bearing Diamond's image. Tr. 125, 275, 871. Horovitz and Diamond testified that they had agreed to the use of the group's songs and Diamond's image in this single instance because Nixon's co-founder was a friend of Diamond's. Tr. 136, 871. The Beastie Boys donated the proceeds they earned from the watch sales to charity. Tr. 134, 872–73.

corporation and marketing campaign for which they had evident disdain. As the Second Circuit has held, the "'loss of First Amendment freedoms,'" namely, "infringement of the right *not* to speak, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Salinger*, 607 F.3d at 81 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 84 (2d Cir. 2004) ("[A]n injunction should be granted if denial would amount to a forced license to use the creative work of another.").

It is, further, apparent that the monetary damages awarded by the jury did not capture—or attempt to capture—this injury. The parties agreed here, and the Court charged the jury, that the value of actual copyright damages was set by the market: the price that a willing buyer and a willing seller would have agreed upon for a license to use the Beastie Boys' music and names in Monster's video, for the duration of time that video was available. Tr. 1609 (jury instructions) (citing *On Davis v. The Gap, Inc.*, 246 F.3d 152, 166 (2d Cir. 2001)). Similarly, the Court charged the jury that the value of Lanham Act damages was measured by the price that a willing buyer and a willing seller would agree upon for an implied endorsement by the Beastie Boys in the forum represented by the video. Tr. 1617 (jury instructions) (citing *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1111 (9th Cir. 1992)). And the award of statutory damages under the Copyright Act was keyed to the willfulness of Monster's conduct, including "Monster's state of mind"; "the expenses saved, and profits earned, if any, by Monster in connection with the infringement"; and "the deterrent effect of such an award on Monster and third parties." Tr. 1613 (jury instructions) (citing *Psihoyos v. Wiley*, 748 F.3d 120, 127 (2d Cir. 2014)). None of these awards, as charged, took into account or sought to compensate the Beastie Boys for the injury caused by the forced association with Monster and its products. Nor could this injury be easily measured, "given the difficulty of protecting a right to *exclude* through monetary remedies." *eBay*, 547 U.S. at 395

(Roberts, C.J., concurring) (citation omitted); *see also Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971) ("Where there is . . . such high probability of confusion, injury irreparable in the sense that it may not be fully compensable in damages almost inevitably follows.").

Turning to the third factor, the balance of hardships, Monster argues that an injunction would frustrate *its* "First Amendment right to express itself," because "there are many ways in which the mention of the 'Beastie Boys' and/or [its members'] names would constitute fair use and/or otherwise be permissible." Dkt. 188, at 10. As a general proposition, that is surely true, but this generalization gains no traction in the specific context of an injunction not to use the Ruckus video containing the Beastie Boys music and names. Monster long ago conceded that the video infringed the Beastie Boys' copyrights. And the jury further found that the video violated the Beastie Boys' trademark rights by falsely implying an endorsement. Monster therefore has no legitimate interest, let alone a First Amendment interest, in further dissemination or use of that video. *Cf. Mint, Inc. v. Amad*, No. 10 Civ. 9395 (SAS), 2011 WL 1792570, at *3 (S.D.N.Y. May 9, 2011) ("As for the balance of hardships, '[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)) (alteration in original). A permanent injunction limited to the infringing Ruckus video would, therefore, protect the Beastie Boys from further injury without imposing any cognizable hardship on Monster.

Finally, as to the fourth factor, a permanent injunction limited to the infringing video would not disserve the public interest. *See, e.g., Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) ("[W]here an article is 'good for nothing else' but infringement,

there is no legitimate public interest in its unlicensed availability." (citation omitted)); *Romag Fasteners, Inc. v. Fossil, Inc.*, 29 F. Supp. 3d 85, 97 (D. Conn. June 27, 2014) (noting that "deception in or misuse of [a] trademark" constitutes "inequitable conduct toward the public"). To the contrary, "the public has a compelling interest in protecting copyright owners' marketable rights to their work" so as to "encourage[e] the production of creative work." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (citing, *inter alia*, *Golan v. Holder*, 132 S. Ct. 873, 890 (2012); *Metro-Goldwyn-Mayer Studios*, 545 U.S. at 961).

In light of this analysis, the Beastie Boys are clearly entitled to a permanent injunction that prohibits Monster from any further use of the infringing Ruckus video.[4] The open question is whether such an injunction should sweep any more broadly.

The Court has broad discretion to fashion injunctive relief. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011). However, "[i]njunctive relief should be narrowly tailored to fit specific legal violations" and "should not impose unnecessary burdens on lawful activity." *Guthrie Healthcare Sys.*, 28 F. Supp. 3d at 215 (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 (2d Cir. 1994)) (internal quotation marks omitted); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 220 (2d Cir. 2003) (same); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 750 (2d Cir. 1994) ("[T]he Lanham Act demands that injunctive relief be no broader than necessary to cure the effects of the harm caused.") (citation omitted). "An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct,

---

[4] The parties' proposed orders differ as to whether an injunction related to the infringing video should require Monster to remove and destroy all copies of that video. *See* Dkt. 165, Ex. A; Dkt. 188, Ex. A. There is no valid reason for Monster to retain a copy of the video, with one exception: Monster's counsel may retain a copy of the video for purposes of representing Monster in this litigation, including any appeal.

or from engaging in illegal conduct that was not fairly the subject of litigation." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011).

In the Court's view, the injunction the Beastie Boys propose is highly overbroad. It would sweep well beyond the single video at issue in this lawsuit to expansively ban a host of hypothetical future acts that the Beastie Boys cast as infringement. *See, e.g., Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir. 1999) (vacating injunction that went "beyond the scope of the issues tried in the case"); *Waldman Publ'g Corp.*, 43 F.3d at 785–86 (same). And the injunction, as proposed, could easily encompass lawful uses of the Beastie Boys' music or names. Given Monster's marketing strategy, in particular its reliance on social media and sponsored (and somewhat unstructured) events like the Ruckus in the Rockies, almost any reference to the Beastie Boys by Monster or its agents could be construed as having been made "for the purposes of advertising and trade." *See* Dkt. 165, Ex. A (proposed order). The proposed injunction could therefore sweep in instances of nominative fair use, a DJ's mention of the Beastie Boys during a Monster-sponsored party, or even, conceivably, commentary by Monster on this litigation. The Court is unwilling to chill Monster's lawful expression by issuing an overbroad injunction. *See Guthrie Healthcare Sys.*, 28 F. Supp. 3d at 215 ("[A]n injunction should not impose unnecessary burdens on lawful activity.").

Moreover, based on the evidence adduced at trial, the Court is quite unpersuaded that any such a broad injunction is necessary to protect the Beastie Boys' rights. The evidence showed that Monster's infringement via the Ruckus video—although blatant and, as found by the jury, intentional—was an opportunistic and, in all likelihood, anomalous occurrence. Although the evidence showed that the Beastie Boys' fan base overlapped significantly with Monster's target consumer market, there was no evidence whatsoever that Monster had set out, as a matter of

high-level corporate strategy, to obtain and use the Beastie Boys' music without the necessary permission, or to manufacture a false endorsement. Instead, the infringement in the Ruckus video was a product of deficient corporate controls and derelict mid- and site-level employees. As reviewed more fully in the Court's December 4, 2014 Opinion, Monster typically relies on third-party content providers to assure proper music licensing, Tr. 1280–81, 1300, whereas the Ruckus video was produced in-house, and Monster did not, at that time, have policies or protocols to assure that copyright and trademark interests were respected when such videos were made, Tr. 1134–37, 1371. After the Beastie Boys' counsel alerted Monster to the infringing video, however, Monster promptly removed the video from its website, Tr. 1130, and implemented new policies, *see* PX 191 (email stating that "ALL videos will have to be approved by [Monster headquarters] before they get posted. Any time music is used, we will need authorization on the music.").

The Beastie Boys have not pointed to any other act of infringement, or evidence outside of the episode involving the Ruckus video, that indicates a propensity by Monster to infringe on others' intellectual property rights generally or the rights of the Beastie Boys specifically. On the basis of the trial evidence, the Court finds that the infringement and false endorsement here, egregious though they were, were transgressions that are unlikely to recur. *Cf. Guzman v. Bevona*, 90 F.3d 641, 650 (2d Cir. 1996) (finding injunction overbroad where it applied to persons who were unlikely to commit further wrongdoing). Any contrary conclusion would be based on impermissible speculation. To the extent the Beastie Boys seek a permanent injunction that sweeps beyond the use of the infringing Ruckus video on which this case focused, the Court therefore denies the Beastie Boys' request for a permanent injunction.

## CONCLUSION

For the foregoing reasons, the Court grants the Beastie Boys' motion for a permanent injunction, limited to the infringing version of Monster's Ruckus video at issue in this litigation. Specifically, it is hereby ORDERED that:

(1)     Monster and Monster's employees, officers, successors, partners, agents, and assigns are permanently enjoined from reproducing, publicly displaying, distributing, performing, or promoting the version of Monster's "Ruckus in the Rockies 2012" video that included copyrighted musical compositions and sound recordings owned or controlled in whole or in part by the Beastie Boys or Brooklyn Dust music, and that contained text referring to the Beastie Boys and to one of the group's members.

(2)     By March 6, 2015, Monster shall remove the infringing video from all places where it has been stored and/or made available by Monster, shall destroy any and all copies of that video, and shall certify to such removal and destruction in a written undertaking filed with the Court. Counsel for Monster, however, are authorized to retain a copy of the video for purposes of representing Monster in this litigation and any appeal, and are at liberty to make use of the video for purposes of representing Monster's legal interests.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 165.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 20, 2015
        New York, New York