USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/20/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

BEASTIE BOYS, et al.,

                           Plaintiffs,

           -v-

MONSTER ENERGY COMPANY,

                           Defendant.

------------------------------------------------------------X

12 Civ. 6065 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

       This Opinion and Order apportions copyright damages among the plaintiffs in this case. By way of background, between May 27 and June 5, 2014, the Court presided over a jury trial in which the hip-hop group the Beastie Boys and affiliated persons and entities—namely, the two surviving members of the Beastie Boys; the executor of the estate of the third Beastie Boys member; and Brooklyn Dust Music, a distinct entity through which the Beastie Boys did business (together, "plaintiffs")—pursued claims against Monster Energy Company, the beverage company. These claims arose out of Monster's creation and dissemination of a promotional video that, without the Beastie Boys' knowledge or permission, used portions of five songs composed and recorded by the Beastie Boys as its soundtrack and included text that referred to the Beastie Boys. Plaintiffs asserted 10 counts of copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*—one for each musical composition copyright and one for each sound recording copyright infringed—and one count of false endorsement in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*

On February 14, 2014, Monster filed a pretrial memorandum that argued, *inter alia*, that the plaintiffs are not the sole owners of the copyrights at issue, and so their share of any damages awarded on the copyright claims must be limited to reflect their ownership interest. Dkt. 70, at 9. Plaintiffs conceded that the Court would need to adjust any final judgment in their favor on the copyright claims in light of the existence, for each of the copyrights, of other owner(s) who had not brought suit. Dkt. 86, at 7. In its March 18, 2014 decision resolving various motions *in limine*, the Court agreed that, because the copyrights at issue are owned in part by entities that had not joined in the lawsuit, any award of copyright damages would have to be discounted to correspond to plaintiffs' ownership interests. Dkt. 90, at 19–20.

On May 22, 2014, the Friday before trial began, plaintiffs informed the Court that two of the other co-owners of the copyrights at issue—Capitol Records ("Capitol") on the sound recording side, and Universal Music Publishing Group ("UMPG") on the musical composition side—had agreed to assign to the Beastie Boys their rights to litigate copyright infringement with respect to Monster's video. Dkt. 141, at 91. Plaintiffs therefore proposed that the then-upcoming trial resolve not only their legal interests, but also those of Capitol and UMPG. Monster objected that the Court's acceptance of that assignment of rights on the eve of trial would be unfairly prejudicial because plaintiffs had not given prior notice of this assignment, and Monster had conducted the litigation up to that point, including in making offers of judgment pursuant to Federal Rule of Civil Procedure 68, on the understanding that plaintiffs' ownership interests were the only ones at issue. *Id.* at 99.

The Court ruled for Monster on this point. The Court noted that plaintiffs' last-minute bid to expand the claimants at trial was extremely belated, without any justification. Out of respect for Monster's "reasonable expectations" and "the integrity of the settlement process," the

Court denied plaintiffs' bid to add the claims of Capitol and UMPG to those to be resolved at trial. Dkt. 149, at 3–4.

The Court noted, however, that the copyright claims that each co-owner could assert against Monster appeared to be entirely identical. Therefore, not only were Capitol and UMPG (or any other part-owner of a copyright interest) at liberty to vindicate their interests through a separate lawsuit, but it appeared that, were plaintiffs to prevail on their copyright claims here, Capitol and UMPG could thereupon obtain judgment against Monster in such a lawsuit, as a matter of collateral estoppel. *See Roe v. City of Waterbury*, 542 F.3d 31, 41 (2d Cir. 2008) ("The doctrine of offensive collateral estoppel permits a plaintiff to bar a defendant from relitigating an issue that was decided in a prior case against the defendant."); *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("In order for a plaintiff to bar a defendant from litigating an issue on collateral estoppel grounds: '(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.'" (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4, 331–32 (1979) (explaining the contours of the offensive collateral estoppel doctrine).

At trial, the jury found in plaintiffs' favor on all claims. The Court, without objection, had instructed the jury to measure damages on the copyright claims based on an assumption that the plaintiffs owned 100% of the copyrights in question, with any ensuing allocation among owners to be done by the Court. *See* Tr. 1608. The jury awarded a total of $1.2 million in statutory damages, which reflects an award of $120,000 for each of the five sound recording

copyrights and $120,000 for each of five musical composition copyrights. *See* Dkt. 147 ("Verdict Form"), at 3.[1]

On September 24, 2014, Capitol and UMPG filed a Complaint against Monster, which asserts 10 copyright infringement claims that are essentially identical to plaintiffs' claims and, consistent with the jury verdict, measures total damages for each infringement at $120,000. *See* 14 Civ. 7718, Dkt. 1. In light of the fact that this lawsuit is ongoing, and that an application for entry of judgment in Capitol's and UMPG's favor as a matter of collateral estoppel would appear to be premature until a final judgment has been entered, the Court has granted several extensions of time for Monster to answer. *See id.* Dkt. 9, 10, 11, 12. The lawsuit brought by Capitol and UMPG therefore remains in its infancy.

This Order apportions, as to each of the 10 copyright infringement claims, the damages owed to the Beastie Boys and Brooklyn Dust, the plaintiffs in this case who have ownership interests in one or more of the copyrights at issue. The Court has received several helpful letters from counsel on this point. *See* 12 Civ. 6065, Dkt. 164, 171, 172, 187, 196, 199. Further, with the exception of one of the 10 copyrights at issue, the Court has received writings reflecting the affirmative agreement of all copyright holders as to the percentage interest held by each owner in that copyright. Therefore, as to nine of the 10 claims, there is no risk that inconsistent ownership allocations will be used to apportion damages in the different lawsuits against Monster, thereby resulting in unfairly high damages awards. As to the tenth copyright, the Court explains below the mechanism it will use to guard against any such unfair outcome.

---

[1] The jury, in the alternative, awarded $1 million in actual damages, which reflects an award of $100,000 for each of the five sound recording copyrights and $100,000 for each of five musical composition copyrights infringed. *Id.* at 2.

4

The Court's award of damages to these plaintiffs is based on the following calculations:

### Sound Recording Copyright Damages

| Copyright | Damages Awarded | Beastie Boys Share | Capitol Share |
|---|---|---|---|
| Make Some Noise | $120,000 | $60,000 | $60,000 |
| Pass the Mic | $120,000 | $60,000 | $60,000 |
| Sabotage | $120,000 | $60,000 | $60,000 |
| So What'Cha Want | $120,000 | $60,000 | $60,000 |
| Looking Down the Barrel of a Gun | $120,000 | $60,000 | $60,000 |

As noted in the Court's December 15, 2014 Order, Dkt. 185, plaintiffs represent, and Monster has not disputed, that the Beastie Boys and Capitol Records each own a 50% undivided legal and beneficial interest in the five sound recording copyrights at issue. *See* Dkt. 164, 171. A written agreement between the Beastie Boys and Capitol Records, which was entered into evidence at trial, confirms that Capitol has consented to this allocation. *See* PX 110, at 25. Accordingly, the Court finds that the Beastie Boys are entitled to 50% of the sound recording copyright damages awarded by the jury. The Court therefore awards $60,000 to the Beastie Boys for each of five copyrights infringed, for a total of $300,000. Should Capitol, as the other 50% owner, pursue and obtain judgment against Monster on these claims based on offensive collateral estoppel, it would be entitled to an identical award of damages.

### Musical Composition Copyright Damages

| Copyright | Damages Awarded | Bklyn. Dust Share | UMPG Share |
|---|---|---|---|
| Make Some Noise | $120,000 | $108,000 | $12,000 |
| Pass the Mic | $120,000 | $108,000 | $12,000 |
| Sabotage | $120,000 | $108,000 | $12,000 |
| So What'Cha Want | $120,000 | $108,000 | $12,000 |
| Looking Down the Barrel of a Gun | $120,000 | $59,400 | $6,600 |

Plaintiffs also represent that, as to four of the five music composition copyrights at issue, Brooklyn Dust is a 90% owner, and UMPG is a 10% owner. As to the fifth musical composition copyright, for the song "Looking Down the Barrel of a Gun," plaintiffs represent that Brooklyn Dust is a 49.5% owner, that UMPG is a 5.5% owner, and that another non-party, Dust Brothers Music,[2] is a 45% owner. Dkt. 164. UMPG agrees with the calculations of its ownership interest in each of these songs: Plaintiffs have provided the Court with a declaration from David Kokakis, UMPG's Senior Vice President, which accepts these representations and agrees that UMPG will be bound by the schedule apportioning musical composition copyright damages as set out above. Dkt. 164, Ex. 4.

Unfortunately, despite what appears to have been considerable effort, plaintiffs have not been able to confer with representatives of Dust Brothers or all of its various successors. *See* Dkt. 187, 196. Nor have they been able to produce a declaration, comparable to UMPG's, in which Dust Brothers agrees that its ownership interest is as plaintiffs represent it. At the same time, there is no basis to assume that Dust Brothers would claim an ownership interest greater than 45% in the musical composition copyright for "Looking Down the Barrel of a Gun."

The Court hereby finds, based on the undisputed calculations above, that Brooklyn Dust is entitled to $108,000 in copyright damages for each of the first four musical composition copyrights and $59,400 for the musical composition copyright for "Looking Down the Barrel of a Gun." These awards total $491,400. Should UMPG, as a co-owner, obtain judgment against

---

[2] The Court has been advised that, despite the confusing similarity in names, Dust Brothers Music is wholly distinct from Brooklyn Dust Music. Dust Brothers Music was an entity through which three songwriters—Matt Dike, John Robert King, and Michael Simpson—did business. Each of those individuals, though their respective music publishing companies, now owns one-third of the copyrights previously held by Dust Brothers. Dkt. 164, at 3.

Monster on these five claims based on collateral estoppel, it would be entitled to an award of damages, consistent with these calculations, totaling $54,600.

In so ordering, the Court recognizes the theoretical—albeit unlikely—possibility that Dust Brothers, or one or more of its individual members, will one day surface and pursue judgment against Monster, while claiming a greater ownership interest in the musical composition copyright for "Looking Down a Barrel of a Gun" than that posited by plaintiffs. To protect Monster against that contingency, the Court agrees with Monster (*see* Dkt. 199) that it is proper to require plaintiffs to indemnify Monster for any damages awarded to Dust Brothers for infringement of this copyright that are based on a finding of an ownership interest for Dust Brothers exceeding 45%. Plaintiffs do not appear to object to this reasonable condition.

Accordingly, for the reasons stated herein: The Court awards a total of $300,000 to the Beastie Boys for Monster's infringement of the five sound recording copyrights at issue in this litigation. The Court also awards a total of $491,400 to Brooklyn Dust for Monster's infringement of the five musical composition copyrights.

SO ORDERED.

                                                     Paul A. Engelmayer
                                                     United States District Judge

Dated: February 20, 2015
       New York, New York