UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          :

BEASTIE BOYS, A NEW YORK PARTNERSHIP,      :
MICHAEL DIAMOND, ADAM HOROVITZ AND     :      Case No. 12 CV 6065(PAE)
DECHEN YAUCH AS EXECUTOR OF THE ESTATE  :
OF ADAM YAUCH, DECEASED, EACH           :
INDIVIDUALLY AND COLLECTIVELY D/B/A       :
BROOKLYN DUST MUSIC,                      :
                                                            :
                          Plaintiffs,         :
                                                              :
               -against-             :
                                                              :
MONSTER ENERGY COMPANY,               :
                                                              :
                          Defendants.      :
                                                             :
-----------------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES

**KANE KESSLER, P.C.**
1350 Avenue of the Americas
New York, NY 10019
(212) 541-6222
*Attorneys for Defendant Monster*
*Energy Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................*iii*

PRELIMINARY STATEMENT ........................................................................................ 1

I. THE COURT SHOULD DENY PLAINTIFFS' MOTION
FOR FEES AND COSTS IN ITS ENTIRETY ...................................................... 4

  A. Attorneys' Fees Awards Are Discretionary And Should Not Be Awarded Against
Litigants With Objectively Reasonable Positions, Such As Defendant ................ 4

  B. The Conduct Of The Litigation And The Positions Asserted By Monster During
The Course Of The Litigation Were Objectively Reasonable And Motivated By A
Good Faith Defense Of Plaintiffs' Claims ............................................................. 6

    1. Defendant Admitted Copyright Infringement Prior To Trial. ...................... 6

    2. Defendant Appropriately Pursued The Defense To Plaintiffs' Claim That
The Copyright Infringement Was Willful ...................................................... 6

    3. Wheels Fest and User Generated Content ..................................................... 7

    4. Lisa Thomas ("Thomas") – Plaintiffs' expert witness ................................. 8

    5. Plaintiffs Motion To Exclude The Testimony Of Monster's Expert
Witness Erich Joahimsthaler Was Denied.  Dkt. 90 ..................................... 9

    6. It Was Objectively Reasonable To Litigate Other Issues Raised By
Defendant ...................................................................................................... 9

  C. Plaintiffs Did Not Prevail On All Claims ........................................................... 10

  D. Monster Negotiated In Good Faith To Settle The Litigation ............................... 11

  E. There Is No Need To Further Compensate Plaintiffs Or Further Deter Defendant
............................................................................................................................ 13

II. PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES
ON THEIR LANHAM ACT CLAIM ................................................................... 14

III. PLAINTIFFS' ATTORNEYS' FEES ARE UNREASONABLE
AND MUST BE SUBSTANTIALLY REDUCED ................................................ 16

  A. All Of Kenneth Anderson's Fees Should Be Eliminated .................................... 17

B.      The Rates Claimed By Sheppard Mullin Attorneys Are Not Adequately Supported ................................................................................................................... 18

C.      The Paralegals' Rates Should Be Eliminated or Otherwise Reduced................... 21

D.      The Time Records Submitted By Plaintiffs' Attorneys Are Vague, Excessive, And Contain Block Billing Such That They Are Largely Indecipherable ................... 22

E.      Plaintiffs Should Not Be Awarded Costs............................................................. 24

CONCLUSION ........................................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*,
  No. 03 Civ. 7735 2012 WL 3126004 (S.D.N.Y. July 21, 2012) ............................................23

*Arbor Hill Concerned Citizens N'hood Ass'n v. Cnty. of Albany*,
  493 F.3d 110 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008)....18, 19

*Bourne Co. v. MPL Commc'ns, Inc.*,
  678 F. Supp. 70 (S.D.N.Y. 1988) ........................................................................................6

*Cabell v. Sony Pictures Entm't, Inc.*,
  No. 09 Civ. 1610, 2011 WL 92765 (S.D.N.Y. Jan. 7, 2011)...................................................13

*Clark v. Hudson Bay Music, Inc.*,
  104 F.3d 351 (2d Cir. 1996)....................................................................................................13

*Cold Spring Constr. Co. v. Spikes*,
  No. 11-cv-700S, 2013 U.S. Dist. LEXIS 133615 (W.D.N.Y. Sept. 18, 2013)......................25

*Creighton v. Domincan College*,
  2011 U.S. Dist. LEXIS 119374, 2011 WL 4914724 (S.D.N.Y. 2011).............................18, 25

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)...................................................................................................................10

*Dweck v. Diana Amadi & Malibu Denim Co.*,
  2012 U.S. Dist. LEXIS 102987, 2012 WL 3020029 (S.D.N.Y. July 6, 2012) ......................19

*Earth Flag Ltd. v. Alamo Flag Co.*,
  154 F.Supp.2d 663 (S.D.N.Y. 2001)........................................................................................5

*Farberware Licensing Co. v. Meyer Mktg. Co.*,
  No. 09 Civ. 2570, 2009 U.S. Dist. LEXIS 121323 (S.D.N.Y. Dec. 30, 2009)......................25

*Farmer v. Arabian Am. Oil Co.*,
  379 U.S. 227 (1964)................................................................................................................24

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994).................................................................................................................5

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
  82 F. Supp. 2d 136 (S.D.N.Y. 2000).......................................................................................15

*Guardians Ass'n of Police Dep't of N.Y. v. City of New York*,
    133 F. App'x 785 (2d Cir. 2005) ....................................................................23, 24

*Hensley v. Eckert*,
    461 U.S. 424 (1983)...........................................................................4, 22, 23, 24

*International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.*,
    80 F.3d 749 (2d Cir. 1996)..........................................................................15

*Kahlil v. Original Old Homestead Rest., Inc.*,
    657 F. Supp. 2d 470 (S.D.N.Y. 2009)..........................................................19

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998)..........................................................................23

*Litton v. Am. Tel.*,
    613 F. Supp. 824 (S.D.N.Y. 1985) ..............................................................25

*Matthew Bender & Co., Inc., v. West Publ'g Co.*,
    240 F.3d 116 (2d Cir. 2001)......................................................................5, 13

*McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*,
    450 F.3d 91 (2d Cir. 2006).........................................................................23

*Miroglio S.p.A. v. Conway Stores*
    629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009)....................................................*23, 24*

*Mister Softee of Brooklyn, Inc. v. Boula Vending, Inc.*,
    484 Fed. Appx. 623, 2012 U.S. App. LEXIS 11834 (2d Cir. 2012)......................15

*Myplaycity, Inc. v. Conduit, Ltd.*,
    2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. 2013) ...........................................15, 16

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983)......................................................................23

*Nature's Enters., Inc. v. Pearson*,
    No. 08 Civ. 08549, 2010 U.S. Dist. LEXIS 11306 (S.D.N.Y. Jan. 11, 2010)........24

*OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*,
    2010 U.S. Dist. LEXIS 138873, 2010 WL 5538552 ...........................................22

*Patsy's Italian Rest., Inc. v. Banas*,
    575 F. Supp. 2d 427 (E.D.N.Y. 2008) .........................................................15, 16

*Psihoyos v. John Wiley & Sons, Inc.*,
    No. 11 Civ. 1416(JPO), 2013 WL 1285153 (S.D.N.Y. Mar. 29, 2013) ..................5, 13, 14

*Quaratino v. Tiffany & Co.*,
    166 F.3d 422 (2d Cir. 1999).................................................................17

*Simmons v. N.Y. City Transit Auth.*,
    575 F.3d 170 (2d Cir. 2009).................................................................18

*TigerCandy Arts, Inc. v. Blairson Corp.*,
    No. 09 Civ. 6215, 2012 U.S. Dist. LEXIS 35269 (S.D.N.Y. Feb. 23, 2012)..........................20

*United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*,
    95 F.3d 153 (2d Cir. 1996).................................................................25

## STATUTES

15 U.S.C. § 1117(a) .................................................................14

15 U.S.C. § 1125(a) .................................................................11

17 U.S.C. § 505.................................................................5, 18, 24

28 U.S.C. § 1920.................................................................25

Section 51 of the New York Civil Rights Law .................................................................2, 10

## OTHER AUTHORITIES

S.D.N.Y. Local Rule 54.1 .................................................................25

Defendant Monster Energy Company ("Monster" or "Defendant") files this response in opposition to Plaintiffs' Beastie Boys and Brooklyn Dust Music (collectively "Plaintiffs") motion for attorney's fees and costs and submits that Plaintiffs' motion should be denied in its entirety or the amount of fees and costs sought by Plaintiffs should be significantly reduced.

## PRELIMINARY STATEMENT

Monster reasonably defended itself against Plaintiffs' claims by asserting viable defenses and responsibly advocating for monetary relief consistent with governing law.  In doing so, Monster ultimately achieved a result that was $1.5 million less than Plaintiffs' unreasonable $3.2 million settlement demand made at the parties' first mediation, which took place just five months after this action commenced.  Faced with a multi-million dollar demand and a complaint that asserted more than 40 copyrighted works-only 10 of which were justifiably included in this action-Plaintiffs left Monster with little choice but to litigate the matter.

There can be no dispute that the jury awarded Plaintiffs' a verdict on the claims that proceeded to trial in this case.  However, on this motion, we request that the Court look beyond Plaintiffs' artful portrait of unmitigated victory, to the full picture of this litigation which began when the complaint was filed on August 8, 2012.  It should evaluate the parties' full range of claims and defenses, the extent to which Plaintiffs prevailed on all of its positions, not just at trial but through various motions leading up to trial, and the reasonableness of the parties' respective positions.  We ask that the Court also consider whether the substantial verdict which Plaintiffs recovered is sufficient to compensate them and to deter future infringement.  Based upon this full picture, this Court should decline to award any attorney's fees to Plaintiffs.

As a threshold matter, Plaintiffs did not prevail on many of the claims and theories asserted by them.  Although they won on their copyright claims at trial involving 5 songs and 10

copyrights, they initially asserted infringement claims, improperly and frivolously, of an additional 33 copyrights involving an additional 19 songs, which were never pursued at trial (Dkt. 1, pgs. 5-9).  Plaintiffs also asserted a claim for a violation of Section 51 of the New York Civil Rights Law which was never pursued at trial (Dkt. 1, pgs. 20-21).  Plaintiffs should not be awarded fees for time expended on claims which were abandoned.

Although Plaintiffs prevailed on their claims relating to the 5 songs really at issue, the proper focus on this motion is objective reasonableness, which mandates that no fees be awarded to Plaintiffs.  Fair grounds for litigation existed here.  Defendant's positions were objectively reasonable, were taken in good faith, and often involved complex, novel and unusual legal issues.  In fact, a significant number of Defendant's motions and legal positions were supported by decisions of this Court.  Indeed, with respect to the reasonableness of Monster's legal arguments at trial, Plaintiffs' own application admits that these raised "complex issues of law." (Plaintiffs' Memorandum of Law at 23).

Given the need for Monster to defend itself against numerous untenable and excessive claims, and the failure of both sides in settlement talks to bridge too large a gap as to the claims that went to trial, Monster acted reasonably and responsibly in having the Court decide the amounts to be recovered.  Under these circumstances, this is not a case where the court needs to or should exercise its discretion to make an award.  Monster accepted responsibility by immediately taking down the Video, and never disputing and ultimately admitting liability for copyright infringement.  From inception, this litigation focused on the amount of Plaintiffs' copyright infringement damages.  The fact that Monster would not agree to pay what Plaintiffs demanded, which was 15 times more than their pre-suit demand, does not indicate that Monster failed to accept responsibility for the infringement.

After the filing of the lawsuit, Plaintiffs' settlement demands greatly exceeded the amount that Defendant's expert witness believed a willing buyer would pay to a willing seller to license Plaintiffs' copyrights at issue, for use in an event recap video published on YouTube that received less than 14,000 views and was available for less than five weeks (the "Video").   In addition, the fact that Plaintiffs refused to negotiate a settlement which would also resolve any claim for attorneys' fees, greatly diminished the possibility of a settlement.

Basking in the glow of a favorable jury verdict, Plaintiffs attempt to vilify Defendant and its attorneys by claiming that virtually every position taken during the course of the litigation was frivolous and intended for the malicious and improper purpose of increasing the cost of this litigation.   That assertion is not supported by the record.   Defendant asserted legitimate defenses on issues involving, inter alia, standing, willfulness, the existence of an implied endorsement, likelihood of confusion, intentional deception, the magnitude of damages, the scope of permissible evidence, and whether Plaintiffs' expert on damages should be permitted to testify. The positions advanced by Defendant's attorneys throughout this litigation were based upon good faith professional judgments for the purpose of properly advocating and protecting the rights of Defendant.   Although Plaintiffs disagree with those positions, their speculation and mischaracterization about the motivation for those positions is inappropriate and unfounded. The suggestion that the pre-trial and trial conduct of Monster's attorneys "exceeded the bounds of zealous advocacy" is gratuitous and disparaging, and itself exceeds the bounds of zealous advocacy.   We trust that the Court is intimately aware with the positions taken by the parties in this litigation and may make its own judgment about the veracity of Plaintiffs' claim.

As the Court observed publically prior to the jury verdict,

"All of you who have been watching all or parts of this trial have been witness to some very fine lawyering on both sides.  One of real pleasures for me in this job is to see really gifted lawyers practice their craft.  It's something I used to do, so I'm an attentive former consumer.

And I've been deeply impressed by the lawyering in the case, including what we just saw, which were two very, very fine closing arguments.  So just from the point of view of the practice of the legal craft I want to say to all of you that I'm mindful there are clients on both sides in the room that you chose wisely and that the lawyering here was really quite exceptional."

Given these circumstances, if the Court nonetheless exercises its discretion to entertain any fee award at all, the fee award should be dramatically decreased as some of the hourly rates requested are grossly excessive; the provided time entries are duplicative, vague, excessive, and contain endemic block billing; the participation of Mr. Anderson (the largest biller in the case) was not necessary to the pursuit of Plaintiffs' claims because it was duplicative of the efforts of other attorneys for Plaintiffs; and the costs Plaintiffs seek are not properly shifted to Defendant. The fee award also should be limited in order to take into account those aspects of the case on which Plaintiffs failed to prevail.  The sums demanded should be sharply deceased to exclude such fees as well as those which are clearly unsubstantiated under the lodestar rule announced by the Supreme Court in *Hensley v. Eckert*, 461 U.S. 424 (1983).  Finally, 50% of Plaintiffs' $2 million claim for damages was based upon the Lanham Act for which Plaintiffs are not entitled to attorneys' fees, because this was not an "exceptional" case.

### I.
### THE COURT SHOULD DENY PLAINTIFFS' MOTION
### FOR FEES AND COSTS IN ITS ENTIRETY

**A.    Attorneys' Fees Awards Are Discretionary And Should Not Be Awarded Against Litigants With Objectively Reasonable Positions, Such As Defendant**

The Copyright Act of 1976 provides in relevant part that in any copyright infringement action, the court "*may . . . award* a reasonable attorney's fee to the prevailing party as part of the

costs." 17 U.S.C. § 505 (emphasis added).  Attorneys' fees should be awarded to the prevailing party, not "as a matter of course," but "only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34 (1994); *see also Earth Flag Ltd. v. Alamo Flag Co.*, 154 F.Supp.2d 663, 665 (S.D.N.Y. 2001).  In *Fogerty*, the Supreme Court listed non-exclusive factors to guide a district court's exercise of discretion in awarding fees, including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 533 n.19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). However, "such factors may be used only so long as [they] are faithful to the purposes of the Copyright Act."  *Matthew Bender & Co., Inc., v. West Publ'g Co.*, 240 F.3d 116, 121 (2d Cir. 2001) (quoting *Fogerty*, 510 U.S. at 534).

Of the factors enumerated by the Supreme Court, "objective unreasonableness" should be accorded "substantial weight."  *Matthew Bender*, 240 F.3d at 120-21.  This is because an award of attorney's fees must comport with the purposes of the Copyright Act, and "the imposition of a fee award against a . . . [party] with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Id.* at 122.  Notably, "an unsuccessful claim does not necessarily equate with an objectively unreasonable claim." *Psihoyos v. John Wiley & Sons, Inc.*, No. 11 Civ. 1416(JPO), 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013) (quoting *Ann Howard Designs, L.P. v. S. Frills, Inc.*, 7 F. Supp. 2d 388, 390 (S.D.N.Y. 1988)).  A jury's finding of willfulness is not sufficient to establish an objectively unreasonable defense to copyright infringement.  *See, e.g., Psihoyos*, 2013 WL 1285153, at *3.  Courts have repeatedly recognized that "the presence of a complex or novel issue of law that the defendants litigate vigorously and in good faith" may justify the denial of a fee award to the prevailing party.  *See*

5

*Bourne Co. v. MPL Commc'ns, Inc.*, 678 F. Supp. 70, 72 (S.D.N.Y. 1988).   Here, Monster advocated reasonable defenses and positions during the litigation, many of which were successful.   Although Monster did not succeed on all defenses, Monster's litigation conduct certainly was not objectively unreasonable, and in important instances, involved complex areas of copyright law.

**B.      The Conduct Of The Litigation And The Positions Asserted By Monster During The Course Of The Litigation Were Objectively Reasonable And Motivated By A Good Faith Defense Of Plaintiffs' Claims**

Monster will not relitigate the issues in this case.   However, a brief discussion of some of the issues is relevant to demonstrate that the litigation was conducted in good faith and that the contention of Plaintiffs that "Monster's pre-trial and trial conduct … exceeded the bounds of zealous advocacy" is incorrect.   In fact, Defendant prevailed on several important issues which were litigated as a result of erroneous positions asserted by Plaintiffs.

**1.      Defendant Admitted Copyright Infringement Prior To Trial.**

Since Defendant admitted infringement prior to trial, the time Plaintiffs expended at trial proving ownership of the copyrights or that there was a substantial similarity between Plaintiffs' copyright and the musical composition and sound recordings used in the Video was unnecessary. Thus, it was not necessary to introduce documents at trial concerning Plaintiffs' ownership of the copyrights or to call a musicology expert to testify.   In fact, there was never any dispute concerning the substantial similarity issue manufactured by Plaintiffs.

**2.      Defendant Appropriately Pursued The Defense To Plaintiffs' Claim That The Copyright Infringement Was Willful**

Since Monster accepted responsibility for copyright infringement prior to trial, the trial focused on the magnitude of damages that Plaintiffs were entitled to receive.   The trial testimony

concerning the interaction between Z-Trip and Nelson Phillips ("Phillips") was relevant to the issue of willfulness and Phillips' state of mind. Such testimony was not offered to demonstrate that Monster had permission to use the songs on the Video legally, but rather that Phillips genuinely believed that he had received permission and therefore did not engage in willful conduct. In fact, this Court observed in its decision and order on the summary judgment motion of Z-Trip that, "[t]he interaction between Phillips and Z-Trip may well be relevant to the proof of willfulness." (Dkt. 51, pg. 23, Fn. 10). A finding of willful copyright infringement may be based on either a defendant's intent to infringe or one's reckless conduct even where there is no proven intent to infringe. (Dkt. 181, at II.A.2). There was no finding here that Philips actually intended to infringe or violate the plaintiffs' rights. Instead, the proof of alleged willfulness was based upon the extent of his mistakes that were attributed to his employer. Although the jury ultimately decided against Monster on this issue, the argument that infringement was not willful was objectively reasonable. It reflected Monster's honest, good faith, deeply-held belief that its conduct was not intentional, willful or reckless.

### 3.     Wheels Fest and User Generated Content

Plaintiffs conducted extensive discovery concerning videos which were not referenced in the Complaint. As a result it became clear that Plaintiffs intended to offer two categories of evidence at trial which were clearly inadmissible, requiring a motion in limine to preclude. (Kahn Decl., ¶ 3).

First, Plaintiff intended to offer videos that were created and produced by third parties unrelated to Monster allegedly containing Beastie Boys' music. Those third-party videos were embedded by the third parties on their "individual profile" pages of a website affiliated with Monster. These "user-generated" videos did not form the basis for any claim in the case, they

were not made by Monster, the music contained therein was chosen by the third-parties, not Monster, and those videos were only six among thousands of videos that were posted or embedded by third-parties.  (Kahn Decl., ¶ 4).

Plaintiffs also sought to introduce a video of an auto-racing event called "Wheels Fest" ("Wheels Fest Video").  Although that event was sponsored by Monster and others, Monster was not involved in the video created at the event.  Plaintiff intended to proffer the Wheels Fest Video because it purportedly contained the Beastie Boys' song "Sabotage."  However, like the user-generated videos, the Wheels Fest Video was not created, produced or edited by Monster; Monster did not know who made the Wheels Fest Video, or who chose the music for it; the Wheels Fest Video did not form the basis of any claim in the case, nor was it mentioned anywhere in the Complaint; and Monster had no knowledge of the Wheels Fest Video being available on any of its websites.  (Kahn Decl., ¶ 5).

The Court properly excluded both categories of evidence, determining that "the episode involving the Ruckus in the Rockies appears to be an idiosyncratic, singular event …" and introduction of these other incidents would create a risk of unfair prejudice, confusion, and delay that would decisively outweigh any slight probative value (Dkt. 90, pgs. 4-5).  As a result, Plaintiffs are not entitled to fees for time expended by them relating to Wheels Fest or user generated content.

### 4.    Lisa Thomas ("Thomas") – Plaintiffs' expert witness

Although Plaintiffs demean the motions relating to Thomas, it is clear that those motions were objectively reasonable and necessary.  As a result of Defendant's initial Daubert motion, this Court determined,

> Thomas's decision to value the license and implied endorsement based on a perpetual term of use, when the law requires her to use a five-week term of use, is not a "minor flaw." *Amorgiano*, 303 F.3d at 267. Rather, "the flaw is large enough" that, while it remains a basis for her report, the report "lacks good grounds for [its] conclusions." *Id.* (citations omitted)

The Court permitted Thomas to testify only if she submitted a revised report consistent with the actual period of use of the Video and which contained no other modifications (Dkt. 89, pgs. 6-7). Due to the revised report, it was necessary for Thomas to be deposed again. This Court ordered that the cost of that deposition should be paid by Plaintiffs (Dkt. 89, pg. 7). Because the revised report of Thomas included modifications, exceeding those permitted by the Court and relied, in part, on a settlement agreement in another case, it was necessary to file an additional Daubert motion. Although the testimony of Thomas ultimately was not precluded, the Court granted the motion to exclude testimony concerning the settlement of the *GoldieBlox, Inc. v. Island Def Jam Music Group et al.* action. In addition, the Court directed Plaintiffs to provide information about the value of endorsement deals negotiated by Thomas, if Plaintiffs were going to elicit such information at trial, because Thomas had refused to disclose the information during her deposition (Dkt. 119).

### 5. Plaintiffs Motion To Exclude The Testimony Of Monster's Expert Witness Erich Joahimsthaler Was Denied. Dkt. 90

Time expended by Plaintiffs relating to this motion should be excluded from any fees which may be awarded to Plaintiffs.

### 6. It Was Objectively Reasonable To Litigate Other Issues Raised By Defendant

Although this Court determined the following issues contrary to the position asserted by Defendant, it was objectively reasonable for the issues to be presented to the Court:

    (a)    Whether the complaint should be amended on the eve of trial to include a fifth song;

(b)     Whether the use of five songs in the Video was the infringement of five works or ten works for the determination of statutory damages;

(c)     Whether the use of the title "Beastie Boys All access Megamix" was nominative fair use; and

(d)     Whether it was permissible under *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) and its progeny, to consider the use of the five songs on the Video in connection with Plaintiffs' Lanham Claim, since the rights in those songs are protected by the copyright law.

## C.    <u>Plaintiffs Did Not Prevail On All Claims</u>

Plaintiffs pursued claims which were abandoned and withdrawn when the Pretrial order was submitted on February 14, 2014.  Until that time, Monster was compelled to litigate claims which were asserted by Plaintiffs that were essentially frivolous.  (Kahn Decl. ¶ 6).

The Ninth Claim in the complaint alleged that Monster infringed 35 copyrights involving 20 songs based upon the fact that Monster included a link on its website to the website of Zach Sciacca ("Z-Trip" or "Mr. Sciacca").[1]  An individual who clicked on that link would be directed to Z-Trip's website and that individual would be able to download songs contained on the megamix of Beastie Boys music which had been created by Z-Trip.  It became clear during the course of discovery that Z-Trip was authorized to create the megamix, post it on his website, and offer free downloads.  Thus, since Mr. Sciacca had not infringed Plaintiffs' copyrights, the inclusion of a link to his website by a third party like Monster could not constitute copyright infringement.  Monster was compelled to engage in discovery concerning the assertions in the Ninth Claim which was not abandoned by Plaintiffs until the pretrial order was finalized.  At the same time, Plaintiffs abandoned the Eleventh Claim in the complaint alleging a violation of Section 51 of the New York Civil Rights Law.  The Eleventh Claim was pursued by Plaintiffs,

---

[1]  Except for "Pass the Mic", all of the songs in the Ninth Claim were in addition to the songs on the Video.  The complaint alleged copyright infringement with respect to 24 songs, but ultimately only 5 songs were at issue during the trial.

10

although it was clearly preempted by the copyright law and it was duplicative of the claims for copyright infringement.  (Kahn Decl., ¶ 7).

### D.   Monster Negotiated In Good Faith To Settle The Litigation

On June 20, 2012, prior to the filing of the present action and before Kane Kessler, P.C. was retained, Monster received a settlement demand from Mr. Anderson, as counsel for the Plaintiffs, in the total amount of $200,000, without any explanation of the manner in which that sum was calculated (the "Initial Demand").  (Kahn Decl., ¶ 8, Anderson Decl., Exh. F).  Based on that demand, Monster reasonably concluded that Plaintiffs believed that $200,000 was reasonable compensation for the alleged infringement which was outlined in a letter to Monster from Mr. Anderson (the "June 13, 2012 Letter").  The June 13, 2012 Letter alleged that Monster infringed the sound recording and musical composition copyrights of four Beastie Boys songs, infringed the trademark of the Beastie Boys, violated Section 43(a) of the Lanham Act, and Beastie Boys' rights of publicity (Kahn Decl., ¶ 9, Anderson Decl., Exh. D).

At the time the Initial Demand was made, Monster had already taken the following actions to address Plaintiffs' concerns:

(a)   Investigated the claims asserted in the June 13, 2012 Letter;

(b)   Disabled access to the Video;

(c)   Removed the YouTube link from Monster's website;

(d)   Contacted representatives of the snowboard media websites of which it was aware that included the reference to the "Beastie Boys Megamix" and asked them to remove the reference and embedded link to Z-Trip's Bandcamp page;

(e)   Determined that at least three of those websites, snowboardmag.com, snowand.com, and snowboardcanada.com, removed references to the Video. Monster also confirmed that remaining embedded links to the YouTube address where the Video was formally available, displayed a single video frame, no audio, and clicking the link displayed the message, "This video is private."; and

(f)   Determined, to the best of its knowledge, that the Video was no longer available on the Internet.

Monster informed the Beastie Boys that the aforesaid actions had been taken and that Monster

derived no money from the Video in a letter dated June 27, 2012.  (Kahn Decl., ¶ 10, Anderson Decl., Exh. G).

Since the Video was only publically accessible for five weeks, exclusively on Monster's YouTube channel, was viewed by less than 14,000 people, and Monster received no money from the Video, the attorneys for Monster informed Plaintiffs that the $200,000 demand was unreasonable and unsupported.  (Kahn Decl., ¶ 11, Anderson Decl., Exh. G).  Given the immediate removal of the infringing material and the lack of any actual injury to Plaintiffs, refusing to pay Plaintiffs $200,000 at that moment was not bad faith.

From the Action's inception, Monster expressed a desire for meaningful settlement discussions.  At the initial pretrial conference, Monster requested that the matter be sent to private mediation, but Plaintiffs declined.  (Kahn Decl., ¶ 12).  After the Initial Demand, the following history describes the settlement efforts of Monster:

(a)   The next demand made by Plaintiffs based upon the identical claim was $3,200,000 at a settlement conference with Magistrate Judge Pitman on January 13, 2013, which was less than seven months after the Initial Demand.  Thus, Plaintiffs increased their Initial Demand by $3,000,000 or 1,500%.  That shocking increase did not facilitate settlement at the conference or the belief that Plaintiffs were making a serious effort to resolve their claims.  Monster offered the sum of $25,000 and the conference was adjourned.  From there on, the back and forth in settlement talks is not indicative of who was or was not reasonable.  Contrary to the assertion of Plaintiffs, Monster did not refuse to have a party representative at the initial settlement conference.   Judge Pitman did not require a party representative to travel from California for the conference and a party representative was available by telephone.  (Kahn Decl., ¶ 13).

(b)   Based upon the Initial Demand of Plaintiffs, on May 22, 2013, Monster served an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the amount of $100,000 **plus** attorneys' fees and costs.  After consultation with its damages expert, Monster increased its Rule 68 offer to $200,000 **plus** attorneys' fees and costs.  (Kahn Decl., ¶ 14, Anderson Decl., Exhs. J and K).  Monster's good faith evaluation of an appropriate settlement was based upon the opinion of its expert, Jon Albert, and Plaintiffs' $200,000 Initial Demand.  Mr. Albert, who has undisputed expertise concerning the fair market value for the use of the songs on the Video and the alleged implied endorsement, concluded that the fair market

value was between $93,750 and $125,000 plus an additional small fee for the alleged implied endorsement.  (Kahn Decl. ¶ 15 and Ex. 1).

(c)     On August 25, 2013, the parties met to discuss settlement pursuant to the Order of this Court.  At that meeting, Plaintiffs demanded $1,650,000, **plus** payment for attorneys' fees incurred by Plaintiffs through that date.  However, Plaintiffs' refused to disclose the amount of those fees.  Monster would not negotiate a settlement that did not include all of Plaintiffs' claims.  Based upon the report of Jon Albert, Defendant also informed Plaintiffs that Monster would not increase its offer unless Plaintiffs' demand was less than $1 million.  (Kahn Decl., ¶ 16).

(d)     The last effort to resolve the claims of Plaintiffs occurred at a mediation in California.  Contrary to the assertion of Plaintiffs, Terry Hughes did have authority to negotiate a settlement.  Ultimately, Monster informed the mediator that it would settle all claims of Plaintiffs for $650,000, including any claims for attorneys' fees.  However, Plaintiffs demand at the mediation was $1,650,000, **plus** attorneys' fees.  (Kahn Decl., ¶ 17).  <u>Plaintiffs fail to discuss this offer in their application</u>.

Although the matter was not settled and the jury verdict exceeded the highest offer made by Monster, Monster negotiated in good faith.  Those negotiations were premised upon the evaluation of Monster's expert witness, the Initial Demand of Plaintiffs and the reasonable belief that it had not engaged in a willful violation of the rights of Plaintiffs.

## E.      <u>There Is No Need To Further Compensate Plaintiffs Or Further Deter Defendant</u>

Among the factors that should be considered in deciding whether to grant discretionary fee awards is "the need in particular circumstances to advance considerations of compensation and deterrence."  *See Matthew Bender*, 240 F.3d at 122 (quoting *Fogerty*, 510 U.S. at 534 n. 19).[2]  For example, in *Psihoyos v. John Wiley & Sons*, Judge Oetken denied the plaintiff's motion for attorney's fees because, among other reasons, the damages were sufficient, there was no "need to *further* deter Defendant's behavior" and "the compensation and deterrence purposes underlying the Copyright Act are adequately served by the jury's award in this case." 2013 WL

---

[2]  *See also Clark v. Hudson Bay Music, Inc.*, 104 F.3d 351 (2d Cir. 1996) (affirming district court's decision not to award any fees because plaintiff had been adequately compensated in royalties for his song, defendants had a reasonable defense, and an attorneys' fee award would have no deterrent value); *Cabell v. Sony Pictures Entm't, Inc.*, No. 09 Civ. 1610, 2011 WL 92765, at *1 (S.D.N.Y. Jan. 7, 2011).

1285153, at *5 (emphasis in original).  The court noted that it had denied the defendant's motion for remittitur in part because the jury was entitled to make large awards based on the need for deterrence.  *Id.*

Plaintiffs were awarded copyright statutory damages which exceeded the amount of the actual damages by $200,000, and that award fully accomplishes any compensation and deterrence goals.   Indeed, Plaintiffs have already attempted to justify their huge statutory damages awards on deterrence grounds in response to Defendant's motion for judgment as a matter of law, a new trial, or remittitur.   (Dkt. 174, Fn. 12).   This Court agreed that the substantial statutory damages awarded by the jury could arguably be justified, in part, by its deterrent effect.[3]

In its decision on Plaintiffs' injunction application, which denied the broad injunction requested by Plaintiffs, this Court found that the infringement of Plaintiffs' rights by Monster was, in all likelihood, an anomalous occurrence.  (Dkt. 201, p. 12).

> "The Beastie Boys have not pointed to any other act of infringement, or evidence outside of the episode involving the Ruckus video, that indicates a propensity by Monster to infringe on others' intellectual property rights generally or the rights of the Beastie Boys specifically.   On the basis of the trial evidence, the Court finds that the infringement and false endorsement here, egregious though they were, were transgressions that are unlikely to recur."

(Dkt. 201, p. 13).   Because the statutory damages award more than satisfies the goals of compensation and deterrence, this factor weighs heavily against an award of fees in this case.

## II.
## PLAINTIFFS ARE NOT ENTITLED TO ATTORNEYS' FEES ON THEIR LANHAM ACT CLAIM

Section 35 of the Lanham Act, 15 U.S.C. § 1117(a), specifically provides that reasonable

---

[3]  The Court found:  "The Court declines to second-guess the jury's assessment, particularly because several factors – including Monster's state of mind and the deterrent effect of such an award on Monster and third parties – can fairly be argued to justify a substantial damages award."  (Dkt. 181, p. 66).

attorneys' fees <u>may</u> be awarded <u>only</u> in "exceptional cases."  While it is well-established that a case will not be deemed "exceptional" under the Lanham Act without a finding of fraud or bad faith (*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136, 147 (S.D.N.Y. 2000), *citing*, *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194 (2d Cir. 1996)), the Second Circuit has specifically ruled that "[t]he mere existence of a finding of bad faith, however, does not automatically entitle the prevailing party to attorneys' fees."  *International Star Class Yacht Racing Association v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 753 (2d Cir. 1996).

In *Mister Softee of Brooklyn, Inc. v. Boula Vending, Inc.*, 484 Fed. Appx. 623, 2012 U.S. App. LEXIS 11834 (2d Cir. 2012), appellant appealed a decision of the district court denying its motion for attorneys' fees pursuant to the Lanham Act.  Just like the Plaintiffs here, appellant argued that it was entitled to attorneys' fees because there was a finding in the district court that defendants willfully infringed upon the subject trademark.  Rejecting appellant's arguments the Second Circuit ruled, in pertinent part:

> While we have said that a finding of willfulness, fraud, or bad faith is a "*prerequisite*" to finding a case "sufficiently 'exceptional' to warrant an award of fees" under section 1117(a), *Luis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108-09 (2d Cir. 2012), we have never held that a finding of willfulness, fraud, or bad faith *automatically* requires an award of fees under that section.

*Mister Softee of Brooklyn, Inc.*, 484 Fed. Appx. at 625 (emphasis in original).  *See also Myplaycity, Inc. v. Conduit, Ltd.*, 2013 U.S. Dist. LEXIS 115598 (S.D.N.Y. 2013), ("[e]ven with a finding of bad faith, the decision to award attorneys' fees remains within the sound discretion of the district court,").[4]

This Court's decisions in *Myplaycity* and *Gidatex*, *supra*, suggest factors to be used when

---

[4] *See also Patsy's Italian Rest., Inc. v. Banas*, 575 F. Supp. 2d 427, 472 (E.D.N.Y. 2008) ("despite the fact that jury found [one of the defendants] acted in bad faith and willfully infringed upon [p]laintiff's, the court did not find the "case is so exceptional as to justify an award of attorneys' fees.").

determining whether a case is "exceptional" under the Lanham Act, to wit: litigation tactics designed to delay proceedings; closely contested claims and arguments asserted by the parties; and whether the outcome of the litigation was decidedly mixed.  *Myplaycity*, 2013 U.S. Dist. LEXIS 115598 at *32, *citing*, *Gidatex*, 82 F. Supp. 2d at 148 and *Patsy's Italian Rest., Inc.*, 658 F.3d at 268-69.  This case does not involve counterfeiting, the use of confusingly similar marks on Defendant's products, or a false express endorsement.  It also does not involve the failure of an infringing party to cease the infringing conduct.  Here, Monster removed the Video and references to the Video immediately after it received Plaintiffs' initial demand letter.[5] Accordingly, Plaintiffs' fee request should be cut in half because half of the fees relate to the Lanham Act claims, and it is impossible to decipher from Plaintiffs' counsels' invoices which time entries are for which claims.[6]  This case is not exceptional under the Lanham Act.

### III.
### PLAINTIFFS' ATTORNEYS' FEES ARE UNREASONABLE AND MUST BE SUBSTANTIALLY REDUCED

If this Court determines that Plaintiffs are entitled to an award of attorneys' fees, the amount of such an award should be reduced dramatically from Plaintiffs' request for the huge sum of $2,385,175.50.[7]  Plaintiffs seek an award for all fees incurred, without limiting the request to those aspects of the case on which Plaintiffs prevailed as opposed to those where they did not. As previously discussed, Plaintiffs expended substantial time for claims abandoned before trial, claims which were not permitted to be raised at trial, and issues upon which Plaintiffs did not

---

[5]  Throughout this litigation, there were clearly closely contested claims and arguments asserted by the parties (the existence of an endorsement, likelihood of confusion, intentional deception, amount of damages).  In fact, this Court apparently concluded that the jury's finding of intentional deception was a close question which fairly could have been resolved either way.  (Dkt. 181, p. 62).

[6]  Based the upon expert report of Lisa Thomas, Plaintiffs were seeking $2 million in damages.  $1 million was based upon the Lanham Act claim and $1 million was based upon the copyright claims.  Thus 50% of the total claim was for an alleged violation of the Lanham Act.

[7]  The total amount of attorneys' fees incurred by Defendant in connection with this litigation was $1,624,948.71. (Kahn Decl., ¶ 23).

prevail.  Plaintiffs are seeking fees improperly for that time.

**A.**      <u>**All Of Kenneth Anderson's Fees Should Be Eliminated**</u>

Kenneth Anderson may be an excellent and experienced attorney, but he is <u>not</u> a litigator. During this action, he did not take or defend any depositions; he did not draft or execute any of the litigation documents (except the declaration submitted in connection with this motion); he did not argue any motions or other applications; he sat in the audience during the entirety of the trial; and yet he billed 902.8 hours (more than any other attorney) for a total of $609,390.00. (Kahn Decl., ¶ 24).  In fact, Mr. Anderson never appeared in this action and is not even listed on PACER as an attorney who is representing Plaintiffs.  (Kahn Decl., ¶ 25).  Furthermore, the Shepard Mullin firm had three litigation partners who worked on this case and Mr. Anderson's purported contribution to the litigation of Plaintiffs' claims was duplicative and unnecessary.

A cursory review of Mr. Anderson's time entries reveal that most of his entries are for work that duplicated the work which litigators were performing, and included reviewing litigation documents and conferring with the litigators from his office who were actually working on this case.  Mr. Anderson billed exorbitant hours merely to review other attorneys' work, and many of his time entries are excessive and vague.  (Kahn Decl., ¶ 26).  It is egregious for Plaintiffs to request Defendant to pay for Mr. Anderson to be a spectator at depositions and trial. In fact, Mr. Anderson billed approximately $50,000 **before** the Complaint was even filed!  (Dkt. 189-21, pgs. 5-19).

Plaintiffs bear the burden of demonstrating that the claimed hours worked are reasonable. *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  Here, however, that burden has not been met, especially as Mr. Anderson's claimed hours are concerned.  None of the work performed by Mr. Anderson was necessary to the result obtained by Plaintiffs.  Fees for work

that is duplicative or unnecessary are not recoverable as a matter of law.  *See, e.g., Creighton v. Domincan College*, 2011 U.S. Dist. LEXIS 119374, *27, 2011 WL 4914724 (S.D.N.Y. 2011) (entries of partner who "assisted from time to time with certain portions of the discovery and trial preparation" eliminated from fee calculation).  While compensation for Mr. Anderson's time may be sought from Plaintiffs by Sheppard Mullin, his fees which total $609,390.00 should not be recoverable from Defendant.

Theodore Max, Kevin Puvalowski, and Paul Garrity are three <u>partners</u> from Sheppard Mullin who actually litigated the case, and they utilized as many as four associates at various times.  As such, Mr. Anderson's time is completely duplicative, unnecessary, not "reasonable" and, therefore, unrecoverable from Defendant.

**B.      <u>The Rates Claimed By Sheppard Mullin Attorneys Are Not Adequately Supported</u>**

In determining the amount of a prevailing party's fee award under § 505 of the Copyright Act, the Court must set a reasonable hourly rate, taking into account case-specific variables. *Arbor Hill Concerned Citizens N'hood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008).  "The presumptively reasonable fee boils down to 'what a reasonable paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'"  *Simmons v. N.Y. City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill*, 493 F.3d at 112, 118).[8]

---

[8]  The Arbor Hill Court set forth the following factors that a court should consider in determining what a reasonable client would be willing to pay:

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Plaintiffs' evidence to support the alleged reasonableness of their attorneys' fees is inadequate and actually demonstrates that the requested fees are excessive. In fact, comparing Plaintiffs' attorneys' rates to the rates of Defendant's experienced litigators indicates that those rates exceeded greatly those of Monster's counsel. (Kahn Decl. ¶ 22).

The excess embodied in Sheppard Mullin's claimed rates is exemplified by the rates charged for Ms. Shenderovich, a 2011 law school graduate, who was not admitted to practice law until 2012 and Kathryn Hines who graduated in 2010 and was admitted in 2011. Ms. Shenderovich billed at an average rate of $467.09 per hour and Ms. Hines billed at the average rate of $505.00 per hour. These hourly rates are slightly less than the hourly rate of S. Reid Kahn, Monster's lead counsel, partner at Kane Kessler for thirty-four years, with 40 years of litigation and trial experience.[9] (Kahn Decl., ¶ 18).

"In all cases, 'the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested hourly rates are the prevailing market rates." *Dweck v. Diana Amadi & Malibu Denim Co.,* 2012 U.S. Dist. LEXIS 102987, 9-11, 2012 WL 3020029 (S.D.N.Y. July 6, 2012)(emphasis added). In determining reasonable hourly rates, a court should first examine the attorneys' experience. *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d 470, 475 (S.D.N.Y. 2009).

Here, the Plaintiffs have not submitted the "attorneys' own affidavits", as required, but have instead submitted just one Declaration from Mr. Anderson who completely fails to provide any sufficient evidence of the attorneys' experience so that the Court may determine their respective, reasonable hourly rates. Accordingly, Plaintiffs have failed to meet their burden to

---

*Arbor Hill*, 522 F.3d at 184.

[9] Ms. Hines rate was more than the rate of Ms. Susman, a litigation partner at Kane Kessler for 19 years, with 20 years of litigation experience. (Kahn Decl., ¶ 20).

establish their entitlement to recover the fees claimed.  Because insufficient evidence has been

submitted by Plaintiffs concerning the reasonable fees of the attorneys representing Plaintiffs, the

hourly maximum rate which is reasonable should not exceed the rates of Monster's counsel.

Without any affidavit from either of Messrs. Puvalowski, Garrity or Max as to their respective,

detailed experience and information under oath, their rates should not exceed those for

defendants' counsel who played similar adversary roles.  As such, partner rates should not

exceed $515 per hour and the associates' rates should not exceed $350 per hour.[10]

Magistrate Judge  Maas recently significantly reduced a copyright plaintiff's proffered fee

rates for associates who graduated years before the associates in this case, stating:

> Turning to the associates who worked on this case, Ms. Chan graduated from law
> school in 2005. Ms. Brandon and Mr. Lam graduated in 2008. Accordingly, a
> similar haircut is warranted for each of them. Their fees consequently will be
> calculated based on hourly rates of $300 for Ms. Chan and $275 for the other two
> associates.

*TigerCandy Arts, Inc. v. Blairson Corp.*, No. 09 Civ. 6215, 2012 U.S. Dist. LEXIS 35269, at *22

(S.D.N.Y. Feb. 23, 2012), *R&R adopted,* 2012 U.S. Dist. LEXIS 75182 (S.D.N.Y. 2012).

Mr. Anderson's Declaration completely fails to provide any background information on

either of Mmes. Hines or Shenderovich.  However, according to the New York State Uniformed

Court System, Ms. Hines was admitted to practice law in 2011, and Ms. Shenderovich was

admitted in 2012.  (Kahn Decl., ¶ 22).  As such, neither of those associates have the requisite

background or experience sufficient to warrant the excessive hourly rates ($505 per hour for Ms.

Hines and an average of $467.09 for Ms. Shenderovich) that Plaintiffs seek from this Court.

When Ms. Shenderovich began working on this case in or around December 2012 (the

same year she was admitted to practice law), her hourly rate was $350.  (Dkt. 189-21, pgs. 44

---

[10]  Plaintiffs' failure to comply with the substantiation requirements cannot be cured in their reply papers, and any
such attempt by Plaintiffs should be rejected by the Court.

and 51). Just three months later, the Sheppard Mullin firm inexplicably increased her rate by approximately 40%, from $350 to $485 per hour. (Dkt. 189-21, pg.64). Mr. Anderson's Declaration does not address the dramatic increase in Ms. Shendovich's hourly rate. Inasmuch as there is no affidavit from Ms. Shendovich to describe her experience as an attorney, or justify her hourly rate, it should be reduced to $350 per hour.

While Mr. Anderson mentions Ms. Hines in his Declaration, there is no affidavit from her included in Plaintiffs' application, and Mr. Anderson fails to mention her experience, when she graduated from law school or any other independent evidence which the Court can consider to determine her reasonable hourly rate. As such, Plaintiffs failed to meet their burden of establishing that Ms. Hines' hourly rate of $505 is reasonable. Therefore, Ms. Hines' time also should be calculated at $350 per hour.

Finally, Mr. Monahan's hours should be reduced from the average hourly rate of $461.09 (Dkt. 189-25, pg. 2) to $350 per hour. Mr. Anderson's Declaration indicates at paragraph 43 that Mr. Monahan became the lead associate on the case and that he graduated from law school in 2010. The majority of Mr. Monahan's work was performed in 2013 when he was just 3 years out of law school. Mr. Anderson's Declaration provides no evidence of Mr. Monahan's experience, nor is there any evidence that Mr. Monahan has any experience litigating copyright and trademark claims. Mr. Monahan's hourly rate should be reduced to $350.[11]

## C.    The Paralegals' Rates Should Be Eliminated or Otherwise Reduced

Similarly, Plaintiffs also have failed to submit any evidence that the hourly rates for paralegals (one of which was billed at an average rate of $254.42 per hour) is reasonable.

---

[11] Tanya Pohl was the sole associate who worked on the case for Defendant. She graduated from Boston College law school in 2008 and was a sixth year litigation associate. Her average billing rate was $350 per hour. (Kahn Decl., ¶ 21).

Furthermore, some of the paralegals' time entries are incredible.  For example, Stephanie Limbaugh billed nearly 300 hours to this case, including <u>23 hours in one day</u>!  Ms. Limbaugh also billed 14 hours for assisting "case team with clean-up of trial materials." (Dkt. 189-24, pg. 6, entries dated, 06/04/14 and 06/06/14).

If this Court is inclined to grant any amount to Plaintiffs for the paralegals' work, each of their rates should be reduced to $125 per hour, as that is the reasonable rate within this district. *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, 2010 U.S. Dist. LEXIS 138873, 2010 WL 5538552 at *4 (where plaintiff "has not provided any information  regarding the clerks' backgrounds, nor has it justified their hourly billing rates," clerks' hourly billing rates reduced to $110 per hour, which "is consistent with reasonable hourly rates for paralegals and clerks in this jurisdiction").[12]

If the fees are calculated after omitting the time of Mr. Anderson and applying the reduced hourly rate, the total is $1,307,033.00.  (Kahn Decl., ¶ 28).  Elimination of 50% of the fee for the Lanham Act claim (since this was not an "exceptional" case) results in a fee of $653,516.50 (Kahn Decl. ¶ 29).  The aforesaid amount should be reduced further to account for duplicate entries, vague entries and block billing, as discussed hereinafter.

**D.**     **The Time Records Submitted By Plaintiffs' Attorneys Are Vague, Excessive, And Contain Block Billing Such That They Are Largely Indecipherable**

The starting point of the attorneys' fee calculation is the "lodestar method," under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The fee application must be supported by contemporaneous time records that "specify, for each attorney,

---

[12]  This reduction in paralegals' rates does not take into account the block billing included in the paralegals' time entries or for overbilling like 23 hours billed for one day.

the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Courts require specificity in billing entries in order to award fees, and to determine a reasonable award. *See Miroglio S.p.A. v. Conway Stores*, Inc., 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (specificity allows courts "to determine whether a reasonable amount of time was spent on each activity, and to determine whether a particular activity is compensable."). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433.

In deciding whether hours expended were reasonable, a court should exclude those documented hours which are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. 424, 434 (1983). A court may also decrease the requested award because of "vagueness, inconsistencies, and other deficiencies in the billing records." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). Moreover, "block-billed" time entries are improper because they "ha[ve] a tendency to obfuscate the amount of time expended on distinct tasks and introduce[ ] an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary." *Miroglio*, 629 F. Supp. 2d at 313 (quotation omitted).[13] When these kind of excessive or redundant entries appear, a district court may exercise discretion to reduce a fee application by a set percentage to "trim[ ] fat from a fee application." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006).[14] In the instant fee application, vagueness and ambiguity, block-billing,

---

[13]  Block billing is the practice of assigning one time charge to multiple tasks.

[14]  *See also Guardians Ass'n of Police Dep't of N.Y. v. City of New York*, 133 F. App'x 785, 786 (2d Cir. 2005) (court "may apply a reasonable percentage reduction as a practical shortcut to" eliminate waste in entries and applying an 80% reduction to account for duplication); *see also Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, No. 03 Civ. 7735 2012 WL 3126004, at *3 (S.D.N.Y. July 21, 2012) (applying 80% reduction); *Kirsch*, 148 F.3d at 172-73 (upholding the district court's judgment to decrease an attorneys' fees award by 50% because the parties insufficiently parsed out the time spent on different claims and therefore made an excessive fee request, and to decrease the award a further 20% because the time entries submitted were vague and inconsistent); *Kirsch* 148 at

and excessive and duplicative entries pervade.  (See generally Strain Decl., Exhs. 3 and 4).

Sheppard Mullin time entries submitted by Plaintiffs demonstrate:

(a)     **approximately 89% of entries are block entries**, (Strain Decl., ¶¶ 3-7, Exh. 3), see *Miroglio*, 629 F. Supp. 2d at 313-14 (finding inadequate a 4.0-hour time entry for "Finished document responses; discussion with client; letter to Dweck re depositions; letter to Dweck with discovery responses; Telephone discussions with Dweck; letter to Mag. Gorenstein"); and

(b)     **approximately 17% of entries are duplicative or devote excessive time to the allotted task(s)** (Strain Decl., ¶¶ 8-12, Exh. 4); see *Hensley*, 461 U.S. at 434 (instructing that "excessive, redundant, or otherwise unnecessary" hours should be excluded from the lodestar calculation); see also *Guardians*, 133 F. App'x at 786 (holding that court "may apply a reasonable percentage reduction as a practical shortcut to" eliminate excessive or duplicate time entries).

As such, Defendants respectfully submit that Plaintiffs requested fees should be further reduced by at least 89% to account for the excessive, vague and duplicative block entries.

## E.     Plaintiffs Should Not Be Awarded Costs

In addition to attorneys' fees, Plaintiffs seek recovery of almost $100,000 in costs and disbursements.  Under the Copyright Act, whether to award costs to the prevailing party lies in the district court's sound discretion.  *See* 17 U.S.C. § 505.  For the same reasons Plaintiffs should be denied attorney's fees, they should also be denied the $100,000 in costs they seek.  Costs awarded must be reasonable and necessary to the sound prosecution of the prevailing party's case; to the extent costs are wasteful, excessive, or ineffective, they should remain with the litigant that incurred them.  *See Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964).  Furthermore,

the weight of authority in this Circuit limits the recovery of costs to those items that a prevailing party traditionally recovers under 28 U.S.C. § 1920 and Rule 54(d) of the Federal Rules of Civil Procedure, such as filing fees, fees for service of process, mailing costs, copying costs, transcription fees, and witness fees.

*Nature's Enters., Inc. v. Pearson*, No. 08 Civ. 08549, 2010 U.S. Dist. LEXIS 11306, at *33

173 (quoting *Carey*, 711 F.2d at 1146).

(S.D.N.Y. Jan. 11, 2010).  The vast majority of costs specified in Exhibit Y to the Anderson

Declaration are not recoverable as costs under 28 U.S.C. §1920 and Local Rule 54.1(c); are

unreasonable in amount; and are inadequately supported.  It is well settled that a party who seeks

costs must substantiate any claim for reimbursement.  *See Creighton*, 2011 U.S. Dist. LEXIS

119374 *30.

The following summary itemizes the charges for which no recovery is permitted:

| | |
|---|---|
| **Online Legal Research Charges-$14,774.24** | Online legal research is not recoverable under *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996); *see also Cold Spring Constr. Co. v. Spikes*, No. 11-cv-700S, 2013 U.S. Dist. LEXIS 133615, at *11-12 (W.D.N.Y. Sept. 18, 2013). |
| **Court Reporters-$12,886.08** | Local Rule 54.1 states that "[t]he cost of any part of the original trial transcript that was necessarily obtained for use . . . is taxable" but "[c]onvenience of counsel is not sufficient."  L.R. 54.1(c)(1).  *See Farberware Licensing Co. v. Meyer Mktg. Co.*, No. 09 Civ. 2570, 2009 U.S. Dist. LEXIS 121323, at *15 (S.D.N.Y. Dec. 30, 2009)(denying the cost of daily transcripts). |
| **Transcript Costs-$33,624.99** | No invoices were submitted in connection with the claim for deposition transcripts to determine the basis for the costs allegedly incurred.  Pursuant to Local Rule 54.1 (c)(2), only the original and one copy of a deposition transcript is taxable, if the deposition was used or received in evidence at trial.  There is no indication in Plaintiffs application which transcripts Plaintiffs contend were used or received in evidence.  Certainly, transcripts for Zach Sciacca, Michael Diamond and Lisa Thomas, who were called at trial to testify for Plaintiffs, are not appropriate taxed costs.  Also, the sum of $6,369.09 is claimed for videos which are not taxable pursuant to Local Rule 54.1. |
| **Miscellaneous-$4,555.34** | No invoices are provided and the costs requested are not taxable pursuant to Local Rule 54.1, such as the mediation fee in the amount of $2,675.  Each side agreed to participate in a private mediation and equally share the costs. |
| **Travel-$17,209.73** | These costs are exorbitant and not appropriately taxable pursuant to Local Rule 54.1.  No invoices have been furnished and no basis has been provided to justify Plaintiffs' request that these costs be paid by Defendant.  These costs include first class air travel and luxury hotels. |
| **Duplication/ Copying Costs-$15,236.02.** | Although the cost of copying is recoverable if "the copy was used or received in evidence," L.R. 54.1(c)(5), it is impossible to determine whether the copies listed (Dkt. 189-28) were used at a hearing, deposition, or trial.  In fact, it is impossible to determine how many copies were made or at what rate they were made.  *See Lucky Brand Dungarees*, 2009 WL 466136 at *8 (disallowing costs for photocopies and noting that party seeking costs "must make clear" which "documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary"). |

| Postage/Messenger Costs: $975.48. | These costs are not reimbursable because they are firm overhead and inadequately explained. *Litton v. Am. Tel.*, 613 F. Supp. 824, 836 (SDNY 1985). |
|---|---|

## CONCLUSION

Based on the foregoing, Plaintiffs' application for attorneys' fees and costs should be denied.  Alternatively, should this Court decide to grant any award of fees, such an award should be limited to a reasonable fee instead of the exorbitant amount requested by Plaintiffs.

Dated: New York, New York
      March 6, 2015

**KANE KESSLER, P.C.**

By: _s/ S. Reid Kahn_____
    S. Reid Kahn
    Gerard Schiano-Strain
1350 Avenue of the Americas
New York, New York 10019
(212) 541-6222
*Attorneys for Defendant Monster
Energy Company*