UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                              :

BEASTIE BOYS, A NEW YORK PARTNERSHIP,  :
MICHAEL DIAMOND, ADAM HOROVITZ AND  :
DECHEN YAUCH AS EXECUTOR OF THE       :   12 Civ. 6065 (PAE)
ESTATE OF ADAM YAUCH, DECEASED, EACH  :
INDIVIDUALLY AND COLLECTIVELY D/B/A/   :
BROOKLYN DUST MUSIC,                           :
                                                              :
                       Plaintiffs,                   :
          -v-                                      :
                                                              :
MONSTER ENERGY COMPANY,                  :
                                                              :
                       Defendant.                :
                                                               :
------------------------------------------------------------X

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR ATTORNEY'S FEES AND COSTS

                                  SHEPPARD MULLIN RICHTER & HAMPTON LLP
                                  Kevin R. Puvalowski
                                  Paul W. Garrity
                                  Kenneth B. Anderson
                                  Thomas Monahan
                                  30 Rockefeller Plaza
                                  New York, New York  10112
                                  (212) 653–8700

                                  *Counsel for Plaintiffs*

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................1

I. BEASTIE BOYS HAVE ESTABLISHED THAT THEY ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT ..........................1

    A. Monster's Litigation Conduct Was Objectively Unreasonable ........................1

    B. An Attorney's Fees Award Is Necessary To Compensate Plaintiffs ................3

    C. Beastie Boys' Succeeded On All Claims At Trial, Which Involved Common Facts and Legal Theories With The Claims They Declined To Pursue .........................................................................................................5

II. THIS IS AN EXTRAORDINARY CASE AND BEASTIE BOYS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE LANHAM ACT BASED ON MONSTER'S BAD FAITH IN CAUSING FALSE ENDORSEMENT ...........................................................................................................6

III. BEASTIE BOYS' ATTORNEY'S FEES AND COSTS ARE REASONABLE AND SHOULD BE AWARDED IN FULL ..............................................................7

CONCLUSION .............................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cabell v. Sony Pictures Entm't, Inc.*
   2011 WL 92765 (S.D.N.Y. Jan. 7, 2011) .................................................................. 4

*Clark v. Huston Bay Music, Inc.*
   104 F.3d 351 (2d Cir. 1996) .................................................................................... 4

*DiSorbo v. City of Schenectady*
   2004 WL 115009 (N.D.N.Y. Jan. 9, 2004) ............................................................ 10

*Dweck v. Amadi*
   2012 WL 3020029 (S.D.N.Y. July 6, 2012) ............................................................ 9

*Fogerty v. Fantasy, Inc.*
   510 U.S. 517 (1994) ................................................................................................ 4

*Hensley v. Eckerhart*
   461 U.S. 424 (1983) ............................................................................................. 5, 7

*Hont v. Willis Group Holdings Ltd.*
   2008 WL 1166309 (S.D.N.Y. April 7, 2008) ........................................................ 10

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*
   2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ....................................................... 5, 6

*Lenihan v. City of N.Y.*
   640 F. Supp. 822 (S.D.N.Y. 1986) ....................................................................... 8, 10

*Meriwether v. Coughlin*
   727 F. Supp. 823 (S.D.N.Y. 1989) ....................................................................... 8, 10

*Mister Softee of Brooklyn, Inc. v. Boula Vending Inc.*
   484 Fed. Appx. 623 (2d Cir. 2012) ......................................................................... 6

*MyPlayCity, Inc. v. Conduit Ltd.*
   2012 WL 4105698 (S.D.N.Y. Aug. 12, 2013) ...................................................... 6, 7

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*
   711 F.2d (2d Cir. 1983) ........................................................................................ 10

*OZ Management LP v. Ozdeal Investment Consultants, Inc.*
   2010 WL 5538552 (S.D.N.Y. Dec. 6, 2010) ........................................................... 9

*Patsy's Italian Restaurant, Inc. v. Banas*
   575 F. Supp. 427 (E.D.N.Y. 2008) ......................................................................... 7

*Psihoyos v. John Wiely & Sons*
    2013 WL 1285153 (S.D.N.Y. March 29, 2013) ........................................................................ 4

*Reed v. A.W. Lawrence & Co., Inc.*
    95 F.3d 1170 (2d Cir. 1996) ................................................................................................... 6

*Tran v. Tran*
    67 Fed. Appx. 40 (2d Cir. 2003) ........................................................................................... 5

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*
    2004 WL 213032 (S.D.N.Y. Feb. 3, 2004) ..................................................................... 8, 10

Plaintiffs, by their attorneys, Sheppard Mullin Richter & Hampton LLP, respectfully submit this reply memorandum of law and accompanying declaration of Paul W. Garrity (the "Garrity Dec.") in further support of their motion for an award of attorney's fees and costs.

## PRELIMINARY STATEMENT

As foretold by the Court, this trial was expensive. Piqued by the incompetence of its own employees, its inability to assign blame elsewhere, and the liability arising from its unsupervised and reckless marketing tactics, Monster refused to accept responsibility for its actions and brought this case to the jury. After having infringed Plaintiffs' copyrights—trading upon their reputation and besmirching the memory of a recently deceased, beloved band member—Monster, with knowledge that attorney's fees are awarded to a prevailing party, chose to drag Plaintiffs through a trial they neither sought nor wanted. Ultimately, Monster played a game of chicken: Plaintiffs could bend to the will of a multi-billion dollar energy drink juggernaut and settle or bleed attorney's fees and take their case to a jury. Monster lost the case and should be properly held here to account for its brinkmanship.

## ARGUMENT

### I. BEASTIE BOYS HAVE ESTABLISHED THAT THEY ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT

#### A. Monster's Litigation Conduct Was Objectively Unreasonable

Monster observes, as did this Court, that the trial exhibited "some very fine lawyering on both sides" (Opp. at 4). However, even experienced lawyers occasionally must advocate a client's unreasonable positions. Monster's counsel was required to do just that throughout this action. Monster took unreasonable settlement positions, disputed infringement until the final pretrial conference, and persisted through trial with its untenable claim that it lacked any culpability for its infringement. In fact, Monster has refused to accept responsibility for its

-1-

actions in motions for judgment as a matter of law or a new trial, and continues in its obstinance here (Opp. at 7). Tellingly, Monster maintains this position even after being confronted at trial with the inconsistent testimony of Nelson Phillips and the testimony of high level employees, who admitted that the company had no policy for intellectual property clearance and that Beastie Boys would have been a good fit for sponsorship but Monster could not afford them.

Monster was confronted with this evidence in discovery yet chose to proceed to trial, claiming that Mr. Phillips believed he obtained a license to use Plaintiffs copyrights, even after this Court in the Summary Judgment Order found that no reasonable person could believe that was the case. (Dkt. No. 51 at 22-23.) Monster had the opportunity to prepare Mr. Phillips for his trial testimony, during which they presumably observed his demeanor and again considered the absurdity of entrusting him with intellectual property clearance. While this Court observed that Mr. Phillips's interactions with Zach Sciacca may have been legally relevant to Monster's good faith defense, the Court passed no judgment as to whether such a defense was reasonable. (*Id.* at 23, n. 10.) In fact, in light of this Court's observation that the record was "devoid of any evidence that Monster undertook any effort to investigate these matters[,]" Monster was on notice that its conduct likely rose to the level of recklessness or willful blindness. (*Id.* at 22.)

As set forth in Plaintiffs' opening papers, Monster's unreasonable conduct in this action manifested itself throughout Plaintiffs' attempts to settle this action. Monster's initial settlement offer, made nearly six months into this case—a case in which the jury awarded $1.7 million in damages—was $25,000. From this incongruous starting point, Monster made very little progress. As discovery progressed in this action, Monster made offers of judgment in the amount of $100,000 and $200,000 on May 22, 2013 and July 30, 2013, respectively. (Anderson Dec. Exs. J & K.) Both offers of judgment included attorneys' fees and costs. Monster now

claims that its full and final settlement offer was $650,000, including Plaintiffs' claims for attorney's fees. Setting aside whether Monster ever actually conveyed that offer to the mediator (it was never received by Plaintiffs), such an offer would have actually represented a *reduction* of Monster's previous offer of judgment by more than $200,000.[1] Such a backpedaling negotiation tactic itself justifies an attorney's fees award to Plaintiffs under the Copyright Act. Indeed, contrary to Monster's claim here to have "achieved a $1.5 million discount" against Plaintiffs' settlement position (Opp. at 1), the jury awarded Plaintiffs *more than* their last monetary demand before trial.

Finally, Monster disputed infringement, as well as Plaintiffs' ownership of the Copyrights, throughout this litigation. Monster pursued those issues in discovery and, in connection with the parties' submission of their Joint Pretrial Order, refused to stipulate that the Video Advertisement used the Copyrights as its soundtrack, or even that Plaintiffs owned those Copyrights. (Garrity Dec. Exs. A & B.) In fact, Monster did not concede infringement until the Final Pretrial Conference on May 22, 2014. (Anderson Dec. Ex. Z at 20-21, 48.) Monster's argument here that Plaintiffs' efforts to prove ownership and infringement were unnecessary (Opp. at 6), presumably because Monster conceded these issues days before the trial,[2] is further evidence of Monster's bad faith.

### B.   An Attorney's Fees Award Is Necessary To Compensate Plaintiffs

While Plaintiffs have established that Monster was objectively unreasonable, such a finding is not a prerequisite to a fee award under the Copyright Act. Indeed, an award of attorney's fees here would be consistent with the purposes of the Copyright Act as it would

---

[1] At the time Monster issued its second offer of judgment, Plaintiffs' attorney's fees and costs were approximately $677,055.50. (Anderson Dec. at Ex. W.) Nearly six months later, when the parties traveled to California for the mediation, those fees and costs had increased to approximately $895,926.00.

[2] Notably, Monster never made another settlement offer, notwithstanding conceding liability for the first time.

compensate Plaintiffs and deter Monster from future infringement. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n. 19 (1994). Monster succeeded in causing this case to cost more in attorney's fees than Plaintiffs can recover.[3] Without liability for Plaintiffs' attorney's fees and costs, Monster would avoid responsibility for a necessary component of the damages suffered by Plaintiffs as a result of Monster's willful and bad faith refusal to account for its infringing actions. Such a result would be entirely contrary to the Copyright Act's purpose of compensating Plaintiffs for the losses caused by Monster.

Monster's argument that deterrence is unnecessary, because it is unlikely to engage in such egregious copyright violations in the future (Opp. at 13), should be rejected on the facts of this case. There is no evidence that anything other than the substantial cost of this action, including Monster's potential liability for Plaintiff's fees and costs, motivated Monster to allegedly implement a policy with respect to intellectual property clearance.[4] Monster's attempt to rely on *Psihoyos v. John Wiely & Sons*, 2013 WL 1285153 (S.D.N.Y. March 29, 2013) to argue that an award of fees here would not accomplish the Copyright Act's goal of compensation and deterrence should likewise be rejected. In *Psihoyos*, the plaintiff alleged infringement with respect to eight copyrighted works, but only proved infringement with respect to three of those works (with only two of those infringements being willful). *Id.*, at *2. Because the *Psihoyos* court was not confronted with universally willful conduct, as the jury was presented with in this case, the court declined to award attorney's fees. Indeed, Monster's reliance on *Clark v. Huston Bay Music, Inc.*, and *Cabell v. Sony Pictures Entm't, Inc.*, is even more troublesome. In *Clark*,

---

[3] In accordance with the Court's February 20, 2015 Opinion and Order, Plaintiffs are entitled to recover $791,400 on their copyright claims and $500,000 on their false endorsement claims. Plaintiffs' attorney's fees substantially exceed that $1,291,400 award (as do Monster's, which exceed $1.6 million).

[4] The evidence at trial makes this clear. For example, Neil Calvesbert, in an August 12, 2012 email sent after this litigation was commenced, stated: "You probably heard about the lawsuit with Beastie Boys. As a result of this – we are *forced* to implement some changes with our Youtube posting process. . . . Anytime music is used, we will need authorization on the music." (Pl. Ex. 191) (emphasis added).

104 F.3d 351 (2d Cir. 1996), unlike here, the award to plaintiff "was greater than his estimated attorney's fees," and he stood to receive additional royalties going forward. Similarly, in *Cabell*, 2011 WL 92765 (S.D.N.Y. Jan. 7, 2011), the court awarded a nominal amount of fees but determined that a large fees award would not accomplish the Copyright Act's goals of compensation and deterrence, because it would financially decimate the plaintiff who had earned less than $10,000 in the three years preceding the court's award.

### C. Beastie Boys' Succeeded On All Claims At Trial, Which Involved Common Facts and Legal Theories With The Claims They Declined To Pursue

Monster's attempt to argue that Plaintiffs are not the prevailing party (despite the jury's $1.7 million award) because the Complaint included claims that Plaintiffs withdrew during the case is entirely contrary to the law. While Plaintiffs ultimately did not pursue their Ninth claim regarding Monster's distribution of an MP3 download and their Eleventh claim for violation of Plaintiffs' right of publicity, those claims arise from the same nexus of facts as the claims Plaintiffs ultimately tried. Indeed, there was no discovery taken with respect to the withdrawn claims that was not directly relevant to the issues that were before the jury. The circumstances surrounding the creation and distribution of the link to the MP3 download were central to this action, and the right of publicity claim was based on the facts regarding the creation and distribution of the Video Advertisement that were presented to the jury.

As the Supreme Court made clear in *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983): "Where a plaintiff has obtained excellent results, his attorney should receive a fully compensatory fee . . . the fee should not be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit." Even where a plaintiff does not prevail on all claims, but all claims were based on a common core of facts, an award of attorney's fees is appropriate. *Id.*; *Tran v. Tran*, 67 Fed. Appx. 40, 43 (2d Cir. 2003); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,

2008 WL 4613752, at *10-11 (S.D.N.Y. Oct. 17, 2008). In *J.S. Nicol*, the court declined to reduce a fee award when the plaintiff decided to withdraw claims during the trial itself. *Id.*; *see also Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir. 1996) (awarding entire fee despite voluntary dismissal of claim involving common facts). As evidenced by the jury's $1.7 million verdict, there can be no question that Plaintiffs succeeded on all claims tried and are entitled to the full amount of their attorney's fees.[5]

## II. THIS IS AN EXTRAORDINARY CASE AND BEASTIE BOYS ARE ENTITLED TO ATTORNEY'S FEES AND COSTS UNDER THE LANHAM ACT BASED ON MONSTER'S BAD FAITH IN CAUSING FALSE ENDORSEMENT

As discussed in Plaintiffs' opening brief, the jury's finding that Monster acted in bad faith in creating a false endorsement makes this an exceptional case. Monster in response relies upon *Mister Softee of Brooklyn, Inc. v. Boula Vending Inc.*, 484 Fed. Appx. 623 (2d Cir. 2012), for the uncontroversial point that a finding of bad faith does not require an award of fees and costs under the Lanham Act, but that the decision ultimately rests in the court's discretion. This is not a "plain-vanilla trademark infringement case" like the one in *MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 4105698 (S.D.N.Y. Aug. 12, 2013), a case that was vacated on appeal, 589 Fed. Appx. 559, 562-63 (2d Cir. 2014), based on the fact that the parties' contract limited liability on infringement to $5,000. The district court in *MyPlayCity* also found that the litigation result was "decidedly 'mixed'" and not a clear instance of the plaintiff prevailing, and that the defendant

---

[5] Similarly, the Court's decisions to exclude the Wheels Fest and Monster Army videos from evidence at trial, and allow Erich Joahimsthaler to provide expert testimony, should not reduce any fee award that may be granted. Those decisions, which are part of the ebb and flow of litigation, do not change the fact that Plaintiffs are prevailing parties and are entitled to an award of attorney's fees. Moreover, the contemporaneous time records submitted by Plaintiffs demonstrate that the time devoted to the Wheels Fest issue was limited. Indeed, the time entries that reference the term "Wheels" total 70.7 hours and $41,096.50 in fees, .017% of Plaintiffs' total fees. (Garrity Dec. Ex. D.) Finally, Plaintiffs are not even seeking the lion's share of their fees in connection with the Joahimsthaler motion *in limine*: Mr. Max was the attorney primarily responsible for researching and drafting the February 2014 motion (Anderson Dec. Ex. U at 88-94, Tkpr #0295), and Plaintiffs are not seeking to recover for Mr. Max's fees after July 2013. (*See* Anderson Dec. Ex. V.)

had not "engaged in reprehensible conduct" such as making false statements at trial. 2012 WL 4105698, at *12-13.[6] Monster did engage in unreasonable conduct in this litigation, which included proffering Mr. Phillips' dubious testimony, which this Court observed was directly contradicted and "impeached on a number of other points where it was at odds with his deposition." (Dkt. 181 at 26.) Under these exceptional circumstances, fees are warranted.

Finally, even if this Court determines that this is not an extraordinary case and declines to award Plaintiffs' fees under the Lanham Act, the fees requested by Plaintiffs should not be reduced by half as Monster suggests (Opp. at 16). Monster's argument completely ignores the fact that Plaintiffs' Copyright and Lanham Act claims arose from the same nucleus of facts and that litigation of Plaintiffs' copyright claims on their own would have resulted in Plaintiffs incurring a similar amount of legal fees. Indeed, even if Plaintiffs had not pursued their Lanham Act claims, the scope of fact discovery would have been identical, and expert discovery, the trial and post-trial proceedings would have been substantially the same.[7]

## III. BEASTIE BOYS' ATTORNEY'S FEES AND COSTS ARE REASONABLE AND SHOULD BE AWARDED IN FULL

The time expended by Plaintiffs' counsel in connection with the prosecution of this action was necessary and reasonable and should not be reduced beyond the deduction already taken by Plaintiffs. At the same time Monster argues that the attorney's fee award Plaintiffs are seeking is unreasonable, Monster admits that it incurred $1,624,948.71 in attorney's fees

---

[6] *Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 427 (E.D.N.Y. 2008), is similarly unpersuasive. There, the plaintiffs were not the prevailing party because the defendants succeeded on a counterclaim, and plaintiffs "only succeeded in a more limited claim" under the Lanham Act. *Id.* at 471.

[7] The Supreme Court's ruling in *Hensley* supports this proposition, holding that in cases where claims for relief involve common facts: "Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.

-7-

defending this action.[8] Plaintiffs should be awarded the full $2,385,175.50 in fees they are seeking, because the time Plaintiffs' counsel spent and the amounts charged are reasonable, necessary and supported by contemporaneous time records. The amount Monster paid its own counsel should have no bearing on the amount of fees award to Plaintiffs.

Further, Monster's *ad hominem* attacks on Mr. Anderson's role in this litigation are unsubstantiated, and the suggestion that Mr. Anderson's time should be written off in its entirety is unwarranted and insulting. As detailed in Mr. Anderson's Declaration in support of Plaintiff's application, he has over 25 years of experience regarding copyright disputes. (Anderson Dec. ¶ 37.) Mr. Anderson actively participated in this litigation from the outset through the verdict. In fact, as this Court may recall, Mr. Anderson appeared at nearly every conference before the Court beginning with the Initial Pretrial Conference on November 16, 2012. Moreover, as reflected in Plaintiffs' counsel's contemporaneous time records, Mr. Anderson participated extensively in drafting and revising pleadings, motions and other submissions to the Court; coordinating with Plaintiffs and their representatives regarding discovery requests and other issues in this action; as well as preparing witnesses for deposition and trial. Such time is clearly recoverable. *See, e.g., Meriwether v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (rejecting argument that work performed by two or more attorneys was duplicative); *Lenihan v. City of N.Y.*, 640 F. Supp. 822 (S.D.N.Y. 1986) (ruling that time spent on revising preliminary drafts and participating in intra-offices conferences was properly recoverable); *see also Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 2004 WL 213032, at *6-8 (S.D.N.Y. Feb. 3, 2004).

Monster's complaints regarding the hourly rates of Plaintiffs' attorneys are simply not

---

[8] Notably, based on Monster's representations regarding the average billing rates of its counsel (which are approximately 25% lower than the rates charged by Plaintiffs' counsel), it would appear (based on an admittedly unscientific calculation) that the hours billed by the parties' counsel likely are proximate.

supported by the law or the market for legal services in New York City. While Mr. Anderson's Declaration (at ¶ 48) adequately supports the reasonableness of the rates charged, and this Court may rely on its own knowledge of private firms' hourly rates, Plaintiffs have also submitted the 2014 National Law Journal Billing Survey, which provides hourly billing rates for 169 of the nation's 350 largest law firms. (Garrity Dec. Ex. C, ¶ 4.)[9] This evidence, together with the experience of Plaintiffs' counsel and the successful result secured at trial, clearly establishes that the rates charged by Plaintiffs' counsel were reasonable.[10]

Monster's claim that Plaintiffs failed to properly support their motion for fees and costs must also be rejected. In fact, Monster's argument that Plaintiffs must submit separate affidavits from each of its attorneys is not even supported by the case Monster cites for that proposition.[11] Here, Mr. Anderson's declaration in support of Plaintiffs' fee application specifically describes his own professional experience, as well as that of Messrs. Puvalowski, Garrity, Max and Monahan. (Anderson Dec. ¶¶ 37-44.)[12] Additionally, this Court had the opportunity to observe the capability and skill of Plaintiffs' counsel over the course of the trial. Indeed, as Monster points out in its own brief, this Court was "deeply impressed by the lawyering in this case[.]" Under these circumstances, the rates claimed by Sheppard Mullin are adequately supported.[13]

---

[9] As reflected in that survey, the rates charged for Sheppard Mullin partners is below the $883.18 average partner billing rate in New York and slightly higher than the $613.05 national average. Similarly, the rates for Sheppard Mullin associates are below the $531.21 New York average and slightly higher than the $376.66 national average.

[10] In fact, one of the cases cited by Monster found that similar rates for intellectual property attorneys were reasonable *five years ago*. See *OZ Management LP v. Ozdeal Investment Consultants, Inc.*, 2010 WL 5538552, at *3 (S.D.N.Y. Dec. 6, 2010) (finding $657 hourly rate for partner with 20 years of experience was reasonable).

[11] In *Dweck v. Amadi*, 2012 WL 3020029, at *4 (S.D.N.Y. July 6, 2012), the plaintiff's fee application after an inquest was supported by one of the two attorneys subject of the request. Moreover, while the court observed that the background information provided in connection with the application was limited, it ultimately determined that the rates sought were reasonable. *Id.*

[12] To the extent this Court determines that it would like a more detailed recitation of the experience of Plaintiffs' attorneys and support staff or any other additional information, Plaintiffs respectfully request leave to provide those submissions to the Court in advance of oral argument.

[13] Monster's argument that the rates for Plaintiffs' litigation support staff should be reduced, by relying on prevailing rates from 2010, should be rejected. As an initial matter, the $235 hourly rate for Plaintiffs' Senior Trial (footnote continued)

Monster's complaints regarding block billing or time that it deems to be "vague" are not well taken. Block billing clearly satisfies the requirements of *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d, 1136, 1154 (2d Cir. 1983), which simply requires time entries to specify "the date, the hours expended, and the nature of the work done." Time entered in this manner is clearly recoverable. *See, e.g., Hont v. Willis Group Holdings Ltd.*, 2008 WL 1166309, at *6 (S.D.N.Y. April 7, 2008); *Meriwether*, 727 F. Supp. at 827 ("multiple entries comply with the Second Circuit's requirement of specificity"). Moreover, where allegedly vague time entries are made clear by the entries that follow them, *i.e.* "prepare for deposition" is followed by an entry for that deposition, the time is properly recoverable. *Lenihan*, 640 F. Supp. at 826.

Finally, the costs claimed by Plaintiffs are reasonable and clearly recoverable. *See, e.g., DiSorbo v. City of Schenectady*, 2004 WL 115009, at *5, *8 (N.D.N.Y. Jan. 9, 2004) (awarding travel expenses as costs); *Video-Cinema Films*, 2004 WL 213032, at *5, *8-9 (awarding electronic legal research, document duplication and travel expenses as costs). Monster's argument that the copies of the trial transcript, including dailies, were not necessarily obtained by Plaintiffs is belied by the fact that Monster ordered the transcript and dailies as well, and both parties submitted substantial portions of the trial transcript to the Court in connection with this motion and Monster's motions for judgment as a matter of law and a new trial. Accordingly, Plaintiffs should be awarded the costs requested.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' opening papers, Plaintiffs respectfully request that the Court grant their motion for attorney's fees and costs in its

---

Support Specialist, Stephanie Limbaugh, who ran Plaintiffs' courtroom technology at trial, is on par with the $195 hourly rate that TrialGraphix, the service Monster used at trial, charged for a Presentation Technology Consultant in 2013. (Garrity Dec. Ex. E.) Moreover, the extensive experience of Ms. Limbaugh and Plaintiffs' other litigation support staff clearly merits their average hourly rates of between $204.22 and $254.42. (Garrity Dec. ¶¶ 7-10.)

-11-

entirety, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       March 20, 2015

                                  Respectfully submitted,

                                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                                By:     /s/ Paul W. Garrity
                                        Paul W. Garrity, Esq. (PG-3492)
                                        Kevin R. Puvalowski, Esq. (KP-0091)
                                        Kenneth B. Anderson, Esq. (KA-9923)
                                        Thomas M. Monahan, Esq. (TM-1984)

                                30 Rockefeller Plaza
                                New York, New York 10112
                                Tel:   (212) 653-8700
                                Fax:  (212) 653-8701

                                *Attorneys for Plaintiffs*